IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|    Appellee, | : | |
| v. | : | Case No. 23-3143 |
| LAUREN HANDY, | : | |
|    Appellant. | : | |

**DEFENDANT-APPELLANT LAUREN HANDY'S
REPLY IN SUPPORT OF MOTION FOR
<u>RELEASE PENDING SENTENCING</u>**

## INTRODUCTION

The Government's Opposition Brief would re-write the FACE Act into a statute that prohibits only *non*-reckless force by ignoring what reckless force *actually means*.

"A person acts recklessly, in the most common formulation, when he 'consciously disregard[s] a substantial [and unjustifiable] risk that the conduct *will cause harm to another*.'" *Counterman v. Colorado*, 600 U.S. __, 143 S. Ct. 2106, 2117 (2023) (emphasis added) (quoting *Voisine v. United States*, 579 U.S. 686, 691 (2016)). This is distinct from force that "*knowingly or intentionally*" seeks to cause "harm." *Voisine*, 579 U.S. at 691 (emphasis added). But reckless force is still "morally culpable

1

conduct, involving a deliberate decision to endanger another" that government has an interest in proscribing. *Counterman*, 143 S. Ct. at 2117 (internal quotes omitted).

The Government here ignores the Supreme Court teaching that such *reckless* force is not sufficiently "against another" (i.e., "directed at" or "targeting" another) to be a crime of violence. *See Borden v. United States*, 141 S. Ct. 1817, 1830 (2021) ("[C]rimes [of violence] are best understood to involve not only a substantial degree of force, but also . . . *a deliberate choice of wreaking harm on another*, rather than mere indifference to risk [of harm]") (emphasis added). The parties agree that substantial force is required—force sufficient to cause injury—to constitute FACE Act "force." But the intent and object of the force prohibited by FACE includes force intended to injure, intimidate, *or interfere with* another, 18 U.S.C. § 248(a)(1)—i.e., force even when *not intended to harm another*.

Indeed, just last term the Supreme Court held that because of First Amendment speech protections, government may punish "true threats" *only* if a defendant at least "act[ed] recklessly." *Counterman*, 143 S. Ct. at 2117 (alteration added). Justice Barrett observed in dissent that this

means government enforcement *of FACE's* prohibition on "threat[s] of force" must now at least prove a defendant acted *recklessly*. *Id.* at 2140-41 (Barrett, J., dissenting) (alteration in original). A misdemeanor FACE conviction categorically includes reckless conduct and, therefore, is not a crime of violence. None of the Government's remaining contentions, discussed below, shows otherwise. And the Government does not dispute that Ms. Handy meets the conditions to be released if she has not committed a crime of violence. Accordingly, this Court should free Ms. Handy pending sentencing.

**ARGUMENT**

**A. The Government Misapplies the Modified Categorical Approach.**

The Government argues that whenever a statute is divisible (i.e. has multiple elements), courts "must" apply the modified categorical approach and look behind the statute to determine the crime of conviction. (Br. 9-11.) Tellingly, it fails to quote even one case in support of this assertion and ignores caselaw holding otherwise.

As Handy has explained (Mot. 11), the Supreme Court has held that courts may look to "extra-statutory documents *only* when a statute defines [the crime at issue] . . . alternatively, with *one* statutory phrase

3

*corresponding to the generic crime [of violence definition]* and another not." *Descamps v. United States*, 570 U.S. 254, 265 (2013) (emphasis added). But "the inquiry *is* over" if the statutory elements "do[] not correspond to the relevant generic offense." *Id.*; *see also Mathis v. United States*, 579 U.S. 500, 505 (2016) (authorizing modified categorical approach where one of statute's elements "would match" the generic offense, and another would not).

The Government ignores this rule and argues that because FACE has multiple elements, this Court should automatically look to extra-statutory documents like the charging documents and jury instructions. However, the Government fails to *first* consider whether the different elements actually match the meaning of "crime of violence" in 18 U.S.C. § 3156(a)(4)(A). And, as Handy has explained (Mot. 12-21), because a misdemeanor FACE conviction under 18 U.S.C. § 248(b)(1) does *not* match the meaning of "crime of violence," "it *precludes* [] an inquiry into how any particular defendant may commit the crime." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022) (emphasis added).

