# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

## Case Nos. 23-3143, 23-3146, 23-3147, 23-3156, 23-3158

_____

## UNITED STATES of AMERICA

vs.

## LAUREN HANDY, et al.

_____

Appeal from the United States District Court
for the District of Columbia
Case No. 1:22-cr-00096
*The Honorable Colleen Kollar-Kotelly, U.S. District Judge*

_____

## BRIEF OF DEFENDANTS-APPELLANTS

Stephen M. Crampton
Martin A. Cannon (Application for Admission Pending)
THOMAS MORE SOCIETY
P.O. Box 4506
Tupelo, MS  38803
(662) 255-9439
scrampton@thomasmoresociety.org
mcannon@thomasmoresociety.org

Dennis E. Boyle, Esquire Boyle & Jasari
1050 Connecticut Ave, NW Suite 500
Washington, DC 20036
dboyle@boylejasari.com
Telephone: (202) 798-7600

*Counsel for Lauren Handy and Jean Marshall*

Howard J Walsh , III
3712 Cardiff Court
Chevy Chase, MD 20815
301-602-8721
Fax: 301-576-7900
Email: hwalshesq@gmail.com

*Counsel for William Goodman*

John C. Kiyonaga
JOHN C. KIYONAGA LAW OFFICE
600 Cameron Street
Alexandria, VA 22314
(703) 739-0009
Fax: (703) 549-2988
Email: jkiyonaga@earthlink.net

*Counsel for Herb Geraghty*


Christopher M. Davis
Davis & Davis
1350 Connecticut Ave., NW
Suite 202
Washington, DC 20036
Work  (202) 234-7300 Ext. 101
Cell    (202) 487-6980
Fax    (202) 830-0056
DavisLawDC.com

*Counsel for Jonathan Darnel*

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 1

JURISDICTIONAL STATEMENT ........................................ 3

ISSUES PRESENTED ........................................................ 4

STATEMENT OF THE CASE ............................................... 4

SUMMARY OF ARGUMENT .............................................. 7

ARGUMENT ...................................................................... 9

  I.  A "Crime of Violence" is One That "Always Requires" a Finding of Actual, Threatened, or Attempted Force. ...................................... 11

  II.  "Reckless" Force—i.e., *Intentional* Use of Force that Does *Not Seek to Harm Another*—is *Not* a Crime of Violence ............................. 13

  III. A FACE "Force" Conviction Can Include a Specific Intent to "Interfere With" (*Rather Than* to "Injure") Another, and Thus is *Not* a Crime of Violence .................................................. 17

    A.  FACE "force" convictions can include even reckless conduct, as shown by the statute's text. ................................... 17

    B.  Other courts agree that FACE prohibits recklessness. ............... 20

    C.  Defendants do not dispute that FACE requires *general* intent. 222

  IV. Defendants' "Physical Obstruction" Convictions are also not Crimes of Violence ................................................. 244

  V.  Defendants are Entitled to Release Under § 3143(a)(1) Because They are not Flight Risks or a Danger to Others .......................... 26

CONCLUSION ................................................................... 27

**TABLE OF AUTHORITIES**

**Cases**

*Borden v. United States,*
141 S. Ct. 1817 (2021) ................................................................. *passim*

*Craver v. State,*
2015 WL 3918057(Tex. App., June 25, 2015) ..................................... 16

*Johnson v. United States,*
559 U.S. 133 (2010) ........................................................................ 7, 13

*Jones v. United States,*
39 F.4th 523 (8th Cir. 2022)................................................................. 9

*Khan v. Obama,*
655 F.3d 20 (D.C. Cir. 2011)............................................................... 11

*Leocal v. Ashcroft,*
543 U.S. 1 (2004) ................................................................................. 7

*Mathis v. United States,*
579 U.S. 500 (2016) ..................................................................... 12, 25

*New York by James v. Griepp,*
11 F.4th 174 (2d Cir. 2021) ................................................................ 14

*New York v. Griepp,*
991 F.3d 81 (2d Cir. 2021)............................................................ 14, 18

*Odum v. Rayonier, Inc.*,
  No. CIV.A CV204-190, 2005 WL 3440817 (S.D. Ga. Dec. 14, 2005) ...21

*People v. Griepp*,
  997 F.3d 1258 (2d Cir. 2021) ............................................................... 14

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life*
  *Activists*, 41 F. Supp. 2d 1130, 1149 (D. Or. 1999) .............................. 20

*Rosemond v. United States*,
  572 U.S. 65 (2014) ...................................................................................9

*Sharpe v. Canole*,
  386 F.3d 482 (2d Cir. 2004) .................................................................. 19

*Terry v. Reno*,
  101 F.3d 1412 (D.C. Cir. 1996) ............................................................. 19

*United States v. Bonner*,
  826 F. App'x 52 (2d Cir. 2020) ...............................................................9

*United States v. Davis*,
  139 S. Ct. 2319 (2019) .......................................................................... 12

*United States v. Grady*,
  746 F.3d 846 (7th Cir. 2014) ................................................................ 23