Accordingly, both the Government and the District Court have wrongly assumed that the modified categorical approach applies simply

4

because a FACE misdemeanor under § 248(b)(1) contains a higher punishment (up to one year) than a misdemeanor under § 248(b)(2) (up to six months), because they fail to actually determine whether the former "always requires the government to prove . . . the use, attempted use, or threatened use of force" against another as a categorical matter, under the parameters explained by the Supreme Court. *Taylor*, 142 S. Ct. at 2020. As the High Court made clear, it is not enough that the offense at issue may involve a use of "force."

### B. The Government Misapprehends and Conflates FACE's Intent Requirements.

The Government accuses Handy of misunderstanding and misreading the FACE Act (Br. at 16), but, as previewed above, it is the Government that misconstrues the Act.

The Government argues that FACE prohibits only "intentional . . . conduct" because it requires that one specifically intend to "injure, intimidate, or interfere with" another. 18 U.S.C. § 248(a)(1) (Br. 19; *see also id.* ("courts . . . have held that the statute requires intentional action and a specific purpose by the defendant").) But the Government is conflating three different aspects of the offense.

5

A FACE Act violation under § 248(a)(1) requires three things: First, one must act "by force or threat of force or by physical obstruction." § 248(a)(1). It's clear that "force" "must be volitional." *Voisine*, 579 U.S. at 693; *see also United States v. Castleman*, 572 U.S. 157, 170 (2014) ("use" of "force" inherently means a "knowing or intentional application of force"). But a use of "force," by itself, "does *not* demand that the person applying the force have the practical certainty that it will cause harm;" in other words, it is "indifferent as to whether the actor has the mental state of intention, knowledge, *or recklessness* with respect to the *harmful consequences* of his volitional conduct." *Voisine*, 579 U.S. at 693 (emphasis added).

Second, one must "intentionally injure[], intimidate[] *or interfere*[] with" another (or attempt to do so). § 248(a)(1) (emphasis added). This is the Act's "specific intent" requirement, i.e., that one "not merely intend[] the physical act but act[] with the specific intent to injure, intimidate, or interfere." *New York v. Griepp*, 991 F.3d 81, 136 n.2 (2d Cir. 2021) (Livingston, C.J., concurring in part), *reh'g granted and opinion vacated sub nom. People v. Griepp*, 997 F.3d 1258 (2d Cir. 2021), and *on reh'g sub. nom. New York by James v. Griepp*, 11 F.4th (2d Cir. 2021); *accord United*

6

*States v. Mahoney*, 247 F.3d 279, 283-84 (D.C. Cir. 2001) (defendant must have "requisite specific intent" to violate FACE). But this requirement does not mean one must use force with the intent to *injure* (or *intimidate*) another, since intent to "*interfere with*" another is sufficient. 18 U.S.C. § 248(a)(1). And FACE defines "interfere with" to mean "restrict[ing] a person's freedom of movement," i.e., without requiring bodily harm. 18 U.S.C. § 248(e)(3).

Finally, one must act "*because* that person is or has been, or in order to intimidate such person . . . from, obtaining or providing reproductive health services." § 248(a)(1) (emphasis added). This is "[t]he statue's motive requirement," *Terry v. Reno*, 101 F.3d 1412, 1420 (D.C. Cir. 1996), and it is an entirely "separate . . . requirement" from the specific-intent component. *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004).

The Government must establish all three aspects of the offense to convict under § 248(a)(1). But contrary to the Government's arguments (predicated on a conflation of the Act's three separate components), nothing in the Act requires that an act of "force" involve a "deliberate choice" to inflict "consequent harm," *Borden*, 141 S. Ct. at 1823 (defining intentional force), because it expressly prohibits even volitional "force"—

7

motivated by stopping reproductive health services—that does *not* intend harm, but merely to interfere with abortion access.