*United States v. Mahoney*,
  247 F.3d 279 (D.C. Cir. 2001) ........................................................ 18, 26

*United States v. Scott*,
  958 F. Supp. 761 (D. Conn. 1997) ....................................................... 21

*United States v. Taylor,*
142 S. Ct. 2015 (2022) ...................................................... 12, 14, 18, 25

*United States v. Tsarnaev,*
968 F.3d 24, 99-103 (1st Cir. 2020) ...................................................... 24

*United States v. X-Citement Video,*
513 U.S. 64 (1994) ...................................................... 18

*Voisine v. United States,*
579 U.S. 686 (2016) .............................................................. 17, 22, 23

## Statutes

18 U.S.C. § 241 ...................................................... 4, 9

18 U.S.C. § 248 ...................................................... 1, 4

18 U.S.C. § 248(a)(1)...................................................... 2, 8, 17, 20

18 U.S.C. § 248(b)(1)...................................................... 8, 13, 25

18 U.S.C. § 248(b)(2)...................................................... 5, 8, 24

18 U.S.C. § 248(d)(1) ...................................................... 14

18 U.S.C. § 248(e)(2) ...................................................... 8

18 U.S.C. § 248(e)(3) ...................................................... 18

18 U.S.C. § 248(e)(4) ...................................................... 25

18 U.S.C. § 924(c)(2)(B)(i)...................................................... 1

18 U.S.C. § 924(c)(3) ...................................................................... 12

18 U.S.C. § 3142(f)(1)(A) ............................................................... 11

18 U.S.C. § 3143(a)(1)..................................................... 2, 9, 10, 25

18 U.S.C. § 3143(a)(2).............................................................. *passim*

18 U.S.C. § 3145(c) ........................................................................ 3

18 U.S.C. § 3156(a)(4)............................................................ 1, 11, 12

28 U.S.C. § 1291 ............................................................................ 3

28 U.S.C. § 1331 ............................................................................ 3

42 U.S.C. § 1985(2) ...................................................................... 21

924(c)(3)(B) ................................................................................. 12

## Rules

Fed. R. App. Proc. 4(b)(1)(A) ......................................................... 3

Fed. R. App. Proc. 9(a)................................................................... 3

## Treatises

Restatement (Second) of Torts § 8A, p. 15 (1965).................................. 15

**INTRODUCTION**

The Supreme Court recently held that volitional acts of force which lack a *specific intent* (purpose or knowledge) of seeking to harm another are not "crimes of violence" for purposes of sentencing enhancements under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(c)(2)(B)(i). *Borden v. United States*, 141 S. Ct. 1817 (2021).

This appeal arises from Defendants-Appellants' immediate detention pending sentencing, after the District Court determined they committed "crimes of violence" under 18 U.S.C. § 3156(a)(4) (which is materially identical to the definition in ACCA). The District Court based its decision on Defendants' *misdemeanor convictions* under the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248, given special findings that Defendants engaged in both "physical obstruction" and "force." The District Court thus found that Defendants must be automatically detained before sentencing under 18 U.S.C. § 3143(a)(2).[1]

---

[1] That same court *declined* to incarcerate co-defendant Jay Smith, who pled guilty to actually using the force which these Defendants were convicted of aiding and abetting.

However, a FACE "force" conviction does not *categorically* require a *specific intent* of harming others, because the Act expressly prohibits using force with a specific intent to "injure[], intimidate[], *or interfere with*" another (the latter of which does not require an intent to harm), because the person is obtaining or providing "reproductive health services." 18 U.S.C. § 248(a)(1). Thus, a misdemeanor FACE "force" violation can occur even where one lacks a specific intent of harming another, even while the underlying *actus reus* itself is volitional and intentional. That is not a "crime of violence" under *Borden*.

Similarly, Defendants' misdemeanor convictions for "physical obstruction" are also not crimes of violence for the reasons discussed below.

Accordingly, Defendants should not be detained pending sentencing under § 3143(a)(2) and should be released under the more lenient terms of § 3143(a)(1), especially since they were not detained before trial, and the Government rightly does not argue that they are a flight risk or danger to others.

# JURISDICTIONAL STATEMENT

The District Court had federal question jurisdiction under 28 U.S.C. § 1331.

After Defendants-Appellants were convicted of violating the FACE Act (some on August 29, 2023, others on September 15, 2023), the District Court ordered that they be immediately detained pursuant to 18 U.S.C. § 3143(a)(2). On August 31, 2023, the District Court denied Handy's motion for reconsideration of that decision. Handy timely filed her notice of appeal to this Court that same day. Dist. Ct. Dkt. 398. Four additional Defendants-Appellants have also timely filed their notices of appeal: Herb Geraghty, on September 1, 2023 (No. 23-3146); William Goodman, on September 1, 2023 (No. 23-3147); Jean Marshall, on September 17, 2023 (No. 23-3156); and Jonathan Darnel, on September 20, 2023 (No. 23-3158).