### C. Courts Recognize that FACE and Other Civil Rights Laws Prohibit Reckless Conduct.

The Government accuses Handy of failing to cite any cases supporting this position. (Br. 20.) But in addition to *Counterman* cited above, at least one district court found that defendants violated FACE by acting "in reckless disregard of plaintiffs' rights." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 41 F. Supp. 2d 1130, 1149 (D. Or. 1999), *vacated*, 244 F.3d 1007 (9th Cir. 2001), *on reh'g en banc*, 290 F.3d 1058 (9th Cir. 2002), *as amended* (July 10, 2002), and *aff'd in part, rev'd in part* (290 F.3d 1058) (9th Cir. 2002), *as amended* (July 10, 2002).[1]

Another district court found a FACE "force" violation where the defendant "knock[ed] over" a clinic escort "in an attempt to counsel a patient," accusing the escort of getting in his way. *United States v. Scott*, 958 F. Supp. 761, 775 (D. Conn. 1997).[2]

---

[1] The Government rightly does not argue that "threat of force" is a separate element from "force," as both are punished identically under § 248(b)(1).
[2] Ms. Handy does not concede that making contact with an escort outside a clinic involves the requisite motive to obstruct reproductive services "in a . . .

8

Yet another district court has recognized that federal law authorizing civil actions for conspiracies "to deter, by force, intimidation, or threat, any party or witness" in court from attending or testifying, can be violated by "reckless indifference" and "serious disregard" for plaintiffs' rights, sufficient to authorize punitive damages. *Odum v. Rayonier, Inc.*, No. CIV.A CV204-190, 2005 WL 3440817, at *5 (S.D. Ga. Dec. 14, 2005) (citing 42 U.S.C. § 1985(2)), *aff'd*, 316 F. App'x 855 (11th Cir. 2008).

Accordingly, Ms. Handy's position here is hardly novel.

### D. The Government Fails to Undermine Ms. Handy's Hypotheticals.

The Government dismisses Ms. Handy's running-into-an-open-doorway hypothetical as necessarily targeting "another person." (Br. 20.) But it fails to acknowledge that one could run forcefully into a clinic with an intent to *interfere with* abortion via obstruction, and then be charged with *both* force *and* physical obstruction (as Handy was here), especially if they knock someone down (e.g., a clinic nurse) on their way in (without any evidence that knocking someone down was their conscious object).

---

facility," 18 U.S.C. § 248(a)(1), (e), but this case is an illustrative application of the "force" clause.

The Government's response to the sledge-hammer-against-one's-own-car hypothetical also fails (Br. 21), since it merely asserts that would be only a physical obstruction, without any assurance that a different prosecutor would not charge it as both obstruction *and* force—especially since the force charge would bump the offense up to the "more serious misdemeanor" under § 248(b)(1).

Similarly, FACE would also plainly apply to forcefully pushing open an unlocked abortion clinic door, without knowing for sure whether a clinic worker was behind it inside. That would be a use of force sufficient to cause pain to another, *see Johnson v. United States*, 559 U.S. 133, 140 (2010), with the intent to interfere with abortion inside the clinic, § 248(a)(1). But it is also quintessential reckless force. *See Voisine*, 579 U.S. at 693-94 (recklessness includes "slamming [a] door shut with [one's] girlfriend following close behind . . . regardless of whether he thinks it absolutely sure or only quite likely that he will catch her fingers in the jamb").

Thus the hypotheticals, too, confirm Handy's position.

### E. The Extra-Statutory Documents Support Ms. Handy.

Assuming *arguendo* this Court looks beyond the statute, which it should not do, the record confirms Ms. Handy could have been convicted for reckless force.

The Government notes the jury instructions defined "force" as "power and/or violence exerted upon or against a person or property." (Br. 15.) But that instruction did not match the "crime of violence" definition for at least two reasons.

First, the instruction does not specify that reckless force was *not* sufficient. Notably, four Justices of the U.S. Supreme Court recently opined that use of force "against another" necessarily includes "reckless" force—but they were in the dissent. *See Borden*, 141 S. Ct. at 1838 (Kavanaugh, J., dissenting). It is easy to see that many jurors could likewise conclude that force "against another" includes reckless force, without being instructed otherwise. And they were not so instructed here.

Second, the instruction allowed conviction for force against "property," without specifying that it be *another's* property, despite that being a requirement for a categorical "crime of violence." *See* 18 U.S.C. § 3156(a)(4)(A) ("…property of another").