This Court possesses jurisdiction pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291 and Rules 4(b)(1)(A) and 9(a) of the Federal Rules of Appellate Procedure.

## ISSUES PRESENTED

**1.**     Whether Defendants' misdemeanor convictions for violating
FACE "by force" and "by physical obstruction" are "crime[s]
of violence" requiring automatic detention before sentencing
under 18 U.S.C. § 3143(a)(2).

## STATEMENT OF THE CASE

This case arises from federal criminal charges filed against Ms.
Handy and nine co-defendants after they engaged in a protest at and
inside a Washington, D.C., abortion clinic on October 22, 2020. The
Government indicted the Defendants on March 24, 2022, and then filed
a Superseding Indictment on October 14, 2022. (D.D.C. Dkt. No. 113).
The Superseding Indictment charged each defendant with (1)
conspiracy against rights in violation 18 U.S.C. § 241, a felony; and (2) a
misdemeanor violation of the FACE Act, 18 U.S.C. § 248. *Id.*

The Superseding Indictment alleged that the purpose of
Defendants' purported conspiracy was "to create a blockade to stop the
Clinic from providing, and patients from obtaining, reproductive health
services." (*Id.* ¶9). Largely tracking FACE's statutory language, it
further alleged the Defendants, "aiding and abetting one another, did

by force and physical obstruction, intentionally injure, intimidate, and interfere with, and attempt to injure, intimidate, and interfere with, Patient A and the employees of the Clinic, because Patient A was obtaining, and the Clinic was providing, reproductive health services." (*Id.* ¶38).

The Superseding Indictment does not allege that any of the Defendants intentionally inflicted physical harm or injury on anyone. To the contrary, the most that could be marshalled by the Government in terms of physical injury was the allegation that Defendant Jay Smith (not one of these Defendants) "forcefully backed into the clinic" and in the process caused a nurse "to stumble and sprain her ankle." (*Id.* ¶23). (As noted earlier, Smith was not immediately incarcerated after his conviction. Minute Entry, March 1, 2023.) No Defendant is alleged to have carried or used any kind of weapon during this protest, and the proof at trial likewise showed the absence of any weapon being used.[2]

---

[2] The Government also did not charge that "bodily injury" or "death" "result[ed]" from Defendants' actions, and thus tacitly conceded that they committed only non-bodily injury violations (i.e., misdemeanors) under FACE. *See* 18 U.S.C. § 248(b)(2).

On August 29, 2023, a jury found Defendant Handy and four co-defendants (including Defendants-Appellants Herb Geraghty and William Goodman) guilty on both counts charged in the Superseding Indictment. On September 15, 2023, a separate jury found three additional defendants (including Defendants-Appellants Jean Marshall and Jonathan Darnel) guilty on both counts. At the Government's request, the verdict form also contained special interrogatories asking the jurors to determine whether the FACE violation, if found, was committed by "force" or "physical obstruction." The jury returned a finding of both "force" and "physical obstruction" as to Ms. Handy and each of the four co-defendants tried. *See* Minute Entries, D.D.C. Dkt, August 29, 2023.

Upon the verdict being returned and announced, the District Court directed that each Defendant, none of whom had been prior to trial, be taken into custody because they had been convicted of a "crime of violence." On August 30, 2023, Appellant Handy filed an emergency motion for reconsideration of that order (Dkt. No. 387), which the District Court denied. (Dkt. No. 397). Handy filed a notice of appeal to this Court from that order the same day. (Dkt. No. 398).

On September 22, 2023, a motions panel of this Court denied

Handy's motion for immediate relief pending the outcome of this appeal.

(No. 23-3143, Doc. 2018473.) A concurring opinion ("the Concurrence")

argued that FACE does not prohibit reckless force. (*Id*. at 2.)

Respectfully, while the Concurrence focused on the requirement of

*general* intent in criminal law, it did not address Handy's argument

regarding FACE's alternative *specific intent* requirements.

Four co-Defendants have likewise appealed from their detention

pending sentencing, *see* Nos. 23-3146, 23-3147, 23-3156, and 23-3158,

which this Court has consolidated.

Defendants continue to be held in custody pending sentencing; no

date has been set for sentencing.

## SUMMARY OF ARGUMENT

Defendants' misdemeanor FACE "force" convictions are not crimes

of violence under the requisite categorical approach. The "crimes of

violence" rule is intended "to mark out a narrow 'category of violent,

active crimes.'" *Borden*, 141 S.Ct. at 1830 (quoting *Johnson v. United

States,* 559 U.S. 133, 140 (2010) and *Leocal v. Ashcroft*, 543 U.S. 1, 11

(2004)). The Supreme Court recently clarified that statutes prohibiting

acts of force without a *specific intent* (purpose or knowledge) of *harming* others are *not* crimes of violence under a materially identical definition in ACCA. *Borden*, 141 S. Ct. at 1830; *id* at 1835 (Thomas, J., concurring). Here, FACE expressly prohibits acts of force that lack a *specific intent* of causing harm to others, because a prohibited act of "force" can include a specific intent of "injur[ing], intimidat[ing], *or interfer[ing] with*" another, the latter of which does not require an intent to harm. 18 U.S.C. § 248(a)(1) (emphasis added); 18 U.S.C. § 248(e)(2). Thus, the Act's plain text makes clear that a misdemeanor FACE "force" conviction does not necessarily require having a specific intent of harming others. Caselaw likewise confirms this position.