The Superseding Indictment also supports Handy's position. It shows her "force" conviction was sought based on either allegedly "forcefully push[ing] through the Clinic door into the Clinic's waiting room," along with several others, or allegedly aiding and abetting Defendant Smith who "forcefully backed into the clinic, [] caus[ing] Nurse K to stumble and sprain her ankle." ECF No. 113, ¶¶22, 23. These are classic allegations of recklessness—using force in "conscious[] disregard[]" of a substantial and unjustifiable risk that "deliberate[ly] . . . endanger[s] another," without any evidence of a "conscious[] desire" to cause harm. *Counterman*, 143 S. Ct. at 21117.[3]

Accordingly, the modified categorical approach also supports Handy, and her misdemeanor "force" conviction was not a "crime of violence."

---

[3] To be sure, Handy intends to appeal on the merits from these convictions, including the notion that she aided and abetted in separate conduct by another defendant that resulted in an (apparently incidental) injury, without any evidence that she specifically intended that conduct. *Rosemond v. United States*, 572 U.S. 65, 71, 76 (2014). Further, courts have held that *conspiracy* is not itself a "crime of violence." *United States v. Bonner*, 826 F. App'x 52, 56 (2d Cir. 2020); *Jones v. United States*, 39 F.4th 523, 526 (8th Cir. 2022).

### F. The Government's "Violent Physical Obstruction" Argument Fails Basic Logic and Practice.

The Government obstinately insists that any "physical obstruction" that is not "exclusively nonviolent physical obstruction" punished separately under § 248(b)(2) is necessarily "*violent* physical obstruction," including for a "physical obstruction" violation punished under subsection (b)(1). (Br. 12, 17, 19.) But the Government simply ignores Handy's argument that *nonviolent* physical obstruction can also receive the heightened punishment under subsection (b)(1) so long as it was committed *in addition to* "force" or "threat" of force. Thus the crime would not involve "*exclusively* nonviolent physical obstruction," but it could involve nonviolent physical obstruction nonetheless. (Mot. 18-21.)

The Government's position to the contrary fails basic logic, as nothing in the statute requires the inference it draws. The Government ignores Handy's dual-offense hypothetical confirming her position (Mot. 18-19), as well as the facts of this case that also involve convictions for both force and physical obstruction (which could include nonviolent physical obstruction plus force, and thus not "*exclusively* nonviolent physical obstruction").

Thus, a misdemeanor "physical obstruction" violation is also not a "crime of violence."

Accordingly, Handy is being wrongfully detained under 18 U.S.C. § 3143(a)(2). And the Government does not dispute that she meets the standard for release under § 3143(a)(1).

## **CONCLUSION**

The Supreme Court has recognized that "crime of violence" restrictions are intended to address "the special dangers" attendant to "*violent criminal[s]*." *Borden*, 141 S. Ct. at 1830 (emphasis added). Ms. Handy's misdemeanor FACE convictions recounted above hardly make her a *violent criminal*. Accordingly, for the foregoing reasons, this Court should reverse the District Court and free Ms. Handy pending sentencing.

Respectfully submitted,

/s/*Martin A. Cannon*
Martin A. Cannon, Esquire (Application for Admission Pending)
Thomas More Society
10506 Burt Circle, Suite 110
Omaha, Nebraska 68114
Email: mcannonlaw@gmail.com
Phone: (402) 690-1484

/s/*Stephen M. Crampton*
Stephen Crampton, Esquire (Application for Admission Pending)
P.O. Box 4506
Tupelo, MS 38803
Email: scrampton@thomasmoresociety.org
Phone: (662) 662-255-9439

*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire Boyle & Jasari
1050 Connecticut Ave, NW Suite 500
Washington, DC 20036
dboyle@boylejasari.com
Telephone: (202) 798-7600

*Counsel for Appellant*

Dated: September 14, 2023

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2023, I caused the foregoing motion to be filed with the Clerk of Court for the United States Court of Appeals for the D.C. Circuit using this Court's CM/ECF system, which will serve all counsel of record.

*/s/ Dennis E. Boyle*
Dennis E. Boyle

# ADDENDUM
# CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1), Defendant-Appellant Lauren Handy hereby certifies that the parties that appeared in the district court and that are now before this Court are Lauren Handy (defendant-appellant) and the United States (appellee).

# CERTIFICATE OF LENGTH

I hereby certify that this Reply complies with the type-volume limitation of D.C. Circuit Rule 27(d)(2)(A). Appellant's Motion contains 2,539 words.

*/s/Dennis E. Boyle*
Dennis E. Boyle