While FACE requires a *general* intent to engage in an act of "force," it does not necessarily require a *specific intent* of seeking to harm others, and thus is not a crime of violence under *Borden*.

Defendants' misdemeanor FACE convictions for "physical obstruction" are also not crimes of violence. While FACE provides lower penalties for "exclusively nonviolent physical obstruction" under 18 U.S.C. § 248(b)(2), heightened penalties for misdemeanor "physical obstruction" under § 248(b)(1) do not necessarily encompass only

8

"*violent*" physical obstruction, contrary to the District Court's conclusion. Rather, subsection (b)(1) can just as logically include an offense that involves *both* "force" (or threat of force) *and nonviolent physical obstruction*—i.e., an offense that is not "*exclusively* nonviolent physical obstruction" under subsection (b)(2).

Thus, Defendants' misdemeanor FACE convictions for "force" and "physical obstruction" are not "crimes of violence" requiring detention under 18 U.S.C. § 3143(a)(2), and Defendants should be released pending sentencing under § 3143(a)(1).

## ARGUMENT

Defendants' misdemeanor FACE "force" and "physical obstruction" convictions are not *categorically* "crime[s] of violence" and thus they are each entitled to expedited relief from the District Court's order detaining them in federal custody prior to sentencing.[3]

---

[3] Notably, Defendants' felony convictions for conspiracy against federal civil rights under 18 U.S.C. § 241 are predicated on a charged conspiracy to commit misdemeanor violations of FACE, so whether their FACE convictions are crimes of violence resolves this appeal.

Moreover, Defendants intend to appeal on the merits from these convictions, including from the theory that they allegedly aided and abetted in separate "force" conduct by another defendant, without any evidence that they specifically intended that "force" conduct or its

Under 18 U.S.C. § 3143(a)(2), pre-sentence detention is required when, inter alia, the defendant has been convicted of a "crime of violence" as a categorical matter. However, a FACE "force" violation can occur for even *volitional/intentional* acts of force in *reckless disregard for others' safety*, which the Supreme Court recently held is *not a crime of violence. See Borden*, 141 S. Ct. at 1825; *cf. id.* at 1844 (Kavanaugh, J., dissenting) (acknowledging the issue is whether recklessness "*with respect to the consequences of using force*" is a crime of violence, not whether the *actus reus*—i.e., the underlying act—is volitional/intentional; the majority agreed it must be).

The District Court's order concluding otherwise was erroneous and should be reversed.[4] Thus Defendants should be immediately released from custody under the more lenient terms of 18 U.S.C. § 3143(a)(1), as discussed below, prior to sentencing.

---

results. *Rosemond v. United States*, 572 U.S. 65, 71, 76 (2014). Further, courts have held that *conspiracy* is not itself a "crime of violence." *United States v. Bonner*, 826 F. App'x 52, 56 (2d Cir. 2020); *Jones v. United States*, 39 F.4th 523, 526 (8th Cir. 2022).

[4] The same is true of Defendants' conspiracy convictions, which, as noted, is predicated on a conspiracy to violate FACE.

## I. A "Crime of Violence" is One That "Always Requires" a Finding of Actual, Threatened, or Attempted Force.

Courts must use a categorical (rather than case-by-case) approach in discerning whether the crime of conviction is a "crime of violence" requiring automatic detention before sentencing. *See* 18 U.S.C. § 3143(a)(2) (referencing 18 U.S.C. § 3142(f)(1)(A) ("crime of violence")).

"Crime of violence" here means "(A) an offense that has as an element . . . the use, attempted use, or threatened use of physical force against the person or property of another; [or] (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[5] 18 U.S.C. § 3156(a)(4).

As noted, precedent teaches that courts must apply a "categorical approach [under § 3156(a)(4)] . . . that does not expand or contract based on the factual peculiarities of a particular case." *United States v. Singleton*, 182 F.3d 7, 11 (D.C. Cir. 1999).[6]

---

[5] Section 3156(a)(4)(C), alternatively defining "crime of violence" to include "any felony under chapter 77, 109A, 110, or 117," is not at issue here, as FACE and 18 U.S.C. § 241 are located in chapter 13.

[6] Thus, the standard of review is de novo as a pure question of law. *Khan v. Obama*, 655 F.3d 20, 25 (D.C. Cir. 2011).

In particular, the plain terms of 18 U.S.C. § 3156(a)(4)(A), known as the "elements clause," inherently "demand" a "categorical inquir[y]." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022) (interpreting a materially identical definition of "crime of violence" in 18 U.S.C. § 924(c)(3)). Under that approach, "[t]he only relevant question is whether the [crime] at issue always requires the government to prove— beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.*[7]

Accordingly, a FACE violation (including a FACE "force" violation) is a "crime of violence" only if it satisfies the "elements clause" as a categorical matter—that is, if the government must *always* show an actual, attempted, or threatened *use of physical force against another* to prove a violation of FACE. It does not, as discussed below.

Further, the Supreme Court has generally applied a "modified categorical rule" when a crime may be committed by alternate elements.

---

[7] In *Taylor*, the Supreme Court also confirmed that the "residual clause" of § 924(c)(3)(B) (and thus its materially identical version in § 3156(a)(4)(B)) (i.e., a felony that "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") is unconstitutionally vague under controlling Supreme Court precedent. 142 S. Ct. at 2023 (citing *United States v. Davis*, 139 S. Ct. 2319, 2336) (2019)).

*Mathis v. United States*, 579 U.S. 500, 515 (2016). "Under that

approach, a sentencing court looks to a limited class of documents (for

example) the indictment, jury instructions, or plea agreement and

colloquy) to determine the crime, with what elements, a defendant was

convicted of." *Id.* at 505-06.

Thus, the question here is whether misdemeanor FACE violations

(including for acts of "force") *categorically* require acts of *violence*. Here,

Defendants were convicted of misdemeanor violations under § 248(b)(1)

for using both force and physical obstruction. But the Supreme Court

has clarified that not all intentional acts of force are "crime[s] of

violence."

## II.  "Reckless" Force—i.e., *Intentional* Use of Force that Does *Not Seek to Harm Another*—is *Not* a Crime of Violence.

"Crime of violence" force has at least two salient characteristics:

(1) it must be "violent"; and (2) it must also involve the *specific intent* of

harming another.

First, the Supreme Court has clarified that "crime of violence"

"force" means "*violent* force—that is, force capable of causing physical

pain or injury to another person." *Johnson v. United States*, 559 U.S.

133, 140 (2010) (emphasis in original). The force involved must be "a

*substantial degree of force*," because the meaning of "crime of violence" covers only a "narrow category of *violent*, *active* crimes." *Borden*, 141 S. Ct. at 1830 (emphasis added, internal quotes omitted). Thus, the Supreme Court recently found that attempted Hobbs Act robbery is *not* a crime of violence because "there will be cases appropriately reached by a charge of attempted robbery, where the actor does not actually *harm* anyone or threaten harm." *Taylor*, 142 S. Ct. at 2020.

Here, Defendants and the Government agree that the level of "force" required by FACE must be "capable of causing physical pain or injury to another." (*See* No. 23-3143, Doc. 2016523, Br. at 15.)[8]

---

[8] Thus, Defendants cannot accept the Concurrence's invitation to argue that FACE "force" could "encompass even the slightest offensive touching" (Cir. Or. at 2), which, among other issues, would present serious First Amendment problems. *See* 18 U.S.C. § 248(d)(1) (requiring that FACE's terms be construed in accord with the First Amendment); *see also New York v. Griepp*, 991 F.3d 81, 143 (2d Cir. 2021) (Livingston, C.J., concurring in part) (observing that a "de minimis" contact standard in FACE would likely violate the First Amendment), *reh'g granted and opinion vacated sub nom. People v. Griepp*, 997 F.3d 1258 (2d Cir. 2021), and *on reh'g sub nom. New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021). Moreover, the natural reading of "force" in FACE is substantial force, as a "slightest offensive touching" standard would be inconsistent with the first two means in FACE's specific intent element, requiring intent to "*injure*" or "*intimidate*."

14

However, "crime of violence" "force" must *also* involve "a purposeful or knowing mental state—*a deliberate choice of wreaking harm on another*, rather than mere indifference to risk." *Borden*, 141 S. Ct. at 1830 (emphasis added) (holding that *both* violent force and *specific intent to harm* are required).[9] Thus, the Supreme Court recently held that a *volitional* act of force that is merely *reckless* with regard to others' safety is *not* a crime of violence. *Id.* at 1825-1834 (plurality);  *id.* at 1834-1837 (Thomas, J., concurring). While the plurality and Justice Thomas disagreed about the precise *reason* a specific intent to harm another is required (the plurality relied on the requirement that one's force must be "against . . . another," while Justice Thomas pointed to the phrase "use of physical force" as inherently requiring an intent to harm), both agreed on the resulting principle: an intentional act of force is a crime of violence only if it involves a *specific intent to harm or injure another*. *See id.* at 1830 (plurality) (requiring "deliberate choice of wreaking harm on another"); *id.* at 1835 (Thomas, J., concurring) (requiring "intentional acts designed to cause harm").

---

[9] By "specific intent," Defendants mean both "purpose" *and* "knowledge" consistent with the traditional understanding of "intent." *See* Restatement (Second) of Torts § 8A, p. 15 (1965).

Accordingly, in *Borden* the Supreme Court held that a conviction for *reckless aggravated assault* is *not* a crime of violence. *Id.* at 1822, 1825. The plurality pointed to other real-world cases of reckless crimes involving *intentional* acts of force—such as a shoplifter intentionally "jump[ing] off a mall's second floor balcony while fleeing security"—but having "only a reckless *mens rea*" as to possible resulting injury to another—such as the shoplifter "land[ing] on a customer" and seriously injuring her. *Id.* at 1831 (plurality) (citing *Craver v. State*, 2015 WL 3918057, at *2 (Tex. App., June 25, 2015)). Put simply, "recklessness . . . involve[s] insufficient concern with a risk of injury," without "consciously desir[ing]" or deliberately acting "with full awareness of consequent harm." *Id.* at 1823-34 (plurality). But only acts of force that *purposely or knowingly* seek to harm another are crimes of violence, according to *Borden. Id.* at 1825 (plurality); *id.* at 1835 (Thomas, J., concurring).

Thus, if FACE prohibits "force" with a specific intent *other* than causing harm to another, a misdemeanor FACE "force" conviction cannot be a "crime of violence."

III.  **A FACE "Force" Conviction Can Include a Specific Intent to "Interfere With" (*Rather Than* to "Injure") Another, and Thus is *Not* a Crime of Violence.**

The FACE Act expressly prohibits acts of "force" with a specific intent to "interfere with" another, in the alternative to force with a specific intent to "injure" another. Thus a FACE "force" conviction categorically includes acts of force that do not purposely or knowingly seek to harm another, and thus it does not qualify as a crime of violence under *Borden*.

A.  **FACE "force" convictions can include even reckless conduct, as shown by the statute's text.**

FACE expressly prohibits using "force" to "intentionally injure, intimidate[], *or interfere[] with*" another because that person is or has been (or to intimidate that person from) obtaining or providing "reproductive health services" (including abortion). 18 U.S.C. § 248(a)(1) (emphasis added). A FACE "force" violation thus involves the following three connected but distinct aspects:

First, one must engage in a *volitional*, i.e., *intentional* act of "force" as a matter of one's *general intent. See Voisine v. United States*, 579 U.S. 686, 689 (2016) (acknowledging that "use of force" requires

17

"the knowing or intentional application of such force") (cleaned up);
*accord Borden*, 141 S. Ct. at 1826 ("'use of force' denotes volitional
conduct"); *see also United States v. X-Citement Video*, 513 U.S. 64, 72
(1994) (criminal statutes presumptively reach only intentional
conduct).[10]

Second, one must "intentionally injure[], intimidate[], *or interfere
with*" another (or attempt to do so), as a matter of *specific intent*. In
other words, one must "not merely intend[] the physical act but act[]
with the *specific intent* to injure, intimidate, or interfere." *New York v.
Griepp*, 991 F.3d 81, 136 n.2 (2d Cir. 2021) (Livingston, C.J., concurring
in part) (emphasis added); *accord United States v. Mahoney*, 247 F.3d
279, 283-84 (D.C. Cir. 2001) (defendant must have "requisite specific
intent" to violate FACE). But this requirement expressly does *not*
"always require[]," *Taylor*, 142 S. Ct. 2015, a *specific intent to injure* (or

---

[10] *But see Borden*, 141 S. Ct. at 1845 (Kavanaugh, J., dissenting) ("[T]he
Model Penal Code explains . . . that a reckless mental state is 'properly
the basis for criminal liability' . . . as the default minimum *mens rea* for
criminal offenses when a mental state is not specified.") (quoting Model
Penal Code § 2.02, Cmt. 4, at 243, and citing Cmt. 5, at 244). The
majority did not necessarily disagree with that proposition but merely
held that a recklessness *mens rea* (either generally or specifically) is not
a crime of violence.

intimidate) another, because a specific intent to "interfere with" another is sufficient. And FACE expressly defines "interfere with" to mean "restrict[ing] a person's freedom of movement," without requiring any intent to cause bodily harm. 18 U.S.C. § 248(e)(3).

Finally, one must act "*because* that person is or has been, or in order to intimidate such person . . . from, obtaining or providing reproductive health services." (Emphasis added.) This is "[t]he statute's motive requirement," *Terry v. Reno*, 101 F.3d 1412, 1420 (D.C. Cir. 1996), which is a "separate . . . requirement" from specific intent, *Sharpe v. Canole*, 386 F.3d 482, 484 (2d Cir. 2004).

Thus, FACE expressly does *not* require that an act of "force" involve a "deliberate choice of wreaking harm on another," *Borden*, 141 S. Ct. at 1830, since it expressly prohibits even volitional "force" that seeks to "restrict [one's] freedom of movement," *separate and apart* from seeking to "injure[]" another.

## B. Other courts agree that FACE prohibits recklessness.

District courts have characterized FACE as requiring a recklessness standard in a variety of contexts.[11] For instance, at least one district court has found that defendants violated FACE by acting "in reckless disregard of plaintiffs' rights." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 41 F. Supp. 2d 1130, 1149 (D. Or. 1999), *vacated*, 244 F.3d 1007 (9th Cir. 2001), *on reh'g en banc*, 290 F.3d 1058 (9th Cir. 2002), *as amended* (July 10, 2002), and *aff'd in part, rev'd in part* (290 F.3d 1058) (9th Cir. 2002), *as amended* (July 10, 2002). Another district court found a FACE "force" violation where the defendant "knock[ed] over" a clinic escort "in an attempt to counsel a patient" and then accused the escort of getting in

---

[11] Moreover, just last term, the Supreme Court held that given the requirements of the First Amendment, government may punish "true threats" only if it shows a defendant at least "act[ed] recklessly." *Counterman v. Colorado*, 143 S. Ct. 2106, 2117 (2013). In her dissent, Justice Barrett indicated her belief that *Counterman* set the minimum bar for civil claims under the FACE Act for "threats of force," *see* 18 U.S.C. § 248(a)(1), requiring at least *reckless mens rea*. *Counterman*, 141 S. Ct. at 2140-41 (Barrett, J., dissenting).

his way. *United States v. Scott*, 958 F. Supp. 761, 775 (D. Conn. 1997).[12] This, too, was a classic finding of recklessness.

Yet another district court has recognized that a federal law with materially identical "force" language prohibits even reckless force—i.e., a federal authorization for civil actions based on conspiracies "to deter, by force, intimidation, or threat, any party or witness" in court from attending or testifying, which the court held can be violated by "reckless indifference" and "serious disregard" for plaintiffs' rights, sufficient to authorize punitive damages. *Odum v. Rayonier, Inc.*, No. CIV.A CV204-190, 2005 WL 3440817, at *5 (S.D. Ga. Dec. 14, 2005) (citing 42 U.S.C. § 1985(2)), *aff'd*, 316 F. App'x 855 (11th Cir. 2008).

These cases confirm what FACE's text makes clear: that a FACE "force" violation can include an intentional act of force in reckless disregard for others' safety, which is not a "crime of violence" under *Borden*.

---

[12] Defendants do not concede that making contact with an escort outside a clinic involves the requisite motive to obstruct reproductive services "in a . . . facility," 18 U.S.C. § 248(a)(1), (e), but this case is an illustrative application of the "force" clause.

## C. Defendants do not dispute that FACE requires *general* intent.

Respectfully, the Concurrence focused on the *mens rea* involved in the *actus reus* itself (general intent), while Defendants' argument focuses on FACE's alternative *mens rea* requirements with respect to the *harmful consequences* of the *actus reus* (specific intent). The Concurrence noted that all crimes presumptively involve intentional actions, so Defendants are allegedly wrong that FACE prohibits reckless force. But that does not address Defendants' argument, which is that crime-of-violence "force" requires a *specific intent to harm another* according to *Borden*, yet a FACE "force" violation expressly does not require such a specific intent.

As Justice Kavanaugh observed in his *Borden* dissent, the issue is whether "recklessness *with respect to the consequences of [intentionally] using force*" is a crime of violence. *Borden*, 141 S. Ct. at 1844. The majority held that it is not, even while the underlying act must be volitional and intentional. *Id.* at 1830; *see also Voisine*, 579 U.S. at 694 (noting that force must be volitional and thus would not include "stumbling and falling into" another).

Also contrary to the Concurrence, Defendants are *not* arguing from *negative inference* that because FACE prohibits acting with a specific intent to "interfere with" another, its lack of a specified *mens rea* for using force somehow allows a conviction for less-than-volitional force. (Cir. Or. at 2, Katsas, J., concurring). *Rather*, Defendants contend that because FACE prohibits using force with a specific intent of "*interfer[ing] with*" another, *in the explicit alternative to "injur[ing]" another*, it expressly prohibits using force without "consciously desir[ing]" or knowingly seeking to harm another. *Borden*, 141 S. Ct. at 1823-24, 1830.

Indeed, there is no mutual exclusivity between an intentional *actus reus* and a reckless *mens rea* with respect to resulting harm. *See Voisine*, 579 U.S. at 689 (holding that a misdemeanor crime of domestic violence requires a "knowing or intentional application of force" yet also includes "reckless domestic assault," i.e., conduct that "consciously disregards a substantial risk that the conduct will cause harm to another") (cleaned up); *see also, e.g.*, *United States v. Grady*, 746 F.3d 846, 848-49 (7th Cir. 2014) (federal arson statute prohibiting "maliciously damag[ing] or destroy[ing]" another's property by fire or

explosive includes acting "with deliberate disregard of the likelihood that damage or injury *will result*") (emphasis added).[13]

The same is true under FACE, which prohibits intentional use of force with a specific intent to "interfere with" another in reckless disregard for consequent harm, *in the alternative to* a specific intent to "injure[]" another. Accordingly, a misdemeanor FACE "force" conviction is not categorically a crime of violence.

## IV. Defendants' "Physical Obstruction" Convictions are also not Crimes of Violence.

Furthermore, misdemeanor "physical obstruction" is not a "crime of violence" because it can necessarily include even "nonviolent physical obstruction," 18 U.S.C. § 248(b)(2), even when paired with a FACE "force" violation.

The District Court found that because Defendants were not convicted of "*exclusively* nonviolent physical obstruction" under § 248(b)(2) (which carries lower penalties), their convictions for physical

---

[13] For this reason the First Circuit has held that federal arson is *not* a crime of violence. *United States v. Tsarnaev*, 968 F.3d 24, 99-103 (1st Cir. 2020), *rev'd on other grnds*, 142 S. Ct. 1024 (2022).

obstruction under subsection (b)(1) necessarily involved "*violent physical obstruction.*" (Dist. Ct. Or. at 3.) That is not true.

Subsection (b)(2) provides lower penalties only for "*exclusively nonviolent physical obstruction.*" That does not mean that all other physical-obstruction violations must be violent, but merely that even *nonviolent* physical obstruction will be subject to heightened penalties when it is not a defendant's *exclusive* offense. Thus, a conviction under subsection (b)(2) is broad enough to include an offense committed by *both* "force" (which sweeps too broadly for the reasons discussed above) *and non-violent physical obstruction* (which by its own terms sweeps too broadly). Thus, a misdemeanor FACE "physical obstruction" conviction does not "always require," *Taylor*, 142 S. Ct. at 2020, the jury to find "violent" physical obstruction—either because it is an "exclusively nonviolent physical obstruction" under subsection (b)(2), or because one can commit nonviolent physical obstruction along with force or threat of force under subsection (b)(1).

For example, a defendant could be convicted under § 248(b)(1) for using force to enter a clinic (with intent to injure *or* interfere with another), and then kneeling in front a "rarely used" and "generally

locked" clinic door and thus (allegedly) obstructing clinic access nonviolently. *See* 18 U.S.C. § 248(e)(4) (defining physical obstruction to render ingress or egress to the facility impassable or unreasonably difficult or hazardous); *Mahoney*, 247 F.3d at 284 (holding that nonviolently kneeling in front of clinic's generally locked emergency exit door was physical obstruction under FACE).

Accordingly, here the jury did not *necessarily* have to find violent physical obstruction to convict Defendants of engaging in both force and physical obstruction. *See Mathis*, 579 U.S. at 526 (crime of violence enhancement "may be based only on what a jury 'necessarily found' to convict a defendant"). Thus Defendants' "physical obstruction" convictions are also not crimes of violence.

## V. Defendants are Entitled to Release Under § 3143(a)(1) Because They are not Flight Risks or a Danger to Others.

Under § 3143(a)(1), courts "*shall* order the release of the" Defendants where it finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." (Emphasis added). But Defendants were on pre-trial release since their arrest in March 2022. (*See, e.g.,* D.D.C. Minute Entry of March 30,

2022). Defendants have never posed any flight risk or threat of danger to others or the community during that time—otherwise, they would not have been eligible for such release. *See* 18 U.S.C. § 3142(b) (authorizing pre-trial release unless a judicial officer determines there would be a flight risk or a danger to others).

The Government did not disagree with this position in opposing Defendant Handy's prior motion for release pending disposition of this appeal. (No. 23-3143, Doc. 2016523, Br. at 23.) Accordingly, Defendants should be released pending sentencing under § 3143(a)(1).

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's order detaining Defendants before sentencing.

Respectfully submitted,

/s/Stephen M. Crampton
Stephen M. Crampton
Martin A. Cannon (Application for Admission Pending)
THOMAS MORE SOCIETY
P.O. Box 4506
Tupelo, MS 38803
(662) 255-9439
scrampton@thomasmoresociety.org
mcannon@thomasmoresociety.org

/s/_____
Dennis E. Boyle, Esquire Boyle &
Jasari
1050 Connecticut Ave, NW Suite 500
Washington, DC 20036
dboyle@boylejasari.com
Telephone: (202) 798-7600

*Counsel for Lauren Handy and Jean
Marshall*

/s/_____
Howard J Walsh , III
3712 Cardiff Court
Chevy Chase, MD 20815
301-602-8721
Fax: 301-576-7900
Email: hwalshesq@gmail.com

*Counsel for William Goodman*

/s/_____
John C. Kiyonaga
JOHN C. KIYONAGA LAW OFFICE
600 Cameron Street
Alexandria, VA 22314
(703) 739-0009
Fax: (703) 549-2988
Email: jkiyonaga@earthlink.net

*Counsel for Herb Geraghty*

/s/_____
Christopher M. Davis
Davis & Davis
1350 Connecticut Ave., NW
Suite 202

Washington, DC 20036
Work  (202) 234-7300 Ext. 101
Cell    (202) 487-6980
Fax    (202) 830-0056
DavisLawDC.com

*Counsel for Jonathan Darnel*


## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and this Court's Rule 32(e), I hereby certify that this memorandum complies with the applicable type volume limitations. This memorandum was prepared using a proportionally spaced type (Century Schoolbook, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and this Court's Rule 32(e)(1), this brief contains 5,172 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word 2010) used to prepare this memorandum.

/s/Stephen M. Crampton
Stephen M. Crampto