IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LAUREN HANDY, *et al.*,

Defendants-Appellants

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

UNITED STATES' MEMORANDUM OF LAW AND FACT

———————————

MATTHEW M. GRAVES
 United States Attorney

JOHN CRABB JR.
 Assistant United States Attorney
 United States Attorney's Office
  District of Columbia
 601 D Street NW
 Washington, D.C. 20001
 (202) 252-1794

KRISTEN CLARKE
 Assistant Attorney General

ERIN H. FLYNN
JASON LEE
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C. 20044-4403
 (202) 598-1317

*(see inside cover for co-counsel)*

*(continuation of counsel)*

        SANJAY H. PATEL
        Trial Attorney
        Department of Justice
        Civil Rights Division
        Criminal Section
        4 Constitution Square
        150 M Street NE, 7.121
        Washington, D.C.  20002
        (202) 307-6188

# D.C. CIRCUIT RULE 26.1(b) DISCLOSURE STATEMENT

There was no organizational victim of the alleged criminal activity.

s/ Jason Lee
JASON LEE
  Attorney

Date:  October 12, 2023

# TABLE OF CONTENTS

PAGE

D.C. CIRCUIT RULE 26.1(b) DISCLOSURE STATEMENT

STATEMENT OF JURISDICTION ................................................................ 1

STATEMENT OF THE ISSUE .................................................................. 2

STATUTORY BACKGROUND .................................................................. 2

    *1.*   *The Bail Reform Act* ........................................................... 2

    *2.*   *The Freedom Of Access To Clinic Entrances Act (FACE Act)* ............ 3

STATEMENT OF THE CASE .................................................................. 4

SUMMARY OF ARGUMENT ............................................................... 10

ARGUMENT

    DEFENDANTS' OFFENSE OF CONVICTION CATEGORICALLY
    CONSTITUTES A CRIME OF VIOLENCE ............................................. 11

    *A.*   *Standard Of Review* ......................................................... 11

    *B.*   *The Modified Categorical Approach Applies Here* ........................ 12

    *C.*   *Defendants' Offense Is A "Crime Of Violence" Under The
        Bail Reform Act, Thus Requiring Mandatory Detention* .................. 14

    *D.*   *Defendants Misread The Supreme Court's Decision In*
        Borden *And Misunderstand The FACE Act* ............................... 17

    *E.*   *Defendants Identify No Error In The District Court's Finding
        That The Exception To Presentence Detention Is Inapplicable* ......... 23

CONCLUSION ........................................................................... 24

**TABLE OF CONTENTS (continued):**

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **PAGE**

*Borden* v. *United States*, 141 S. Ct. 1817 (2021) ..................................11-12, 18-21

*Johnson* v. *United States*, 559 U.S. 133 (2010).................................................. 13-16

*Khan* v. *Obama*, 655 F.3d 20 (D.C. Cir. 2011) ........................................ 11

*Mathis* v. *United States*, 579 U.S. 500 (2016) ................................................7, 12-13

*Stokeling* v. *United States*, 139 S. Ct. 544 (2019) ............................................ 15-17

*Students for Fair Admissions, Inc.* v. *President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023)............................................................... 21

*United States* v. *Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022) ...................................... 20

*United States* v. *Kepler*, 74 F.4th 1292 (10th Cir. 2023)........................................ 19

*United States* v. *Khatallah*, 41 F.4th 608 (D.C. Cir. 2022), cert. denied, 143 S. Ct. 2667 (2023)............................................................. 20

*United States* v. *Lassiter*, 1 F.4th 25 (D.C. Cir. 2021) ......................................... 20

*United States* v. *Lung'aho*, 72 F.4th 845 (8th Cir. 2023) ....................................... 19

*United States* v. *Mahoney*, 247 F.3d 279 (D.C. Cir. 2001) .............................. 22-23

*United States* v. *Smith*, 79 F.3d 1208 (D.C. Cir. 1996) .......................................... 11

*Voisine* v. *United States*, 579 U.S. 686 (2016) ...................................................... 21

**STATUTES:**

Armed Career Criminal Act
        18 U.S.C. 924(e) ...................................................................... 19
        18 U.S.C. 924(e)(2)(B)(i) ................................................................ 15, 19

**STATUTES (continued):**            **PAGE**

Bail Reform Act
18 U.S.C. 3142(f)(1)(A) ............................................................ 2, 6
18 U.S.C. 3142(f)(1)(B) ............................................................... 2
18 U.S.C. 3142(f)(1)(C) ............................................................... 2
18 U.S.C. 3143(a)(1) ............................................................ 7, 24
18 U.S.C. 3143(a)(2) .................................................... 2, 6-8, 10
18 U.S.C. 3143(a)(2)(A) ................................................ 3, 6, 11, 23
18 U.S.C. 3143(a)(2)(B) ................................................... 3, 11, 23
18 U.S.C. 3145(c) ....................................................................... 2
18 U.S.C. 3156(a)(2) ................................................................... 2
18 U.S.C. 3156(a)(4)(A) ..................................... 2, 6, 15-16, 22

Freedom of Access to Clinic Entrances Act
18 U.S.C. 248(a) ...................................................................... 13
18 U.S.C. 248(a)(1) ................................ 2-7, 10-11, 13-18, 21-23
18 U.S.C. 248(b) ............................................... 3- 4, 6, 13-14
18 U.S.C. 248(b)(1) ........................................................ 3, 7-8, 14
18 U.S.C. 248(c)(1) ..................................................................... 4
18 U.S.C. 248(e)(2) ................................................................... 17
18 U.S.C. 248(e)(3) ................................................................... 17
18 U.S.C. 248(e)(4) ................................................................... 22

18 U.S.C. 2 ................................................................................. 4

18 U.S.C. 241 ............................................................................. 4

18 U.S.C. 3231 ........................................................................... 1

28 U.S.C. 1291 ........................................................................... 2

**RULE:**

Fed. R. App. P. 9(a)(3) ............................................................... 9

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————

Nos. 23-3143, 23-3146, 23-3147, 23-3156, 23-3158

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LAUREN HANDY, *et al.*,

Defendants-Appellants

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————

UNITED STATES' MEMORANDUM OF LAW AND FACT

————————

## STATEMENT OF JURISDICTION

Five defendants appeal the district court's orders detaining them pending

sentencing. The district court had subject matter jurisdiction under 18 U.S.C. 3231

because defendants were charged with committing federal criminal offenses. In a

Minute Order entered on August 29, 2023—which the court declined to reconsider

in a written opinion issued on August 31, 2023—the court ordered defendants

detained pending sentencing. When other defendants tried separately were

convicted on September 15, 2023, the court similarly ordered them detained. All

defendants-appellants filed timely notices of appeal.  This Court has jurisdiction under 18 U.S.C. 3145(c) and 28 U.S.C. 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly concluded that defendants' offense of conviction under 18 U.S.C. 248(a)(1) categorically constitutes a "crime of violence" under the Bail Reform Act.

## STATUTORY BACKGROUND

*1.    The Bail Reform Act*

At 18 U.S.C. 3143(a)(2), the Bail Reform Act requires the detention of a defendant who is "awaiting imposition or execution of sentence" when the individual has been "found guilty of an offense in a case described in" 18 U.S.C. 3142(f)(1)(A), (B), or (C).  18 U.S.C. 3143(a)(2).  Among the offenses listed in those subparagraphs is "a crime of violence."  18 U.S.C. 3142(f)(1)(A).  The Bail Reform Act defines "crime of violence" to include "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. 3156(a)(4)(A).  An "offense" under the Act encompasses both felonies and misdemeanors.  18 U.S.C. 3156(a)(2).

The Bail Reform Act provides one exception to its requirement of detaining, post-conviction and pre-sentencing, individuals convicted of a crime of violence.

The exception applies if (1) the court finds that "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or the government has "recommended that no sentence of imprisonment be imposed on the person," and (2) the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."  18 U.S.C. 3143(a)(2)(A) and (B).

2.  *The Freedom Of Access To Clinic Entrances Act (FACE Act)*

At 18 U.S.C. 248(a)(1), the FACE Act states that:

[w]hoever--

(1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services

\* \* \*

shall be subject to the penalties provided in subsection (b)[.]

At subsection (b)(1), the FACE Act instructs that "in the case of a first offense," a defendant convicted under subsection (a)(1) shall be "imprisoned not more than one year."  18 U.S.C. 248(b)(1).  A lesser term of imprisonment of "not more than six months" applies "for an offense involving exclusively a nonviolent physical obstruction."  18 U.S.C. 248(b).  Felony terms of imprisonment apply to second or subsequent offenses (punishable by up to three years' imprisonment),

offenses where "bodily injury results" (punishable by up to ten years'
imprisonment), and offenses where "death results" (punishable for any term of
years or for life).  18 U.S.C. 248(b).

## STATEMENT OF THE CASE

1.  On March 24, 2022, a federal grand jury returned a two-count
indictment against nine defendants.  Doc. 1.[1]  A tenth defendant was added later
by superseding indictment.  Doc. 113.  The indictment charged defendants with
violating 18 U.S.C. 241 by conspiring to injure, oppress, threaten, or intimidate
individuals in the free exercise of a federal statutory right, *i.e.*, the right to
obtain and seek to obtain, and to provide and seek to provide, reproductive
health services, as guaranteed in 18 U.S.C. 248(c)(1).  See Doc. 113, at 2-7.
The indictment further charged defendants with violating the FACE Act, at 18
U.S.C. 248(a)(1), by using "force and physical obstruction" to intentionally
injure, intimidate, and interfere with a patient of a reproductive health services
clinic for obtaining reproductive health services, and with employees of the
clinic for providing such services.  Doc. 113, at 7 (also charging defendants in
Count 2 with aiding-and-abetting under 18 U.S.C. 2).

---

[1]  "Doc. __, at __" refers to the docket entry and page number of documents
filed on the district court's docket.  "A. __" refers to the addendum to this
memorandum and page number.  "Br. __" refers to appellants' corrected opening
brief and page number.

2.  The case proceeded to trial against five defendants on August 15, 2023.  1:22cr96 Minute entry (D.D.C. Aug. 15, 2023).  Following the close of evidence, the court instructed the jury on both counts.  As relevant here, the court told the jury that, to convict on Count 2, the government had to prove beyond a reasonable doubt that the defendant:

(1) "used force or physical obstruction";

(2) "intentionally injured, intimidated, or interfered with [the patient of the clinic] or the employees of the [clinic], or attempted to do so"; and

(3) "did so because [the patient] was obtaining or the [clinic] was providing reproductive health services."

A. 38.

The court defined "force" as "power and/or violence exerted upon or against a person or property."  A. 38.  It explained that "intimidate means to place a person in reasonable expectation of bodily harm to themselves or another," and "interfere means to restrict a person's freedom of movement."  A. 39.

The court also provided the jury with a special verdict form through which it would specify, in the event of a conviction, whether it found that the defendant used either force or physical obstruction, or both, in violating Section 248(a)(1).  Doc. 413.  The court provided the special verdict form in response to

a government motion, which explained that such findings were necessary to determine the applicable penalty under 18 U.S.C. 248(b), given that a lesser statutory maximum applies where a defendant violates the FACE Act exclusively through nonviolent physical obstruction. See Doc. 363; see also 18 U.S.C. 248(b).

After deliberating for two days (1:22cr96 Minute entries (D.D.C. Aug. 25, 29, 2023)), the jury found all defendants guilty on both counts (Doc. 397, at 1). Using the special verdict form, the jury further found that each defendant violated the FACE Act by force and by physical obstruction. See Doc. 397, at 1; Doc. 413.

3. Upon conviction, the district court ordered the five defendants detained pending sentencing. The court held that mandatory detention applied under 18 U.S.C. 3143(a)(2), by reference to 18 U.S.C. 3142(f)(1)(A), because the defendants' FACE Act offense under Section 248(a)(1) constitutes a "crime of violence" under the Bail Reform Act. 1:22cr96 Minute entry (D.D.C. Aug. 29, 2023). Specifically, the court found that the offense categorically "has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. 3156(a)(4)(A). 1:22cr96 Minute entry (D.D.C. Aug. 29, 2023). Additionally, consistent with the required inquiry under 18 U.S.C. 3143(a)(2)(A), the court found that "no

substantial likelihood [existed] that a motion for acquittal or new trial w[ould] be granted," and that the prosecution intended to "recommend a term of incarceration as to each Defendant."  1:22cr96 Minute entry (D.D.C. Aug. 29, 2023).

Two defendants filed emergency motions for reconsideration, arguing that their presentence detention was "governed under the more lenient provisions of 18 U.S.C. § 3143(a)(1), not those of § 3143(a)(2)" because a conviction under Section 248(a)(1) "is not categorically a 'crime of violence.'"  Doc. 387, at 1 (emphasis omitted); see also Doc. 389.  The government opposed the motion (Doc. 395), which the district court treated as joined by all five defendants (1:22cr96 Minute entry (D.D.C. Aug. 30, 2023)), and one defendant filed a reply (Doc. 396).

The district court denied the motion in a written order.  Doc. 397.  The court examined the elements of the FACE Act's offenses and the Act's punishment scheme, and it concluded that "the FACE Act is 'divisible'" because "it defines 'multiple crimes' based on punishment."  Doc. 397, at 2 (quoting *Mathis* v. *United States*, 579 U.S. 500, 518 (2016)).  As relevant here, the court determined that one of the Act's penalty provisions—specifically, 18 U.S.C. 248(b)(1)—applies to conduct that involves "violent physical obstruction, force, or threat of force," and where such action is proven,

"provides for a year of imprisonment." Doc. 397, at 2. The court concluded that "[a]ll" violations of this subsection "are necessarily crimes of violence" because they have, as an element of the offense, the use, attempted use, or threatened use of physical force against the person or property of another. Doc. 397, at 3. In contrast, a lesser misdemeanor penalty applies when a defendant violates the Act through exclusively nonviolent physical obstruction. Doc. 397, at 2.

Next, the district court reviewed case materials, including the indictment, jury instructions, and special verdict form, "to determine of which sub-offense a defendant was convicted and * * * whether that sub-offense is a crime of violence." Doc. 397, at 3. Based on the jury's special finding that the five defendants had acted by "force"—and not through exclusively nonviolent physical obstruction—the court concluded that they had been convicted of the "more serious misdemeanor" in Section 248(b)(1). Doc. 397, at 3. Thus, because the jury had "convicted each Defendant of a crime of violence," the court confirmed that mandatory detention applied under 18 U.S.C. 3143(a)(2) and denied the defendants' motion. Doc. 397, at 3-4.

Three of those five defendants (Lauren Handy, Herb Geraghty, and William Goodman) appealed the district court's detention order. Docs. 398, 403, 405. This Court consolidated their appeals. Sept. 8, 2023, Order.

4.  Trial as to three additional defendants commenced on September 8, 2023.  See 1:22cr96 Minute entry (D.D.C. Sept. 8, 2023); see also Doc. 104, at 3 (setting separate trials for two groups of defendants).  Following the close of evidence, the district court gave the jury materially identical instructions on Count 2 and again provided a special verdict form.  A. 144-145; Doc. 427.  The jury convicted all defendants on both counts and further found that they each violated the FACE Act by force and by physical obstruction.  Doc. 427.

As in the prior proceedings, the district court held that defendants' FACE Act conviction constituted a crime of violence.  1:22cr96 Minute entry (D.D.C. Sept. 15, 2023).  The court determined there was no likelihood that a motion for acquittal or new trial would be granted, and that the government would seek a term of incarceration for each defendant, and it therefore ordered defendants detained pending sentencing.  1:22cr96 Minute entry (D.D.C. Sept. 15, 2023).

Two defendants (Jean Marshall and Jonathan Darnel) appealed the district court's detention order.  Docs. 433, 437.  This Court consolidated their appeals with those filed by the other three defendants.  Sept. 27, 2023, Order.

5.  While her appeal was pending, defendant Handy sought emergency relief under Federal Rule of Appellate Procedure 9(a)(3).  See Sept. 5, 2023, Def.-App. Lauren Handy's Mot. for Release Pending Sentencing.  In the motion, Handy argued that her offense of conviction is not categorically a crime of

violence because Section 248(a)(1) prohibits "even the reckless use of force" and therefore does not require force "directed at or intended to harm another." Sept. 5, 2023, Def.-App. Lauren Handy's Mot. for Release Pending Sentencing 14-17.

This Court denied the motion in a per curiam order because Handy did not show that immediate relief was warranted. Sept. 22, 2023, Order. Judge Katsas wrote a concurring opinion, in which he found Handy "unlikely to succeed on her claim that the FACE Act permits convictions for the reckless use of force." Sept. 22, 2023, Order 2. He also sua sponte raised "whether the FACE Act's element of 'force' sweeps more broadly than the 'physical force' required for a crime of violence" to the extent it incorporates "the common-law definition of 'force,'" which "encompasses even the 'slightest offensive touching.'" Sept. 22, 2023, Order 2 (citation omitted); see also Sept. 22, 2023, Order 3 (noting "Handy's failure to develop this argument").[2]

## SUMMARY OF ARGUMENT

The district court correctly ruled that defendants are subject to mandatory detention under 18 U.S.C. 3143(a)(2). As the court cogently explained, the FACE

---

[2] Of the remaining defendants, one defendant previously entered a guilty plea as to Count 1 (1:22cr96 Minute entry (D.D.C. Mar. 1, 2023)), and was sentenced to ten months' imprisonment (1:22cr96 Minute entry (D.D.C. Aug. 7, 2023)). The other defendant is scheduled for trial beginning October 23, 2023. See 1:22cr96 Minute entry (D.D.C. Sept. 1, 2023).

Act is divisible and creates separate misdemeanor offenses in Section 248(a)(1) that contain different elements and carry different punishments. The court thus appropriately applied a modified categorical approach in determining, based on the indictment and the jury's special verdict form, that defendants had been convicted of the more serious misdemeanor offense in Section 248(a)(1). Finally, the court rightly concluded that this offense categorically constitutes a crime of violence because it requires the use of physical force or threat of force. None of defendants' arguments, which misread the plurality and concurring opinions in *Borden* v. *United States*, 141 S. Ct. 1817 (2021), and misunderstand the FACE Act, demonstrates otherwise.

Consequently, because defendants were convicted of a crime of violence and cannot show that the district court erred in finding inapplicable the exception to presentence detention in 18 U.S.C. 3143(a)(2)(A) and (B), this Court should affirm.

## ARGUMENT

### DEFENDANTS' OFFENSE OF CONVICTION CATEGORICALLY CONSTITUTES A CRIME OF VIOLENCE

*A.     Standard Of Review*

This Court reviews the district court's legal conclusions de novo and its findings of fact for clear error. See, *e.g.*, *Khan* v. *Obama*, 655 F.3d 20, 25-26 (D.C. Cir. 2011); *United States* v. *Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

B.    *The Modified Categorical Approach Applies Here*

1.   Under the categorical approach for determining whether an offense is a crime of violence, a court "focus[es] solely on whether the elements of the crime of conviction sufficiently match" the crime-of-violence definition at issue.  *Mathis* v. *United States*, 579 U.S. 500, 504 (2016); see also *Borden* v. *United States*, 141 S. Ct. 1817, 1822 (2021) (plurality opinion) (observing that the categorical approach is "applicable in several statutory contexts").  Specifically, the elements of the crime of conviction must be "the same as, or narrower than, those of" a crime of violence (here, under the Bail Reform Act).  *Mathis*, 579 U.S. at 503.  If they are, then the crime for which the defendant was convicted is a "categorical[] match" for the offense.  *Borden*, 141 S. Ct. at 1822 (plurality opinion).

Courts apply a "modified categorical approach" when statutes "have a more complicated (sometimes called 'divisible') structure."  *Mathis*, 579 U.S. at 505 (citation omitted).  A statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes."  *Ibid.*  This can occur when the "statutory alternatives carry different punishments."  *Id.* at 518.

If a statute defines multiple, separate crimes, a court must "look[] to a limited class of documents  *  *  *  to determine what crime," among the statutory alternatives, "[the] defendant was convicted of."  *Mathis*, 579 U.S. at 505-506.  Such documents include a case's "charging documents" and the "jury instructions

and verdict forms" used. *Johnson* v. *United States*, 559 U.S. 133, 144 (2010).

After consulting such documents "to determine which statutory phrase was the

basis for the [defendant's] conviction," *ibid.*, the court does "as the categorical

approach commands" and conducts an elements-based analysis to decide whether

the defendant's crime categorically qualifies as the relevant offense. *Mathis*, 579

U.S. at 506.

2. The district court correctly applied the modified categorical approach

here because, at 18 U.S.C. 248(a) and (b), the FACE Act sets forth multiple,

alternative crimes that carry different punishments. Among other things, the Act

makes it unlawful for any person to

> by force or threat of force or by physical obstruction, intentionally
> injure[], intimidate[] or interfere[] with or attempt[] to injure,
> intimidate or interfere with any person because that person is or has
> been, or in order to intimidate such person or any other person or any
> class of persons from, obtaining or providing reproductive health
> services.

18 U.S.C. 248(a)(1).

Next, in Section 248(b), the Act imposes different penalties for violent and

nonviolent misdemeanor violations of Section 248(a)(1). Where a defendant uses

"exclusively a nonviolent physical obstruction" to violate the Act, the term of

imprisonment for a first-time offense may "be not more than six months." 18

U.S.C. 248(b). For all other misdemeanor violations of Section 248(a)(1)—

namely, where a person violates the statute "by force or threat of force or by

physical obstruction"—the term of imprisonment for a first-time offense may not be "more than one year." 18 U.S.C. 248(b)(1). In still other circumstances, the Act sets forth statutory alternatives that, when proven beyond a reasonable doubt, amount to felony offenses with different statutory maximum sentences. See 18 U.S.C. 248(b).

Moreover, as the district court aptly concluded, because the statute contains a specific offense for *exclusively nonviolent* physical obstruction and imposes a less severe punishment, the more serious misdemeanor in Section 248(a)(1) with its harsher punishment must be read to apply to conduct that is violent— specifically, conduct that includes force or threat of force, or use of violent physical obstruction that itself involves force or threat of force. See Doc. 397, at 3; see also pp. 16-17, *infra*.

C.    *Defendants' Offense Is A "Crime Of Violence" Under The Bail Reform Act, Thus Requiring Mandatory Detention*

Applying the modified categorical approach, the district court correctly determined that defendants were convicted of "[t]he more serious misdemeanor" in Section 248(a)(1), and this offense "necessarily" constitutes a crime of violence under the Bail Reform Act. Doc. 397, at 3.

1. The record establishes that defendants were charged with and convicted of the more serious misdemeanor offense in Section 248. See *Johnson*, 559 U.S. at 144 (summarizing the documents a court can consider under the modified

categorical approach). As the district court discussed, the superseding indictment alleged that defendants violated Section 248 "by [using] force"—and in the alternative, by using "physical obstruction"—to "intentionally injure, intimidate, and interfere with" a patient and employees of the clinic. Doc. 113, at 7; see also Doc. 397, at 3. And using the special verdict form the court had prepared, the jury made a "special finding" that "each Defendant used force to prevent access to or provision of reproductive health services at the clinic at issue." Doc. 397, at 1; see also Docs. 413, 427.[3]

2. The more serious Section 248(a)(1) misdemeanor offense for which defendants were convicted categorically qualifies as a crime of violence. As discussed, a crime of violence under the Bail Reform Act is "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. 3156(a)(4)(A). In *Johnson*, the Supreme Court explained that "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis omitted) (construing the Armed Career Criminal Act (ACCA) at 18 U.S.C. 924(e)(2)(B)(i)); see also *Stokeling* v. *United States*, 139 S. Ct. 544, 550-554 (2019) (explaining that "force" has a well-

_____

[3] The jury found that "Defendants also used physical obstruction" in violating Section 248. Doc. 397, at 1; see also Docs. 413, 427.

understood meaning and *Johnson* "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality"). Later, in *Stokeling*, the Court rejected a claim that "minor uses of force do not constitute 'violent force,'" holding that "force is 'capable of causing physical injury' within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance." 139 S. Ct. at 554.

The elements of Section 248(a)(1)'s more serious misdemeanor offense satisfy the definition of a crime of violence. The provision requires a defendant to undertake one of three types of conduct (force, threat of force, or violent physical obstruction) to intentionally or attempt to injure, intimidate, or interfere with a person because they are or have been obtaining or providing reproductive health services. See 18 U.S.C. 248(a)(1). The first two types of conduct mentioned (force or threat of force) expressly fall within the definition of a crime of violence. See 18 U.S.C. 3156(a)(4)(A) (requiring "the use * * * or threatened use of physical force"). Accordingly, they categorically qualify as such an offense.[4]

The third type of conduct in Section 248(a)(1)'s more serious misdemeanor offense (violent physical obstruction) does so, as well, because it necessarily

---

[4] The United States agrees with defendants (Br. 14 & n.8) that Section 248(a)(1) requires force that is "capable of causing physical pain or injury to another person," *Johnson*, 559 U.S. at 140, and does not encompass "the slightest offensive touching," Sept. 22, 2023, Order 2 (Katsas, J., concurring) (citation omitted).

includes force or threat of force. This is clear based on the effect (intentional or attempted injury, intimidation, or interference) that such conduct must have had under the Act. Violent physical obstruction that actually injures a person clearly entails force, and it therefore constitutes a crime of violence. Violent physical obstruction that intimidates a person does so, too, because it involves a threat of force to place an individual "in reasonable apprehension of *bodily harm*" to themselves or another. 18 U.S.C. 248(e)(3) (defining "intimidate") (emphasis added). And unlike nonviolent physical obstruction (which can intentionally interfere with a person's receipt or provision of services by impeding access to a facility without conduct capable of producing pain or physical injury), *violent* physical obstruction that interferes with a person qualifies as a crime of violence because it involves the threat or "potentiality" of force, *Stokeling*, 139 S. Ct. at 554, to "restrict [the] person's freedom of movement," 18 U.S.C. 248(e)(2) (defining "interfere with").

D. *Defendants Misread The Supreme Court's Decision In* Borden *And Misunderstand The FACE Act*

Much of this analysis is uncontested. Defendants do not challenge the district court's application of the modified categorical approach based on its finding that the FACE Act creates separate misdemeanor offenses in 18 U.S.C. 248(a)(1). See Br. 11-13. And they do not quarrel with the court's conclusion that

they were convicted of Section 248(a)(1)'s more serious misdemeanor. See Br. 11-13, 24-26.

Instead, defendants offer two arguments why Section 248(a)(1)'s more serious misdemeanor sweeps more broadly than the Bail Reform Act's definition of a "crime of violence." Both arguments fail.

1. Defendants primarily argue that Section 248(a)(1)'s more serious misdemeanor is not a crime of violence because conviction is possible where a defendant lacked any "specific intent to harm another." Br. 22 (emphasis omitted). Defendants argue that, under the plurality and concurring opinions in *Borden*, a crime of violence requires that a defendant have used force with "the specific intent of harming another." Br. 13-14 (emphasis omitted); see also Br. 8, 18-19, 23. They further argue that Section 248(a)(1)'s more serious misdemeanor lacks such a specific-intent requirement because a "violation can include an intentional act of force in reckless disregard for others' safety." Br. 21; see also Br. 22. For example, a FACE Act defendant might intentionally use force "to 'interfere with' another in reckless disregard for consequent harm." Br. 24.

Defendants' argument fails at its premise because *Borden* did not import into the definition of a crime of violence a requirement that the defendant harbor a specific intent to harm. In *Borden*, the Court considered ACCA's imposition of an enhanced sentence for persons convicted of illegally possessing a gun if they "have

three or more prior convictions for a 'violent felony.'" 141 S. Ct. at 1821 (plurality opinion) (quoting 18 U.S.C. 924(e)). Under ACCA and like the Bail Reform Act provision here, "[a]n offense qualifies as a violent felony * * * if it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* at 1822 (plurality opinion) (quoting 18 U.S.C. 924(e)(2)(B)(i)). A plurality of the Court concluded that the statute's use of "[t]he phrase 'against another,' when modifying the 'use of force'" requires "purposeful or knowing conduct" and does not reach merely reckless uses of force. 141 S. Ct. at 1825, 1828. Justice Thomas concurred, agreeing that recklessness falls outside ACCA's definition of a violent felony but explaining that he would resolve the question on the phrase "use of physical force." *Id.* at 1835.[5]

In arguing that a crime of violence under the Bail Reform Act requires a specific intent to harm, defendants invoke two out-of-context quotes from *Borden*'s plurality opinion and one from Justice Thomas's concurring opinion. None supports defendants' conclusion.

Defendants most heavily rely on the plurality's reference to "a deliberate choice of wreaking harm on another." *Borden*, 141 S. Ct. at 1830; see also Br. 15,

---

[5] The courts of appeals uniformly treat *Borden*'s plurality opinion as controlling. See *United States* v. *Kepler*, 74 F.4th 1292, 1302 n.11 (10th Cir. 2023) (collecting cases); see also *United States* v. *Lung'aho*, 72 F.4th 845, 851 n.3 (8th Cir. 2023).

19.  But this language neither adopts nor references any specific-intent requirement.  Rather, the plurality was simply contrasting "purposeful [and] knowing mental state[s]," which can involve "a deliberate choice of wreaking harm on another," with recklessness, which entails "mere indifference to risk." *Borden*, 141 S. Ct. at 1830.  The same is true of the other quote defendants invoke. See Br. 16.  There, the plurality used similar language to draw an analogous contrast between mental states, noting that "[a] person who injures another knowingly  *  *  *  makes a deliberate choice with full awareness of the consequent harm," while recklessness "involve[s] insufficient concern with a risk of injury." *Id.* at 1823-1824.

Context thus makes clear that the plurality referenced harm and injury simply to illustrate why the statute requires purposeful or knowing (as opposed to reckless) conduct—specifically, only purposeful and knowing actions are "target[ed]" in the way the statutory text demands.  See *Borden*, 141 S. Ct. at 1825. The plurality did not, as defendants suggest, introduce a new specific-intent requirement for crimes of violence.  And this Court's post-*Borden* decisions mention no such requirement.  See, *e.g.*, *United States* v. *Khatallah*, 41 F.4th 608, 631 (D.C. Cir. 2022), cert. denied, 143 S. Ct. 2667 (2023); *United States* v. *Jenkins*, 50 F.4th 1185, 1194 (D.C. Cir. 2022); *United States* v. *Lassiter*, 1 F.4th 25, 27 (D.C. Cir. 2021).  Nor do defendants cite any case law evincing their view.

Defendants' citations (Br. 15-16) to Justice Thomas's concurrence are even less fruitful. Relying on his earlier dissent in *Voisine* v. *United States*, 579 U.S. 686 (2016), Justice Thomas concluded in *Borden* that reckless conduct falls outside ACCA's definition of a violent felony because the phrase "use of physical force" has "a well-understood meaning applying only to intentional acts designed to cause harm." 141 S. Ct. at 1835 (quoting *Voisine*, 579 U.S. at 713 (Thomas, J., dissenting)). He reasoned, however, in *Voisine* that "[w]hen a person acts with a practical certainty that he will employ force, *he intends to cause harm*" because "he has actively employed force for an instrumental purpose." 579 U.S. at 710 (Thomas, J., dissenting) (emphasis added); see also *id.* at 704-705 (explaining that a person acts with practical certainty when they act intentionally or knowingly). Thus, even under Justice Thomas's approach, a requirement of a specific intent to harm another person would be satisfied where the statute requires an intentional use of force, which defendants agree is the case here. See Br. 17 (explaining that Section 248(a)(1) requires "a volitional, i.e. intentional act of 'force'" (emphasis and citation omitted)); see also Br. 22 ("not disput[ing]" Judge Katsas's conclusion in his concurrence that Section 248(a)(1) requires an intentional use of force).[6]

---

[6] Defendants also cite Justice Kavanaugh's dissent in *Borden*. Br. 10, 18 n.10, 22. But a dissent "is generally not the best source of legal advice on how to comply with" a controlling opinion. *Students for Fair Admissions, Inc.* v. *President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023).

2.  Defendants are similarly wrong in arguing that Section 248(a)(1)'s more serious misdemeanor is not a crime of violence because conviction is possible where an individual engages in "nonviolent physical obstruction" and "pair[s] [it] with" either "force or threat of force."  Br. 24-25.  Indeed, this argument *confirms* that the offense categorically is a crime of violence:  either the offender engages in violent physical obstruction, which itself involves force or threat of force (a point that defendants do not dispute), or the offender engages in nonviolent physical obstruction and accompanies it with force or threat of force.  In both instances, force or threat of force is present, thus bringing the conduct within the definition of a crime of violence.

Nor does defendants' hypothetical help their cause.  Defendants discuss an individual who "us[es] force to enter a clinic (with intent to injure or interfere with another)" and then "kneel[s] in front [of] a 'rarely used' and 'generally locked' clinic door," which "obstruct[s] clinic access nonviolently."  Br. 25-26 (quoting *United States* v. *Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001) and citing 18 U.S.C. 248(e)(4)).  Under the Bail Reform Act, a crime of violence includes offenses that entail the "use of physical force against the person or property of another."  18 U.S.C. 3156(a)(4)(A).  Thus, regardless of whether the individual in defendants' hypothetical used force against a person (for instance, by shoving past a clinic employee) or the clinic's property (for example, by prying open a door) to intrude

upon the premises for their intended purpose, the conduct still falls within the definition of a crime of violence. Moreover, this Court's decision in *Mahoney*, from which defendants draw part of their hypothetical, lends no support to their argument because the case involved no "us[e] [of] force to enter a clinic" (Br. 25) and did not address the types of conduct covered by Section 248(a)(1)'s more serious misdemeanor offense. See *Mahoney*, 247 F.3d at 281-284.

E.  *Defendants Identify No Error In The District Court's Finding That The Exception To Presentence Detention Is Inapplicable*

As discussed, the Bail Reform Act generally requires presentence detention when an individual has been convicted of a crime of violence. The exception is where (1) the court finds that "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or the government has "recommended that no sentence of imprisonment be imposed on the person," and (2) the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. 3143(a)(2)(A) and (B). Defendants (Br. 26-27) neither challenge the district court's conclusion that they failed to demonstrate any "substantial likelihood of success on any post-trial motion," nor refute the court's finding that the government "w[ill] seek a term of incarceration at sentencing." Doc. 397, at 1; see also A. 174. Consequently, the exception does not apply here.

If, however, this Court were to disagree with the government's position, it should remand for further proceedings under 18 U.S.C. 3143(a)(1) for the district court to address the terms and conditions of release under the Bail Reform Act.

## CONCLUSION

The district court's detention orders should be affirmed.

Respectfully submitted,

MATTHEW M. GRAVES
  United States Attorney

KRISTEN CLARKE
  Assistant Attorney General

JOHN CRABB JR.
  Assistant United States Attorney
  United States Attorney's Office
   District of Columbia
  601 D Street NW
  Washington, D.C.  20001
  (202) 252-1794

s/ Jason Lee
ERIN H. FLYNN
JASON LEE
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-1317

SANJAY H. PATEL
  Trial Attorney
  Department of Justice
  Civil Rights Division
  Criminal Section
  4 Constitution Square
  150 M Street NE, 7.121
  Washington, D.C.  20002
  (202) 307-6188

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Federal Rule of Appellate Procedure 32(g), that the attached UNITED STATES' MEMORANDUM OF LAW AND FACT:

(1) complies with the length limits permitted by D.C. Circuit Rule 9 and Federal Rule of Appellate Procedure 27(d)(1)-(2) because the response contains 5191 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1); and

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

s/ Jason Lee
JASON LEE
Attorney

Date: October 12, 2023

# ADDENDUM

# TABLE OF CONTENTS

**PAGE**

Transcript of Jury Trial
   Aug. 25, 2023......................................................................................... A-1

Transcript of Jury Trial
   Sept. 15, 2023 .................................................................................. A-111

1    **UNITED STATES DISTRICT COURT**
     **FOR THE DISTRICT OF COLUMBIA**

2    _____

3    United States of America,      ) Criminal Action
                                     ) No. 1:22-cr-00096-CKK
4                     Plaintiff,     )
                                     )
5    vs.                             ) **Jury Trial**
                                     )
6    Lauren Handy, John Hinshaw,     )
     Heather Idoni, William          )
7    Goodman, and Herb Geraghty,     ) Washington, D.C.
                                     ) **August 25, 2023**
8                     Defendants.    ) Time:  9:00 a.m.

9    _____

10              **Transcript of Jury Trial**
                   **Held Before**
           **The Honorable Colleen Kollar-Kotelly**
11           **United States Senior District Judge**

12                  A P P E A R A N C E S

13

     For the Government:      **John Crabb, Jr.**
14                            UNITED STATES ATTORNEY'S OFFICE
                              FOR THE DISTRICT OF COLUMBIA
15                            601 D Street, Northwest
                              Washington, D.C. 20579

16
                              **Sanjay H. Patel**
17                            UNITED STATES DEPARTMENT OF JUSTICE
                              950 Pennsylvania Avenue, Northwest
18                            Washington, D.C. 20004

19   For the Defendant Lauren Handy (1):

20                            **Martin A. Cannon**
                              THOMAS MORE SOCIETY
21                            16983 370th Street
                              Carson, Iowa 51525-4121

22
                              **Stephen M. Crampton**
23                            THOMAS MORE SOCIETY
                              P.O. Box 4506
24                            Tupelo, Mississippi

25

```
 1              A P P E A R A N C E S (continued)

 2    For the Defendant John Hinshaw (6):
                          Alfred Guillaume, III
 3                        LAW OFFICES OF ALFRED GUILLAUME III, LLC
                          1350 Connecticut Avenue, Northwest
 4                        Washington, D.C. 20036

 5    For the Defendant Heather Idoni (7):
                          Robert J. Dunn
 6                        ROBERT J. DUNN, P.C.
                          1413 Center Avenue
 7                        Bay City, Michigan 48708

 8    For the Defendant William Goodman (8):
                          Howard J. Walsh, III
 9                        3712 Cardiff Court
                          Chevy Chase, Maryland 20815
10
      For the Defendant Herb Geraghty (10):
11                        John C. Kiyonaga
                          JOHN C. KIYONAGA LAW OFFICE
12                        600 Cameron Street
                          Alexandria, Virginia 22314
13    _____

14    Stenographic Official Court Reporter:
                          Nancy J. Meyer
15                        Registered Diplomate Reporter
                          Certified Realtime Reporter
16                        333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
17                        202-354-3118

18    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
19

20

21

22

23

24

25
```

**<u>I N D E X</u>**

<u>PAGE</u>:

Jury Instructions.................................... 14

1  P R O C E E D I N G S

2  (Proceedings held out of the presence of the jury.)

3  THE COURTROOM DEPUTY:  Criminal Case 22-096, the

4  United States v. Lauren Handy, John Hinshaw, Heather Idoni,

5  William Goodman, Herb Geraghty.

6  Counsel, would you please identify yourself for the

7  record, starting with the government.

8  MR. CRABB:  Good morning, Your Honor.  John Crabb and

9  Sanjay Patel for the United States.

10  THE COURT:  Good morning.

11  Counsel for Ms. Handy.

12  MR. CANNON:  Good morning.  Martin Cannon,

13  Steve Crampton with Lauren Handy.  Dennis Boyle and

14  Blerina Jasari are not present.

15  THE COURT:  All right.  Thank you.

16  For Mr. Hinshaw.

17  MR. GUILLAUME:  Good morning, Your Honor.  Alfred

18  Guillaume for John Hinshaw, who is seated to my left.

19  THE COURT:  All right.  Good morning to both of you.

20  Counsel for Ms. Idoni.

21  MR. DUNN:  Good morning, Your Honor.  Robert Dunn

22  appearing for Heather Idoni, who is present in the courtroom.

23  THE COURT:  All right.  For Mr. Goodman.

24  MR. WALSH:  Good morning, Your Honor.  Howard Walsh

25  with Mr. Goodman.

```
 1              THE COURT:  All right.  And for Mr. Geraghty.

 2              MR. KIYONAGA:  Good morning, Your Honor.  John

 3      Kiyonaga for Mr. Geraghty, who is present.

 4              THE COURT:  All right.  Good morning, everyone.

 5          So to start the day, we have a note from one of the

 6      jurors, which I'll read into the record.  It's from Juror

 7      No. 15.  "Good day, Your Honor.

 8          "Day 3 of clinic procedure was mentioned several times

 9      re two patient witnesses.  . . . seeking clarity re clinic

10      procedure and the discomfort/pain these patients seem to be

11      experiencing" -- and there's an arrow -- "what happens on Day

12      1, 2, 3???  Thank you!"  And then the -- signed 15.

13          My suggestion for answering it is, the record does not

14      reflect specifics about the clinical procedures that the two

15      witnesses received at the clinic according to the testimony --

16      at the clinic.  The record is closed.  Remember, your

17      recollection of the record controls.

18          I think there's not much to say about it.  We certainly

19      wouldn't answer it.

20              MR. CANNON:  I think that's appropriate, Judge.

21              MR. DUNN:  That's the way I think it should be

22      handled, Judge.

23              THE COURT:  Okay.  All right.  So what -- what I'm

24      planning on doing is -- I'm not going to answer it now.  I'm

25      going to do all the -- read the instructions, and then we have
```

1   a choice of reading the question at the end in the record and

2   giving the answer or sending the note back with a typewritten

3   answer for the whole jury instead of their hearing it orally.

4            MR. CANNON:  Judge, I was distracted for a second.  I

5   don't --

6            THE COURT:  Sure.  I'm going to read the whole

7   instruc- -- I'm not going to deal with the question upfront.

8   I'm going to read the instructions, then say we have a question

9   and -- she's not one the alternates -- so we have a question

10  from one of the jurors, and I can either read her question to

11  the whole jury and give them the answer, because it shouldn't

12  be just to her; it should be for everybody.  Or I can send the

13  question back, along with a typewritten answer for them.

14           So it's your -- I don't know whether people have views

15  about it.  Either way, you know, works.

16           MR. CRABB:  We'd defer to the Court, Your Honor.

17           THE COURT:  I'm sorry?

18           MR. CRABB:  We'd defer to the Court.

19           MR. CANNON:  I think my gut says send the typewritten

20  answer back.

21           THE COURT:  Okay.  I can do that.  That's not a

22  problem.  I can just indicate at the end we did get a question

23  from one of the jurors.  I'm sending the question back, along

24  with an answer.  And we'll just -- it's a short thing.  We can

25  type it up.

```
1          Okay.  I think that's it.
2          What I will do before we let the alternates go is to
3    bring you up -- not bring you up.  Do the intercom, make sure
4    there's nothing additional.  You know, sometimes there's some
5    issue or something's forgotten, you know, whatever.
6          You've preserved the record so you don't need to raise
7    what you already have.  We already have that on the record.  So
8    this would be something new.  You know, occasionally there's
9    something we haven't thought of that needs to be clarified or
10   something of that nature.  So I'd want to do that before I let
11   the alternates know.  I would ask once they leave and start, go
12   into the back, we need to deal with the thumb drive in terms of
13   what they're going to get so that they can look at the videos.
14   I think there's no paper exhibits, as I recall.  It's all --
15   it's all video, I think.
16              MR. CANNON:  Right.  And the thumb --
17              THE COURT:  Yeah.  So we just need to make the thumb
18   drive -- everybody agrees that what's on it is what got
19   admitted.
20              MR. CANNON:  Okay.
21              MR. CRABB:  Your Honor, there's several exhibits
22   that are not video.  There's the appointment card and there's
23   some social media.  So there are a few things that are not
24   videos.
25              THE COURT:  Okay.  Then what I'll have you do --
```

1 they'll go back, get themselves settled, talk about the

2 foreperson.

3   You will look at the evidence and sign off that this is

4 the evidence that's going back.  We want to make sure everybody

5 agrees with what we're sending back.  So it will be whatever

6 the paper exhibits are and then whatever thumb drives there are

7 relating to, you know, what actually got admitted.

8    MR. CRABB:  Yes, Your Honor.

9    THE COURT:  Okay?

10   And then we will find out where you're going to be in

11 terms of making sure that if we get notes or something else.  I

12 don't have anything else today, so if you want to hang out in

13 the courtroom, we can open up the witness rooms, if that's

14 easier for people.

15   If you're not too far, I don't have a problem, as long

16 as when we call, you're there and I don't get voice mail or you

17 wind up having to be in the courthouse, and then you're going

18 to be responsible for your clients.

19    MR. CRABB:  Along those lines, Your Honor, how soon

20 do we need to be back in court once we get word of a note?

21    THE COURT:  As soon as you can.  They're not --

22 once -- what I will do, I'll say upfront, some of the notes

23 will be -- we need paper or, you know -- they're not asking

24 anything that's substantive.  I keep track of all those notes,

25 and I'll read them into the record at the end.

1    But if there's anything that they're asking, anything

2    that's substantive -- what I can do is if -- you know, is call

3    you and ask if we can send something back that says, I can't

4    comment.  You don't need to all come back to the court to do

5    that.  If it's something more substantive, then you need to

6    come back.  Okay?  So unless it's, you know, I need pencils or

7    when are we eating lunch or something like that, I won't bother

8    calling you.

9    If it's anything other than that, then I'll contact you

10   and either have you come back or, you know, as I said,

11   sometimes they ask us to comment -- God bless you -- on

12   something that, you know, I'm not going to comment.  I could

13   just send it back.  But I'll consult you.  I'm not going to

14   send that note back without talking to you.

15                MR. CRABB:  Thank you.

16                THE COURT:  We need to know where you are.  They have

17   lunch from 12:30 to 1:30.  You need to come back at the end of

18   the day when I excuse them.  That's when we get notes and

19   that's when we get verdicts occasionally.  I don't need you in

20   the mornings when they first come in.  We do keep track of

21   their -- time that they're back there, and I've asked -- I

22   asked the foreperson -- which I'll be telling them -- to keep

23   track of when they take breaks, which is fine.  I don't have a

24   problem with that.

25                But if they could just, you know, note when they've

1    taken a break; that they're not, you know, deliberating.  So we

2    have some sense of, roughly, how long they're deliberating.

3              MR. CRABB:  Thank you, Your Honor.

4              THE COURT:  Mr. Cannon.

5              MR. CANNON:  So we do things a little bit differently

6    in Nebraska.  I want to make sure I get this right.  Can I

7    assume the jury will not be deliberating over the weekend.

8              THE COURT:  No.  They will leave at 5 o'clock.  We

9    have people here who have daycare issues.  They have told us.

10   So I promised them 5:00 promptly they're gone -- or just before

11   that.  So I will bring them back, say, at a quarter to 5:00.

12   And I want you-all back here.

13             And if we haven't gotten a note or something else, then,

14   you know, they'll be excused.  But I want you here because

15   every once in a while we do get a note or a verdict or

16   something that happens at the end of the day.

17             MR. CANNON:  Okay.  And then they won't be

18   deliberating Monday?

19             THE COURT:  They -- I'm not going to have them

20   deliberate.  Two people have made -- one's made a doctor's

21   appointment and somebody else has something else.  So if they

22   decide among themselves they want to, they'll let me know.

23   I've had a jury recently that wanted to sit until 6:00 to get

24   things done.  So I go by what they say.  I don't think they're

25   going to do it beyond 5:00.

1        And Monday -- I mean, I'm here.  I'm doing other

2   matters, but I don't want to make -- since we promised the

3   two -- you know, everybody that they would do it, they can go

4   do something else, and then come back on Tuesday.

5        MR. CANNON:  Some of our attorneys and I are trying

6   to coordinate travel plans over the weekend --

7        THE COURT:  I know.  I prefer you did not leave so I

8   don't have a problem where I can't get you back for a verdict

9   or a note, or your client.

10       So you're all from out of town.  You need to hang out so

11  you're here.

12       MR. CANNON:  If one of us can get back and the other

13  can't, is that adequate?

14       THE COURT:  I mean, in terms of your group?

15       MR. CANNON:  Yeah.

16       THE COURT:  Yeah.  I mean, you don't all need to be

17  here, but -- because she has several.  Somebody else has a

18  single one pretty much.  As long as that person is responsible

19  and the client is willing to have that person answer notes and

20  the verdict.

21       MR. CANNON:  Sure.  As far as when a verdict comes

22  back, do you care which of our attorneys appears for it?

23       THE COURT:  No.  No.  As long as Ms. Handy is happy

24  with whoever is here.

25       MR. CANNON:  Sure.

1       THE COURT:  In other words, if she wants you,

2  Mr. Cannon, then I expect you to be here.  The others don't

3  need to.

4       MR. CANNON:  Right.

5       THE COURT:  But I don't want you -- my concern is

6  that -- Mr. Dunn had trouble getting here.  Ms. Idoni did as

7  well.  I don't want to that have issue.

8       MR. CANNON:  Right.  Thanks.

9       THE COURT:  Travel plans, frankly, are -- if you look

10  at the map and what they're canceling, I mean, they're

11  canceling things right and left based on the weather.  I'm

12  not -- I don't want to get stuck where we can't take verdicts.

13       MR. CANNON:  Right.  Thanks.

14       THE COURT:  And then you can't let the jury go.

15       MR. CANNON:  Okay.

16       MR. CRAMPTON:  Your Honor, will we have clarity

17  regarding whether the jury will deliberate on Monday by the end

18  of day today?

19       THE COURT:  Yes.  What -- what I was going to do is

20  just, you know -- I don't want to force the people that have

21  made plans to change it because they will be annoyed.

22       So -- you know, my feeling is that I was going to say to

23  them -- you know, later in the day, we'll see where they are --

24  is to say, unless they tell me otherwise, I'm assuming that --

25  you know, that they would -- that people have made arrangements

1    for Monday and, therefore, they are not sitting.  If they --

2    they'll speak up if they've decided to the contrary.  They may

3    decide they want to -- you know, near the end of day, they may

4    feel they just need a little more.  They'll come in on Monday.

5    I don't know when his doctor's appointment is, for instance.

6              MR. KIYONAGA:  Your Honor, John Kiyonaga for

7    Mr. Geraghty.

8              Your Honor, my office is in Alexandria, which is

9    20 minutes away, unless we're talking about the end of the day,

10   rush hour.

11             THE COURT:  Well, I need you at the end of the day.

12   And what I would do is -- you can check in -- you know, people

13   will be here.  I get notes before they go -- before lunch and

14   after lunch, frankly.  So they're eating lunch around 12:30.

15   1:30 is the end of their break.  So we need to make sure we

16   know where you are; you're not at a restaurant someplace.

17             Other than that, you know, it's -- I don't want to spend

18   a lot of time because if they're -- we get notes and they need

19   an answer, you know, waiting half an hour for them to get the

20   answer.  So it's up to you as to whether -- you may want to

21   hang out for the day and sort of see how this works, whether

22   we're going to get -- usually you either get a lot of notes or

23   you don't; you just get whatever the verdict is, has been my

24   experience.

25             So we'll either find out if they're a note- -- you know,

1     note-senders -- maybe they are, based on this -- or not.

2          MR. KIYONAGA: Very well, ma'am. I'll give

3     Ms. Patterson my cell phone because I --

4          THE COURT: Yeah. And I want to make sure it doesn't

5     go to voice mail. If it goes to voice mail, you have to be in

6     the courthouse the whole time. That's my rule. I'm not

7     looking for you. I have other stuff that we need to do.

8          MR. KIYONAGA: No, I'm reachable at any time on cell.

9          THE COURT: Okay. All right.

10          MR. KIYONAGA: Thank you.

11          THE COURT: So I don't want you-all disappearing.

12     You need to be here, you know, in some form.

13      Okay. I'll go over some of this before, but I just

14     wanted to, you know, cover a little bit of it. I'll indicate

15     at the beginning to the juror that we did receive a note and it

16     will be answered at the end so she's not waiting to hear what

17     the answer is.

18          (Proceedings held in the presence of the jury.)

19          THE COURT: Good morning, members of the jury.

20      I would like to address those that are in the courtroom.

21     The instructions, I want to make sure that they can hear it and

22     are not distracted by people going in and out. So all we're

23     going to talk about is instructions. If you don't want to stay

24     for them, this is the time to leave. I would ask, otherwise,

25     that you -- if you want to stay, that's fine. I don't have a

1    problem with it.  I just don't want people going in and out.

2    The heads tend to switch because you make noise.

3         We did get a question from one of the jurors, and I'm

4    going to answer the question after I've given you all of the

5    instructions.  Okay?

6         So -- and let me tell you, you don't have to take notes.

7    You're going to get a copy of the instructions; in fact, two

8    sets of the instructions that I'm going to give you.  If you

9    want to note, you know, something you want to go back to

10   particularly, that's fine, but you will get copies of this so

11   you can look at them yourself.  So this will give you an

12   opportunity to hear what the instructions are so you know

13   what's in this in terms of going back and making sure you know.

14   And then you'll have actually written copies so you'll be able

15   to go back and look carefully at them.

16        So, the time has now come when all of the evidence is in

17   and you've heard the closing arguments of the lawyers.  It's

18   now up to me to instruct you on the law that should control

19   your deliberations in this case.  My instructions will be

20   roughly divided into three parts.

21        First, I'll talk with you about some general principles

22   of the law.

23        And some of that you will have heard already.

24        Second, I'll discuss with you instructions that apply to

25   the elements of the offenses charged in this case.

1          Finally, I will have some closing remarks about your

2    deliberations in this matter.

3          So let me begin with some general principles.  First,

4    I'm sure you understand by now that the jury and the Court --

5    that's you and I -- have quite different responsibilities in a

6    trial.

7          My function is to conduct the trial in an orderly, fair,

8    and efficient manner; to rule on questions of law; and to

9    instruct you on the law that applies in this case.

10          It is your duty to accept the law as I instruct you.

11    You should consider all the instructions as a whole.  You may

12    not ignore or refuse to follow any of them.  If counsel or a

13    witness has stated the law differently than the Court, my

14    instructions of the law controls.  So if during closings you

15    remember them saying something different, this is what's

16    controlling, what I'm telling you.

17          Now, in terms of functions of the jury, your function,

18    as the jury, is to determine what the facts are in this case.

19    You are the sole judges of the facts.  While it's my

20    responsibility to decide what is admitted as evidence during

21    the trial, you alone decide what weight, if any, to give to

22    that evidence.  You alone decide the credibility or

23    believability of the witnesses.

24          As human beings, we all have personal likes and

25    dislikes, opinions, prejudices, and biases.  Generally, we are

1   aware of these things, but you should also consider the

2   possibility that you have implicit biases; that is, biases of

3   which you may not be consciously aware.

4         Personal prejudices, preferences, or biases have no

5   place in a courtroom where our goal is to arrive at a just and

6   impartial verdict.  All people deserve fair treatment in our

7   system of justice regardless of any personal characteristic,

8   such as race, national or ethnic origin, religion, age,

9   disability, sex, gender identity or expression, sexual

10  orientation, education, or income level.  You should determine

11  the facts solely from a fair consideration of the evidence.

12  You should decide the case without prejudice, fear, sympathy,

13  favoritism, or consideration of public opinion.  You may decide

14  the case only based on the law and the facts before you.

15        Moreover, you are not to be concerned with the wisdom of

16  any law or rule of law as I state them.  Nor should you be

17  concerned with your opinion, good, bad, or neutral, of the

18  defendants' advocacy or the services the clinic in this case

19  provided at the time of the charged conduct.  It would be a

20  violation of your sworn duty to base a verdict upon any other

21  view of the law than that given in the instructions of the

22  Court, just as it would be a violation of your sworn duty, as

23  judges of the facts, to base a verdict upon anything but the

24  evidence in the case.

25        You may not take anything I may have said or done as

1    indicating how I think you should decide this case.  If you

2    believe that I have expressed or indicated any such opinion, it

3    was unintentional and you should ignore it.  I try and develop

4    no opinions at all.  The verdict in this case is your sole and

5    exclusive responsibility.

6         Now, if any reference by me or the attorneys to the

7    evidence -- and I'm talking about the evidence -- is different

8    from your own memory of the evidence, it's your memory that

9    should control during your deliberations.

10        Now, the lawyers in this case sometimes objected when

11   the other side asked a question, made an argument, or offered

12   evidence that the objecting lawyer believed was not proper.

13   You must not hold such objections against the lawyer who made

14   them or the party they represent.  It is the lawyer's

15   responsibility to object to evidence that they believe is not

16   admissible.

17        If during the course of the trial I sustained an

18   objection to a lawyer's question, you should ignore the

19   question, and you mustn't speculate as to what the answer would

20   have been.  The question is not evidence.  If after a witness

21   answered a question, I ruled the answer should be stricken, you

22   should ignore both the question and the answer, and they should

23   play no part in your deliberations.

24        Again, questions are not evidence and simply because an

25   attorney may have proposed a fact to a witness in a question

1    does not mean that purported fact is true, or even if true, a

2    fact that you may consider.  You may only consider the

3    testimony and exhibits in evidence.

4         Now, during your deliberations you may consider only the

5    evidence properly admitted in this trial.  The evidence in this

6    case consists of the sworn testimony of witnesses and exhibits

7    that were admitted into evidence.

8         When you consider the evidence, you are permitted to

9    draw from the facts that you find have been proven such

10   reasonable inferences as you feel are justified in the light of

11   your experience.  You should give any evidence such weight as

12   in your judgment it's fairly entitled to receive.

13        Now, statements of counsel.  Statements and arguments of

14   the lawyers are important because they are intended to help you

15   understand the evidence and the contentions of the parties.

16   However, the statements and arguments of the lawyers are not

17   evidence.  They are only intended to assist you in

18   understanding the evidence.  Similarly, the questions of the

19   lawyers, again, are not evidence.

20        Moreover, occasionally during argument, a lawyer for one

21   side or the other may appear to state his belief or opinion

22   concerning the facts in the case or the credibility of

23   testimony.  A lawyer is not permitted to state his belief or

24   opinion during argument.  Nor may a lawyer state his belief or

25   opinion during an objection.  He is permitted only to argue to

1    you based on what the evidence in this case shows.  So if you
2    think a lawyer has expressed his personal belief or opinion
3    during argument, you must disregard any such expression and
4    judge the case only on the evidence.
5         Now, the burden of proof.  Every defendant in a criminal
6    case is presumed to be innocent.  This presumption of innocence
7    remains with the defendant throughout the trial unless and
8    until the government has proven he or she is guilty beyond a
9    reasonable doubt.  This burden never shifts throughout the
10   trial.  The law does not require any defendant to prove their
11   innocence or produce any evidence at all.
12        If you find that the government has proven beyond a
13   reasonable doubt every element of a particular offense with
14   which a defendant is charged, it's your duty to find that
15   defendant guilty of that offense.
16        On the other hand, if you find the government has failed
17   to prove any element of a particular offense beyond a
18   reasonable doubt, it's your duty to find one or more of the
19   defendants not guilty of that offense.
20        Now, reasonable doubt.  The government has the burden of
21   proving separately each defendant guilty beyond a reasonable
22   doubt as to each count or charge against them.  Some of you may
23   have served as jurors in civil cases where you were told that
24   it's only necessary to prove that a fact is more likely true
25   than not true, which we call the preponderance of the evidence.

1    In criminal cases, the government's proof must be more powerful

2    than that.  It must be beyond a reasonable doubt.

3         Proof beyond a reasonable doubt is proof that leaves you

4    firmly convinced of the defendants' guilt.  There are very few

5    things in this world that we know with absolute certainty, and

6    in criminal cases, the law does not require proof that

7    overcomes every possible doubt.  If based on your consideration

8    of the evidence you are firmly convinced that the defendant is

9    guilty of the crime charged, you must find him or her guilty.

10   If, on the other hand, you think there's a real possibility

11   that a defendant is not guilty, you must give him or her the

12   benefit of the doubt and find him or her not guilty.

13        Direct and circumstantial evidence.  There are two types

14   of evidence from which you may determine what the facts are in

15   this case.  There's direct evidence and there's circumstantial

16   evidence.  When a witness, such as an eyewitness, asserts

17   actual knowledge of a fact, that witness's testimony is direct

18   evidence.  On the other hand, evidence of facts and

19   circumstances from which reasonable inferences may be drawn is

20   circumstantial evidence.

21        So let me give you an example.  Assume a person looked

22   out a window and saw that snow was falling.  If he later

23   testified in court about what he had seen, his testimony would

24   be direct evidence that snow was falling at the time he saw it

25   happen.  Assume, however, that he looked out a window and saw

1   no snow on the ground and then went to sleep and saw snow on

2   the ground after he woke up.  His testimony about what he had

3   seen would be circumstantial evidence that it had snowed while

4   he was asleep.

5          The law says that both direct and circumstantial

6   evidence are acceptable as a means of proving a fact.  The law

7   does not favor one form of evidence over another.  It is for

8   you to decide how much weight to give to any particular

9   evidence, whether it's direct or circumstantial.  You are

10  permitted to give equal weight to both.  Circumstantial

11  evidence does not require a greater degree of certainty than

12  direct evidence.

13         In reaching a verdict in this case, you should consider

14  all the other evidence presented, both direct and

15  circumstantial.

16         Now, redacted exhibits.  In addition, during the course

17  of the trial, a number of exhibits admitted into evidence were

18  also redacted.  In other words, something was blacked out.

19  Sometimes only portions of an exhibit were admitted, such as a

20  document with some words blacked out or otherwise removed.

21  There are a variety of reasons why only a portion of an exhibit

22  is admitted, including that the other portions are inadmissible

23  or implicate an individual's privacy, in order to conform with

24  local rules of procedure.  As you examine these exhibits, you

25  should consider only the portions that were admitted in these

1    exhibits.  On the whole, you're to decide the facts only from
2    the evidence before you.  So don't speculate as to what's
3    underneath the blacked-out portion.
4         Now, credibility of witnesses.  In determining whether
5    the government has proved the charges against the defendant
6    beyond a reasonable doubt, you must consider the testimony of
7    all the witnesses who have testified.
8         You are the sole judges of the credibility of the
9    witnesses.  You alone determine whether to believe any witness
10   and the extent to which a witness should be believed.  Judging
11   a witness's credibility means evaluating whether the witness
12   has testified truthfully and also whether the witness
13   accurately observed, recalled, and described the matters about
14   which the witness testified.
15        You may consider anything that in your judgment affects
16   the credibility of any witness.  For example, you may consider
17   the demeanor and the behavior of the witness on the witness
18   stand; the witness's manner of testifying; whether the witness
19   impresses you as a truthful person; whether the witness
20   impresses you as having an accurate memory; whether the witness
21   has any reason for not telling the truth; whether the witness
22   had a full opportunity to observe the matters about which he or
23   she has testified; whether the witness has any interest in the
24   outcome of this case; stands to gain anything by testifying; or
25   has a friendship or hostility toward other people concerned

1    with this case.

2          In evaluating the accuracy of a witness's memory, you

3    may consider the circumstances surrounding the event, including

4    the time that elapsed between the event and any later

5    recollection of the events, and the circumstances under which

6    the witness was asked to recall details of the event.

7          You may consider whether there are any inconsistencies

8    in a witness's testimony.  You may also consider any

9    inconsistencies between the witness's testimony and any other

10   evidence that you credit.  You may consider whether any

11   inconsistencies are the result of lapses in memory, mistake,

12   misunderstanding, intentional falsehood, or differences in

13   perception.

14         You may consider the reasonableness or unreasonableness,

15   the probability or improbability of the testimony of a witness

16   in determining whether to accept it as true and accurate.  You

17   may consider whether the witness has been contradicted or

18   supported by other evidence that you credit.

19         If you believe that any witness has shown him- or

20   herself to be biased or prejudiced, for or against either side

21   in this trial, or motivated by self-interest, you may consider

22   and determine whether such bias or prejudice has colored the

23   testimony of the witness so as to affect the desire and

24   capability of that witness to tell the truth.

25         In sum, you should give the testimony of each witness

1    such weight as in your judgment it's fairly entitled to

2    receive.

3            Now, accomplice's testimony.  You've heard testimony

4    from government witness Caroline Davis.  The government is

5    permitted to use a witness who testifies that she participated

6    in the offense or offenses charged against the defendants;

7    although, the testimony of such a witness should be considered

8    with caution.  You should give her testimony as much weight as

9    in your judgment it deserves.

10           Now, you've also heard evidence that the same government

11   witness, Caroline Davis, entered into a plea agreement with the

12   government pursuant to which Ms. Davis agreed to testify

13   truthfully in this case, and the government agreed to bring

14   Ms. Davis's cooperation to the attention of her sentencing

15   judge in Michigan.

16           The government is permitted to enter into this kind of

17   plea agreement.  You, in turn, may accept the testimony of such

18   a witness and convict one or more of the defendants on the

19   basis of this testimony alone, if it convinces you of one or

20   more of the defendants' guilt beyond a reasonable doubt.  A

21   witness who has entered into a plea agreement is under the same

22   obligation to tell the truth as is any other witness; the plea

23   agreement does not protect her against a prosecution for

24   perjury or false statement should she lie under oath.

25           However, you may consider whether a witness who has

entered into such an agreement has an interest different from other types of witnesses. You may consider whether the plea agreement the witness entered into with the government has motivated her to testify falsely against the defendants. The testimony of a witness who has entered into a plea agreement should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

Now, law enforcement testimony. In this case, you heard testimony from an agent of the Federal Bureau of Investigation and several local police officers. A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because they are a law enforcement officer.

Now, evidence admitted for a limited purpose, and this is a hearsay instruction. Over the course of the trial, you've heard me sustain the parties' objections on the basis of something called hearsay. Hearsay statements are those made outside of this trial that are offered for the statement's truth. Although there are some exceptions to hearsay, this evidence is usually not admissible because it's less reliable.

When I sustain a hearsay objection, it is because I have concluded that the question for the witness asks for unreliable

1  hearsay.  When the statement is not offered for its truth but

2  instead for some other purpose -- for instance, what a person

3  believed to be true -- that statement is not hearsay, but it

4  still must not be considered to determine whether the statement

5  is true or not.

6       So as an example, take the following statement:  It

7  rained last night.  If a witness testified on the stand that

8  someone told the witness that it rained last night, that

9  statement that it rained last night is hearsay if the purpose

10  of presenting that statement for your consideration is to show

11  that it, in fact, rained last night.  Statements offered for

12  any other purpose, however, are not hearsay.  So, for example,

13  if the purpose of presenting that statement is to show that the

14  witness believed that it had rained the night prior, that

15  statement would not be hearsay.

16       During the course of Ms. Handy's direct examination,

17  you have heard her characterize certain videos and out-of-court

18  conversations about the clinic at issue along with research

19  she's done.  This testimony is hearsay when considered for

20  whether the statements in the video, for example, are true.

21       You are not to consider these assertions for their

22  truth.  For example, when Ms. Handy stated one of the videos

23  claims that the clinic performed a certain kind of abortion,

24  you may not consider Ms. Handy's testimony for whether or not

25  the clinic performed, in fact, any kind of abortion or another

1   -- any type of abortion or another.

2       You are to consider these statements only as to whether

3   you think Ms. Handy believed, rightly or wrongly, that, for

4   example, the clinic performed certain kinds of abortions.

5   Moreover, you are instructed that Ms. Handy's beliefs about the

6   clinic are irrelevant except to the extent that they bear on

7   what she intended to accomplish through her actions leading up

8   to and on October 22nd, 2020.

9       More generally, when I have instructed you that a

10  statement is admitted for a limited purpose, you must use the

11  statement for only that purpose.  You have heard or might hear

12  testimony about other statements that you are permitted to

13  accept for their truth or falsity.  The only limitations on

14  your use of any statements admitted as evidence are those

15  statements in my instructions, including this instruction.

16      Now, there was other acts -- evidence that were admitted

17  for a limited purpose.  So the defendants in this case are

18  charged with having committed specific acts leading up to and

19  on October 22nd, 2020.  The government has presented evidence

20  that one defendant, Ms. Handy, has committed acts other than

21  those charged in this case.  This evidence concerns Ms. Handy's

22  alleged conduct on or about November 16th, 2021, in Alexandria,

23  Virginia.  This evidence is offered to prove Ms. Handy's intent

24  and motive leading up to and on October 22nd, 2020.

25      The evidence is also offered to show whether or not

1  Ms. Handy conspired with others up to and on October 22, 2020.

2  The evidence is offered for these purposes only, and you may

3  not consider the evidence for any other purpose.  You must

4  decide whether you believe the government's evidence and

5  whether you find that it helps you decide whether Ms. Handy

6  committed the unlawful conduct charged in this case.  Your

7  responsibility is to decide whether the government proves

8  beyond a reasonable doubt the unlawful conduct charged in this

9  case.  This evidence, that I've just noted, is to be considered

10  as to Ms. Handy only.  Ms. Handy is on trial only for the acts

11  charged in the indictment and may not be held responsible in

12  this case for any other acts.

13  Moreover, the defendants in this case are charged with

14  having, again, committed specific acts leading up to and on

15  October 22nd, 2020.  So the government has presented evidence

16  that certain defendants, Ms. Handy and Mr. Goodman, have

17  committed acts other than those charged in this case.  This

18  evidence concerns Ms. Handy's alleged conduct on or about

19  January 30th, 2021, in Maryland, and Mr. Goodman's alleged

20  conduct on or about October 14th, 2020, in New Jersey.

21  This evidence is offered to prove Ms. Handy's and

22  Mr. Goodman's intent and motive leading up to and on

23  October 22nd, 2020.  The evidence is also offered to show

24  whether or not Ms. Handy and/or Mr. Goodman planned or

25  conspired with others leading up to and on October 22nd.

1    This evidence is offered for these purposes only, and
2    you may not consider the evidence for any other purpose.  You
3    must decide whether you believe the government's evidence and
4    whether you find that it helps you decide whether Ms. Handy
5    and/or Mr. Goodman committed the acts charged in this case.
6    Your responsibility is to decide whether the government proves
7    beyond a reasonable doubt the acts charged in this case.  The
8    defendants here are on trial only for those acts and may not be
9    held responsible in this case for any other acts.

10    Now, as I told you at the beginning, every defendant in
11    a criminal case has an absolute right not to testify.
12    Mr. Hinshaw and Mr. Goodman have each chosen to exercise this
13    right.  You must not hold this decision against either of them,
14    and it would be improper for you to speculate as to the reason
15    or reasons for each of the defendants' decisions.  And you must
16    not assume each defendant guilty because each chose not to
17    testify.

18    On the other hand, a defendant has a right to become a
19    witness in his or her own behalf.  Ms. Handy, Ms. Idoni, and
20    Mr. Geraghty have each chosen to exercise that right.  Their
21    testimony should not be disbelieved merely because he or she is
22    a defendant.  In evaluating their testimony, however, you may
23    consider the fact that each has an interest in the outcome of
24    this trial.  As with the testimony of any other witness, you
25    should give each defendant's testimony as much weight as in

1    your judgment it deserves.

2         Now, as I told you at the beginning, the indictment is

3    merely the formal way of accusing a person of a crime.  And you

4    must not consider the indictment as evidence of any kind.  You

5    may not consider it as any evidence of any defendant's guilt or

6    draw any inference of guilt from it.

7         Now, number of witnesses and exhibits.  The relative

8    weight of the evidence on a particular issue is not determined

9    by the number of exhibits or witnesses on either side.  It

10   depends on the quality and not on the quantity of the evidence.

11   It's up to you to decide whether to credit the testimony of a

12   smaller number of witnesses or a smaller number of exhibits on

13   one side or the testimony of a greater number of witnesses or a

14   greater number of exhibits on the other side.

15        Any uncalled witnesses.  It's peculiarly within the

16   power of either the government or the defense to produce a

17   witness who could give relevant testimony on an issue in the

18   case.  Failure to call that witness may give rise to an

19   inference that the testimony would have been unfavorable to

20   that party.  You may not draw such an inference in this case,

21   however, because all witnesses were equally available to both

22   parties and some testimony of some witnesses would have been

23   repetitive or cumulative.

24        Also, one of the questions you were asked when we were

25   selecting this jury was whether the nature of the charges

itself would affect your ability to reach a fair and impartial
verdict.  We asked you that question because you must not allow
the nature of a charge to affect your verdict, including the
government's decision as to which charges to bring.  You must
consider only the evidence that has been presented in this case
in reaching a fair and impartial verdict.

All right.  Let me talk now about the specific offenses
that are charged in the case.

So I'm going to start with an explanation of the charges
involving multiple defendants as we have in this case and
multiple counts as we have in this case.

Again, each count of the indictment charges a separate
offense.  Moreover, each defendant is entitled to have the
issue of his or her guilt as to each of the crimes for which he
or she is on trial determined from his own or her own conduct
and from the evidence that applies to him or her as if he or
she were being tried alone.  You should, therefore, consider
separately each offense and the evidence which applies to it,
and you should return separate verdicts as to each count of the
indictment, as well as to each defendant.

The fact that you may find any one defendant guilty or
not guilty on any one count of the indictment should not
influence your verdict with respect to any other count of the
indictment for that defendant.  Nor should it influence your
verdict with respect to any other defendant as to that count or

1    any other count in the indictment.

2         So you may find either of the defendants guilty or not

3    guilty on any one or more counts of the indictment, and you may

4    return different verdicts as to different defendants as to

5    different counts.  You're going to be provided a verdict form

6    to record your verdicts, and I will show you that verdict form

7    at the end and explain to you how that's to be used.

8         Now, this is Count 1, conspiracy against rights.

9         First, I'll explain to you the elements of the offense

10   of the conspiracy against rights.  It is against the law to

11   agree with someone to commit a crime.  That is called a

12   conspiracy.  More specifically, it is against the law to agree

13   with someone to injure, oppress, threaten, or intimidate any

14   person in the free exercise of any right or privilege secured

15   to him or her by the laws of the United States.

16        You are instructed that the laws of the United States

17   provide employees of a reproductive health clinic to provide

18   reproductive health services, including abortion, where

19   permitted by state law, without being unlawfully obstructed or

20   impeded.  You're instructed that the laws of the United States

21   provide patients seeking such services the same right.  And

22   I'll explain what I mean by obstructed or impeded later.

23        The indictment in this case charges the defendants with

24   conspiring and agreeing to injure, oppress, threaten, and/or

25   intimidate patients and employees of the Washington

Surgi-Clinic, a reproductive health clinic in the District of
Columbia.  To prove a conspiracy against rights, the government
must show the following three elements beyond a reasonable
doubt:

One, that two or more persons reached an agreement or
came to an understanding to injure, oppress, threaten, or
intimidate the patients and/or employees of the Washington
Surgi-Clinic.

Two, the defendant voluntarily and intentionally joined
in the agreement or understanding, either at the time it was
first reached or at some later time while the agreement or
understanding was ongoing.

And three, at the time that the defendant joined in the
agreement or understanding, the defendant intended to hinder,
interfere with, or prevent the patients and/or employees of the
Washington Surgi-Clinic in their right to obtain or seek to
obtain, or to provide or seek to provide, reproductive health
services permitted by state law.

As to the first element, the government must show that a
defendant joined the alleged conspiracy between on or about
October 7th, 2020, and on or about October 22nd, 2020.  This
doesn't have to be a formal agreement or plan in which everyone
involved sat down and worked out the details.

On the other hand, merely because people get together
and talk about common interests or other similar things does

1    not necessarily show that an agreement exists.  For this first

2    element, it's enough that the government prove beyond a

3    reasonable doubt that there was a common understanding among

4    those who were involved to injure, oppress, threaten, or

5    intimidate the patients and/or employees of the Washington

6    Surgi-Clinic.

7         As to the second element, the government must show that

8    a defendant voluntarily and intentionally joined in the alleged

9    agreement or understanding to disrupt patients and/or employees

10   of the Washington Surgi-Clinic.  It is not necessary to find

11   that a defendant -- defendant's agreement to all the --

12   defendant agreed to all the details of the alleged conspiracy

13   or knew the identity of all of the other people that the

14   government claims were participating in the agreement.

15        A person may become a member of a conspiracy even if

16   that person agrees to play only a minor role, as long as that

17   person understands the unlawful nature of the plan and

18   voluntarily and intentionally joins in it with the intent to

19   advance or further the unlawful object of the conspiracy.

20        The defendant, however, need not know that the object of

21   the conspiracy violated any particular law or any law at all.

22   Instead, the defendant must enter an agreement to perform acts

23   which are, in fact, illegal.  Even if a defendant is not part

24   of the agreement at every stage, he or she can become a member

25   of the conspiracy later, so long as the government proves

1    beyond a reasonable doubt that he or she intentionally joined

2    in the agreement.

3          That said, mere presence at the scene of the agreement

4    of the crime, or merely being with the other participants, does

5    not show that a defendant knowingly joined in the agreement.

6    Also, unknowingly acting in a way that helps the participant,

7    or merely knowing about the agreement itself without more does

8    not make a defendant part of the conspiracy.

9          Some of the people who may have been involved in the

10   conspiracy are not on trial -- in this trial.  That -- this

11   doesn't matter.  There's no requirement that all members of a

12   conspiracy be charged or prosecuted or tried together in one

13   proceeding.  Nor is there any requirement that the names of the

14   other conspirators be known.  An indictment can charge a

15   defendant with a conspiracy involving people whose names are

16   not known, as long as the government can prove that the

17   defendant conspired with one or more of them.

18         In determining whether conspiracy between two or more

19   persons existed and whether the defendant was one of its

20   members, you may consider the acts and the statements of any

21   other member of the conspiracy as evidence against all of the

22   defendants whether done in or out of his or her presence while

23   the conspiracy existed.  When persons enter into an agreement

24   to commit a crime, they become agents for each other so that

25   everything which is said or done by one of them in furtherance

of that purpose is deemed to be the act or statement of all who have joined in that conspiracy and is evidence against all of the conspirators. However, statements of any conspirator which are made before the conspiracy's existence or after its termination may be considered as evidence only against the person making such statements.

As to the third element, the government must show beyond a reasonable doubt that a defendant's purpose or intent in joining the conspiracy was to use force and physical obstruction to hinder, interfere with, or prevent the patients and/or -- and employees at the Washington Surgi-Clinic in their legal right to obtain or seek to obtain or to provide or seek to provide reproductive health services, including, but not necessarily limited to, abortion services.

The government need not show that any of the defendants actually succeeded in preventing any patient or employee of the Washington Surgi-Clinic from accessing any particular reproductive health services; merely, that a defendant conspired with another to do so. To meet this element, you need only find that the purpose of the conspiracy was to violate a right protected by the laws of the United States.

This element can be met even if the conspirators were also motivated by some other emotion or aim, so long as one purpose of the conspiracy was to deprive the Washington Surgi-Clinic's patients and/or employees from exercising the

1    statutory right to be free from the use of force, threats of

2    force, or physical obstruction to stop them from accessing

3    and/or providing one or more reproductive health services.

4         I believe one instruction has been left out, on or

5    before.  I'll get to that one in terms of the on or before.

6         Let me discuss Count No. 2, which is Freedom of Access

7    to Clinic Entrances, which we've been calling FACE.  Count 2

8    charges the defendants with obstructing access to a

9    reproductive health clinic.  The government must prove the

10   following elements beyond a reasonable doubt:

11        One, a defendant used force or physical obstruction.

12        Two, a defendant intentionally injured, intimidated, or

13   interfered with Ashley Jones or the employees of the Washington

14   Surgi-Clinic, or attempted to do so.

15        And three, a defendant did so because Ashley Jones was

16   obtaining or the Washington Surgi-Clinic was providing

17   reproductive health services.

18        As to the first element, the term force means power

19   and/or violence exerted upon or against a person or property.

20   The term physical obstruction means rendering impassable an

21   entrance to or an exit from a facility that provides

22   reproductive health services or rendering passage to or from

23   such a facility unreasonably difficult or hazardous.  A

24   defendant need not obstruct a particular person at a particular

25   time but, rather, need only obstruct an entrance to or exit

from a clinic with the specific intent to do so.

As to the second element, the term intimidate means to place a person in reasonable expectation of bodily harm to themselves or another.  The term interfere means -- to interfere -- let me -- okay.  I think I was at the point of -- let me just look here.

Okay.  Interfere.  Let me just make sure I've done this. As to the second element, the term intimidate means to place a person in reasonable expectation of bodily harm to themselves or another.  The term interfere means to restrict a person's freedom of movement.

As in the third element -- as to the third element, reproductive health services means reproductive health services provided in a hospital, clinic, physician's office, or other facility and includes medical, surgical, counseling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.

A provider of reproductive health services includes any staff member who is an integral part of the business where reproductive health services are provided.  You are instructed there is no law in the District of Columbia limiting the stage of pregnancy at which an abortion may be performed.

So long as Ashley Jones' status as a reproductive health services patient or the Washington Surgi-Clinic employees'

1   roles as reproductive health services providers was one cause

2   of the defendant's conduct, that is enough to satisfy the third

3   element.  Nor need either person's status be the sole reason

4   why the defendant took action against them, so long as either

5   the provision or receipt of reproductive health services was

6   one reason why the defendant took action against them.

7        Now, let me switch something here.  In the first

8   instruction about the conspiracy, I indicated on or about.  So

9   let me just instruct you about that.  The indictment claims

10  that the charged offense were committed on or about

11  October 7th, 2020, and October 22nd, 2020.  The proof need not

12  establish with certainty the exact date of each alleged

13  offense.  It is sufficient if the evidence in the case

14  establishes beyond a reasonable doubt that the offense was

15  committed on a date reasonably near the date alleged.

16       So let me move to -- all right.  This instructs you on

17  willfully causing an act to be done.  You may find a defendant

18  guilty of the crime charged in Count 2 without finding that

19  they personally committed each of the acts constituting the

20  offense or was personally present at the commission of the

21  offense.  A defendant is liable for an act which they willfully

22  cause to be done if the act would be criminal if performed by

23  them directly or by another.  And to cause an act to be done

24  means to bring it about.

25       You may convict one or more of the defendants of the

offense charged in Count 2 if you find that the government has

proven beyond a reasonable doubt each element of that offense

and that that defendant willfully caused such an act to be done

with the intent to commit the offense.

Now, let me instruct you on aiding and abetting. And I

would go by my instructions. There was some discussion in

closing about it. Please pay attention to my instruction.

A defendant may be found guilty on Count 2 of the

indictment even if the defendant did not personally commit the

acts constituting the offense but, nevertheless, aided and

abetted in the crime's commission. For a defendant to be

guilty of aiding and abetting on Count 2, the government must

show the following elements beyond a reasonable doubt:

One, the specific offense charged in Count 2 was

committed by someone.

Two, the defendant aided, counseled, commanded, induced,

or procured that person with respect to at least one element of

the offense charged in Count 2.

Three, the defendant acted with the intent to facilitate

the offense charged in Count 2.

And three [sic], the defendant acted before the offense

charged in Count 2 was completed.

It is not enough that the defendant merely associated

with the person committing the offense charged in Count 2 or

unknowingly or unintentionally did things that were helpful to

1   that person.  Rather, the evidence must show beyond a

2   reasonable doubt that the defendant acted with the knowledge

3   and intent of helping that person commit the offense charged in

4   Count 2.

5        A defendant acts with the intent to facilitate a crime

6   when the defendant actively participates in a criminal venture

7   with advance knowledge of the crime and having acquired that

8   knowledge when the defendant still had a realistic opportunity

9   to withdraw from the crime.  Advance knowledge means knowledge

10  at a time the person can attempt to alter the plan or withdraw

11  from the enterprise.

12       Knowledge may, but does not have to, exist before the

13  underlying crime has begun.  It's sufficient if the knowledge

14  gained in the midst of the underlying crime, as long as the

15  individual continues to participate in the crime and has a

16  realistic opportunity to withdraw.  You may, but not need to,

17  infer that the defendant had sufficient foreknowledge if you

18  find that the defendant continued his or her participation in

19  the crime after learning that it was being committed.

20       Now, co-conspirator liability.  This is another one that

21  was discussed by some in the closings.  I want you to pay

22  attention to my instruction as to the accuracy.

23       A member of a conspiracy who commits another crime

24  during the existence or life of a conspiracy and commits this

25  other crime in order to further or somehow advance the goals or

1   objectives of the conspiracy may be considered by you to be

2   acting as the agent of the other members of the conspiracy.

3   The illegal actions of this conspirator in committing this

4   crime may be attributed to other individuals who are then

5   members of the conspiracy.  Under certain conditions,

6   therefore, a defendant may be found guilty of this other crime

7   even though he or she did not participant directly in the acts

8   constituting that offense.

9       If you find that the government has proven a particular

10  defendant guilty of conspiracy beyond a reasonable doubt, as

11  charged in Count 1 of the indictment, you may also find that

12  defendant guilty of the crime alleged in Count 2 of the

13  indictment, provided you find that the elements of that count

14  as defined in these instructions have been established beyond a

15  reasonable doubt and provided further that you also find beyond

16  a reasonable doubt that -- and there's certain other elements.

17      One, the offense charged in Count 2 was committed by a

18  member of the conspiracy as detailed in Count 1 of the

19  indictment.

20      Two, the offense charged in Count 2 was committed during

21  the existence or life of and in furtherance of the goals or

22  objectives of the conspiracy detailed in Count 1 of the

23  indictment.

24      Three, the commission of the offense charged in Count 2

25  was reasonably foreseeable as a necessary or natural

1  consequence of the conspiracy detailed in Count 1 of the

2  indictment.  It is not necessary to find that the crime was

3  intended as part of the original plan, only that it was a

4  foreseeable consequence of the original plan.

5  And four, at the time that the offense charged in

6  Count 2 was committed, the particular defendant was a member of

7  the conspiracy detailed in Count 1 of the indictment.

8  Now, proof of state of mind.  Someone's intent or

9  knowledge ordinarily can't be proved directly.  There's no way

10  of knowing what a person is actually thinking, but you may

11  infer someone's intent or knowledge from the surrounding

12  circumstances.  You may consider any statement made or acts

13  done or omitted by any defendant and all other facts and

14  circumstances received in evidence which indicate their intent

15  or knowledge.

16  You may infer, but are not required to infer, that a

17  person intends the natural and probable consequences of acts he

18  or she did or intentionally did and not do -- did or

19  intentionally did not do.  It is entirely up to you, however,

20  to decide what facts to find from the evidence received during

21  this trial.  You should consider all the circumstances in

22  evidence that you think are relevant in determining whether the

23  government has proved beyond a reasonable doubt that any

24  defendant acted with the necessary state of mind.

25  Now, let me talk about your deliberations in this

1    matter.  So when you return to the jury room, you should first

2    select a foreperson to preside over your deliberations and to

3    be your spokesperson here in court.  Now, there are no specific

4    rules regarding how you select a foreperson.  That is up to

5    you.  However, as you go about the task, be mindful of your

6    mission, to reach a fair and just verdict based on the

7    evidence.  Consider selecting a foreperson who will be able to

8    facilitate your discussions, who can help you organize the

9    evidence, who will encourage civility and mutual respect among

10   all of you, who will invite each juror to speak up regarding

11   his or her views about the evidence, and who will promote a

12   full and fair consideration of that evidence.

13        Now, communications between me and the jury during your

14   deliberations.  If it becomes necessary during your

15   deliberations to communicate with me, you may send a note by

16   the clerk or there may be a court security person outside of

17   the jury office [sic], and it should be signed by your

18   foreperson or by one or more members of the jury.  No member of

19   the jury should try to communicate with me on the merits by

20   such a signed note -- except by such a signed note.  And I will

21   never communicate with any members of the jury, again, on any

22   matter concerning the merits of the case, except in writing or

23   orally here in open court.

24        Bear in mind that you're never, under any circumstances,

25   to reveal to any person -- not the clerk, not the CSO, the

1    marshal, or me -- how jurors are voting until after you have

2    reached a unanimous verdict, and then you indicate that.  This

3    means that you should never tell me in writing or in open court

4    how the jury is divided on any matter -- for example, you

5    indicate you're divided 6 to 6, 7 to 5, 11 to 1, or in any

6    other fashion -- whether the vote is for conviction or

7    acquittal or on any other issue in the case.  In other words,

8    you should never indicate how the jury is split.  That should

9    never be included or communicated.

10        Now, the verdict must represent the considered judgment

11   of each juror, and in order to return a verdict, each juror

12   must agree on the verdict.  In other words, your verdict on

13   each count must be unanimous.

14        The question of possible punishment of either defendant

15   in the event of any conviction is not a concern of yours and

16   should not enter into or influence your deliberations in any

17   way.  The duty of imposing sentence in the event of a

18   conviction rests exclusively with me, the judge.  Your verdict

19   should be based solely on the evidence in this case, and you

20   should not consider the matter of punishment at all.

21        Now, the attitude and conduct of jurors at the beginning

22   of their deliberations are matters of considerable importance.

23   It may not be useful for a juror upon entering the jury room to

24   voice a strong expression of an opinion on the case or to

25   announce a determination to stand for a certain verdict.  When

1    one does that at the outset, a sense of pride may cause that

2    juror to hesitate, to back away from an announced position

3    after a discussion of the case.  Furthermore, many juries find

4    it useful to avoid an initial vote upon retiring to the jury

5    room.

6         Calmly reviewing and discussing the case at the

7    beginning of deliberations is often a more useful way to

8    proceed.  Remember that you are not partisans or advocates in

9    this matter, but you are judges of the facts.

10        I'm going to be sending into the jury room with you the

11   exhibits that have been admitted into evidence.  You may

12   examine any or all of them as you consider your verdicts.

13   Please keep in mind that exhibits that were only marked for

14   identification but were not admitted will not be given to you

15   to examine or consider in reaching your verdict.  So you are

16   only going to get -- so the numbering on them may be different.

17   It may skip -- but don't worry about that.  We're only going to

18   give you the exhibits that have actually been admitted in the

19   case.

20        You're generally -- there are some papers ones, and

21   we're going to give you some flash drives.  You'll see the

22   big screen that's up there so you should be able to see the

23   videos.

24        Now, I'm going to also provide you with two copies of my

25   instructions that I've just read to you.  And during your

deliberations, you may, if you want, obviously, refer to these

instructions.  While you may refer to any particular portion of

the instructions, you are to consider the instructions as a

whole, and you may not follow some and ignore others.

That's very important to listen to it today so you know

what's in here and how they all relate.  If you have any

questions about the instructions, you should feel free to send

me a note.  Just indicate what your issue is with the

instructions.  Please return the instructions when your verdict

is rendered.

Now, the verdict form.  You'll be provided with what we

call a verdict form for use when you have concluded your

deliberations.  The form itself isn't evidence in this case,

and nothing in it should be taken to suggest or convey any

opinion by me or anybody else as to what the verdict should be.

Nothing in the form replaces the instructions of law

that I have already given you, and nothing in it replaces or

modifies the instructions about the elements which the

government must prove beyond a reasonable doubt.  The form is

meant only to assist you in recording your verdict.

So the verdict form -- jury verdict form, there will be

one for each one of the defendants, and each one is the same.

It starts with -- lists the name of the defendant.  It then

says Count 1, with respect to the offense of conspiracy against

rights, we, the jury, find the defendant -- name of each

1    defendant -- guilty, not guilty.  You check whichever one that

2    is the unanimous verdict.

3          Count 2, then you say with respect to the offense of

4    clinic access obstruction, we, the jury, find defendant,

5    whichever one, guilty, not guilty.  Again, you would do the

6    check mark.

7          Now, the special findings.  If you find the defendant

8    guilty -- and it's only if you find the defendant guilty on

9    Count 2 -- you would then go on to the following grounds,

10   either or both:  Have you found the defendant -- found the

11   defendant guilty on Count 2, which -- and what there is is --

12   the grounds are force, guilty or not guilty; physical

13   obstruction, guilty or not guilty.

14         So, in other words, on Count 2, you're going to make the

15   initial decision as to whether the government has proved the

16   case beyond a reasonable doubt, it's a unanimous verdict, and

17   you would indicate guilty, not guilty.  If you do find that

18   the -- a defendant guilty on Count 2, you go on to the special

19   finding and indicate whether your finding is based on force:

20   guilty, not guilty.  Or physical -- and/or physical

21   obstruction:  guilty, not guilty.  So we know what grounds

22   you've determined the guilt of each of the defendants as to

23   Count 2.

24         So you'll have one for each of the defendants, as I've

25   said.

```
 1         Count 1.
 2         Then Count 2.  Only if you find them guilty on Count 2
 3   do you go to the special findings.  If you find the defendant
 4   not guilty on Count 2, you don't go on to do any special
 5   findings.
 6         Now, I have another cautionary instruction.  Publicity,
 7   communications, research.  I want to remind you that in some
 8   cases -- although not necessarily this one -- there may be
 9   reports in the newspaper or media, various other radio,
10   internet, television concerning the case.  If there should be
11   such media coverage, you might be tempted to read it, listen,
12   or watch it.  You must not read -- listen, watch it, read it
13   because you have to decide this case solely on the evidence
14   presented in this courtroom.
15         And I would point out, you've been here all day.  You
16   know what the case is about.  You don't have to read about it
17   from somebody else who's deciding what the case is about.  You
18   know.  So don't look at these things.  They're not necessarily
19   accurate.
20         If any publicity about this case inadvertently comes to
21   your attention, do not discuss it with either jurors or anyone
22   else.  Just let me or the clerk know as soon as it happens, as
23   you can, and then I'll briefly discuss it with you.
24         So I'd ask that you really be vigilant in terms of
25   making sure that you're not inadvertently or otherwise
```

1   looking -- or looking at it or looking at anything that sounds

2   like it's about this case.

3          As you retire to the jury room to deliberate, I also

4   want to remind you of my instruction I gave you at the

5   beginning.  During deliberations, you may not communicate with

6   anyone not on the jury about this case.  This includes any

7   electronic communications, email, text, blogging, whatever.

8          In addition, you may not conduct any independent

9   investigation during deliberations.  So you should not be

10  looking at where the Washington Surgi-Clinic is.  You should

11  also not conduct any research, which means about people or

12  terms or anything else.  If you need to have something defined,

13  send me a note.  I should give you all the information that

14  you're deciding this case about or the law.  You should not be

15  doing something independently.

16         So you may not conduct an independent investigation

17  during deliberations.  You may not conduct any research in

18  person, electronically, and by the internet or any other way.

19         Now, let me have counsel pick on the intercom.

20         (Bench conference on the record.)

21         THE COURT:  I have a little bit of a problem in terms

22  of we printed some stuff out that didn't get into anything.  So

23  I will make the changes of he, she, blah, blah.  I think most

24  of them -- what I've done is changed orally what I will do in

25  here.

```
 1          But is there anything else?  You've, obviously,
 2     preserved all of your objections.
 3          MR. KIYONAGA:  Your Honor, this is John Kiyonaga for
 4     Mr. Geraghty.
 5          Unless I missed it, ma'am, you did not give an
 6     instruction that each juror should vote his or her conscience.
 7          THE COURT:  I gave whatever the regular -- I'd have
 8     to look in terms of -- we had something at the beginning.  I
 9     would have to look.  Whatever it is, it's the standard
10     instruction, and it includes everything you could possibly
11     think of in terms of what they're supposed to do and not
12     supposed to do.
13          MR. KIYONAGA:  Understood.
14          THE COURT:  If it's not in here, you didn't ask for
15     it.  I don't know whether it is.  I would have to go back and
16     take a look, frankly.
17          MR. KIYONAGA:  Additionally, Your Honor, in the
18     Eastern District we're not allowed to reach out to -- to
19     jurors.  Would the Court consider advising the jurors that once
20     they've completed their deliberations, if they're so inclined,
21     you're free to reach out to counsel with any commentary they
22     might have?
23          THE COURT:  I would at this point probably be less
24     inclined to do so.  I think we've had some issues in this case.
25     I have another trial coming, and I have some concerns relating
```

1    to having discussions.

2         My experience, frankly, has been that even though I

3    generally do not -- what I generally -- if people wanted to

4    talk to the jury, I let them talk to them -- the jurors that

5    wish to speak to them, and I monitor it so that things are not

6    said that shouldn't be said, such as giving information that,

7    you know, didn't come into the case or other things.  Sometimes

8    jurors talk to the media, and then you wind up with stuff that

9    shouldn't be taken out.

10        So I'm leery of doing that.  I will take a look and talk

11   to you at a later time about how to do it.  I'm not going to do

12   it automatically.

13        I've also found that one of the jurors, when you ask

14   about what -- you know, do you have -- what kind of experience

15   have you had, you know, as being a juror and -- the first

16   thing they raise, if they're going to say anything, is they had

17   this discussion with the attorneys and they were upset with

18   what the attorneys said.  So I've become a little more

19   reluctant with it.  But I will deal with that issue at a later

20   point.  Okay?

21             MR. KIYONAGA:  Understood.  Thank you, Your Honor.

22             THE COURT:  Anything else?

23             (Proceedings held in open court.)

24             THE COURT:  I'll read the last portion of it.

25        The last thing I must do before you begin your

deliberations is to excuse the alternate jurors.  As I told you
before, the selection of alternates was an entirely random
process.  Nothing personal.  The lawyers just chose numbers.
We selected three seats to be the alternate seats before you
entered the courtroom.

Since the rest of you have remained healthy and
attentive, happily, I can now excuse those jurors in Seats 3,
13, and 14.  So if you -- you can stay for a minute.  Let me
just finish reading the rest of this about the alternates.

Before you three leave, I'm going to ask you to tear
out a page from your notebook in terms of what you have written
down.  Write down your name and daytime phone number and hand
that to the -- so you'll hand your notebooks in.  We aren't
going to look at anything.  And then on a piece of paper, if
you give us your name and a way of getting in touch with you,
give it to the clerk.  I do this because it's possible,
although very unlikely, that we will need to summon you back to
rejoin the jury in case something happens to a regular juror.

Since that possibility exists, I'm also going to
instruct you not to discuss the case with anyone until we
actually call you and tell you there's a verdict and, you know,
that's the end of it.

My earlier instructions on use of the internet still
applies.  Don't research.  Don't communicate about it with
anybody.  Just assume you're like a regular juror still.  Just

1   don't -- you're not part of the deliberations.  And we will

2   call you and let you know so you know there's an end to this,

3   having to do this.  But just to make sure that if for some

4   reason we need to bring somebody back, that we can actually do

5   so.

6          This has become more of an issue with COVID.  Although,

7   happily, all my jurors -- nobody has gotten it, so I haven't

8   had that -- that problem, but we've become a little more

9   cautious about it.

10         But I do want to thank you for your service.  The three

11  of you have been very attentive, as have all of you, and I

12  appreciate you taking the time.  It took an enormous amount of

13  time to select the jury.  We were very cautious and careful.

14  So I know it -- you know, you spent a lot of time doing other

15  things.  And for many of you, this went beyond your usual

16  two weeks.  However, we did finish at least a little earlier

17  with the presentation of the case than I thought it might be.

18  So thank you very much.

19         Let me excuse the three of you, and you can give the

20  information.  I think you're free from your service.  You do

21  not need to go to the jury office.  You can go home, work,

22  whatever you want.  But thank you.

23         (REPORTER'S NOTE:  The alternate jurors left.)

24         THE COURT:  The rest of you can just wait a minute.

25  Oh.  Let me mention -- go ahead.  Let me mention the

1    lunch -- the lunch, generally, is not the 1:00 to 2:00.

2    They'll bring something.  It's 12:30 to 1:30.  Okay?

3         And what I'm going to ask is that for the -- whoever

4    your foreperson is, if you would sort of keep track of when

5    you're deliberating.  What I would do is -- you should take

6    regular breaks.  People have to go to the restroom, and you --

7    certainly at lunch you should not deliberate.  You should enjoy

8    your lunch, but we're going to take breaks at some point, as I

9    have.

10        So if you just note the time that you started the break

11   and when you finished it, just so we have some rough sense of

12   how long you're actually deliberating.  And you can't continue

13   to discuss the case except when all of you are together.  So if

14   somebody is in the restroom, you should not continue through

15   deliberations.  You should wait and make sure everybody is

16   together.

17        We will -- so -- and, you know, don't be hesitant about

18   sending notes.  We'll have somebody out there.  It's usually a

19   court security person that sits outside of the door.  So you

20   can open the door and hand any notes to them, and they'll bring

21   it to me.

22        At the end of the day, if you have not reached a

23   verdict, I will bring you back and excuse you, and we'll excuse

24   you just before 5 o'clock.  You do not need to go beyond that

25   time frame.  In the mornings I generally don't bring you in.

We start your deliberations when all of you are in there.  But
we do at the end to make sure.  Okay?

And then, just as I said, if you reach, you know,
unanimous verdicts on all the cases [sic], then send a note
with that.  And what I'd ask is that there's two copies of the
verdict form.  They're exactly the same.  Fill both of them out
the same.  Keep one for yourself.  The other one should come
with the note that you've reached a unanimous verdict as to
each verdict.  And that one you would give to whoever is -- the
CSO or Ms. Patterson.  And what we'll do is we'll read -- we'll
come back in here, and we will -- I'll ask if the foreperson --
and you just do it by seat number -- whether the foreperson has
the -- and whether -- ask the foreperson whether the jury has
reached a unanimous verdict as to each defendant, and the
person, hopefully, says yes.

And then I'm going to ask -- this is -- I want you to be
prepared for a polling.  I'm going to ask each of you by seat
number only if you agree with the verdict as stated by your
foreperson.  We do this to make sure that your verdicts are
unanimous.  So if you agree, you just say yes.  If for some
reason you disagree, you need to speak up.  So counsel may ask
to have it polled.  I don't want you to be surprised.  I'll go
by seat and say do you agree or not agree with what your
foreperson has indicated.

All right.  I think that's it.  Let me have you go back.

1          (Proceedings held out of the presence of the jury.)

2          THE COURT:  Okay.  I'm going to ask you to stay.

3     Don't leave yet.  We need to discuss with Ms. Patterson the

4     exhibits, to make sure everybody has agreed to what is actually

5     going back.

6          In the meantime, I will type up the answer to the

7     question that we did receive and send that back.  And I'll --

8     we'll make the edits that we talked about in terms of the jury

9     instructions.  And then don't leave until I come back in so I

10    know where everybody is going to be.

11         Mr. Dunn, do you have a question?

12         MR. DUNN:  I can wait until you come back in.

13         THE COURT.  Dorothy, you're going to deal with the

14    exhibits at this point?  I'll make the edits, and they're not

15    supposed to leave until I get back in here.

16         (Recess taken.)

17         THE COURT:  I typed out the question that she put on

18    the handwritten note so they get -- they'll get a copy of it

19    with the answer that I just read.

20         We've got the two copies; all the edits that I put in as

21    I read it have been fixed.  So they'll get two copies.  And

22    we'll email you a copy of this so you have it for your records

23    and the latest version with the edits.

24         So I think that's -- where are we with the exhibits?

25    Are we all done?

```
 1                THE COURTROOM DEPUTY:  Yes.

 2                THE COURT:  No disputes.  Everything is okay.

 3           All right.  Okay.  Do we -- where is everybody going to

 4      be?

 5           Mr. Crabb?  Mr. Patel?  I don't need both of you.  I'm

 6      going to make you responsible for each other.  Whoever is going

 7      to do it.

 8                MR. CRABB:  Where we'll be depends on how quickly the

 9      Court wants us to respond to notes.

10                THE COURT:  As I said, part of it would be -- I -- if

11      you could sort of hang around until when they start lunch.

12      We'll get -- you know, they'll get stuff at the beginning to do

13      something.  After that, I would go back to your office.  If

14      we're going to get a note quickly, that's -- it's just a pain

15      to go back to the office and come back.

16                MR. CRABB:  Thank you.  We'll do that.

17                THE COURT:  It's 11:15 or 11:20.  And then if we have

18      a phone number for you -- are you going to be at Justice, or

19      the U.S. Attorney's Office, or where are you going to be?

20                MR. CRABB:  At the U.S. Attorney's Office.  So even

21      when we go back to the office, we'll be ten minutes away.

22                THE COURT:  The one on Sixth Street?

23                MR. CRABB:  Yes.

24                THE COURT:  Okay.  Then that should work.

25                MR. CRABB:  Thank you.
```

1        THE COURT:  Mr. Cannon, have you-all figured out

2   who's going to be monitoring this, or are you taking turns, or

3   what?

4        MR. CANNON:  Yeah, Steve and I are both at a hotel,

5   ten-minute walk away.  We'll hang out there for a while.

6        Over the weekend, we both might have some travel plans,

7   but somebody will be back for Tuesday.

8        THE COURT:  Hopefully not far away because I don't

9   want to get stuck where you can't get back because of weather

10  or something.

11       MR. CANNON:  Yeah.  We'll -- we will not take that

12  risk.

13       THE COURT:  All right.  Mr. Dunn.

14       MR. DUNN:  Yes.  Thank you, Judge.

15       I have contacted Mr. Peter Cooper, who is the local

16  counsel for me on my representation here, and was the original

17  CJA-appointed counsel on the case, to see if he would be

18  available to cover for me, if the Court permits me to have

19  somebody cover for me, if the case goes on to next Tuesday.  He

20  said he would.  He's available.

21       THE COURT:  How could he cover?  He knows nothing

22  about the case if we get a note.  A verdict wouldn't be a

23  problem.  But a note, he doesn't know any of the evidence.

24       MR. DUNN:  In addition to him -- that's why I've got

25  a second option, if the Court -- it's okay with the Court.

1       Co-counsel here, Mr. Walsh in particular, has indicated

2   that -- I think possibly Mr. Crampton as well -- has also

3   agreed -- and my client is perfectly fine with it -- so that I

4   can get back to my teaching responsibilities, which start next

5   week.

6       THE COURT:  It's very unusual and, frankly, I've

7   never done that.  I've always had -- required the attorney that

8   handled the case to be the one to do it.  I mean, with your

9   co-conspirators, I'm sure they would be happy.

10      But looking at it, there could be a conflict in terms of

11  the answer we might give to a note.  I mean, each of your

12  defendants -- although you're allegedly -- they're allegedly

13  co-conspirators.  I'm -- I'm not going to let -- I'm not going

14  to do that, Mr. Dunn.  I'm sorry.

15      MR. DUNN:  I don't think it would be a conflict,

16  Judge.

17      THE COURT:  I do not want to have an appellate issue.

18  And, you know, I go through these things about who has

19  conflicts about stuff.  Each of the defendants, to some degree,

20  don't, but to some degree they might; depends on what comes

21  back.  And I'm not going to do this by phone.  You need to be

22  here to talk to your client.

23      MR. DUNN:  She's agreed -- she's fine with it.  So

24  you wouldn't be okay with Mr. Cooper either, Judge?

25      THE COURT:  Mr. Cooper knows nothing about this case.

1     He has not sat here throughout the case.  How is he going to

2     possibly respond to a note?  I mean, getting the verdict is a

3     different issue, in terms of just accepting the issue.

4         You need people -- this has been a complicated case.

5     We need people who know something about it when the issue

6     comes in.  And each of these defendants has their own interest.

7     And an answer may come back that they have different answers

8     to.

9         MR. DUNN:  I'm sure there's going to be a unified

10     response to any note, Judge.

11         THE COURT:  I'm not sure of anything.  Okay?  And

12     certainly not how the case has proceeded in this case.  So

13     I -- you know, I'm not excusing you, if that's what you're

14     asking for.  I'm not excusing you.

15         And Mr. Cooper knows nothing about the case.  We'll see

16     how long this lasts.  Hopefully not.  We'll see what they have

17     to say.  I mean, they may ask at the end they -- they're close

18     enough they want to come in on Monday.  Sometimes that happens,

19     especially if the person's appointments are, like, in the

20     afternoon.  I don't want to force them to do it because they

21     will be annoyed when they're doing their deliberations.  So

22     it's their decision.  But I'm not excusing you.

23         MR. DUNN:  Okay.  My plan, if you were going to deny

24     the request, was to continue with my flight home on Saturday

25     and to return on Monday, which I don't even have the flight for

1    the return trip yet.  I can try and get one.

2            THE COURT:  Well, that's my concern is, frankly, for

3    you to go back when we've had trouble with you coming in here.

4    I mean, we -- you know, you weren't able to do it.  You were

5    able to Zoom.  I'm not doing Zoom.

6            You know, I do not want an issue on appeal --

7            MR. DUNN:  Yeah, I understand.

8            THE COURT:  -- for something that could be -- you

9    know, that involves your -- for your convenience.  And I'm

10   sorry about your teaching thing.  But I bet you could do it --

11   if there's a snow day in Michigan and you don't sit, you don't

12   teach, I assume they make it up.

13           MR. DUNN:  I just take those responsibilities very

14   seriously.

15           So would it be okay if I fly back on Monday then?

16           THE COURT:  I don't think you should go anywhere.  I

17   think you should stay here, frankly, because I'm concerned if

18   weather is bad, you won't come; you won't be able to come, not

19   because you intentionally wouldn't.

20           I expected people to hang around, frankly.  The lawyers

21   who are out of town when they come, they're stuck here.

22           MR. DUNN:  And I'm doing the case pro bono, Judge.

23           THE COURT:  I understand.  But, you know, people make

24   decisions in terms of other things.  I'm not going to have an

25   appellate issue on this that -- or hold things up because we

1    can't get you back.  So, I mean, I assume when counsel from

2    out of town take it, that they're planning to be here until we

3    get the case, you know, completely decided, one way or the

4    other.

5          MR. DUNN:  So I couldn't participate in a note

6    discussion over the phone, if there's a note discussion?

7          THE COURT:  If a note came in -- I've told you, some

8    notes can be done by -- by -- because they're easy ones.  I

9    need more paper or something.  Or it's something that they're

10    asking about the evidence that I'm going to send a note back

11    that says I cannot comment on the evidence.  I'm not going to

12    make you come back to the courtroom.

13       But we may get other notes that ask for interpretations

14    of different things, in which case you'd have to come back and

15    we'd have to have a discussion.  I need you here.  Okay?

16       All right.  So, Mr. Kiyonaga.

17          MR. KIYONAGA:  Yes, Your Honor.  My plan was just to

18    remain in the immediate area of the courthouse.

19          THE COURT:  That's fine.  As long as we have a

20    phone number -- and I can open the witness rooms for you if

21    somebody wants to hang out there, you know, if that's easier

22    for you.

23          MR. KIYONAGA:  Next week, if possible, I'd prefer to

24    be at my office, but I understand the Court wants to see how

25    things --

          THE COURT:  Let's see.  Part of it, I think, is -- I

have found that either the jury sends no notes and you get the

verdict at the end or they begin to send a bunch of notes, in

which case, you know, it will be less convenient to have you

just bopping back and forth, from your own perspective, in

addition.

          MR. KIYONAGA:  Understand, Your Honor.

          THE COURT:  Let's see how today works.

          MR. KIYONAGA:  Your Honor, do I understand -- I plan

to be about an hour from here over the weekend.

          THE COURT:  That's fine.  I don't want people flying.

Okay?  I've looked at the weather map.  It -- it does not look

good in terms of what the -- what the weather is.  And Mr. Dunn

has already had a problem getting here, as well as Ms. Idoni.

I'm not going to have that happen so we have a problem in the

case.  I'm not going to have an appellate issue.  You can be,

you know, in Virginia, obviously, or Maryland or whatever.

          MR. KIYONAGA:  I'm talking about Orange, Virginia,

Your Honor.  But did I understand the Court to say counsel do

not need to be here in the mornings when the jury comes in?

          THE COURT:  No, you do not need to appear in the

courtroom for that.  What I would ask you to do is call in and

make sure there's no issue.  But I don't want to make you troop

all the way over here for that.  As soon as they're all there,

we keep track of the time.  They get the evidence, and we start

1    the deliberations.

2              MR. KIYONAGA:  Very well.  Thank you, Your Honor.

3              THE COURT:  It's at the end I definitely want you

4    because that's when -- if you're not around, we can't respond

5    to notes or you know -- or the verdict itself.

6              MR. KIYONAGA:  I understand.

7              THE COURT:  When they come in, I don't hold it

8    overnight.

9              MR. KIYONAGA:  I appreciate the Court's flexibility.

10             THE COURT:  So we have what's going to them.

11             MR. CANNON:  Just making sure.  You definitely want

12   us here at 5 o'clock?

13             THE COURT:  A little before -- yeah, ten of or

14   whatever.  And then we'll -- they'll come out.  We'll excuse

15   them, unless we've gotten something from them.

16             MR. GUILLAUME:  Your Honor, I have one question.

17   With respect to the deliberations on Monday, if the Court -- is

18   the Court going to ask them, or has the Court already asked

19   them?

20             THE COURT:  They understand they have it off because

21   a couple of people -- two people have asked if we're going to

22   have it off.  And one mentioned they had a doctor's

23   appointment, and the one had something else to do.  So I said,

24   you know, we had told them that they could have that day off

25   and we would.

```
 1          They may talk among themselves and decide that the
 2    appointment's in the afternoon and they're about finished and
 3    they want to come on Monday morning.  If they tell me that,
 4    we'll do that.
 5          MR. GUILLAUME:  So the Court is going to wait for
 6    them to tell you?
 7          THE COURT:  I'm not going to force them to change
 8    their plans --
 9          MR. GUILLAUME:  Okay.
10          THE COURT:  -- you know, in terms of doing it.
11          So that's why I -- and part of it was Juror No. 3, who
12    had some -- but she's the alternate.  So we don't have to worry
13    about her.  But there's two others that specifically asked me
14    about it.
15          MR. GUILLAUME:  Okay.  Thank you, Your Honor.
16          THE COURT:  All right.  I think that's it.  If we
17    get -- you can -- if we can have your cell phone numbers and
18    stuff so we can get in touch.  Okay?  Keep our fingers crossed
19    we get a verdict, whatever it is.
20          (Recess taken.)
21          THE COURT:  All right.  As I've indicated, we
22    received a note, which said as to Instruction No. 24, "What's
23    the meaning under the law of" -- in quotes -- "'oppress' and
24    intimidate?"  And a question mark.
25          So unlike Count 2, the FACE Act, which had some
```

1    definitions, this one does not, separately, you know, the way

2    the FACE Act did.  But this case does indicate which you're

3    supposed to find.  So that seemed straight out of it.  I don't

4    know whether you've had an opportunity to look at it.

5            Mr. Crabb, let me start with you.

6            MR. CRABB:  Good afternoon, Your Honor.

7        We have had an opportunity to look at the Court's

8    proposed instruction, and we agree with it, except for one

9    thing we'd like to ask the Court to consider.  If I'm reading

10   this right, the jury asked about the meaning of oppress and

11   intimidate.

12           THE COURT:  Right.

13           MR. CRABB:  We'd ask that the Court instruct -- I

14   believe now it says conspire to injure, intimidate.  We'd ask

15   conspire to oppress and intimidate, because oppress and

16   intimidate are the definitions they've asked for.

17           THE COURT:  I know, but that's not --

18       Okay.  Okay.  Where is everybody else on this?

19           MR. CRABB:  Just the oppression in the statute,

20   that's one of the appropriate terms.

21           THE COURT:  Oppress is actually -- what you're

22   asking -- I'm sorry.  For what?

23           MR. CRABB:  Well, we're -- if I understand correctly,

24   the jury has asked for the definitions of oppress and

25   intimidate.

1          THE COURT:  Right.

2          MR. CRABB:  Not injure and intimidate.  So we're

3    asking that they be instructed on oppress and intimidation.

4    And oppress is in the jury instruction and in section 241.

5          THE COURT:  Yeah.  But I think in order to -- in

6    order to make it clearer, it's -- it's straight out of it -- in

7    terms of the injurious part of it, it has -- instead of --

8    you're saying instead of intimidate, you're saying oppress?

9          MR. CRABB:  Instead of injure -- because the jury is

10   asking about --

11         THE COURT:  They asked about oppress and intimidate.

12   Okay.  And what's in the case?

13         MR. DUNN:  Straight words.

14         THE COURT:  Yes, two separate words.  And in the

15   case, it talks about ". . . a character to prevent this, or to

16   throw obstruction in the way of exercising this right, and for

17   the purpose and with the intent to prevent it, or to injure or

18   oppress a person because . . ." blah, blah, blah.

19         So you're asking, you said, from intimidate to put

20   oppress?  Is that what you're asking?

21         MR. CRABB:  No, Your Honor.  I'm asking instead of

22   injure -- I don't believe the jury is asking about injure.

23         THE COURT:  No, I'm -- we're putting that because

24   that's in the -- that's what starts that phrase in the case.  I

25   can take it out and just start with that, but it -- part of it

1    was to just have it be complete according to the way they

2    wrote.  I think if they all agree, we can take injure out and

3    just start with the rest of it.

4         Can I suggest that you-all -- have you-all had an

5    opportunity to talk so I'm not -- so you potentially can come

6    up with a proposal or not a proposal?

7         MR. KIYONAGA:  I'm sorry.  We're reaching out to the

8    associates to try to get some ammunition.

9         THE COURT:  But have you talked to Mr. Crabb?

10        MR. KIYONAGA:  No, ma'am.

11        MR. CANNON:  No.  We are just researching the

12   question now, Judge.

13        THE COURT:  So would it be worthwhile to get off the

14   bench and let you-all talk together and see if you can come up

15   with something or not, instead of my hearing from everybody

16   individually?

17        MR. CRABB:  I doubt that we'll work anything out with

18   the defense, Your Honor.

19        THE COURT:  I'm sorry?

20        MR. CRABB:  I doubt we will come up with a consensus

21   with the defense on that.

22        THE COURT:  Well, I'm not going to make that

23   assumption, but I think you can at least discuss.

24        MR. CRABB:  Absolutely.

25        THE COURT:  So as I understand what is it that you --

1    the language to be, Mr. Crabb?

2              MR. CRABB:  Well, if I may.  Two things, Your Honor.

3         One, we would like the Court to address both parts of

4    the jury question and define both the word oppress and the word

5    intimidate the way --

6              THE COURT:  And where do you want to get this from?

7    They -- this is -- as far as I can tell, the best -- this case

8    has the best discussion that I know of relating to what's

9    required.

10             MR. CRABB:  Your Honor, I apologize.  We have not had

11   a chance since receiving the note --

12             THE COURT:  Well, may I suggest that you-all --

13   that's why I'm going to get off the bench.  I suggest you

14   take -- it's in the middle here, which it's -- which I think we

15   had cited to precisely where it is.  I'd ask that you-all look

16   at it because that's what I've taken it from.

17             MR. CRABB:  Yes, Your Honor.

18             THE COURT:  I mean, it doesn't separate it out,

19   unlike the other -- for the FACE Act.  I mean, in other words,

20   the FACE Act was nice because it had actual definitions.

21        This statute doesn't do that.  This case interprets it.

22   It's binding because it's Supreme Court, so -- but it's

23   still binding.  It's the closest we have to what we can come up

24   with.

25             So I would just ask that you look at the case, and then

1    if you want to propose some language, let me know and talk to

2    them.  They don't agree, they don't agree.

3              MR. CRABB:  Yes, Your Honor.

4              THE COURT:  All right.  Can you give me some idea of

5    where you-all are so I can go back and look while you-all try

6    to work something out?

7              MR. CANNON:  Sure.  There may be something we can

8    degree to with the State [sic].  I don't know.

9         I do -- I do join Mr. Crabb, though, in just pointing

10   out the difference between the question oppress and

11   intimidate --

12             THE COURT:  Right.

13             MR. CANNON:  -- and then your proposed answer that

14   says injure or intimidate.

15             THE COURT:  We only -- there's only so much in the

16   case.

17             MR. CANNON:  I understand.  I share their concern,

18   and I would have brought it up if they had not.

19             THE COURT:  No.  I agree.

20             MR. CANNON:  And the other thing, of course, is that,

21   at least if it's possible to do so, despite the fact that we

22   have two separate statutes, it seems to me that intimidation,

23   as it's defined in FACE, would be -- it would be nice if that

24   were the only definition the jury were dealing with and they

25   didn't have conflicting definitions in the two statutes.

1          So since the conspiracy statute doesn't define

2     intimidation, I would propose to the Court that we use the

3     definition from FACE.  There are two cases that may bear upon

4     that that I would direct the Court's attention to, if you're

5     getting off the bench to think about this some more anyway.

6          And that would be the *Sulpizio* case.  And by the way,

7     Judge, the -- the *Waddell* case that -- that you're looking at,

8     it -- it did deal with conspiracy, but it dealt with a

9     different statute, 18 U.S.C. 51, I believe.  And that case is

10    from 1884.

11         THE COURT:  It is, but it's -- you know, this is

12    the -- this is the one that actually seems to discuss what the

13    purpose of the statute is.

14         MR. CANNON:  Sure.

15         THE COURT:  So it -- it looked as if it's -- it's

16    binding.

17         MR. CANNON:  Right.

18         THE COURT:  There's none that exactly address it

19    quite the same way that we could find.

20         MR. CANNON:  Right.

21         THE COURT:  And it's the same -- it's -- you know,

22    it's the 241.

23         What are the cases?

24         MR. CANNON:  The other thing -- I thought you might

25    take two cases that are -- you might take a look at are the

1    *Sulpizio* case.  I want to say it's S-u-l-p-i-s-i-o [sic] -- at

2    403 F. Supp. 3d 461.

3              THE COURT:  What circuit is that?

4              MR. CANNON:  I don't recall.  Was that New York?

5              THE COURT:  District Court case?

6              MR. CANNON:  Yeah, of course, it's district court.

7    But it was east.  I don't remember where it was.

8              MR. CRAMPTON:  I believe it's the Third Circuit,

9    Your Honor.

10             THE COURT:  And what is the other one?

11             MR. CANNON:  The other one is *U.S. v. Lindgren*,

12   L-i-n-d-g-r-e-n, 883 F. Supp. 1321 at page 1328.

13             THE COURT:  All right.  I'll go take a look at it,

14   but, you know, they have no binding effect, frankly.  But I'll

15   go back and take a look.  You will all sit down and figure out

16   whether the group here can come up with a proposal.  If you

17   can't, you can't.

18             MR. CANNON:  Judge, do you happen to have a printed

19   copy of those instructions?  Our computers are not with us

20   right now.

21             THE COURT:  We can -- we can do that.

22             MR. CANNON:  Can you zip one out?

23             THE COURT:  Yeah.  Sure.

24             MR. DUNN:  I wanted to just add that I did submit a

25   proposed instruction on the definition of oppress, not from any

 1   case authority, but a compilation from three different

 2   dictionary definitions.

 3        THE COURT:  Well, we can always do dictionary -- I

 4   mean, you can always do that as the last resort.  I was trying

 5   to find something that was associated with the actual statute.

 6   But if -- that's, you know, sort of the last resort of coming

 7   up with something.

 8        All right.  Take a look.  Figure it out.  See if you can

 9   come up with some language and go back and consider and look at

10   these cases.

11        (Recess taken.)

12        THE COURT:  Okay.  So here's where I am.  I've sent

13   you the last version, which is short and pithy.

14        But to put this in a nutshell, the scope of 241 is very

15   broad and -- unlike the FACE statute, which is much narrower.

16   The scope of 241, all of the cases and -- we had cited another

17   case from the Eastern District of New York that, sort of, is a

18   compilation of all of the cases.

19        All of them, if you look at them, discuss the scope of

20   it as being very broad.  The -- there's no specific definition

21   discussed in any of the cases in terms of breaking each one

22   down like the FACE case -- FACE statute does.  So there's no

23   specific definition to discuss.

24        But they indicate that the terms cover a wide variety of

25   conduct.  That's the distilled version, look at all of these.

1    The cases you have cited to me all involve the FACE Act, and

2    the one is a civil case.  There's a totally different scope.

3    So I don't think it's appropriate to -- frankly, they weren't

4    particularly helpful.

5         But the cases that I would involve -- I'm back to

6    *Waddell*, which still is a Supreme Court case.  It's an old

7    statute, and it's an old case, but, you know, it hasn't changed

8    anything.  It basically sets out the question on page 86 and

9    describes it in the full terms, in terms of what the opinion is

10   about.  "Does the information charge any offense under that

11   section?  The section reads thus:  'If two or more persons

12   conspire to injure or oppress, threaten, or intimidate, any

13   citizen in the free exercise or enjoinment of any right or

14   privilege secured to him'" -- we'll leave out the

15   Constitution -- "'or laws of the United States . . .'"

16        Then when you go to 87, there's that section in between

17   that begins to talk about what the -- the scope is in very

18   broad terms.  So that's part of what I had used.

19        The government did come up with an Eighth Circuit case,

20   and there's a D.C. Circuit case, which is the *Liddy* case, which

21   the -- pretty much stands for the same thing.

22        The Eighth Circuit does have a more specific definition

23   in terms of oppress and intimidate.

24        So if you meld the *Waddell* decision and the -- the

25   Eighth Circuit one, it's -- although it was reversed on other

1    things, it wasn't reversed on this issue.  I think it's that

2    one.

3          The words oppress and intimidate are not used in a

4    technical sense, which I think is clear from looking at all of

5    the cases, but cover a variety of conduct, which is also in all

6    of the cases.  That's intended to harm, frighten, punish,

7    prevent, or obstruct a person's exercise or enjoyment of a

8    right guaranteed by the laws of the United States.

9          That's a distilled description that I think is backed

10   up -- I'll write something longer -- by *Waddell*; the

11   D.C. Circuit, to some degree, in the *Liddy* case; and the Eighth

12   Circuit, which is a little more specific.  But the D.C. Circuit

13   and the Eighth Circuit complement each other.  So that would be

14   my proposal in terms of coming up with something.

15         Anybody have a contrary one?

16         MR. CANNON:  Your Honor, we do have a couple comments

17   that I think are worth addressing that I don't think the Court

18   has addressed yet.

19         The rule of lenity is actually interesting on this

20   question, and it provides that where a criminal statute is

21   ambiguous, the ambiguity needs to be resolved in favor of the

22   accused.

23         THE COURT:  It's not an ambiguous statute, though.

24   It's -- it's a statute that just simply has a very large --

25   very broad scope.

1         MR. CANNON:  Well, it has no definition at all.  I

2 think ambiguity is judged on the face of the statute.  And even

3 if not, at least where there's tension between that and -- and

4 the underlying statute, I think ambiguity can be seen.

5         Very importantly, the rights in question here are

6 defined by FACE.  We've already said.  We think, therefore,

7 FACE has to be the controlling definition.

8         Couple of things.  Two -- two rules of construction that

9 we all know.  The specific controls the general.  There's --

10 obviously, there's case law on that.  One that we have here is

11 *Howard v. Riggs*, 32 [sic] A.2d 701.  I would propose that a

12 statute that contains --

13         THE COURT:  Whose case is that?

14         MR. CANNON:  That's *Howard v. Riggs*.  I've been given

15 a cite.  I've not reviewed the case.

16         THE COURT:  Is that a federal case or local case?

17         MR. CANNON:  Atlantic Second.  It sounds like a state

18 court case.

19         THE COURT:  It's the D.C. Superior Court, I assume,

20 or the D.C. Court of Appeals?

21         MR. CANNON:  Perhaps.  I really don't know, Judge.

22         THE COURT:  Which has absolutely no -- the local

23 courts have a totally different -- they don't even adopt all of

24 the federal rules.  So the D.C. Court of Appeals is not binding

25 at all.  Even a -- another circuit, federal circuit, would have

1    more binding power.  But go ahead.

2              MR. CANNON:  But I'd like to propose to the Court,

3    just as a general manner, that a statute that contains a

4    definition is the more specific as compared to a statute that

5    does not.

6              THE COURT:  Okay.

7              MR. CANNON:  The second rule of construction that we

8    all know, the recent controls over the older.  And I believe

9    FACE is more recent than the conspiracy statute.

10         Now, there is a D.C. Circuit case that defines

11   intimidate, *U.S. v. Carr*, C-a-r-r, 9 --

12             THE COURT:  Does it involve the statute at issue or

13   something else?

14             MR. CANNON:  No.  It's a bank robbery case, but it

15   talks about bodily harm in the definition of intimidate.

16             THE COURT:  That's not going to work either.  I mean,

17   robbery is totally -- totally different in terms of how it's

18   defined.  And every jurisdiction has a different definition of

19   robberies and whether it's a crime of violence or not.

20             MR. CANNON:  Well, I think it was the definition of

21   intimidate, but within the robbery statute.

22             THE COURT:  Okay.

23             MR. CANNON:  Now, getting back to the *Waddell* case,

24   as you certainly know, the conspiracy statute in question here

25   has two clauses.  The second --

1          THE COURT:  Injure and oppress.

2          MR. CANNON:  No.  It has --

3          THE COURT:  Injure and obstruct.

4          MR. CANNON:  No.  Two separate clauses.  The one that

5     applies to this case, the second one talking about going in

6     disguise and stuff and -- and conspiring under that, which,

7     obviously, is not applicable here.

8          THE COURT:  Right.  Is not applicable.

9          MR. CANNON:  But the *Waddell* -- the *Waddell* ruling

10    involved charges under both of those clauses, and -- and the

11    injure or -- the prevent or throw obstruction language in the

12    *Waddell* opinion was referring to the second clause.  The injure

13    or oppress language in *Waddell*, I believe, was referring to the

14    first.

15         THE COURT:  I'm not sure about that in terms -- I

16    would have to look more carefully.

17         MR. CANNON:  Sure.

18         THE COURT:  Let's get to the punch line.  You want to

19    use the description in the FACE Act.

20         MR. CANNON:  Right.  And --

21         THE COURT:  Which is more narrow.  The -- the scope

22    of the FACE Act is very specific, very -- and a very -- much

23    more limited scope, while the -- the -- the 241, the conspiracy

24    one, is very broad.  That's the one thing that all of them have

25    discussed and in different ways of saying it.

1    They don't say they're interchangeable but that it

2  covers all sorts of conduct.  I don't see why we would not use

3  cases that use definitions -- and this is a melding --

4  definitions that that relate to the conspiracy.

5    MR. CANNON:  I appreciate that, Judge.  I'm just

6  trying to avoid jury confusion.

7    Now, and here's -- this is an important case on that

8  point.  In *U.S. v. Ingram*, 360 U.S. 672 -- 360 U.S. 672 --

9  687 -- it's a 1959 case -- it provides that conspiracy to

10  commit a particular substantive offense cannot exist without at

11  least the degree of criminal intent necessary for the

12  substantive event -- or offense itself.  That case was --

13    THE COURT:  Is it the same conspiracy statute that

14  we're talking about here or not?

15    MR. CANNON:  I do not know that right now.  This all

16  comes together pretty fast.

17    THE COURT:  The conspiracy is -- there's a whole

18  series of different statutes on conspiracy.

19    MR. CANNON:  Sure.

20    THE COURT:  This is a very specific one relating to

21  rights.  I can go and take a look at that.

22    MR. CANNON:  Let me give --

23    THE COURT:  Excuse me.  But the intent -- we

24  certainly have a discussion of intent with the rest of it.  If

25  you take -- do these -- this is a short definition I'm

1    proposing, if you look at it, in terms of -- it's not a

2    technical sense, which is certainly more the FACE Act.

3          It covers a variety of conduct intended to harm,

4    frighten, punish, prevent, or obstruct a person's exercise or

5    enjoyment.  And that's straight out of that Eighth Circuit

6    case, which the D.C. Circuit -- although it isn't that

7    specific -- certainly would support.  And it's consistent with

8    *Waddell*.

9          Why wouldn't you use that when that actually talks about

10   the conspiracy statute that's at issue?

11          MR. CANNON:  Well, I think there are two competing

12   concepts here.

13          One being that these are totally different statutes, and

14   the defendant could be convicted under either one and not the

15   other.  And they should stand on their own.  And I appreciate

16   that.

17          But the other -- the competing concept to that one is, I

18   think, the one that should control here, which is that we are

19   only dealing with one right, and it's the right that exists

20   under FACE.  And so where there is conflict between the two

21   statutes, I think that the one needs to control.  Now, let me

22   make --

23          THE COURT:  What's the conflict?  There isn't a

24   conflict.  One is --

25          MR. CANNON:  The conflict is -- the conflict is --

1          THE COURT:  Hold on one second.  One is very narrow

2    in their scope, and the other is a much broader one.  What's

3    the conflict?

4          MR. CANNON:  The conflict is that the jury would

5    supplant the specific requirements under FACE with the broad

6    requirements under the conspiracy and -- and especially with

7    respect to intimidate.

8          You know, intimidate on its face is a higher threshold,

9    very high.  It has to put a person in fear of bodily harm.

10          THE COURT:  In FACE?

11          MR. CANNON:  In FACE; right.

12          THE COURT:  Right.  But you're, basically, putting in

13    a higher standard in -- in a -- in a statute that does not

14    require that.

15          MR. CANNON:  I -- I appreciate that -- we -- we

16    would -- I don't want the low standard from conspiracy to go

17    into FACE, and the government doesn't want the high standard of

18    FACE to go into conspiracy.

19          THE COURT:  Well, I think they're two different

20    things.  I mean, FACE defines it and specifically has a

21    definition that sets it out.

22          The other statute purposefully kept it very broad, which

23    is the -- *Waddell* makes the point that it covers a variety of

24    conduct.  So it's hard to indicate, but it did indicate certain

25    things that clearly would be involved with it, and it's not a

1   technical term.

2            MR. CANNON:  Right.

3            THE COURT:  Unlike the FACE Act, which has more

4   technical meanings to those.  So you're putting in technical

5   meanings of FACE into a statute that the case law says is not

6   supposed to happen.

7            MR. CANNON:  One more thing.

8            THE COURT:  Okay.

9            MR. CANNON:  Again, these things are coming at us

10  very quickly.  We haven't had a chance to look at this.

11       But the *Ingram* case that I have suggested -- you point

12  out, reasonably, that we don't know what conspiracy statute

13  that relates to.  It was a 1959 case.  But it was cited by

14  Supreme Court with approval and requoted that same part I just

15  gave you in 1975, so.

16           THE COURT:  Okay.  I will go look at that.  But as I

17  understand it, what you're arguing for is that the -- you

18  should use the definition, which is very specific and

19  technical, in the FACE Act and use that same definition -- as

20  opposed to a more generalized one, which is what we have here?

21           MR. CANNON:  Right.

22           THE COURT:  Even though the conspiracy statute that's

23  at issue -- because there's certainly different ones -- that's

24  at issue has a very broad scope, cover- -- isn't technical.

25  All the cases say that, from the Supreme Court to every single

1    circuit.  And they also indicate it covers a variety of conduct

2    so it's difficult to define specific things.  But does

3    indicate -- *Waddell* has some language which is partly in here.

4    And the Eighth Circuit comes up, which is -- you know, which

5    is -- the approach they took is supported by the D.C. Circuit.

6    So I'll go back and look at the *Ingram* case.  But unless I hear

7    something else, we're going to -- this is probably what I will

8    go with.

9         Okay.  Let's see what else.

10         If I can hear from the government.

11             MR. KIYONAGA:  Your Honor, I could add briefly --

12             THE COURT:  If you'll wait one second while I look

13    at -- okay.

14         Mr. Crabb, do you want to respond to this at all?  And

15    let's do one note at a time.

16             MR. CRABB:  Your Honor, a couple things.

17         If I may, first, with respect to the *Ingram* case, I had

18    a chance to look at it very quickly.  It's not applicable here.

19    *Ingram* deals with the 371 conspiracy, which is the general

20    U.S. Code conspiracy statute.  Which, of course, if you're

21    using 371, the intent has to be the same as the substantive

22    offense.  That's not what we're doing here.

23         As the Court has pointed out, 241 is a specific

24    conspiracy.  So what the proposition *Ingram* stands for is not

25    applicable here.  It's dealing with 371, the general U.S. Code

1    statute, and saying then it's conspiracy to commit some other

2    U.S. Code offense.  That's not what we have here.  We have the

3    conspiracy to do 241.  It's not a conspiracy to violate the

4    FACE Act.

5           *Ingram* might apply if under 371 we had charged a

6    conspiracy to violate the FACE Act.  That's not what's charged

7    here.  What's charged here is the 241 conspiracy.  So we don't

8    believe the -- *Ingram* is at all formative.

9           And this idea about needing the same intent for the

10   substantive offense, this conspiracy offense, doesn't apply in

11   this situation.

12          Also, we believe that the defense is conflating certain

13   statutory construction concepts.  The idea that specific

14   controls the general would be within one statute, but it can't

15   be among different statutes.  That one statute that might be

16   more specific -- here the FACE Act -- doesn't control a totally

17   different statute.  That theory of statutory construction only

18   applies within one statute.

19          And the last point I'd like to make -- unless the Court

20   has any questions -- is to correct something defense said what

21   the government wants.  What the government wants here is for

22   the jury to be instructed as to the properly -- as to each

23   offense.  We're not trying to conflate or graft one onto the

24   other.

25          We want the jury to be instructed correctly on 241 and

```
1   correctly on 248.  And it happens all the time when there's
2   more than one offense charged that the jury has instructions
3   for one offense and instructions for a different offense, and
4   they're not to conflate or mix them.  That's all we're asking
5   for.
6            THE COURT:  Okay.  Plus I don't see this as a
7   particularly -- government instruction.
8        Mr. Kiyonaga, you wanted to say something, and then
9   we're done on this.
10           MR. KIYONAGA:  Briefly.  I don't want to preempt
11  Mr. Cannon.  I think we both want to say something.
12           MR. CANNON:  I just want to very briefly point out,
13  I'm very confident that the specific general thing applies
14  equally to separate statutes.
15           THE COURT:  I'll take a look at that.  I thought the
16  government was correct, but I could be wrong.
17           MR. KIYONAGA:  Your Honor, John Kiyonaga for
18  Mr. Geraghty.
19       Your Honor, just to follow briefly on what Mr. Cannon
20  said, the language from the Ingram decision is -- is
21  comprehensive.  It doesn't -- the quote, which was a verbatim
22  quote that Mr. Cannon --
23           THE COURT:  Is it a different statute?  Is it a
24  different conspiracy statute?  If it's the 300 version, it's a
25  completely different conspiracy than the one that's here.
```

1          I'm going to take a break and go look at it.  But as I

2    understand it -- is it the same one or not, do you know?

3          MR. KIYONAGA:  It's the conspiracy to defraud the

4    United States, but --

5          THE COURT:  No.  I'm asking you what statutory

6    provision is it.  Is it under 241 or not?

7          MR. KIYONAGA:  No.

8          THE COURT:  Then it's is a different conspiracy

9    statute that you're talking about.  So as a practical matter,

10   it doesn't -- why not look at the ones that actually do talk

11   about 241?

12         MR. KIYONAGA:  Because --

13         THE COURT:  A different conspiracy statute doesn't

14   work in terms of how it's defined.  I'll go look at it, but if

15   it was 241, it would be one thing.  If it's 371, that's the

16   general conspiracy for -- used to -- for a whole series of

17   different things.  And as the -- a different -- than some of

18   the -- some of the language relating to what a conspiracy is

19   about agreements is the same.  But it certainly has -- the

20   other elements are completely different than what 241 is.

21         MR. KIYONAGA:  Your Honor, I would submit that if the

22   Supreme Court wanted to limit the application of *Ingram* to 371,

23   it would have said so in that language.  The language is

24   conspiracy requires -- and it doesn't specify which sort of

25   conspiracy.  That implies to me, undeniably, a comprehensive

1  intent on the part of the Supreme Court.  That case was cited

2  favorably again by the Supreme Court in 1975 in the matter of

3  *United States v. Feola.*

4         THE COURT:  And was that also a 371 conspiracy?

5         MR. KIYONAGA:  I don't know, Your Honor.  I'm --

6         THE COURT:  Well, that doesn't help.  I mean, as --

7  you know, it would help to have these cases at least relate to

8  the conspiracy statute that -- at issue.  I will go and take a

9  look at it in both of those cases.  But it has less

10  applicability if it's not discussing the actual statute that's

11  at issue, but I'll go and look at it.

12         What else?

13         MR. KIYONAGA:  The cite to *Feola*, which is spelled

14  F-e-o-l-a, is 420 U.S. 671.  That's a 1975 case.

15         THE COURT:  Okay.  I'll go take a look at the two

16  cases and see if they have any applicability.

17         MR. KIYONAGA:  Your Honor, just take a moment,

18  please, to consider the practical repercussions of the

19  instruction that the Court has -- has suggested.  The word

20  prevent is susceptible to an infinite number of

21  interpretations, and it leaves the interpretation of the

22  statute open to subject/arbitrary interpretation.

23         If I decide to write a scathing op-ed piece about

24  abortion, calling people who seek abortions murderers and

25  suggesting that they be pilloried and ostracized, I haven't

gone anywhere near a clinic.  But I certainly, arguably, in the minds of at least somebody, have sought to prevent somebody's access -- somebody's access to that.  It is -- that term is so broad --

THE COURT:  But the statute is fairly broad.  But, frankly, I don't see writing these articles or all these people that have been doing pamphlets and stuff would have been charged with something.  They haven't been because it doesn't fit this definition.

MR. KIYONAGA:  Your Honor, under the standard the Court seems inclined to apply, they could be.  And that is my concern.

THE COURT:  Well, I would disagree on that point.  But I will go look at the other two cases.

We have a second note.  So if you'll sit down, I'll read you the second one.

MR. KIYONAGA:  Thank you.

THE COURT:  While we get --

"Regarding Count 2, Special Findings, is force limited to physical force or can forceful language -- yelling -- be considered?"

I don't know the quick answer to that.  Our definition -- I'm assuming -- I'm assuming no, but I'll go and take a look quickly.

Mr. Crabb, do you have a position?

A-90

1          MR. CRABB:  May I have one moment, Your Honor?

2          THE COURT:  If we have a quick answer that's agreed

3     to, I'll send it back.  I was going to go back and look at it

4     more carefully; what we had defined.

5          MR. CRABB:  Your Honor, we believe the Court has

6     already answered this question.  The Court has instructed

7     the jury that as to the first element, the term force means

8     power and/or violence exerted upon or against a person or

9     property.

10          THE COURT:  Okay.  Yelling, I don't think, fits that.

11          MR. CRABB:  Correct.

12          THE COURT:  So the answer is no, and we all agree.

13          MR. CANNON:  I think that's pretty clear.  And if you

14     need any help, the next item is threat, which would incorporate

15     language, and I think that's -- helps distinguish it from

16     force.

17          THE COURT:  Yeah.  I'm just going to say the answer

18     is no.  So that one is an easy one.

19          Let me go look at the two cases, and then I'll be back.

20     So let me -- what I'm going to do, if you don't mind, is on the

21     note from the jury about the yelling, I'm just going to say the

22     answer is no and send it back instead of -- so I can -- and

23     just tell them we're working on the first one.

24          MR. CRAMPTON:  Did you tell them no more questions?

25          THE COURT:  No.  Obviously, they're carefully looking

1    through, which is what you want.

2              (Recess taken.)

3              THE COURT:  All right.  I've looked at the *Ingram*

4    case and *Feola*.  It's a totally different statute, different

5    discussion.  It's not persuasive.

6              So over your objections, which you've already put in,

7    I'm going to send back the Court response to the following

8    question from the jury:  "What's the meaning under the law

9    of 'oppress' and intimidate?" in Instruction No. 24, as it

10   relates to Count 1.

11             The Court provides the following answer:  "The words

12   'oppress'" -- in quotes -- "'and intimidate'" -- in quotes --

13   "are not used in any technical sense but cover a variety of

14   conduct intended to harm, frighten, punish, prevent, or

15   obstruct a person's exercise or enjoyment of a right guaranteed

16   by the laws of the United States."

17             So I'm sending this back.  I've heard your objections.

18             I would hang out because I have a feeling we're going

19   to -- they have more questions, we'll get them, and it would be

20   nice to be able to promptly answer them.  If you want to hang

21   out in the courtroom or witness rooms or just in the

22   courthouse, that's fine with me.

23             MR. CANNON:  Those witness rooms were locked earlier.

24             THE COURT:  We can open them for you.  Sorry.

25             MR. CANNON:  Can we get them open?

1          THE COURT:  Yeah.  At least it gives you another

2     place to sit.  And just be watching your cell phones in terms

3     of if we get anything else.

4          (Recess taken.)

5          THE COURT:  All right.  Our last note is "We're not

6     going to make a decision before 5:00 p.m. today."  So no

7     verdict today.

8          But they're not asking to come and deliberate Monday.

9     They've got other arrangements.  So they'll be back on Tuesday.

10    They have other arrangements because they originally were told

11    they didn't -- you know, we wouldn't be sitting on the 28th.

12    So a number of them have made arrangements for other things.

13         MR. CANNON:  Did I hear you say they're not coming in

14    on Monday?

15         THE COURT:  They're not coming in on Monday.

16    We've -- a number of them have set stuff up, thinking that

17    that's -- they were going to have that day off.

18         All right.  So bring them in and we'll excuse them.

19         (Proceedings held in the presence of the jury.)

20         THE COURT:  All right.  I guess it's evening almost.

21    Anyway, good afternoon or good evening, everyone.

22         So what I'm going to do is excuse you for this evening

23    and ask you to come back on Tuesday in time for coming out at

24    9:00.  You don't have to wait for lawyers or anybody else.  As

25    soon as everybody is there, we'll provide the materials that

1    you need for you to begin your deliberations again and so we

2    don't need to bring you into the courtroom.  We'll keep track,

3    you know, when you start deliberating.  Okay?

4         We'll put all your things away.  We have a locked place

5    to stick -- nobody is going to look at anything.  We'll put it

6    in a locked place.

7         So don't talk about the case, please.  Don't look at

8    anything if something shows up.  Make sure nobody talks to you.

9    You're in the middle of your deliberations.  I want to make

10   sure we don't have any problems in terms of getting this case

11   completed without any issues.

12        So have a good weekend.  Take care of yourselves.  Be

13   well.  And see you on Tuesday.

14             (Proceedings held out of the presence of the jury.)

15             THE COURT:  Mr. Cannon.

16             MR. CANNON:  Just letting you know, with the Court's

17   leave, Mr. Crampton will be taking my place at this point.

18             THE COURT:  Okay.  That's fine.

19        And, Ms. Handy, I understand you're willing to have that

20   done?

21             DEFENDANT HANDY:  We talked about it and it's fine.

22             THE COURT:  Okay.  He's been sitting through the

23   trial so I have somebody who's familiar with what went on,

24   which was important.

25        All right.  Then what I would ask is if you would check

1    in Tuesday morning, first thing in the morning, so we know

2    where you are and we've got the correct phone numbers.  You're

3    in the courthouse, where you are, someplace else.  And then

4    we'll let you -- you know, let you know.  I would call at 9:00

5    or shortly after that -- and they've been very prompt in terms

6    of coming -- that they've started their deliberations.

7         And then we'll just wait and see.  We'll set up the same

8    thing in terms of notes, as to whether I need to bring you back

9    or don't need to bring you back.

10        All right.  So, everybody, take care.  Be well.  I

11   expect to see everybody back.

12             (Proceedings were concluded at 4:58 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1    CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4    Certified Realtime Reporter, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of my

6    stenograph notes and is a full, true, and complete transcript

7    of the proceedings to the best of my ability.

8

9                    Dated this 25th day of August, 2023.

10

11                    /s/ Nancy J. Meyer
                      Nancy J. Meyer
12                    Official Court Reporter
                      Registered Diplomate Reporter
13                    Certified Realtime Reporter
                      333 Constitution Avenue Northwest
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25

**'**

**'and** [1] - 92:12
**'If** [1] - 76:11
**'oppress'** [3] - 67:23, 92:9, 92:12
**'or** [1] - 76:15

**1**

**1** [11] - 5:12, 33:8, 43:11, 43:18, 43:22, 44:1, 44:7, 46:5, 48:24, 50:1, 92:10
**11** [1] - 46:5
**11:15** [1] - 59:17
**11:20** [1] - 59:17
**12:30** [3] - 9:17, 13:14, 56:2
**13** [1] - 54:8
**1321** [1] - 74:12
**1328** [1] - 74:12
**14** [2] - 3:3, 54:8
**14th** [1] - 29:20
**15** [2] - 5:7, 5:12
**16th** [1] - 28:22
**18** [1] - 73:9
**1884** [1] - 73:10
**1959** [2] - 81:9, 84:13
**1975** [3] - 84:15, 89:2, 89:14
**1:00** [1] - 56:1
**1:30** [3] - 9:17, 13:15, 56:2

**2**

**2** [29] - 5:12, 38:6, 38:7, 40:18, 41:1, 41:8, 41:12, 41:14, 41:18, 41:20, 41:22, 41:24, 42:4, 43:12, 43:17, 43:20, 43:24, 44:6, 49:3, 49:9, 49:11, 49:14, 49:18, 49:23, 50:2, 50:4, 67:25, 90:19
**20** [1] - 13:9
**2020** [11] - 28:8, 28:19, 28:24, 29:1, 29:15, 29:20, 29:23, 34:21, 40:11
**2021** [2] - 28:22, 29:19
**22** [1] - 29:1
**22-096** [1] - 4:3
**22nd** [8] - 28:8, 28:19, 28:24, 29:15, 29:23, 29:25, 34:21, 40:11
**24** [2] - 67:22, 92:9
**241** [13] - 69:4, 73:22, 75:14, 75:16, 80:23,

85:23, 86:3, 86:7, 86:25, 88:6, 88:11, 88:15, 88:20
**248** [1] - 87:1
**28th** [1] - 93:11
**2:00** [1] - 56:1

**3**

**3** [4] - 5:8, 5:12, 54:7, 67:11
**300** [1] - 87:24
**30th** [1] - 29:19
**32** [1] - 78:11
**360** [2] - 81:8
**371** [7] - 85:19, 85:21, 85:25, 86:5, 88:15, 88:22, 89:4
**3d** [1] - 74:2

**4**

**403** [1] - 74:2
**420** [1] - 89:14
**461** [1] - 74:2
**4:58** [1] - 95:12

**5**

**5** [4] - 10:8, 46:5, 56:24, 66:12
**51** [1] - 73:9
**5:00** [4] - 10:10, 10:11, 10:25, 93:6

**6**

**6** [2] - 46:5
**671** [1] - 89:14
**672** [2] - 81:8
**687** [1] - 81:9
**6:00** [1] - 10:23

**7**

**7** [1] - 46:5
**701** [1] - 78:11
**7th** [2] - 34:21, 40:11

**8**

**86** [1] - 76:8
**87** [1] - 76:16
**883** [1] - 74:12

**9**

**9** [1] - 79:11
**9:00** [2] - 93:24, 95:4

**A**

**A.2d** [1] - 78:11
**abetted** [1] - 41:11
**abetting** [2] - 41:5, 41:12
**ability** [1] - 32:1
**able** [7] - 15:14, 45:7, 47:22, 63:4, 63:5, 63:18, 92:20
**abortion** [7] - 27:23, 27:25, 28:1, 33:18, 37:14, 39:23, 89:24
**abortions** [2] - 28:4, 89:24
**absolute** [2] - 21:5, 30:11
**absolutely** [2] - 70:24, 78:22
**accept** [4] - 16:10, 24:16, 25:17, 28:13
**acceptable** [1] - 22:6
**accepting** [1] - 62:3
**Access** [1] - 38:6
**access** [4] - 38:8, 49:4, 90:3
**accessing** [2] - 37:17, 38:2
**accomplice's** [1] - 25:3
**accomplish** [1] - 28:7
**according** [2] - 5:15, 70:1
**accuracy** [2] - 24:2, 42:22
**accurate** [3] - 23:20, 24:16, 50:19
**accurately** [1] - 23:13
**accused** [1] - 77:22
**accusing** [1] - 31:3
**acquired** [1] - 42:7
**acquittal** [1] - 46:7
**act** [6] - 37:1, 40:17, 40:21, 40:22, 40:23, 41:3
**Act** [13] - 67:25, 68:2, 71:19, 71:20, 76:1, 80:19, 80:22, 82:2, 84:3, 84:19, 86:4, 86:6, 86:16
**acted** [4] - 41:19, 41:21, 42:2, 44:24
**acting** [2] - 36:6, 43:2
**action** [2] - 40:4, 40:6
**actions** [2] - 28:7, 43:3
**actively** [1] - 42:6
**acts** [19] - 28:16, 28:18, 28:20, 29:10, 29:12, 29:14, 29:17,

30:5, 30:7, 30:8, 30:9, 35:22, 36:20, 40:19, 41:10, 42:5, 43:7, 44:12, 44:17
**actual** [4] - 21:17, 71:20, 75:5, 89:10
**add** [2] - 74:24, 85:11
**addition** [4] - 22:16, 51:8, 60:24, 65:6
**additional** [1] - 7:4
**additionally** [1] - 52:17
**address** [3] - 14:20, 71:3, 73:18
**addressed** [1] - 77:18
**addressing** [1] - 77:17
**adequate** [1] - 11:13
**admissible** [2] - 18:16, 26:23
**admitted** [16] - 7:19, 8:7, 16:20, 19:5, 19:7, 22:17, 22:19, 22:22, 22:25, 26:17, 28:10, 28:14, 28:16, 47:11, 47:14, 47:18
**adopt** [1] - 78:23
**advance** [4] - 35:19, 42:7, 42:9, 42:25
**advising** [1] - 52:19
**advocacy** [1] - 17:18
**advocates** [1] - 47:8
**affect** [3] - 24:23, 32:1, 32:3
**affects** [1] - 23:15
**afternoon** [4] - 62:20, 67:2, 68:6, 93:21
**age** [1] - 17:8
**agent** [2] - 26:9, 43:2
**agents** [1] - 36:24
**agree** [13] - 33:11, 33:12, 46:12, 57:18, 57:20, 57:23, 68:8, 70:2, 72:2, 72:19, 91:12
**agreed** [7] - 25:12, 25:13, 35:12, 58:4, 61:3, 61:23, 91:2
**agreeing** [1] - 33:24
**agreement** [23] - 25:11, 25:17, 25:21, 25:23, 26:1, 26:3, 26:5, 34:5, 34:10, 34:11, 34:14, 34:22, 35:1, 35:9, 35:11, 35:14, 35:22, 35:24, 36:2, 36:3, 36:5, 36:7, 36:23
**agreements** [1] - 88:19
**agrees** [3] - 7:18, 8:5,

35:16
**ahead** [2] - 55:25, 79:1
**aided** [2] - 41:10, 41:16
**aiding** [2] - 41:5, 41:12
**aim** [1] - 37:23
**Alexandria** [2] - 13:8, 28:22
**Alfred** [1] - 4:17
**alleged** [9] - 28:22, 29:18, 29:19, 34:20, 35:8, 35:12, 40:12, 40:15, 43:12
**allegedly** [2] - 61:12
**allow** [1] - 32:2
**allowed** [1] - 52:18
**almost** [1] - 93:20
**alone** [5] - 16:21, 16:22, 23:9, 25:19, 32:17
**alter** [1] - 42:10
**alternate** [4] - 54:1, 54:4, 55:23, 67:12
**alternates** [5] - 6:9, 7:2, 7:11, 54:2, 54:9
**ambiguity** [3] - 77:21, 78:2, 78:4
**ambiguous** [2] - 77:21, 77:23
**ammunition** [1] - 70:8
**amount** [1] - 55:12
**announce** [1] - 46:25
**announced** [1] - 47:2
**annoyed** [2] - 12:21, 62:21
**answer** [28] - 5:19, 5:24, 6:2, 6:3, 6:11, 6:13, 6:20, 6:24, 11:19, 13:19, 13:20, 14:17, 15:4, 18:19, 18:21, 18:22, 58:6, 58:19, 61:11, 62:7, 72:13, 90:22, 91:2, 91:12, 91:17, 91:22, 92:11, 92:20
**answered** [3] - 14:16, 18:21, 91:6
**answering** [1] - 5:13
**answers** [1] - 62:7
**anyway** [2] - 73:5, 93:21
**apologize** [1] - 71:10
**appeal** [1] - 63:6
**Appeals** [2] - 78:20, 78:24
**appear** [2] - 19:21, 65:21
**appearing** [1] - 4:22
**appellate** [3] - 61:17,

63:25, 65:16
**applicability** [2] - 89:10, 89:16
**applicable** [4] - 80:7, 80:8, 85:18, 85:25
**application** [1] - 88:22
**applies** [7] - 16:9, 32:16, 32:18, 54:24, 80:5, 86:18, 87:13
**apply** [5] - 15:24, 26:13, 86:5, 86:10, 90:11
**appointed** [1] - 60:17
**appointment** [4] - 7:22, 10:21, 13:5, 66:23
**appointment's** [1] - 67:2
**appointments** [1] - 62:19
**appreciate** [5] - 55:12, 66:9, 81:5, 82:15, 83:15
**approach** [1] - 85:5
**appropriate** [3] - 5:20, 68:20, 76:3
**approval** [1] - 84:14
**area** [1] - 64:18
**arguably** [1] - 90:1
**argue** [1] - 19:25
**arguing** [1] - 84:17
**argument** [4] - 18:11, 19:20, 19:24, 20:3
**arguments** [3] - 15:17, 19:13, 19:16
**arrangements** [4] - 12:25, 93:9, 93:10, 93:12
**arrive** [1] - 17:5
**arrow** [1] - 5:11
**articles** [1] - 90:6
**Ashley** [3] - 38:13, 38:15, 39:24
**asleep** [1] - 22:4
**assertions** [1] - 27:21
**asserts** [1] - 21:16
**assist** [2] - 19:17, 48:20
**associated** [2] - 41:23, 75:5
**associates** [1] - 70:8
**assume** [8] - 10:7, 21:21, 21:25, 30:16, 54:25, 63:12, 64:1, 78:19
**assuming** [3] - 12:24, 90:23
**assumption** [1] - 70:23
**Atlantic** [1] - 78:17

**attempt** [1] - 42:10
**attempted** [1] - 38:14
**attention** [5] - 25:14, 41:7, 42:22, 50:21, 73:4
**attentive** [2] - 54:7, 55:11
**attitude** [1] - 46:21
**attorney** [2] - 18:25, 61:7
**Attorney's** [2] - 59:19, 59:20
**attorneys** [5] - 11:5, 11:22, 18:6, 53:17, 53:18
**attributed** [1] - 43:4
**authority** [1] - 75:1
**automatically** [1] - 53:12
**available** [3] - 31:21, 60:18, 60:20
**avoid** [2] - 47:4, 81:6
**aware** [2] - 17:1, 17:3

**B**

**backed** [1] - 77:9
**bad** [2] - 17:17, 63:18
**bank** [1] - 79:14
**base** [2] - 17:20, 17:23
**based** [8] - 12:11, 14:1, 17:14, 20:1, 21:7, 45:6, 46:19, 49:19
**basis** [2] - 25:19, 26:19
**bear** [3] - 28:6, 45:24, 73:3
**become** [7] - 30:18, 35:15, 35:24, 36:24, 53:18, 55:6, 55:8
**becomes** [1] - 45:14
**begin** [4] - 16:3, 53:25, 65:3, 94:1
**beginning** [8] - 14:15, 30:10, 31:2, 46:21, 47:7, 51:5, 52:8, 59:12
**begins** [1] - 76:17
**begun** [1] - 42:13
**behalf** [1] - 30:19
**behavior** [1] - 23:17
**beings** [1] - 16:24
**belief** [4] - 19:21, 19:23, 19:24, 20:2
**beliefs** [1] - 28:5
**believability** [1] - 16:23
**Bench** [1] - 51:20
**bench** [3] - 70:14,

71:13, 73:5
**benefit** [1] - 21:12
**best** [2] - 71:7, 71:8
**bet** [1] - 63:10
**between** [9] - 24:4, 24:9, 34:20, 36:18, 45:13, 72:10, 76:16, 78:3, 82:20
**beyond** [28] - 10:25, 20:8, 20:12, 20:17, 20:21, 21:2, 21:3, 23:6, 25:20, 29:8, 30:7, 34:3, 35:2, 36:1, 37:7, 38:10, 40:14, 41:2, 41:13, 42:1, 43:10, 43:14, 43:15, 44:23, 48:19, 49:16, 55:15, 56:24
**bias** [1] - 24:22
**biased** [1] - 24:20
**biases** [4] - 16:25, 17:2, 17:4
**big** [1] - 47:22
**binding** [6] - 71:22, 71:23, 73:16, 74:14, 78:24, 79:1
**bit** [3] - 10:5, 14:14, 51:21
**blacked** [3] - 22:18, 22:20, 23:3
**blacked-out** [1] - 23:3
**blah** [5] - 51:23, 69:18
**Blerina** [1] - 4:14
**bless** [1] - 9:11
**blogging** [1] - 51:7
**bodily** [4] - 39:3, 39:9, 79:15, 83:9
**bono** [1] - 63:22
**bopping** [1] - 65:5
**bother** [1] - 9:7
**Boyle** [1] - 4:13
**break** [4] - 10:1, 13:15, 56:10, 88:1
**breaking** [1] - 75:21
**breaks** [3] - 9:23, 56:6, 56:8
**briefly** [5] - 50:23, 85:11, 87:10, 87:12, 87:19
**bring** [15] - 7:3, 10:11, 25:13, 32:4, 40:24, 55:4, 56:2, 56:20, 56:23, 56:25, 93:18, 94:2, 95:8, 95:9
**broad** [10] - 75:15, 75:20, 76:18, 77:25, 80:24, 83:5, 83:22, 84:24, 90:4, 90:5
**broader** [1] - 83:2
**brought** [1] - 72:18

**bunch** [1] - 65:3
**burden** [3] - 20:5, 20:9, 20:20
**Bureau** [1] - 26:9
**business** [1] - 39:20

**C**

**calmly** [1] - 47:6
**canceling** [2] - 12:10, 12:11
**CANNON** [68] - 4:12, 5:20, 6:4, 6:19, 7:16, 7:20, 10:5, 10:17, 11:5, 11:12, 11:15, 11:21, 11:25, 12:4, 12:8, 12:13, 12:15, 60:4, 60:11, 66:11, 70:11, 72:7, 72:13, 72:17, 72:20, 73:14, 73:17, 73:20, 73:24, 74:4, 74:6, 74:11, 74:18, 74:22, 77:16, 78:1, 78:14, 78:17, 78:21, 79:2, 79:7, 79:14, 79:20, 79:23, 80:2, 80:4, 80:9, 80:17, 80:20, 81:5, 81:15, 81:19, 81:22, 82:11, 82:25, 83:4, 83:11, 83:15, 84:2, 84:7, 84:9, 84:21, 87:12, 91:13, 92:23, 92:25, 93:13, 94:16
**Cannon** [8] - 4:12, 10:4, 12:2, 60:1, 87:11, 87:19, 87:22, 94:15
**cannot** [2] - 64:11, 81:10
**capability** [1] - 24:24
**card** [1] - 7:22
**care** [3] - 11:22, 94:12, 95:10
**careful** [1] - 55:13
**carefully** [4] - 15:15, 80:16, 91:4, 91:25
**Caroline** [2] - 25:4, 25:11
**Carr** [1] - 79:11
**CARR** [1] - 79:11
**case** [127] - 15:19, 15:25, 16:9, 16:18, 17:12, 17:14, 17:18, 17:24, 18:1, 18:4, 18:10, 19:6, 19:22, 20:1, 20:4, 20:6, 21:15, 22:13, 23:24, 24:1, 25:13, 26:8, 26:12, 28:17, 28:21,

29:6, 29:9, 29:12, 29:13, 29:17, 30:5, 30:7, 30:9, 30:11, 31:18, 31:20, 32:5, 32:8, 32:10, 32:11, 33:23, 40:13, 45:22, 46:7, 46:19, 46:24, 47:3, 47:6, 47:19, 48:13, 49:16, 50:10, 50:13, 50:16, 50:17, 50:20, 51:2, 51:6, 51:14, 52:24, 53:7, 54:18, 54:20, 55:17, 56:13, 60:17, 60:19, 60:22, 61:8, 61:25, 62:1, 62:4, 62:12, 62:15, 63:22, 64:3, 64:14, 65:4, 65:16, 68:2, 69:12, 69:15, 69:24, 71:7, 71:21, 71:25, 72:16, 73:6, 73:7, 73:9, 74:1, 74:5, 75:1, 75:17, 75:22, 76:2, 76:6, 76:7, 76:19, 76:20, 77:11, 78:10, 78:13, 78:15, 78:16, 78:18, 79:10, 79:14, 79:23, 80:5, 81:7, 81:9, 81:12, 82:6, 84:5, 84:11, 84:13, 85:6, 85:17, 89:1, 89:14, 92:4, 94:7, 94:10
**Case** [1] - 4:3
**cases** [23] - 20:23, 21:1, 21:6, 50:8, 57:4, 73:3, 73:23, 73:25, 75:10, 75:16, 75:18, 75:21, 76:1, 76:5, 77:5, 77:6, 81:3, 84:25, 89:7, 89:9, 89:16, 90:14, 91:19
**caused** [1] - 41:3
**causing** [1] - 40:17
**caution** [2] - 25:8, 26:6
**cautionary** [1] - 50:6
**cautious** [2] - 55:9, 55:13
**cell** [4] - 14:3, 14:8, 67:17, 93:2
**certain** [9] - 27:17, 27:23, 28:4, 29:16, 43:5, 43:16, 46:25, 83:24, 86:12
**certainly** [10] - 5:18, 56:7, 62:12, 79:24, 81:24, 82:2, 82:7, 84:23, 88:19, 90:1

**certainty** [3] - 21:5, 22:11, 40:12
**chance** [3] - 71:11, 84:10, 85:18
**change** [2] - 12:21, 67:7
**changed** [2] - 51:24, 76:7
**changes** [1] - 51:23
**character** [1] - 69:15
**characteristic** [1] - 17:7
**characterize** [1] - 27:17
**charge** [4] - 20:22, 32:3, 36:14, 76:10
**charged** [35] - 15:25, 17:19, 20:14, 21:9, 25:6, 28:18, 28:21, 29:6, 29:8, 29:11, 29:13, 29:17, 30:5, 30:7, 32:8, 36:12, 40:10, 40:18, 41:1, 41:14, 41:18, 41:20, 41:22, 41:24, 42:3, 43:11, 43:17, 43:20, 43:24, 44:5, 86:5, 86:6, 86:7, 87:2, 90:8
**charges** [8] - 23:5, 31:25, 32:14, 32:9, 32:12, 33:23, 38:8, 80:10
**check** [4] - 13:12, 49:1, 49:6, 94:25
**choice** [1] - 6:1
**chose** [2] - 30:16, 54:3
**chosen** [2] - 30:12, 30:20
**circuit** [4] - 74:3, 78:25, 85:1
**Circuit** [14] - 74:8, 76:19, 76:20, 76:22, 76:25, 77:11, 77:12, 77:13, 79:10, 82:5, 82:6, 85:4, 85:5
**circumstances** [7] - 21:19, 24:3, 24:5, 44:12, 44:14, 44:21, 45:24
**circumstantial** [8] - 21:13, 21:15, 21:20, 22:3, 22:5, 22:9, 22:10, 22:15
**cite** [2] - 78:15, 89:13
**cited** [5] - 71:15, 75:16, 76:1, 84:13, 89:1
**citizen** [1] - 76:13
**civil** [2] - 20:23, 76:2

**civility** [1] - 45:9
**CJA** [1] - 60:17
**CJA-appointed** [1] - 60:17
**claims** [3] - 27:23, 35:14, 40:9
**clarified** [1] - 7:9
**clarity** [2] - 5:9, 12:16
**clause** [1] - 80:12
**clauses** [3] - 79:25, 80:4, 80:10
**clear** [2] - 77:4, 91:13
**clearer** [1] - 69:6
**clearly** [1] - 83:25
**clerk** [4] - 45:16, 45:25, 50:22, 54:16
**client** [4] - 11:9, 11:19, 61:3, 61:22
**clients** [1] - 8:18
**clinic** [17] - 5:8, 5:9, 5:15, 5:16, 17:18, 27:18, 27:23, 27:25, 28:4, 28:6, 33:17, 34:1, 38:9, 39:1, 39:14, 49:4, 90:1
**Clinic** [12] - 34:1, 34:8, 34:16, 35:6, 35:10, 37:11, 37:17, 38:7, 38:14, 38:16, 39:25, 51:10
**Clinic's** [1] - 37:25
**clinical** [1] - 5:14
**close** [1] - 62:17
**closed** [1] - 5:16
**closest** [1] - 71:23
**closing** [3] - 15:17, 16:1, 41:7
**closings** [2] - 16:14, 42:21
**co** [4] - 42:20, 61:1, 61:9, 61:13
**co-conspirator** [1] - 42:20
**co-conspirators** [2] - 61:9, 61:13
**co-counsel** [1] - 61:1
**Code** [3] - 85:20, 85:25, 86:2
**colored** [1] - 24:22
**Columbia** [2] - 34:2, 39:22
**coming** [9] - 52:25, 63:3, 75:6, 77:14, 84:9, 93:13, 93:15, 93:23, 95:6
**commanded** [1] - 41:16
**comment** [4] - 9:4, 9:11, 9:12, 64:11
**commentary** [1] -

52:21
**comments** [1] - 77:16
**commission** [3] - 40:20, 41:11, 43:24
**commit** [7] - 33:11, 36:24, 41:4, 41:9, 42:3, 81:10, 86:1
**commits** [2] - 42:23, 42:24
**committed** [14] - 28:18, 28:20, 29:6, 29:14, 29:17, 30:5, 40:10, 40:15, 40:19, 41:15, 42:19, 43:17, 43:20, 44:6
**committing** [2] - 41:24, 43:3
**common** [2] - 34:25, 35:3
**communicate** [5] - 45:15, 45:19, 45:21, 51:5, 54:24
**communicated** [1] - 46:9
**communications** [3] - 45:13, 50:7, 51:7
**compared** [1] - 79:4
**competing** [2] - 82:11, 82:17
**compilation** [2] - 75:1, 75:18
**complement** [1] - 77:13
**complete** [1] - 70:1
**completed** [3] - 41:22, 52:20, 94:11
**completely** [3] - 64:3, 87:25, 88:20
**complicated** [1] - 62:4
**comprehensive** [2] - 87:21, 88:25
**computers** [1] - 74:19
**concept** [1] - 82:17
**concepts** [2] - 82:12, 86:13
**concern** [5] - 12:5, 46:15, 63:2, 72:17, 90:12
**concerned** [4] - 17:15, 17:17, 23:25, 63:17
**concerning** [3] - 19:22, 45:22, 50:10
**concerns** [3] - 28:21, 29:18, 52:25
**concluded** [3] - 26:25, 48:12, 95:12
**conditions** [1] - 43:5
**conduct** [21] - 16:7, 17:19, 28:22, 29:6, 29:8, 29:18, 29:20,

32:15, 40:2, 46:21, 51:8, 51:11, 51:16, 51:17, 75:25, 77:5, 81:2, 82:3, 83:24, 85:1, 92:14
**conference** [1] - 51:20
**confident** [1] - 87:13
**conflate** [2] - 86:23, 87:4
**conflating** [1] - 86:12
**conflict** [9] - 61:10, 61:15, 82:20, 82:23, 82:24, 82:25, 83:3, 83:4
**conflicting** [1] - 72:25
**conflicts** [1] - 61:19
**conform** [1] - 22:23
**confusion** [1] - 81:6
**conscience** [1] - 52:6
**consciously** [1] - 17:3
**consensus** [1] - 70:20
**consequence** [2] - 44:1, 44:4
**consequences** [1] - 44:17
**consider** [42] - 16:11, 17:1, 19:2, 19:4, 19:8, 22:13, 22:25, 23:6, 23:15, 23:16, 24:3, 24:7, 24:8, 24:10, 24:14, 24:17, 24:21, 25:25, 26:2, 27:21, 27:24, 28:2, 29:3, 30:2, 30:23, 31:4, 31:5, 32:5, 32:17, 36:20, 44:12, 44:21, 45:7, 46:20, 47:12, 47:15, 48:3, 52:19, 68:9, 75:9, 89:18
**considerable** [1] - 46:22
**consideration** [5] - 17:11, 17:13, 21:7, 27:10, 45:12
**considered** [9] - 25:7, 26:6, 27:4, 27:19, 29:9, 37:5, 43:1, 46:10, 90:21
**consistent** [1] - 82:7
**consists** [1] - 19:6
**conspiracy** [69] - 33:8, 33:10, 33:12, 34:2, 34:20, 35:12, 35:15, 35:19, 35:21, 35:25, 36:8, 36:10, 36:12, 36:15, 36:18, 36:21, 36:23, 37:2, 37:9, 37:20, 37:24, 40:8, 42:23, 42:24, 43:1,

43:2, 43:5, 43:10, 43:18, 43:22, 44:1, 44:7, 48:24, 73:1, 73:8, 79:9, 79:24, 80:23, 81:4, 81:9, 81:13, 81:17, 81:18, 82:10, 83:6, 83:16, 83:18, 84:12, 84:22, 85:19, 85:20, 85:24, 86:1, 86:3, 86:6, 86:7, 86:10, 87:24, 87:25, 88:3, 88:8, 88:13, 88:16, 88:18, 88:24, 88:25, 89:4, 89:8
**conspiracy's** [1] - 37:4
**conspirator** [3] - 37:3, 42:20, 43:3
**conspirators** [5] - 36:14, 37:3, 37:22, 61:9, 61:13
**conspire** [3] - 68:14, 68:15, 76:12
**conspired** [4] - 29:1, 29:25, 36:17, 37:19
**conspiring** [2] - 33:24, 80:6
**constituting** [3] - 40:19, 41:10, 43:8
**Constitution** [1] - 76:15
**construction** [4] - 78:8, 79:7, 86:13, 86:17
**consult** [1] - 9:13
**contact** [1] - 9:9
**contacted** [1] - 60:15
**contains** [2] - 78:12, 79:3
**contentions** [1] - 19:15
**continue** [3] - 56:12, 56:14, 62:24
**continued** [1] - 42:18
**continues** [1] - 42:15
**contradicted** [1] - 24:17
**contrary** [2] - 13:2, 77:15
**control** [5] - 15:18, 18:9, 82:18, 82:21, 86:16
**controlling** [2] - 16:16, 78:7
**controls** [5] - 5:17, 16:14, 78:9, 79:8, 86:14
**convenience** [1] - 63:9

convenient [1] - 65:4
conversations [1] - 27:18
convey [1] - 48:14
convict [2] - 25:18, 40:25
convicted [1] - 82:14
conviction [3] - 46:6, 46:15, 46:18
convinced [2] - 21:4, 21:8
convinces [1] - 25:19
Cooper [4] - 60:15, 61:24, 61:25, 62:15
cooperation [1] - 25:14
coordinate [1] - 11:6
copies [6] - 15:10, 15:14, 47:24, 57:5, 58:20, 58:21
copy [4] - 15:7, 58:18, 58:22, 74:19
correct [4] - 86:20, 87:16, 91:11, 95:2
correctly [3] - 68:23, 86:25, 87:1
counsel [13] - 4:6, 4:11, 4:20, 16:12, 19:13, 51:19, 52:21, 57:21, 60:16, 60:17, 61:1, 64:1, 65:19
counseled [1] - 41:16
counseling [1] - 39:15
Count [37] - 33:8, 38:6, 38:7, 40:18, 41:1, 41:8, 41:12, 41:14, 41:18, 41:20, 41:22, 41:24, 42:4, 43:11, 43:12, 43:17, 43:18, 43:20, 43:22, 43:24, 44:1, 44:6, 44:7, 48:24, 49:3, 49:9, 49:11, 49:14, 49:18, 49:23, 50:1, 50:2, 50:4, 67:25, 90:19, 92:10
count [9] - 20:22, 32:12, 32:19, 32:22, 32:23, 32:25, 33:1, 43:13, 46:13
counts [3] - 32:11, 33:3, 33:5
couple [4] - 66:21, 77:16, 78:8, 85:16
course [7] - 18:17, 22:16, 26:18, 27:16, 72:20, 74:6, 85:20
Court [41] - 6:16, 6:18, 16:4, 16:13, 17:22, 52:19, 59:9, 60:18,

60:25, 64:24, 65:19, 66:17, 66:18, 67:5, 68:9, 68:13, 71:3, 71:22, 73:2, 74:5, 76:6, 77:17, 78:19, 78:20, 78:24, 79:2, 84:14, 84:25, 85:23, 86:19, 88:22, 89:1, 89:2, 89:19, 90:11, 91:5, 91:6, 92:7, 92:11
COURT [161] - 4:10, 4:15, 4:19, 4:23, 5:1, 5:4, 5:23, 6:6, 6:17, 6:21, 7:17, 7:25, 8:9, 8:21, 9:16, 10:4, 10:8, 10:19, 11:7, 11:14, 11:16, 11:23, 12:1, 12:5, 12:9, 12:14, 12:19, 13:11, 14:4, 14:9, 14:11, 14:19, 51:21, 52:7, 52:14, 52:23, 53:22, 53:24, 55:24, 58:2, 58:13, 58:17, 59:2, 59:10, 59:17, 59:22, 59:24, 60:1, 60:8, 60:13, 60:21, 61:6, 61:17, 61:25, 62:11, 63:2, 63:8, 63:16, 63:23, 64:7, 64:19, 65:1, 65:8, 65:11, 65:21, 66:3, 66:7, 66:10, 66:13, 66:20, 67:7, 67:10, 67:16, 67:21, 68:12, 68:17, 68:21, 69:1, 69:5, 69:11, 69:14, 69:23, 70:9, 70:13, 70:19, 70:22, 70:25, 71:6, 71:12, 71:18, 72:4, 72:12, 72:15, 72:19, 73:11, 73:15, 73:18, 73:21, 74:3, 74:5, 74:10, 74:13, 74:21, 74:23, 75:3, 75:12, 77:23, 78:13, 78:16, 78:19, 78:22, 79:6, 79:12, 79:16, 79:22, 80:1, 80:3, 80:8, 80:15, 80:18, 80:21, 81:13, 81:17, 81:20, 81:23, 82:23, 83:1, 83:10, 83:12, 83:19, 84:3, 84:8, 84:16, 84:22, 85:12, 87:6, 87:15, 87:23, 88:5, 88:8, 88:13, 89:4, 89:6, 89:15, 90:5, 90:13, 90:18, 91:2, 91:10, 91:12, 91:17,

91:25, 92:3, 92:24, 93:1, 93:5, 93:15, 93:20, 94:15, 94:18, 94:22
court [12] - 8:20, 9:4, 21:23, 27:17, 45:3, 45:16, 45:23, 46:3, 53:23, 56:19, 74:6, 78:18
Court's [4] - 66:9, 68:7, 73:4, 94:16
courthouse [5] - 8:17, 14:6, 64:18, 92:22, 95:3
COURTROOM [2] - 4:3, 59:1
courtroom [10] - 4:22, 8:13, 14:20, 17:5, 50:14, 54:5, 64:12, 65:22, 92:21, 94:2
courts [1] - 78:23
cover [8] - 14:14, 60:18, 60:19, 60:21, 75:24, 77:5, 84:24, 92:13
coverage [1] - 50:11
covers [4] - 81:2, 82:3, 83:23, 85:1
COVID [1] - 55:6
CRABB [31] - 4:8, 6:16, 6:18, 7:21, 8:8, 8:19, 9:15, 10:3, 59:8, 59:16, 59:20, 59:23, 59:25, 68:6, 68:13, 68:19, 68:23, 69:2, 69:9, 69:21, 70:17, 70:20, 70:24, 71:2, 71:10, 71:17, 72:3, 85:16, 91:1, 91:5, 91:11
Crabb [8] - 4:8, 59:5, 68:5, 70:9, 71:1, 72:9, 85:14, 90:25
CRAMPTON [3] - 12:16, 74:8, 91:24
Crampton [3] - 4:13, 61:2, 94:17
credibility [7] - 16:22, 19:22, 23:4, 23:8, 23:11, 23:16, 26:12
credit [3] - 24:10, 24:18, 31:11
crime [20] - 21:9, 31:3, 33:11, 36:4, 36:24, 40:18, 42:5, 42:7, 42:9, 42:13, 42:14, 42:15, 42:19, 42:23, 42:25, 43:4, 43:6, 43:12, 44:2, 79:19
crime's [1] - 41:11

crimes [1] - 32:14
criminal [8] - 20:5, 21:1, 21:6, 30:11, 40:22, 42:6, 77:20, 81:11
Criminal [1] - 4:3
crossed [1] - 67:18
CSO [2] - 45:25, 57:10
cumulative [1] - 31:23

**D**

D.C [9] - 76:20, 77:11, 77:12, 78:19, 78:20, 78:24, 79:10, 82:6, 85:5
date [3] - 40:12, 40:15
Davis [3] - 25:4, 25:11, 25:12
Davis's [1] - 25:14
daycare [1] - 10:9
daytime [1] - 54:12
deal [5] - 6:7, 7:12, 53:19, 58:13, 73:8
dealing [3] - 72:24, 82:19, 85:25
deals [1] - 85:19
dealt [1] - 73:8
decide [21] - 10:22, 13:3, 16:20, 16:21, 16:22, 17:12, 17:13, 18:1, 22:8, 23:1, 29:4, 29:5, 29:7, 30:3, 30:4, 30:6, 31:11, 44:20, 50:13, 67:1, 89:23
decided [2] - 13:2, 64:3
deciding [2] - 50:17, 51:14
decision [7] - 30:13, 32:4, 49:15, 62:22, 76:24, 87:20, 93:6
decisions [2] - 30:15, 63:24
deemed [1] - 37:1
DEFENDANT [1] - 94:21
defendant [76] - 20:5, 20:7, 20:10, 20:14, 20:15, 20:21, 21:8, 21:11, 23:5, 28:20, 30:10, 30:16, 30:18, 30:22, 32:13, 32:20, 32:21, 32:24, 32:25, 34:9, 34:13, 34:14, 34:20, 35:8, 35:11, 35:12, 35:20, 35:22, 35:23, 36:5, 36:8, 36:15, 36:17, 36:19,

37:18, 38:11, 38:12, 38:15, 38:24, 40:4, 40:6, 40:17, 40:21, 41:3, 41:8, 41:9, 41:11, 41:16, 41:19, 41:21, 41:23, 42:2, 42:5, 42:6, 42:8, 42:17, 42:18, 43:6, 43:10, 43:12, 44:6, 44:13, 44:24, 46:14, 48:23, 48:25, 49:1, 49:4, 49:7, 49:8, 49:10, 49:11, 49:18, 50:3, 57:14, 82:14
defendant's [5] - 30:25, 31:5, 35:11, 37:8, 40:2
defendants [22] - 20:19, 25:6, 25:18, 26:4, 28:17, 29:13, 29:16, 30:8, 32:10, 33:2, 33:4, 33:23, 36:22, 37:15, 38:8, 40:25, 48:22, 49:22, 49:24, 61:12, 61:19, 62:6
defendants' [4] - 17:18, 21:4, 25:20, 30:15
defense [5] - 31:16, 70:18, 70:21, 86:12, 86:20
defer [2] - 6:16, 6:18
define [3] - 71:4, 73:1, 85:2
defined [7] - 43:14, 51:12, 72:23, 78:6, 79:18, 88:14, 91:4
defines [2] - 79:10, 83:20
definitely [2] - 66:3, 66:11
definition [18] - 72:24, 73:3, 74:25, 75:20, 75:23, 76:22, 78:1, 78:7, 79:4, 79:15, 79:18, 79:20, 81:25, 83:21, 84:18, 84:19, 90:9, 90:23
definitions [8] - 68:1, 68:16, 68:24, 71:20, 72:25, 75:2, 81:3, 81:4
defraud [1] - 88:3
degree [6] - 22:11, 61:19, 61:20, 72:8, 77:11, 81:11
deliberate [5] - 10:20, 12:17, 51:3, 56:7, 93:8

**deliberating** [7] - 10:1, 10:2, 10:7, 10:18, 56:5, 56:12, 94:3
**deliberations** [28] - 15:19, 16:2, 18:9, 18:23, 19:4, 44:25, 45:2, 45:14, 45:15, 46:16, 46:22, 47:7, 48:1, 48:13, 51:5, 51:9, 51:17, 52:20, 54:1, 55:1, 56:15, 57:1, 62:21, 66:1, 66:17, 94:1, 94:9, 95:6
**demeanor** [1] - 23:17
**Dennis** [1] - 4:13
**deny** [1] - 62:23
**deprive** [1] - 37:24
**DEPUTY** [2] - 4:3, 59:1
**described** [1] - 23:13
**describes** [1] - 76:9
**description** [2] - 77:9, 80:19
**deserve** [1] - 17:6
**deserves** [3] - 25:9, 26:7, 31:1
**desire** [1] - 24:23
**despite** [1] - 72:21
**detailed** [4] - 43:18, 43:22, 44:1, 44:7
**details** [3] - 24:6, 34:23, 35:12
**determination** [1] - 46:25
**determine** [6] - 16:18, 17:10, 21:14, 23:9, 24:22, 27:4
**determined** [3] - 31:8, 32:15, 49:22
**determining** [4] - 23:4, 24:16, 36:18, 44:22
**develop** [1] - 18:3
**dictionary** [2] - 75:2, 75:3
**difference** [1] - 72:10
**differences** [1] - 24:12
**different** [35] - 16:5, 16:15, 18:7, 26:1, 33:4, 33:5, 47:16, 62:3, 62:7, 64:14, 73:9, 75:1, 76:2, 78:23, 79:17, 79:18, 80:25, 81:18, 82:13, 83:19, 84:23, 86:15, 86:17, 87:3, 87:23, 87:24, 87:25, 88:8, 88:13, 88:17, 88:20, 92:4
**differently** [2] - 10:5,

16:13
**difficult** [2] - 38:23, 85:2
**direct** [10] - 21:13, 21:15, 21:17, 21:24, 22:5, 22:9, 22:12, 22:14, 27:16, 73:4
**directly** [3] - 40:23, 43:7, 44:9
**disability** [1] - 17:9
**disagree** [2] - 57:21, 90:13
**disappearing** [1] - 14:11
**disbelieved** [1] - 30:21
**discomfort/pain** [1] - 5:10
**discuss** [11] - 15:24, 38:6, 50:21, 50:23, 54:20, 56:13, 58:3, 70:23, 73:12, 75:19, 75:23
**discussed** [3] - 42:21, 75:21, 80:25
**discussing** [2] - 47:6, 89:10
**discussion** [9] - 41:6, 47:3, 53:17, 64:6, 64:15, 71:8, 81:24, 92:5
**discussions** [2] - 45:8, 53:1
**disguise** [1] - 80:6
**dislikes** [1] - 16:25
**disputes** [1] - 59:2
**disregard** [1] - 20:3
**disrupt** [1] - 35:9
**distilled** [2] - 75:25, 77:9
**distinguish** [1] - 91:15
**distracted** [2] - 6:4, 14:22
**district** [1] - 74:6
**District** [5] - 34:1, 39:22, 52:18, 74:5, 75:17
**divided** [3] - 15:20, 46:4, 46:5
**doctor's** [3] - 10:20, 13:5, 66:22
**document** [1] - 22:20
**done** [17] - 10:24, 17:25, 27:19, 36:22, 36:25, 39:7, 40:17, 40:22, 40:23, 41:3, 44:13, 51:24, 58:25, 61:7, 64:8, 87:9, 94:20
**door** [2] - 56:19, 56:20

**Dorothy** [1] - 58:13
**doubt** [30] - 20:9, 20:13, 20:18, 20:20, 20:22, 21:2, 21:3, 21:7, 21:12, 23:6, 25:20, 29:8, 30:7, 34:4, 35:3, 36:1, 37:8, 38:10, 40:14, 41:2, 41:13, 42:2, 43:10, 43:15, 43:16, 44:23, 48:19, 49:16, 70:17, 70:20
**down** [6] - 34:23, 54:12, 74:15, 75:22, 90:15
**draw** [3] - 19:9, 31:6, 31:20
**drawn** [1] - 21:19
**drive** [2] - 7:12, 7:18
**drives** [2] - 8:6, 47:21
**DUNN** [15] - 4:21, 5:21, 58:12, 60:14, 60:24, 61:15, 61:23, 62:9, 62:23, 63:7, 63:13, 63:22, 64:5, 69:13, 74:24
**Dunn** [6] - 4:21, 12:6, 58:11, 60:13, 61:14, 65:13
**during** [20] - 16:14, 16:20, 18:9, 18:17, 19:4, 19:20, 19:24, 19:25, 20:3, 22:16, 27:16, 42:24, 43:20, 44:20, 45:13, 45:14, 47:25, 51:5, 51:9, 51:17
**duty** [6] - 16:10, 17:20, 17:22, 20:14, 20:18, 46:17

**E**

**easier** [2] - 8:14, 64:21
**east** [1] - 74:7
**Eastern** [2] - 52:18, 75:17
**easy** [2] - 64:8, 91:18
**eating** [2] - 9:7, 13:14
**ed** [1] - 89:23
**edits** [4] - 58:8, 58:14, 58:20, 58:23
**education** [1] - 17:10
**effect** [1] - 74:14
**efficient** [1] - 16:8
**Eighth** [7] - 76:19, 76:22, 76:25, 77:11, 77:13, 82:5, 85:4
**either** [21] - 6:10, 6:15, 9:10, 13:22, 13:25,

24:20, 26:14, 30:13, 31:9, 31:16, 33:2, 34:10, 40:3, 40:4, 46:14, 49:10, 50:21, 61:24, 65:2, 79:16, 82:14
**elapsed** [1] - 24:4
**electronic** [1] - 51:7
**electronically** [1] - 51:18
**element** [17] - 20:13, 20:17, 34:19, 35:2, 35:7, 37:7, 37:19, 37:22, 38:18, 39:2, 39:8, 39:12, 40:3, 41:2, 41:17, 91:7
**elements** [9] - 15:25, 33:9, 34:3, 38:10, 41:13, 43:13, 43:16, 48:18, 88:20
**email** [2] - 51:7, 58:22
**emotion** [1] - 37:23
**employee** [1] - 37:16
**employees** [9] - 33:17, 33:25, 34:7, 34:15, 35:5, 35:9, 37:11, 37:25, 38:13
**employees'** [1] - 39:25
**encourage** [1] - 45:9
**end** [19] - 6:1, 6:22, 8:25, 9:17, 10:16, 12:17, 13:3, 13:9, 13:11, 13:15, 14:16, 33:7, 54:22, 55:2, 56:22, 57:2, 62:17, 65:3, 66:3
**enforcement** [3] - 26:8, 26:10, 26:16
**enjoinment** [1] - 76:13
**enjoy** [1] - 56:7
**enjoyment** [3] - 77:7, 82:5, 92:15
**enormous** [1] - 55:12
**enter** [4] - 25:16, 35:22, 36:23, 46:16
**entered** [6] - 25:11, 25:21, 26:1, 26:3, 26:5, 54:5
**entering** [1] - 46:23
**enterprise** [1] - 42:11
**entirely** [2] - 44:19, 54:2
**entitled** [3] - 19:12, 25:1, 32:13
**entrance** [2] - 38:21, 38:25
**Entrances** [1] - 38:7
**equal** [1] - 22:10
**equally** [2] - 31:21, 87:14

**especially** [2] - 62:19, 83:6
**establish** [1] - 40:12
**established** [1] - 43:14
**establishes** [1] - 40:14
**ethnic** [1] - 17:8
**evaluated** [1] - 26:11
**evaluating** [4] - 23:11, 24:2, 26:12, 30:22
**evening** [3] - 93:20, 93:21, 93:22
**event** [7] - 24:3, 24:4, 24:6, 26:14, 46:15, 46:17, 81:12
**events** [1] - 24:5
**evidence** [96] - 8:3, 8:4, 15:16, 16:20, 16:22, 17:11, 17:24, 18:7, 18:8, 18:12, 18:15, 18:20, 18:24, 19:3, 19:5, 19:7, 19:8, 19:11, 19:15, 19:17, 19:18, 19:19, 20:1, 20:4, 20:11, 20:25, 21:8, 21:13, 21:14, 21:15, 21:16, 21:18, 21:20, 21:24, 22:3, 22:6, 22:7, 22:9, 22:11, 22:12, 22:14, 22:17, 23:2, 24:10, 24:18, 25:10, 26:11, 26:17, 26:23, 28:14, 28:16, 28:19, 28:21, 28:23, 28:25, 29:2, 29:3, 29:4, 29:9, 29:15, 29:18, 29:21, 29:23, 30:1, 30:2, 30:3, 31:4, 31:5, 31:8, 31:10, 32:5, 32:16, 32:18, 36:21, 37:2, 37:5, 40:13, 42:1, 44:14, 44:20, 44:22, 45:7, 45:9, 45:11, 45:12, 46:19, 47:11, 48:13, 50:13, 60:23, 64:10, 64:11, 65:25
**exact** [1] - 40:12
**exactly** [2] - 57:6, 73:18
**examination** [1] - 27:16
**examine** [3] - 22:24, 47:12, 47:15
**example** [8] - 21:21, 23:16, 27:6, 27:12, 27:20, 27:22, 28:4, 46:4

except [5] - 28:6, 45:20, 45:22, 56:13, 68:8
exceptions [1] - 26:22
exclusive [1] - 18:5
exclusively [1] - 46:18
excuse [10] - 9:18, 54:1, 54:7, 55:19, 56:23, 66:14, 81:23, 93:18, 93:22
excused [1] - 10:14
excusing [3] - 62:13, 62:14, 62:22
exercise [7] - 30:12, 30:20, 33:14, 76:13, 77:7, 82:4, 92:15
exercising [2] - 37:25, 69:16
exerted [2] - 38:19, 91:8
exhibit [2] - 22:19, 22:21
exhibits [19] - 7:14, 7:21, 8:6, 19:3, 19:6, 22:16, 22:17, 22:24, 23:1, 31:7, 31:9, 31:12, 31:14, 47:11, 47:13, 47:18, 58:4, 58:14, 58:24
exist [2] - 42:12, 81:10
existed [2] - 36:19, 36:23
existence [3] - 37:4, 42:24, 43:21
exists [3] - 35:1, 54:19, 82:19
exit [2] - 38:21, 38:25
expect [2] - 12:2, 95:11
expectation [2] - 39:3, 39:9
expected [1] - 63:20
experience [4] - 13:24, 19:11, 53:2, 53:14
experiencing [1] - 5:11
explain [3] - 33:7, 33:9, 33:22
explanation [1] - 32:9
expressed [2] - 18:2, 20:2
expression [2] - 17:9, 20:3, 46:24
extent [2] - 23:10, 28:6
eyewitness [1] - 21:16

**F**

FACE [30] - 38:7, 67:25, 68:2, 71:19, 71:20, 72:23, 73:3, 75:15, 75:22, 76:1, 78:6, 78:7, 79:9, 80:19, 80:22, 82:2, 82:20, 83:5, 83:10, 83:11, 83:17, 83:18, 83:20, 84:3, 84:5, 84:19, 86:4, 86:6, 86:16
face [2] - 78:2, 83:8
facilitate [3] - 41:19, 42:5, 45:8
facility [3] - 38:21, 38:23, 39:15
fact [13] - 15:7, 18:25, 19:1, 19:2, 20:24, 21:17, 22:6, 27:11, 27:25, 30:23, 32:21, 35:23, 72:21
facts [13] - 16:18, 16:19, 17:11, 17:14, 17:23, 19:9, 19:22, 21:14, 21:18, 23:1, 44:13, 44:20, 47:9
failed [1] - 20:16
failure [1] - 31:18
fair [7] - 16:7, 17:6, 17:11, 32:1, 32:6, 45:6, 45:12
fairly [3] - 19:12, 25:1, 90:5
falling [2] - 21:22, 21:24
false [1] - 25:24
falsehood [1] - 24:12
falsely [1] - 26:4
falsity [1] - 28:13
familiar [1] - 94:23
far [4] - 8:15, 11:21, 60:8, 71:7
fashion [1] - 46:6
fast [1] - 81:16
favor [2] - 22:7, 77:21
favorably [1] - 89:2
favoritism [1] - 17:13
fear [2] - 17:12, 83:9
Federal [1] - 26:9
federal [3] - 78:16, 78:24, 78:25
Feola [3] - 89:3, 89:13, 92:4
FEOLA [1] - 89:14
few [2] - 7:23, 21:4
figure [2] - 74:15, 75:8
figured [1] - 60:1
fill [1] - 57:6

finally [1] - 16:1
findings [3] - 49:7, 50:3, 50:5
Findings [1] - 90:19
fine [10] - 9:23, 14:25, 15:10, 61:3, 61:23, 64:19, 65:11, 92:22, 94:18, 94:21
fingers [1] - 67:18
finish [2] - 54:9, 55:16
finished [2] - 56:11, 67:2
firmly [2] - 21:4, 21:8
first [16] - 9:20, 15:21, 16:3, 33:9, 34:11, 34:19, 35:1, 38:18, 40:7, 45:1, 53:15, 80:14, 85:17, 91:7, 91:23, 95:1
fit [1] - 90:9
fits [1] - 91:10
fixed [1] - 58:21
flash [1] - 47:21
flexibility [1] - 66:9
flight [2] - 62:24, 62:25
fly [1] - 63:15
flying [1] - 65:11
follow [3] - 16:12, 48:4, 87:19
following [7] - 27:6, 34:3, 38:10, 41:13, 49:9, 92:7, 92:11
force [14] - 12:20, 37:9, 38:1, 38:2, 38:11, 38:18, 49:12, 49:19, 62:20, 67:7, 90:19, 90:20, 91:7, 91:16
forceful [1] - 90:20
foreknowledge [1] - 42:17
foreperson [12] - 8:2, 9:22, 45:2, 45:4, 45:7, 45:18, 56:4, 57:11, 57:12, 57:13, 57:19, 57:24
foreseeable [2] - 43:25, 44:4
forgotten [1] - 7:5
form [12] - 14:12, 22:7, 33:5, 33:6, 48:11, 48:12, 48:13, 48:16, 48:19, 48:21, 57:6
formal [2] - 31:3, 34:22
formative [1] - 86:8
forth [1] - 65:5
four [1] - 44:5
frame [1] - 56:25

frankly [2] - 12:9, 13:14, 52:16, 53:2, 61:6, 63:2, 63:17, 63:20, 74:14, 76:3, 90:6
free [6] - 33:14, 38:1, 48:7, 52:21, 55:20, 76:13
Freedom [1] - 38:6
freedom [1] - 39:11
friendship [1] - 23:25
frighten [3] - 77:6, 82:4, 92:14
full [3] - 23:22, 45:12, 76:9
function [2] - 16:7, 16:17
functions [1] - 16:17
furtherance [2] - 36:25, 43:21
furthermore [1] - 47:3

**G**

gain [1] - 23:24
gained [1] - 42:14
gender [1] - 17:9
general [9] - 15:21, 16:3, 78:9, 79:3, 85:19, 85:25, 86:14, 87:13, 88:16
generalized [1] - 84:20
generally [7] - 16:25, 28:9, 47:20, 53:3, 56:1, 56:25
Geraghty [7] - 4:5, 5:1, 5:3, 13:7, 30:20, 52:4, 87:18
given [5] - 15:4, 17:21, 47:14, 48:17, 78:14
goal [1] - 17:5
goals [2] - 42:25, 43:21
God [1] - 9:11
Goodman [7] - 4:5, 4:23, 4:25, 29:16, 29:24, 30:5, 30:12
Goodman's [2] - 29:19, 29:22
government [41] - 4:7, 20:8, 20:12, 20:16, 20:20, 23:5, 25:4, 25:10, 25:12, 25:13, 25:16, 26:3, 28:19, 29:7, 29:15, 30:6, 31:16, 34:2, 34:18, 35:2, 35:7, 35:14, 35:25, 36:16, 37:7, 37:15, 38:9, 41:1,

41:12, 43:9, 44:23, 48:19, 49:15, 76:19, 83:17, 85:10, 86:21, 87:7, 87:16
government's [4] - 21:1, 29:4, 30:3, 32:4
graft [1] - 86:23
greater [4] - 22:11, 26:14, 31:13, 31:14
ground [2] - 22:1, 22:2
grounds [3] - 49:9, 49:12, 49:21
group [2] - 11:14, 74:16
guaranteed [2] - 77:8, 92:15
guess [1] - 93:20
guidelines [1] - 26:13
GUILLAUME [5] - 4:17, 66:16, 67:5, 67:9, 67:15
Guillaume [1] - 4:18
guilt [6] - 21:4, 25:20, 31:5, 31:6, 32:14, 49:22
guilty [39] - 20:8, 20:15, 20:19, 20:21, 21:9, 21:11, 21:12, 30:16, 32:21, 32:22, 33:2, 33:3, 40:18, 41:8, 41:12, 43:6, 43:10, 43:12, 49:1, 49:5, 49:8, 49:11, 49:12, 49:13, 49:17, 49:18, 49:20, 49:21, 50:2, 50:4
gut [1] - 6:19

**H**

half [1] - 13:19
hand [8] - 20:16, 21:10, 21:18, 30:18, 34:24, 54:12, 54:13, 56:20
handled [2] - 5:22, 61:8
handwritten [1] - 58:18
Handy [2] - 4:4, 4:13
HANDY [1] - 94:21
handy [14] - 4:11, 11:23, 27:22, 28:3, 28:20, 29:1, 29:5, 29:10, 29:16, 29:24, 30:4, 30:19, 94:19
Handy's [5] - 28:5, 28:21, 28:23, 29:18, 29:21

**handy's** [2] - 27:16, 27:24
**hang** [9] - 8:12, 11:10, 13:21, 59:11, 60:5, 63:20, 64:21, 92:18, 92:20
**happily** [2] - 54:7, 55:7
**happy** [2] - 11:23, 61:9
**hard** [1] - 83:24
**harm** [7] - 39:3, 39:9, 77:6, 79:15, 82:3, 83:9, 92:14
**hazardous** [1] - 38:23
**heads** [1] - 15:2
**health** [17] - 33:17, 33:18, 34:1, 34:17, 37:13, 37:18, 38:3, 38:9, 38:17, 38:22, 39:13, 39:19, 39:21, 39:24, 40:1, 40:5
**healthy** [1] - 54:6
**hear** [7] - 14:16, 14:21, 15:12, 28:11, 85:6, 85:10, 93:13
**heard** [9] - 15:17, 15:23, 25:3, 25:10, 26:8, 26:19, 27:17, 28:11, 92:17
**hearing** [2] - 6:3, 70:15
**hearsay** [11] - 26:18, 26:20, 26:22, 26:24, 27:1, 27:3, 27:9, 27:12, 27:15, 27:19
**Heather** [2] - 4:4, 4:22
**held** [8] - 4:2, 14:18, 29:11, 30:9, 53:23, 58:1, 93:19, 94:14
**help** [5] - 19:14, 45:8, 89:6, 89:7, 91:14
**helpful** [2] - 41:25, 76:4
**helping** [1] - 42:3
**helps** [4] - 29:5, 30:4, 36:6, 91:15
**Herb** [1] - 4:5
**herself** [1] - 24:20
**hesitant** [1] - 56:17
**hesitate** [1] - 47:2
**high** [2] - 83:9, 83:17
**higher** [2] - 83:8, 83:13
**him'** [1] - 76:14
**hinder** [2] - 34:14, 37:10
**Hinshaw** [4] - 4:4, 4:16, 4:18, 30:12
**hold** [5] - 18:13, 30:13, 63:25, 66:7,

83:1
**home** [2] - 55:21, 62:24
**Honor** [43] - 4:8, 4:17, 4:21, 4:24, 5:2, 5:7, 6:16, 7:21, 8:8, 8:19, 10:3, 12:16, 13:6, 13:8, 52:3, 52:17, 53:21, 64:17, 65:7, 65:9, 65:19, 66:2, 66:16, 67:15, 68:6, 69:21, 70:18, 71:2, 71:10, 71:17, 72:3, 74:9, 77:16, 85:11, 85:16, 87:17, 87:19, 88:21, 89:5, 89:17, 90:10, 91:1, 91:5
**hopefully** [3] - 57:15, 60:8, 62:16
**hospital** [1] - 39:14
**hostility** [1] - 23:25
**hotel** [1] - 60:4
**hour** [3] - 13:10, 13:19, 65:10
**Howard** [3] - 4:24, 78:11, 78:14
**human** [2] - 16:24, 39:16

# I

**idea** [3] - 72:4, 86:9, 86:13
**identification** [1] - 47:14
**identify** [1] - 4:6
**identity** [2] - 17:9, 35:13
**Idoni** [6] - 4:4, 4:20, 4:22, 12:6, 30:19, 65:14
**ignore** [5] - 16:12, 18:3, 18:18, 18:22, 48:4
**illegal** [2] - 35:23, 43:3
**immediate** [1] - 64:18
**impartial** [3] - 17:6, 32:1, 32:6
**impassable** [1] - 38:20
**impeded** [2] - 33:20, 33:22
**implicate** [1] - 22:23
**implicit** [1] - 17:2
**implies** [1] - 88:25
**importance** [1] - 46:22
**important** [4] - 19:14, 48:5, 81:7, 94:24
**importantly** [1] - 78:5
**imposing** [1] - 46:17

**impresses** [2] - 23:19, 23:20
**improbability** [1] - 24:15
**improper** [1] - 30:14
**inadmissible** [1] - 22:22
**inadvertently** [2] - 50:20, 50:25
**inclined** [3] - 52:20, 52:24, 90:11
**included** [1] - 46:9
**includes** [4] - 39:15, 39:19, 51:6, 52:10
**including** [7] - 22:22, 24:3, 28:15, 32:3, 33:18, 37:13, 39:17
**income** [1] - 17:10
**inconsistencies** [3] - 24:7, 24:9, 24:11
**incorporate** [1] - 91:14
**independent** [2] - 51:8, 51:16
**independently** [1] - 51:15
**indicate** [15] - 6:22, 14:14, 44:14, 46:2, 46:5, 46:8, 48:8, 49:17, 49:19, 68:2, 75:24, 83:24, 85:1, 85:3
**indicated** [5] - 18:2, 40:8, 57:24, 61:1, 67:21
**indicating** [1] - 18:1
**indictment** [19] - 29:11, 31:2, 31:4, 32:12, 32:20, 32:22, 32:24, 33:1, 33:3, 33:23, 36:14, 40:9, 41:9, 43:11, 43:13, 43:19, 43:23, 44:2, 44:7
**individual** [1] - 42:15
**individual's** [1] - 22:23
**individually** [1] - 70:16
**individuals** [1] - 43:4
**induced** [1] - 41:16
**infer** [4] - 42:17, 44:11, 44:16
**inference** [3] - 31:6, 31:19, 31:20
**inferences** [2] - 19:10, 21:19
**infinite** [1] - 89:20
**influence** [3] - 32:23, 32:24, 46:16

**information** [4] - 51:13, 53:6, 55:20, 76:10
**Ingram** [1] - 81:8, 84:11, 85:6, 85:17, 85:19, 85:24, 86:5, 86:8, 87:20, 88:22, 92:3
**initial** [2] - 47:4, 49:15
**injure** [17] - 33:13, 33:24, 34:6, 35:4, 68:14, 69:2, 69:9, 69:17, 69:22, 70:2, 72:14, 76:12, 80:1, 80:3, 80:11, 80:12
**injured** [1] - 38:12
**injurious** [1] - 69:7
**innocence** [2] - 20:6, 20:11
**innocent** [1] - 20:6
**instance** [2] - 13:5, 27:2
**instead** [9] - 6:3, 27:2, 35:22, 69:7, 69:8, 69:9, 69:21, 70:15, 91:22
**instruc** [1] - 6:7
**instruct** [7] - 15:18, 16:9, 16:10, 40:9, 41:5, 54:20, 68:13
**instructed** [9] - 28:5, 28:9, 33:16, 33:20, 39:21, 69:3, 86:22, 86:25, 91:6
**instruction** [15] - 26:18, 28:15, 38:4, 40:8, 41:7, 42:22, 50:6, 51:4, 52:6, 52:10, 68:8, 69:4, 74:25, 87:7, 89:19
**Instruction** [2] - 67:22, 92:9
**instructions** [30] - 5:25, 6:8, 14:21, 14:23, 15:5, 15:7, 15:8, 15:12, 15:19, 15:24, 16:11, 16:14, 17:21, 28:15, 41:6, 43:14, 47:25, 48:2, 48:3, 48:7, 48:9, 48:16, 48:18, 54:23, 58:9, 74:19, 87:2, 87:3
**Instructions.............. ..................... [1] - 3:3
**instructs** [1] - 40:16
**integral** [1] - 39:20
**intended** [9] - 19:14, 19:17, 28:7, 34:14,

44:3, 77:6, 82:3, 92:14
**intends** [1] - 44:17
**intent** [19] - 28:23, 29:22, 35:18, 37:8, 39:1, 41:4, 41:19, 42:3, 42:5, 44:8, 44:11, 44:14, 69:17, 81:11, 81:23, 81:24, 85:21, 86:9, 89:1
**intentional** [1] - 24:12
**intentionally** [8] - 34:9, 35:8, 35:18, 36:1, 38:12, 44:18, 44:19, 63:19
**interchangeable** [1] - 81:1
**intercom** [2] - 7:3, 51:19
**interest** [5] - 23:23, 24:21, 26:1, 30:23, 62:6
**interesting** [1] - 77:19
**interests** [1] - 34:25
**interfere** [6] - 34:15, 37:10, 39:4, 39:5, 39:7, 39:10
**interfered** [1] - 38:13
**internet** [3] - 50:10, 51:18, 54:23
**interpretation** [2] - 89:21, 89:22
**interpretations** [2] - 64:13, 89:21
**interprets** [1] - 71:21
**intimidate** [28] - 33:13, 33:25, 34:7, 35:5, 39:2, 39:8, 67:24, 68:11, 68:14, 68:15, 68:16, 68:25, 69:2, 69:8, 69:11, 69:19, 71:5, 72:11, 72:14, 76:12, 76:23, 77:3, 79:11, 79:15, 79:21, 83:7, 83:8, 92:9
**intimidate'** [1] - 92:12
**intimidated** [1] - 38:12
**intimidation** [3] - 69:3, 72:22, 73:2
**investigation** [2] - 51:9, 51:16
**Investigation** [1] - 26:9
**invite** [1] - 45:10
**involve** [3] - 76:1, 76:5, 79:12
**involved** [5] - 34:23, 35:4, 36:9, 80:10, 83:25
**involves** [1] - 63:9

**involving** [2] - 32:10, 36:15
**irrelevant** [1] - 28:6
**issue** [25] - 7:5, 12:7, 27:18, 31:8, 31:17, 32:14, 46:7, 48:8, 53:19, 55:6, 61:17, 62:3, 62:5, 63:6, 63:25, 65:16, 65:23, 77:1, 79:12, 82:10, 84:23, 84:24, 89:8, 89:11
**issues** [3] - 10:9, 52:24, 94:11
**item** [1] - 91:14
**itself** [5] - 32:1, 36:7, 48:13, 66:5, 81:12

## J

**January** [1] - 29:19
**Jasari** [1] - 4:14
**Jersey** [1] - 29:20
**John** [7] - 4:4, 4:8, 4:18, 5:2, 13:6, 52:3, 87:17
**join** [1] - 72:9
**joined** [7] - 34:9, 34:13, 34:20, 35:8, 36:1, 36:5, 37:2
**joining** [1] - 37:9
**joins** [1] - 35:18
**Jones** [2] - 38:13, 38:15
**Jones'** [1] - 39:24
**Judge** [11] - 5:20, 5:22, 60:14, 61:16, 61:24, 62:10, 63:22, 70:12, 73:7, 78:21, 81:5
**judge** [5] - 6:4, 20:4, 25:15, 46:18, 74:18
**judged** [1] - 78:2
**judges** [4] - 16:19, 17:23, 23:8, 47:9
**judging** [1] - 23:10
**judgment** [7] - 19:12, 23:15, 25:1, 25:9, 26:7, 31:1, 46:10
**juries** [1] - 47:3
**jurisdiction** [1] - 79:18
**juror** [10] - 14:15, 45:10, 46:11, 46:23, 47:2, 52:6, 53:15, 54:18, 54:25
**Juror** [2] - 5:6, 67:11
**jurors** [17] - 5:6, 6:10, 6:23, 15:3, 20:23, 46:1, 46:21, 50:21, 52:19, 53:4, 53:8,

53:13, 54:1, 54:7, 55:7, 55:23
**Jury** [1] - 3:3
**jury** [55] - 4:2, 6:3, 6:11, 10:7, 10:23, 12:14, 12:17, 14:18, 14:19, 16:4, 16:17, 16:18, 31:25, 45:1, 45:13, 45:17, 45:18, 45:19, 45:21, 46:4, 46:8, 46:23, 47:4, 47:10, 48:21, 48:25, 49:4, 51:3, 51:6, 53:4, 54:18, 55:13, 55:21, 57:13, 58:1, 58:8, 65:2, 65:20, 68:10, 68:24, 69:4, 69:9, 69:22, 71:4, 72:24, 81:6, 83:4, 86:22, 86:25, 87:2, 91:7, 91:21, 92:8, 93:19, 94:14
**Justice** [1] - 59:18
**justice** [1] - 17:7
**justified** [1] - 19:10

## K

**keep** [9] - 8:24, 9:20, 9:22, 47:13, 56:4, 57:7, 65:25, 67:18, 94:2
**kept** [1] - 83:22
**kind** [5] - 25:16, 27:23, 27:25, 31:4, 53:14
**kinds** [1] - 28:4
**KIYONAGA** [31] - 5:2, 13:6, 14:2, 14:8, 14:10, 52:3, 52:13, 52:17, 53:21, 64:17, 64:23, 65:7, 65:9, 65:18, 66:2, 66:6, 66:9, 70:7, 70:10, 85:11, 87:10, 87:17, 88:3, 88:7, 88:12, 88:21, 89:5, 89:13, 89:17, 90:10, 90:17
**Kiyonaga** [6] - 5:3, 13:6, 52:3, 64:16, 87:8, 87:17
**knowing** [2] - 36:7, 44:10
**knowingly** [1] - 36:5
**knowledge** [11] - 21:17, 42:2, 42:7, 42:8, 42:9, 42:12, 42:13, 44:9, 44:11, 44:15
**known** [2] - 36:14, 36:16
**knows** [3] - 60:21,

61:25, 62:15

## L

**language** [12] - 71:1, 72:1, 75:9, 80:11, 80:13, 85:3, 87:20, 88:18, 88:23, 90:20, 91:15
**lapses** [1] - 44:13
**large** [1] - 77:24
**last** [11] - 27:7, 27:8, 27:9, 27:11, 53:24, 53:25, 75:4, 75:6, 75:13, 86:19, 93:5
**lasts** [1] - 62:16
**latest** [1] - 58:23
**Lauren** [2] - 4:4, 4:13
**law** [31] - 15:18, 15:22, 16:8, 16:9, 16:10, 16:13, 16:14, 17:14, 17:16, 17:21, 20:10, 21:6, 22:5, 22:6, 26:8, 26:10, 26:16, 33:10, 33:12, 33:19, 34:18, 35:21, 39:22, 48:16, 51:14, 67:23, 78:10, 84:5, 92:8
**laws** [7] - 33:15, 33:16, 33:20, 37:21, 76:15, 77:8, 92:16
**lawyer** [6] - 18:12, 18:13, 19:20, 19:23, 19:24, 20:2
**lawyer's** [2] - 18:14, 18:18
**lawyers** [8] - 15:17, 18:10, 19:14, 19:16, 19:19, 54:3, 63:20, 93:24
**leading** [6] - 28:7, 28:18, 28:24, 29:14, 29:22, 29:25
**learning** [1] - 42:19
**least** [9] - 41:17, 55:16, 70:23, 72:21, 78:3, 81:11, 89:7, 90:2, 93:1
**leave** [10] - 7:11, 10:8, 11:7, 14:24, 54:10, 58:3, 58:9, 58:15, 76:14, 94:17
**leaves** [2] - 21:3, 89:21
**leery** [1] - 53:10
**left** [4] - 4:18, 12:11, 38:4, 55:23
**legal** [1] - 37:12
**lenity** [1] - 77:19
**less** [4] - 26:23, 52:23,

65:4, 89:9
**lesser** [1] - 26:15
**letting** [1] - 94:16
**level** [1] - 17:10
**liability** [1] - 42:20
**liable** [1] - 40:21
**Liddy** [2] - 76:20, 77:11
**lie** [1] - 25:24
**life** [2] - 42:24, 43:21
**light** [1] - 19:10
**likely** [1] - 20:24
**limit** [1] - 88:22
**limitations** [1] - 28:13
**limited** [6] - 26:17, 28:10, 28:17, 37:14, 80:23, 90:19
**limiting** [1] - 39:22
**Lindgren** [1] - 74:11
**LINDGREN** [1] - 74:12
**line** [1] - 80:18
**lines** [1] - 8:19
**listen** [3] - 48:5, 50:11, 50:12
**lists** [1] - 48:23
**local** [5] - 22:24, 26:10, 60:15, 78:16, 78:22
**locked** [3] - 92:23, 94:4, 94:6
**look** [46] - 7:13, 8:3, 12:9, 15:11, 15:15, 39:6, 50:18, 52:8, 52:9, 52:16, 53:10, 54:14, 65:12, 68:4, 68:7, 71:15, 71:25, 72:5, 73:25, 74:13, 74:15, 75:8, 75:9, 75:19, 75:25, 80:16, 81:21, 82:1, 84:10, 84:16, 85:6, 85:12, 85:18, 87:15, 88:1, 88:10, 88:14, 89:9, 89:11, 89:15, 90:14, 90:24, 91:3, 91:19, 94:5, 94:7
**looked** [5] - 21:21, 21:25, 65:12, 73:15, 92:3
**looking** [9] - 14:7, 51:1, 51:10, 61:10, 73:7, 77:4, 91:25
**low** [1] - 83:16
**lunch** [10] - 9:7, 9:17, 13:13, 13:14, 56:1, 56:7, 56:8, 59:11

## M

**ma'am** [3] - 14:2, 52:5,

70:10
**mail** [3] - 8:16, 14:5
**manner** [2] - 16:8, 23:18, 79:3
**map** [2] - 12:10, 65:12
**mark** [2] - 49:6, 67:24
**marked** [1] - 47:13
**marshal** [1] - 46:1
**Martin** [1] - 4:12
**Maryland** [2] - 29:19, 65:17
**materials** [1] - 93:25
**matter** [9] - 16:2, 36:11, 45:1, 45:22, 46:4, 46:20, 47:9, 88:9, 89:2
**matters** [4] - 11:2, 23:13, 23:22, 46:22
**mean** [18] - 11:1, 11:14, 11:16, 12:10, 19:1, 33:22, 61:8, 61:11, 62:2, 62:17, 63:4, 64:1, 71:18, 71:19, 75:4, 79:16, 83:20, 89:6
**meaning** [3] - 67:23, 68:10, 92:8
**meanings** [2] - 84:4, 84:5
**means** [14] - 22:6, 23:11, 38:18, 38:20, 39:2, 39:4, 39:8, 39:10, 39:13, 40:24, 42:9, 46:3, 51:11, 91:7
**meant** [1] - 48:20
**meantime** [1] - 58:6
**media** [4] - 7:23, 50:9, 50:11, 53:8
**medical** [1] - 39:15
**meet** [1] - 37:19
**meld** [1] - 76:24
**melding** [1] - 81:3
**member** [8] - 35:15, 35:24, 36:21, 39:20, 42:23, 43:18, 44:6, 45:18
**members** [7] - 14:19, 36:11, 36:20, 43:2, 43:5, 45:18, 45:21
**memory** [5] - 18:8, 23:20, 24:2, 24:11
**mention** [2] - 55:25
**mentioned** [2] - 5:8, 66:22
**mere** [1] - 36:3
**merely** [8] - 26:15, 30:21, 31:3, 34:24, 36:4, 36:7, 37:18, 41:23

merits [2] - 45:19, 45:22
met [1] - 37:22
Michigan [2] - 25:15, 63:11
middle [2] - 71:14, 94:9
midst [1] - 42:14
might [11] - 28:11, 50:11, 52:22, 55:17, 60:6, 61:11, 61:20, 73:24, 73:25, 86:5, 86:15
mind [5] - 44:8, 44:24, 45:24, 47:13, 91:20
mindful [1] - 45:5
minds [1] - 90:2
minor [1] - 35:16
minute [3] - 54:8, 55:24, 60:5
minutes [2] - 13:9, 59:21
missed [1] - 52:5
mission [1] - 45:6
mistake [1] - 24:11
misunderstanding [1] - 24:12
mix [1] - 87:4
modifies [1] - 48:18
moment [2] - 89:17, 91:1
Monday [13] - 10:18, 11:1, 12:17, 13:1, 13:4, 62:18, 62:25, 63:15, 66:17, 67:3, 93:8, 93:14, 93:15
monitor [1] - 53:5
monitoring [1] - 60:2
moreover [5] - 17:15, 19:20, 28:5, 29:13, 32:13
morning [13] - 4:8, 4:10, 4:12, 4:17, 4:19, 4:21, 4:24, 5:2, 5:4, 14:19, 67:3, 95:1
mornings [3] - 9:20, 56:25, 65:20
most [1] - 51:23
motivated [3] - 24:21, 26:4, 37:23
motive [2] - 28:24, 29:22
move [1] - 40:16
movement [1] - 39:11
multiple [2] - 32:10, 32:11
murderers [1] - 89:24
must [30] - 18:13, 20:3, 21:1, 21:2,

21:9, 21:11, 23:6, 27:4, 28:10, 29:3, 30:3, 30:13, 30:15, 31:4, 32:2, 32:4, 34:3, 34:19, 35:7, 35:22, 37:7, 38:9, 41:12, 42:1, 46:10, 46:12, 46:13, 48:19, 50:12, 53:25
mustn't [1] - 18:19
mutual [1] - 45:9

## N

name [4] - 48:23, 48:25, 54:12, 54:15
names [2] - 36:13, 36:15
narrow [2] - 80:21, 83:1
narrower [1] - 75:15
national [1] - 17:8
natural [2] - 43:25, 44:17
nature [4] - 7:10, 31:25, 32:3, 35:17
near [3] - 13:3, 40:15, 90:1
Nebraska [1] - 10:6
necessarily [4] - 35:1, 37:14, 50:8, 50:18
necessary [7] - 20:24, 35:10, 43:25, 44:2, 44:24, 45:14, 81:11
need [48] - 7:6, 7:12, 7:17, 8:20, 8:23, 9:4, 9:5, 9:6, 9:16, 9:17, 9:19, 11:10, 11:16, 12:3, 13:4, 13:11, 13:15, 13:18, 14:7, 14:12, 35:20, 37:15, 37:20, 38:24, 38:25, 40:3, 40:11, 42:16, 51:12, 54:17, 55:4, 55:21, 56:24, 57:21, 58:3, 59:5, 61:21, 62:4, 62:5, 64:9, 64:15, 65:20, 65:21, 91:14, 94:1, 94:2, 95:8, 95:9
needing [1] - 86:9
needs [3] - 7:9, 77:21, 82:21
neutral [1] - 17:17
never [7] - 20:9, 45:21, 45:24, 46:3, 46:8, 46:9, 61:7
nevertheless [1] - 41:10
new [1] - 7:8

New [3] - 29:20, 74:4, 75:17
newspaper [1] - 50:9
next [4] - 60:19, 61:4, 64:23, 91:14
nice [3] - 71:20, 72:23, 92:20
night [5] - 27:7, 27:8, 27:9, 27:11, 27:14
nobody [3] - 55:7, 94:5, 94:8
noise [1] - 15:2
none [1] - 73:18
note [37] - 5:5, 6:2, 8:20, 9:14, 9:25, 10:13, 10:15, 11:9, 13:25, 14:1, 14:15, 15:9, 45:15, 45:20, 48:8, 51:13, 56:10, 57:4, 57:8, 58:18, 59:14, 60:22, 60:23, 61:11, 62:2, 62:10, 64:5, 64:6, 64:7, 64:10, 67:22, 71:11, 85:15, 90:15, 91:21, 93:5
NOTE [1] - 55:23
note-senders [1] - 14:1
notebook [1] - 54:11
notebooks [1] - 54:13
noted [1] - 29:9
notes [18] - 8:11, 8:22, 8:24, 9:18, 11:19, 13:13, 13:18, 13:22, 15:6, 56:18, 56:20, 59:9, 64:8, 64:13, 65:2, 65:3, 66:5, 95:8
nothing [8] - 7:4, 48:14, 48:16, 48:17, 54:3, 60:21, 61:25, 62:15
November [1] - 28:22
number [15] - 22:17, 31:7, 31:9, 31:12, 31:13, 31:14, 54:12, 57:12, 57:18, 59:18, 64:20, 89:20, 93:12, 93:16
numbering [1] - 47:16
numbers [3] - 54:3, 67:17, 95:2
nutshell [1] - 75:14

## O

o'clock [3] - 10:8, 56:24, 66:12
oath [1] - 25:24

object [3] - 18:15, 35:19, 35:20
objected [1] - 18:10
objecting [1] - 18:12
objection [3] - 18:18, 19:25, 26:24
objections [5] - 18:13, 26:19, 52:2, 92:6, 92:17
objectives [2] - 43:1, 43:22
obligation [1] - 25:22
observe [1] - 23:22
observed [1] - 23:13
obstruct [6] - 38:24, 38:25, 77:7, 80:3, 82:4, 92:15
obstructed [2] - 33:19, 33:22
obstructing [1] - 38:8
obstruction [9] - 37:10, 38:2, 38:11, 38:20, 49:4, 49:13, 49:21, 69:16, 80:11
obtain [4] - 34:16, 34:17, 37:12
obtaining [1] - 38:16
obviously [6] - 48:1, 52:1, 65:17, 78:10, 80:7, 91:25
occasionally [3] - 7:8, 9:19, 19:20
October [12] - 28:8, 28:19, 28:24, 29:1, 29:15, 29:20, 29:23, 29:25, 34:21, 40:11
offense [41] - 20:13, 20:15, 20:17, 20:19, 25:6, 32:13, 32:18, 33:9, 40:10, 40:13, 40:14, 40:20, 40:21, 41:1, 41:2, 41:4, 41:10, 41:14, 41:18, 41:20, 41:21, 41:24, 42:3, 43:8, 43:17, 43:20, 43:24, 44:5, 48:24, 49:3, 76:10, 81:10, 81:12, 85:22, 86:2, 86:10, 86:23, 87:2, 87:3
offenses [3] - 15:25, 25:6, 32:7
offered [10] - 18:11, 26:21, 27:1, 27:11, 28:23, 28:25, 29:2, 29:21, 29:23, 30:1
Office [2] - 59:19, 59:20
office [8] - 13:8, 39:14, 45:17, 55:21,

59:13, 59:15, 59:21, 64:24
officer [1] - 26:16
officer's [2] - 26:10, 26:12
officers [1] - 26:10
often [1] - 47:7
old [2] - 76:6, 76:7
older [1] - 79:8
omitted [1] - 44:13
once [5] - 7:11, 8:20, 8:22, 10:15, 52:19
one [103] - 5:5, 6:9, 6:10, 6:23, 11:12, 11:18, 15:3, 19:20, 20:18, 22:7, 25:18, 25:19, 27:22, 28:20, 31:13, 31:24, 32:21, 32:22, 33:3, 34:5, 36:12, 36:17, 36:19, 36:25, 37:23, 38:3, 38:4, 38:5, 38:11, 40:1, 40:6, 40:25, 41:14, 41:17, 42:20, 43:17, 45:18, 47:1, 48:22, 49:1, 49:5, 49:24, 50:8, 53:13, 57:7, 57:9, 59:22, 61:8, 63:1, 64:3, 66:16, 66:22, 66:23, 68:1, 68:8, 68:20, 71:3, 73:12, 74:10, 74:11, 74:22, 75:21, 76:2, 76:25, 77:2, 77:15, 78:10, 80:4, 80:5, 80:24, 81:20, 82:13, 82:14, 82:17, 82:18, 82:19, 82:21, 82:24, 83:1, 83:2, 84:7, 84:20, 85:12, 85:15, 86:14, 86:15, 86:18, 86:23, 87:2, 87:3, 87:25, 88:2, 88:15, 90:16, 91:1, 91:18, 91:23
one's [1] - 10:20
ones [4] - 47:20, 64:8, 84:23, 88:10
ongoing [1] - 34:12
op [1] - 89:23
op-ed [1] - 89:23
open [9] - 8:13, 45:23, 46:3, 53:23, 56:20, 64:20, 89:22, 92:24, 92:25
opinion [11] - 17:13, 17:17, 18:2, 19:21, 19:24, 19:25, 20:2, 46:24, 48:15, 76:9, 80:12

opinions [2] - 16:25, 18:4
opportunity [7] - 15:12, 23:22, 42:8, 42:16, 68:4, 68:7, 70:5
opposed [1] - 84:20
oppress [23] - 33:13, 33:24, 34:6, 35:4, 68:10, 68:15, 68:21, 68:24, 69:3, 69:4, 69:8, 69:11, 69:18, 69:20, 71:4, 72:10, 74:25, 76:12, 76:23, 77:3, 80:1, 80:13
oppression [1] - 68:19
option [1] - 60:25
orally [3] - 6:3, 45:23, 51:24
Orange [1] - 65:18
order [5] - 22:23, 42:25, 46:11, 69:5, 69:6
orderly [1] - 16:7
ordinarily [1] - 44:9
organize [1] - 45:8
orientation [1] - 17:10
origin [1] - 17:8
original [3] - 44:3, 44:4, 60:16
originally [1] - 93:10
ostracized [1] - 89:25
otherwise [4] - 12:24, 14:24, 22:20, 50:25
out-of-court [1] - 27:17
outcome [2] - 23:24, 30:23
outset [1] - 47:1
outside [3] - 26:21, 45:16, 56:19
overcomes [1] - 21:7
overnight [1] - 66:8
own [7] - 18:8, 30:19, 32:15, 62:6, 65:5, 82:15

## P

p.m [2] - 93:6, 95:12
PAGE [1] - 3:2
page [3] - 54:11, 74:12, 76:8
pain [1] - 59:14
pamphlets [1] - 90:7
paper [5] - 7:14, 8:6, 8:23, 54:14, 64:9
papers [1] - 47:20
part [14] - 18:23, 35:23, 36:8, 39:20,

44:3, 55:1, 59:10, 65:1, 67:11, 69:7, 69:25, 76:18, 84:14, 89:1
participant [2] - 36:6, 43:7
participants [1] - 36:4
participate [2] - 42:15, 64:5
participated [1] - 25:5
participates [1] - 42:6
participating [1] - 35:14
participation [1] - 42:18
particular [13] - 20:13, 20:17, 22:8, 31:8, 35:21, 37:17, 38:24, 43:9, 44:6, 48:2, 61:1, 81:10
particularly [3] - 15:10, 76:4, 87:7
parties [2] - 19:15, 31:22
parties' [1] - 26:19
partisans [1] - 47:8
partly [1] - 85:3
parts [2] - 15:20, 71:3
party [2] - 18:14, 31:20
passage [1] - 38:22
Patel [2] - 4:9, 59:5
patient [3] - 5:9, 37:16, 39:25
patients [9] - 5:10, 33:21, 33:25, 34:7, 34:15, 35:5, 35:9, 37:10, 37:25
Patterson [3] - 14:3, 57:10, 58:3
pay [2] - 41:7, 42:21
peculiarly [1] - 31:15
pencils [1] - 9:6
people [27] - 6:14, 8:14, 10:9, 10:20, 12:20, 12:25, 13:12, 14:22, 15:1, 17:6, 23:25, 34:24, 35:13, 36:9, 36:15, 51:11, 53:3, 56:6, 62:4, 62:5, 63:20, 63:23, 65:11, 66:21, 89:24, 90:6
perception [1] - 24:13
perfectly [1] - 61:3
perform [1] - 35:22
performed [5] - 27:23, 27:25, 28:4, 39:23, 40:22
perhaps [1] - 78:21

perjury [1] - 25:24
permits [1] - 60:18
permitted [9] - 19:8, 19:23, 19:25, 22:10, 25:5, 25:16, 28:12, 33:19, 34:18
person [30] - 11:18, 11:19, 21:21, 23:19, 27:2, 31:3, 33:14, 35:15, 35:16, 35:17, 37:6, 38:19, 38:24, 39:3, 39:9, 41:17, 41:24, 42:1, 42:3, 42:10, 44:10, 44:17, 45:16, 45:25, 51:18, 56:19, 57:15, 69:18, 83:9, 91:8
person's [6] - 39:10, 40:3, 62:19, 77:7, 82:4, 92:15
personal [5] - 16:24, 17:4, 17:7, 20:2, 54:3
personally [3] - 40:19, 40:20, 41:9
persons [4] - 34:5, 36:19, 36:23, 76:11
perspective [1] - 65:5
persuasive [1] - 92:5
Peter [1] - 60:15
phone [8] - 14:3, 54:12, 59:18, 61:21, 64:6, 64:20, 67:17, 95:2
phones [1] - 93:2
phrase [1] - 69:24
physical [8] - 37:9, 38:2, 38:11, 38:20, 49:12, 49:20, 90:20
physician's [1] - 39:14
pick [1] - 51:19
piece [2] - 54:14, 89:23
pilloried [1] - 89:25
pithy [1] - 75:13
place [7] - 17:5, 39:3, 39:8, 93:2, 94:4, 94:6, 94:17
plan [8] - 34:22, 35:17, 42:10, 44:3, 44:4, 62:23, 64:17, 65:9
planned [1] - 29:24
planning [2] - 5:24, 64:2
plans [5] - 11:6, 12:9, 12:21, 60:6, 67:8
play [2] - 18:23, 35:16
plea [6] - 25:11, 25:17, 25:21, 25:22, 26:2, 26:5

plus [1] - 87:6
point [13] - 39:5, 50:15, 52:23, 53:20, 56:8, 58:14, 81:8, 83:23, 84:11, 86:19, 87:12, 90:13, 94:17
pointed [1] - 85:23
pointing [1] - 72:9
police [1] - 26:10
polled [1] - 57:22
polling [1] - 57:17
portion [4] - 22:21, 23:3, 48:2, 53:24
portions [3] - 22:19, 22:22, 22:25
position [2] - 47:2, 90:25
possibility [3] - 17:2, 21:10, 54:19
possible [5] - 21:7, 46:14, 54:16, 64:23, 72:21
possibly [3] - 52:10, 61:2, 62:2
potentially [1] - 70:5
power [4] - 31:16, 38:18, 79:1, 91:8
powerful [1] - 21:1
practical [2] - 88:9, 89:18
precisely [1] - 71:15
preempt [1] - 87:10
prefer [2] - 11:7, 64:23
preferences [1] - 17:4
pregnancy [3] - 39:17, 39:18, 39:23
prejudice [2] - 17:12, 24:22
prejudiced [1] - 24:20
prejudices [2] - 16:25, 17:4
prepared [1] - 57:17
preponderance [1] - 20:25
presence [7] - 4:2, 14:18, 36:3, 36:22, 58:1, 93:19, 94:14
present [4] - 4:14, 4:22, 5:3, 40:20
presentation [1] - 55:17
presented [5] - 22:14, 28:19, 29:15, 32:5, 50:14
presenting [2] - 27:10, 27:13
preserved [2] - 7:6, 52:2
preside [1] - 45:2
presumed [1] - 20:6

presumption [1] - 20:6
pretty [4] - 11:18, 76:21, 81:16, 91:13
prevent [10] - 34:15, 37:10, 69:15, 69:17, 77:7, 80:11, 82:4, 89:20, 90:2, 92:14
preventing [1] - 37:16
pride [1] - 47:1
principles [2] - 15:21, 16:3
printed [2] - 51:22, 74:18
privacy [1] - 22:23
privilege [2] - 33:14, 76:14
pro [1] - 63:22
probability [1] - 24:15
probable [1] - 44:17
problem [10] - 6:22, 8:15, 9:24, 11:8, 15:1, 51:21, 55:8, 60:23, 65:14, 65:15
problems [1] - 94:10
procedure [3] - 5:8, 5:10, 22:24
procedures [1] - 5:14
proceed [1] - 47:8
proceeded [1] - 62:12
proceeding [1] - 36:13
Proceedings [7] - 4:2, 14:18, 53:23, 58:1, 93:19, 94:14, 95:12
process [1] - 54:3
procured [1] - 41:17
produce [2] - 20:11, 31:16
promised [2] - 10:10, 11:2
promote [1] - 45:11
prompt [1] - 95:5
promptly [2] - 10:10, 92:20
proof [7] - 20:5, 21:1, 21:3, 21:6, 40:11, 44:8
proper [1] - 18:12
properly [2] - 19:5, 86:22
property [2] - 38:19, 91:9
proposal [4] - 70:6, 74:16, 77:14
propose [4] - 72:1, 73:2, 78:11, 79:2
proposed [4] - 18:25, 68:8, 72:13, 74:25
proposing [1] - 82:1
proposition [1] -

85:24
**prosecuted** [1] - 36:12
**prosecution** [1] - 25:23
**protect** [1] - 25:23
**protected** [1] - 37:21
**prove** [10] - 20:10, 20:17, 20:24, 28:23, 29:21, 34:2, 35:2, 36:16, 38:9, 48:19
**proved** [4] - 23:5, 44:9, 44:23, 49:15
**proven** [5] - 19:9, 20:8, 20:12, 41:2, 43:9
**proves** [3] - 29:7, 30:6, 35:25
**provide** [9] - 33:17, 33:21, 34:17, 37:12, 37:13, 47:24, 93:25
**provided** [7] - 17:19, 33:5, 39:14, 39:21, 43:13, 43:15, 48:11
**provider** [1] - 39:19
**providers** [1] - 40:1
**provides** [4] - 38:21, 77:20, 81:9, 92:11
**providing** [2] - 38:3, 38:16
**proving** [2] - 20:21, 22:6
**provision** [2] - 40:5, 88:6
**public** [1] - 17:13
**publicity** [2] - 50:6, 50:20
**punch** [1] - 80:18
**punish** [3] - 77:6, 82:4, 92:14
**punishment** [2] - 46:14, 46:20
**purported** [1] - 19:1
**purpose** [16] - 26:17, 27:2, 27:9, 27:12, 27:13, 28:10, 28:11, 28:17, 29:3, 30:2, 37:1, 37:8, 37:20, 37:24, 69:17, 73:13
**purposefully** [1] - 83:22
**purposes** [2] - 29:2, 30:1
**pursuant** [1] - 25:12
**putting** [3] - 69:23, 83:12, 84:4

### Q

**quality** [1] - 31:10
**quantity** [1] - 31:10

**quarter** [1] - 10:11
**questions** [8] - 16:8, 18:24, 19:18, 31:24, 48:7, 86:20, 91:24, 92:19
**quick** [2] - 90:22, 91:2
**quickly** [5] - 59:8, 59:14, 84:10, 85:18, 90:24
**quite** [2] - 16:5, 73:19
**quote** [2] - 87:21, 87:22
**quotes** [3] - 67:23, 92:12

### R

**race** [1] - 17:8
**radio** [1] - 50:9
**rained** [5] - 27:7, 27:8, 27:9, 27:11, 27:14
**raise** [2] - 7:6, 53:16
**random** [1] - 54:2
**rather** [2] - 38:25, 42:1
**re** [2] - 5:9
**reach** [5] - 32:1, 45:6, 52:18, 52:21, 57:3
**reachable** [1] - 14:8
**reached** [6] - 34:5, 34:11, 46:2, 56:22, 57:8, 57:14
**reaching** [4] - 22:13, 32:6, 47:15, 70:7
**read** [16] - 5:6, 5:25, 6:6, 6:8, 6:10, 8:25, 47:25, 50:11, 50:12, 50:16, 53:24, 57:10, 58:19, 58:21, 90:15
**reading** [3] - 6:1, 54:9, 68:9
**reads** [1] - 76:11
**real** [1] - 21:10
**realistic** [2] - 42:8, 42:16
**really** [2] - 50:24, 78:21
**reason** [6] - 23:21, 30:14, 40:3, 40:6, 55:4, 57:21
**reasonable** [30] - 19:10, 20:9, 20:13, 20:18, 20:20, 20:21, 21:2, 21:3, 21:19, 23:6, 25:20, 29:8, 30:7, 34:3, 35:3, 36:1, 37:8, 38:10, 39:3, 39:9, 40:14, 41:2, 41:13, 42:2, 43:10, 43:15, 43:16, 44:23, 48:19, 49:16

**reasonableness** [1] - 24:14
**reasonably** [3] - 40:15, 43:25, 84:12
**reasons** [2] - 22:21, 30:15
**recalled** [1] - 23:13
**receipt** [1] - 40:5
**receive** [4] - 14:15, 19:12, 25:2, 58:7
**received** [4] - 5:15, 44:14, 44:20, 67:22
**receiving** [1] - 71:11
**recent** [2] - 79:8, 79:9
**recently** [1] - 10:23
**Recess** [5] - 58:16, 67:20, 75:11, 92:2, 93:4
**recollection** [2] - 5:17, 24:5
**record** [11] - 4:7, 5:6, 5:13, 5:16, 5:17, 6:1, 7:6, 7:7, 8:25, 33:6, 51:20
**recording** [1] - 48:20
**records** [1] - 58:22
**redacted** [2] - 22:16, 22:18
**refer** [2] - 48:1, 48:2
**reference** [1] - 18:6
**referral** [1] - 39:16
**referring** [2] - 80:12, 80:13
**reflect** [1] - 5:14
**refuse** [1] - 16:12
**regarding** [3] - 12:17, 45:4, 45:10
**Regarding** [1] - 90:19
**regardless** [1] - 17:7
**regular** [4] - 52:7, 54:18, 54:25, 56:6
**rejoin** [1] - 54:18
**relate** [3] - 48:6, 81:4, 89:7
**relates** [2] - 84:13, 92:10
**relating** [7] - 8:7, 39:16, 39:17, 52:25, 71:8, 81:20, 88:18
**relative** [1] - 31:7
**relevant** [2] - 31:17, 44:22
**reliable** [1] - 26:23
**religion** [1] - 17:8
**reluctant** [1] - 53:19
**remain** [1] - 64:18
**remained** [1] - 54:6
**remains** [1] - 20:7
**remarks** [1] - 16:1
**remember** [4] - 5:16,

16:15, 47:8, 74:7
**remind** [2] - 50:7, 51:4
**removed** [1] - 22:20
**rendered** [1] - 48:10
**rendering** [2] - 38:20, 38:22
**repercussions** [1] - 89:18
**repetitive** [1] - 31:23
**replaces** [2] - 48:16, 48:17
**REPORTER'S** [1] - 55:23
**reports** [1] - 50:9
**represent** [2] - 18:14, 46:10
**representation** [1] - 60:16
**reproductive** [18] - 33:17, 33:18, 34:1, 34:17, 37:13, 37:18, 38:3, 38:9, 38:17, 38:22, 39:13, 39:16, 39:19, 39:21, 39:24, 40:1, 40:5
**request** [1] - 62:24
**require** [4] - 20:10, 21:6, 22:11, 83:14
**required** [3] - 44:16, 61:7, 71:9
**requirement** [2] - 36:11, 36:13
**requirements** [2] - 83:5, 83:6
**requires** [1] - 88:24
**requoted** [1] - 84:14
**research** [5] - 27:18, 50:7, 51:11, 51:17, 54:24
**researching** [1] - 70:11
**resolved** [1] - 77:21
**resort** [2] - 75:4, 75:6
**respect** [9] - 32:23, 32:25, 41:17, 45:9, 48:24, 49:3, 66:17, 83:7, 85:17
**respond** [4] - 59:9, 62:2, 66:4, 85:14
**response** [2] - 62:10, 92:7
**responsibilities** [3] - 16:5, 61:4, 63:13
**responsibility** [5] - 16:20, 18:5, 18:15, 29:7, 30:6
**responsible** [5] - 8:18, 11:18, 29:11, 30:9, 59:6
**rest** [5] - 54:6, 54:9,

55:24, 70:3, 81:24
**restaurant** [1] - 13:16
**restrict** [1] - 39:10
**restroom** [2] - 56:6, 56:14
**rests** [1] - 46:18
**result** [1] - 24:11
**retire** [1] - 51:3
**retiring** [1] - 47:4
**return** [7] - 32:19, 33:4, 45:1, 46:11, 48:9, 62:25, 63:1
**reveal** [1] - 45:25
**reversed** [2] - 76:25, 77:1
**reviewed** [1] - 78:15
**reviewing** [1] - 47:6
**Riggs** [2] - 78:11, 78:14
**rightly** [1] - 28:3
**rights** [6] - 33:8, 33:10, 34:2, 48:25, 78:5, 81:21
**rise** [1] - 31:18
**risk** [1] - 60:12
**robberies** [1] - 79:19
**robbery** [3] - 79:14, 79:17, 79:21
**Robert** [1] - 4:21
**role** [1] - 35:16
**roles** [1] - 40:1
**room** [5] - 45:1, 46:23, 47:5, 47:10, 51:3
**rooms** [4] - 8:13, 64:20, 92:21, 92:23
**rough** [1] - 56:11
**roughly** [2] - 10:2, 15:20
**rule** [5] - 14:6, 16:8, 17:16, 77:19, 79:7
**ruled** [1] - 18:21
**rules** [4] - 22:24, 45:4, 78:8, 78:24
**ruling** [1] - 80:9
**rush** [1] - 13:10

### S

**Sanjay** [1] - 4:9
**sat** [2] - 34:23, 62:1
**satisfy** [1] - 40:2
**Saturday** [1] - 62:24
**saw** [4] - 21:22, 21:24, 21:25, 22:1
**scathing** [1] - 89:23
**scene** [1] - 36:3
**scope** [10] - 75:14, 75:16, 75:19, 76:2, 76:17, 77:25, 80:21, 80:23, 83:2, 84:24

**screen** [1] - 47:22
**seat** [3] - 57:12, 57:17, 57:23
**seated** [1] - 4:18
**seats** [2] - 54:4
**Seats** [1] - 54:7
**second** [14] - 6:4, 15:24, 35:7, 39:2, 39:8, 60:25, 79:7, 79:25, 80:5, 80:12, 83:1, 85:12, 90:15, 90:16
**Second** [1] - 78:17
**section** [4] - 69:4, 76:11, 76:16
**secured** [2] - 33:14, 76:14
**security** [2] - 45:16, 56:19
**see** [20] - 12:23, 13:21, 47:21, 47:22, 60:17, 62:15, 62:16, 64:24, 65:1, 65:8, 70:14, 75:8, 81:2, 85:9, 87:6, 89:16, 90:6, 94:13, 95:7, 95:11
**seek** [5] - 34:16, 34:17, 37:12, 89:24
**seeking** [2] - 5:9, 33:21
**seem** [1] - 5:10
**select** [3] - 45:2, 45:4, 55:13
**selected** [1] - 54:4
**selecting** [2] - 31:25, 45:7
**selection** [1] - 54:2
**self** [1] - 24:21
**self-interest** [1] - 24:21
**send** [15] - 6:12, 6:19, 9:3, 9:13, 9:14, 45:15, 48:7, 51:13, 57:4, 58:7, 64:10, 65:3, 91:3, 91:22, 92:7
**senders** [1] - 14:1
**sending** [6] - 6:2, 6:23, 8:5, 47:10, 56:18, 92:17
**sends** [1] - 65:2
**sense** [6] - 10:2, 47:1, 56:11, 77:4, 82:2, 92:13
**sent** [1] - 75:12
**sentence** [1] - 46:17
**sentencing** [1] - 25:14
**separate** [7] - 32:12, 32:19, 69:14, 71:18, 72:22, 80:4, 87:14

**separately** [3] - 20:21, 32:18, 68:1
**series** [2] - 81:18, 88:16
**seriously** [1] - 63:14
**served** [1] - 20:23
**service** [2] - 55:10, 55:20
**services** [19] - 17:18, 33:18, 33:21, 34:18, 37:13, 37:14, 37:18, 38:3, 38:17, 38:22, 39:13, 39:16, 39:17, 39:19, 39:21, 39:25, 40:1, 40:5
**set** [2] - 93:16, 95:7
**sets** [3] - 15:8, 76:8, 83:21
**settled** [1] - 8:1
**several** [4] - 5:8, 7:21, 11:17, 26:10
**sex** [1] - 17:9
**sexual** [1] - 17:9
**share** [1] - 72:17
**shifts** [1] - 20:9
**short** [3] - 6:24, 75:13, 81:25
**shortly** [1] - 95:5
**show** [14] - 27:10, 27:13, 28:25, 29:23, 33:6, 34:3, 34:19, 35:1, 35:7, 36:5, 37:7, 37:15, 41:13, 42:1
**shown** [1] - 24:19
**shows** [2] - 20:1, 94:8
**sic** [5] - 41:21, 45:17, 57:4, 74:1, 78:11
**sic]** [1] - 72:8
**side** [6] - 18:11, 19:21, 24:20, 31:9, 31:13, 31:14
**sign** [1] - 8:3
**signed** [4] - 5:12, 45:17, 45:20
**similar** [1] - 34:25
**similarly** [1] - 19:18
**simply** [2] - 18:24, 77:24
**single** [2] - 11:18, 84:25
**sit** [5] - 10:23, 63:11, 74:15, 90:15, 93:2
**sits** [1] - 56:19
**sitting** [3] - 13:1, 93:11, 94:22
**situation** [1] - 86:11
**Sixth** [1] - 59:22
**skip** [1] - 47:17
**sleep** [1] - 22:1

**smaller** [2] - 31:12
**snow** [5] - 21:22, 21:24, 22:1, 63:11
**snowed** [1] - 22:3
**social** [1] - 7:23
**sole** [4] - 16:19, 18:4, 23:8, 40:3
**solely** [3] - 17:11, 46:19, 50:13
**someone** [4] - 27:8, 33:11, 33:13, 41:15
**someplace** [2] - 13:16, 95:3
**something's** [1] - 7:5
**sometimes** [6] - 7:4, 9:11, 18:10, 22:19, 53:7, 62:18
**soon** [5] - 8:19, 8:21, 50:22, 65:24, 93:25
**sorry** [7] - 6:17, 61:14, 63:10, 68:22, 70:7, 70:19, 92:24
**sort** [6] - 13:21, 56:4, 59:11, 75:6, 75:17, 88:24
**sorts** [1] - 81:2
**sought** [1] - 90:2
**sounds** [2] - 51:1, 78:17
**special** [4] - 49:7, 49:18, 50:3, 50:4
**Special** [1] - 90:19
**specific** [22] - 28:18, 29:14, 32:7, 39:1, 41:14, 45:3, 75:20, 75:23, 76:22, 77:12, 78:9, 79:4, 80:22, 81:20, 82:7, 83:5, 84:18, 85:2, 85:23, 86:13, 86:16, 87:13
**specifically** [3] - 33:12, 67:13, 83:20
**specifics** [1] - 5:14
**specify** [1] - 88:24
**speculate** [3] - 18:19, 23:2, 30:14
**spelled** [1] - 89:13
**spend** [1] - 13:17
**spent** [1] - 55:14
**split** [1] - 46:8
**spokesperson** [1] - 45:3
**staff** [1] - 39:20
**stage** [2] - 35:24, 39:22
**stand** [4] - 23:18, 27:7, 46:25, 82:15
**standard** [5] - 52:9, 83:13, 83:16, 83:17, 90:10

**stands** [3] - 23:24, 76:21, 85:24
**start** [11] - 5:5, 7:11, 32:9, 57:1, 59:11, 61:4, 65:25, 68:5, 69:25, 70:3, 94:3
**started** [2] - 56:10, 95:6
**starting** [1] - 4:7
**starts** [2] - 48:23, 69:24
**State** [1] - 72:8
**state** [9] - 17:16, 19:21, 19:23, 19:24, 33:19, 34:18, 44:8, 44:24, 78:17
**statement** [13] - 25:24, 27:1, 27:3, 27:4, 27:6, 27:9, 27:10, 27:13, 27:15, 28:10, 28:11, 37:1, 44:12
**statement's** [1] - 26:21
**statements** [13] - 19:13, 19:16, 26:20, 27:11, 27:20, 28:2, 28:12, 28:14, 28:15, 36:20, 37:3, 37:6
**States** [11] - 4:4, 4:9, 33:15, 33:16, 33:20, 37:21, 76:15, 77:8, 88:4, 89:3, 92:16
**status** [2] - 39:24, 40:3
**statute** [43] - 68:19, 71:21, 73:1, 73:9, 73:13, 75:5, 75:15, 75:22, 76:7, 77:20, 77:23, 77:24, 78:2, 78:4, 78:12, 79:3, 79:4, 79:9, 79:12, 79:21, 79:24, 81:13, 82:10, 83:13, 83:22, 84:5, 84:12, 84:22, 85:20, 86:1, 86:14, 86:15, 86:17, 86:18, 87:23, 87:24, 88:9, 88:13, 89:8, 89:10, 89:22, 90:5, 92:4
**statutes** [7] - 72:22, 72:25, 81:18, 82:13, 82:21, 86:15, 87:14
**statutory** [4] - 38:1, 86:13, 86:17, 88:5
**stay** [5] - 14:23, 14:25, 54:8, 58:2, 63:17
**Steve** [2] - 4:13, 60:4
**stick** [1] - 94:5
**still** [6] - 27:4, 42:8, 54:23, 54:25, 71:23,

76:6
**stop** [1] - 38:2
**straight** [4] - 68:3, 69:6, 69:13, 82:5
**Street** [1] - 59:22
**stricken** [1] - 18:21
**strong** [1] - 46:24
**stuck** [3] - 12:12, 60:9, 63:21
**stuff** [9] - 14:7, 51:22, 53:8, 59:12, 61:19, 67:18, 80:6, 90:7, 93:16
**subject/arbitrary** [1] - 89:22
**submit** [2] - 74:24, 88:21
**substantive** [7] - 8:24, 9:2, 9:5, 81:10, 81:12, 85:21, 86:10
**succeeded** [1] - 37:16
**sufficient** [3] - 40:13, 42:13, 42:17
**suggest** [4] - 48:14, 70:4, 71:12, 71:13
**suggested** [2] - 84:11, 89:19
**suggesting** [1] - 89:25
**suggestion** [1] - 5:13
**SULPISIO** [1] - 74:1
**Sulpizio** [2] - 73:6, 74:1
**sum** [1] - 24:25
**summon** [1] - 54:17
**Superior** [1] - 78:19
**Supp** [2] - 74:2, 74:12
**supplant** [1] - 83:5
**support** [1] - 82:7
**supported** [2] - 24:18, 85:5
**supposed** [5] - 52:11, 52:12, 58:15, 68:3, 84:6
**Supreme** [7] - 71:22, 76:6, 84:14, 84:25, 88:22, 89:1, 89:2
**Surgi** [12] - 34:1, 34:8, 34:16, 35:6, 35:10, 37:11, 37:17, 37:25, 38:14, 38:16, 39:25, 51:10
**Surgi-Clinic** [11] - 34:1, 34:8, 34:16, 35:6, 35:10, 37:11, 37:17, 38:14, 38:16, 39:25, 51:10
**Surgi-Clinic's** [1] - 37:25
**surgical** [1] - 39:15
**surprised** [1] - 57:22

surrounding [2] - 24:3, 44:11
susceptible [1] - 89:20
sustain [2] - 26:19, 26:24
sustained [1] - 18:17
switch [2] - 15:2, 40:7
sworn [3] - 17:20, 17:22, 19:6
sympathy [1] - 17:12
system [2] - 17:7, 39:16

**T**

talks [4] - 69:15, 79:15, 82:9, 94:8
task [1] - 45:5
teach [1] - 63:12
teaching [2] - 61:4, 63:10
tear [1] - 54:10
technical [8] - 77:4, 82:2, 84:1, 84:4, 84:19, 84:24, 92:13
television [1] - 50:10
tempted [1] - 50:11
ten [3] - 59:21, 60:5, 66:13
ten-minute [1] - 60:5
tend [1] - 15:2
tension [1] - 78:3
term [9] - 38:18, 38:20, 39:2, 39:4, 39:8, 39:10, 84:1, 90:3, 91:7
termination [2] - 37:5, 39:17
terms [35] - 7:12, 8:11, 11:14, 15:13, 16:17, 38:5, 50:24, 51:12, 51:21, 52:8, 52:11, 54:11, 58:8, 61:10, 62:3, 63:24, 65:13, 67:10, 68:20, 69:7, 75:21, 75:24, 76:9, 76:18, 76:23, 77:14, 79:17, 80:15, 82:1, 88:14, 93:2, 94:10, 95:5, 95:8
testified [6] - 21:23, 23:7, 23:12, 23:14, 23:23, 27:7
testifies [1] - 25:5
testify [4] - 25:12, 26:4, 30:11, 30:17
testifying [2] - 23:18, 23:24
testimony [38] - 5:15,

19:3, 19:6, 19:23, 21:17, 21:23, 22:2, 23:6, 24:8, 24:9, 24:15, 24:23, 24:25, 25:3, 25:7, 25:8, 25:17, 25:19, 26:5, 26:7, 26:8, 26:9, 26:11, 26:13, 26:15, 27:19, 27:24, 28:12, 30:21, 30:22, 30:24, 30:25, 31:11, 31:13, 31:17, 31:19, 31:22
text [1] - 51:7
themselves [5] - 8:1, 10:22, 39:4, 39:9, 67:1
theory [1] - 86:17
therefore [4] - 13:1, 32:17, 43:6, 78:6
they've [7] - 9:25, 13:2, 52:20, 68:16, 93:9, 95:5, 95:6
thinking [2] - 44:10, 93:16
Third [1] - 74:8
third [4] - 37:7, 39:12, 40:2
threat [1] - 91:14
threaten [5] - 33:13, 33:24, 34:6, 35:4, 76:12
threats [1] - 38:1
three [12] - 15:20, 34:3, 34:13, 38:15, 41:19, 41:21, 43:24, 54:4, 54:10, 55:10, 55:19, 75:1
threshold [1] - 83:8
throughout [3] - 20:7, 20:9, 62:1
throw [2] - 69:16, 80:11
thumb [4] - 7:12, 7:16, 7:17, 8:6
today [6] - 8:12, 12:18, 48:5, 65:8, 93:6, 93:7
together [6] - 34:24, 36:12, 56:13, 56:16, 70:14, 81:16
took [4] - 40:4, 40:6, 55:12, 85:5
totally [7] - 76:2, 78:23, 79:17, 82:13, 86:16, 92:4
touch [2] - 54:15, 67:18
toward [1] - 23:25
town [3] - 11:10, 63:21, 64:2

track [6] - 8:24, 9:20, 9:23, 56:4, 65:25, 94:2
travel [3] - 11:6, 12:9, 60:6
treatment [1] - 17:6
trial [20] - 16:6, 16:7, 16:21, 18:17, 19:5, 20:7, 20:10, 22:17, 24:21, 26:18, 26:21, 29:10, 30:8, 30:24, 32:15, 36:10, 44:21, 52:25, 94:23
tried [2] - 32:17, 36:12
trip [1] - 63:1
troop [1] - 65:23
trouble [2] - 12:6, 63:3
true [8] - 19:1, 20:24, 20:25, 24:16, 27:3, 27:5, 27:20
truth [7] - 23:21, 24:24, 25:22, 26:22, 27:1, 27:22, 28:13
truthful [1] - 23:19
truthfully [2] - 23:12, 25:13
try [5] - 18:3, 45:19, 63:1, 70:8, 72:5
trying [4] - 11:5, 75:4, 81:6, 86:23
Tuesday [7] - 11:4, 60:7, 60:19, 93:9, 93:23, 94:13, 95:1
turn [1] - 25:17
turns [1] - 60:2
two [36] - 5:19, 5:14, 10:20, 11:3, 15:7, 21:13, 34:5, 34:9, 36:18, 38:12, 41:16, 43:20, 47:24, 55:16, 57:5, 58:20, 58:21, 66:21, 67:13, 69:14, 71:2, 72:22, 72:25, 73:3, 73:25, 76:11, 78:8, 79:25, 80:4, 82:11, 82:20, 83:19, 89:15, 90:14, 91:19
type [3] - 6:25, 28:1, 58:6
typed [1] - 58:17
types [2] - 21:13, 26:2
typewritten [3] - 6:2, 6:13, 6:19

**U**

U.S [11] - 59:19, 59:20, 74:11, 79:11, 81:8, 85:20, 85:25, 86:2, 89:14

U.S.C [1] - 73:9
unanimous [8] - 46:2, 46:13, 49:2, 49:16, 57:4, 57:8, 57:14, 57:20
uncalled [1] - 31:15
undeniably [1] - 88:25
under [17] - 24:5, 25:21, 25:24, 43:5, 45:24, 67:23, 76:10, 80:6, 80:10, 82:14, 82:20, 83:5, 83:6, 86:5, 88:6, 90:10, 92:8
underlying [3] - 42:13, 42:14, 78:4
underneath [1] - 23:3
understood [2] - 52:13, 53:21
unfavorable [1] - 31:19
unified [1] - 62:9
unintentional [1] - 18:3
unintentionally [1] - 41:25
United [11] - 4:4, 4:9, 33:15, 33:16, 33:20, 37:21, 76:15, 77:8, 88:4, 89:3, 92:16
unknowingly [2] - 36:6, 41:25
unlawful [4] - 29:6, 29:8, 35:17, 35:19
unlawfully [1] - 33:19
unless [8] - 9:6, 12:24, 13:9, 20:7, 52:5, 66:15, 85:6, 86:19
unlike [4] - 67:25, 71:19, 75:15, 84:3
unlikely [1] - 54:17
unreasonableness [1] - 24:14
unreasonably [1] - 38:23
unreliable [1] - 26:25
unusual [1] - 61:6
up [41] - 6:25, 7:3, 8:13, 8:17, 13:2, 13:20, 15:18, 22:2, 28:7, 28:18, 28:24, 29:1, 29:14, 29:22, 29:25, 31:11, 44:19, 45:4, 45:10, 47:22, 53:8, 57:21, 58:6, 63:12, 63:25, 70:6, 70:14, 70:20, 71:23, 72:18, 74:16, 75:7, 75:9, 76:19, 77:10, 77:14, 85:4, 93:16,

94:8, 95:7
upfront [2] - 6:7, 8:22
upset [1] - 53:17
useful [3] - 46:23, 47:4, 47:7
usual [1] - 55:15

**V**

variety [7] - 22:21, 75:24, 77:5, 82:3, 83:23, 85:1, 92:13
various [1] - 50:9
venture [1] - 42:6
verbatim [1] - 87:21
verdict [48] - 10:15, 11:8, 11:20, 11:21, 13:23, 17:6, 17:20, 17:23, 18:4, 22:13, 32:2, 32:3, 32:6, 32:23, 32:25, 33:5, 33:6, 45:6, 46:2, 46:10, 46:11, 46:12, 46:18, 46:25, 47:15, 48:9, 48:11, 48:12, 48:15, 48:20, 48:21, 49:2, 49:16, 54:21, 56:23, 57:6, 57:8, 57:9, 57:14, 57:18, 60:22, 62:2, 65:3, 66:5, 67:19, 93:7
verdicts [8] - 9:19, 12:12, 32:19, 33:4, 33:6, 47:12, 57:4, 57:19
version [4] - 58:23, 75:13, 75:25, 87:24
video [3] - 7:15, 7:22, 27:20
videos [5] - 7:13, 7:24, 27:17, 27:22, 47:23
view [1] - 17:21
views [2] - 6:14, 45:11
vigilant [1] - 50:24
violate [3] - 37:21, 86:3, 86:6
violated [1] - 35:21
violation [2] - 17:20, 17:22
violence [3] - 38:19, 79:19, 91:8
Virginia [3] - 28:23, 65:17, 65:18
voice [4] - 8:16, 14:5, 46:24
voluntarily [3] - 34:9, 35:8, 35:18
vote [3] - 46:6, 47:4, 52:6
voting [1] - 46:1

## W

**Waddell** [12] - 73:7, 76:6, 76:24, 77:10, 79:23, 80:9, 80:12, 80:13, 82:8, 83:23, 85:3
**wait** [7] - 55:24, 56:15, 58:12, 67:5, 85:12, 93:24, 95:7
**waiting** [2] - 13:19, 14:16
**walk** [1] - 60:5
**WALSH** [1] - 4:24
**Walsh** [2] - 4:24, 61:1
**wants** [6] - 12:1, 59:9, 64:21, 64:24, 86:21
**Washington** [12] - 33:25, 34:7, 34:16, 35:5, 35:10, 37:11, 37:17, 37:24, 38:13, 38:16, 39:25, 51:10
**watch** [2] - 50:12
**watching** [1] - 93:2
**ways** [1] - 80:25
**weather** [5] - 12:11, 60:9, 63:18, 65:12, 65:13
**week** [2] - 61:5, 64:23
**weekend** [5] - 10:7, 11:6, 60:6, 65:10, 94:12
**weeks** [1] - 55:16
**weight** [10] - 16:21, 19:11, 22:8, 22:10, 25:1, 25:8, 26:7, 26:15, 30:25, 31:8
**whichever** [2] - 49:1, 49:5
**whole** [9] - 6:3, 6:6, 6:11, 14:6, 16:11, 23:1, 48:4, 81:17, 88:16
**wide** [1] - 75:24
**willfully** [3] - 40:17, 40:21, 41:3
**William** [1] - 4:5
**willing** [2] - 11:19, 94:19
**wind** [2] - 8:17, 53:8
**window** [2] - 21:22, 21:25
**wisdom** [1] - 17:15
**wish** [1] - 53:5
**withdraw** [3] - 42:9, 42:10, 42:16
**witness** [48] - 8:13, 16:13, 18:20, 18:25, 21:16, 23:9, 23:10, 23:11, 23:12, 23:14,

23:16, 23:17, 23:18, 23:19, 23:20, 23:21, 23:23, 24:6, 24:15, 24:17, 24:19, 24:23, 24:24, 24:25, 25:4, 25:5, 25:7, 25:11, 25:18, 25:21, 25:22, 25:25, 26:3, 26:5, 26:14, 26:15, 26:25, 27:7, 27:8, 27:14, 30:19, 30:24, 31:17, 31:18, 64:20, 92:21, 92:23
**witness's** [6] - 21:17, 23:11, 23:18, 24:2, 24:8, 24:9
**witnesses** [15] - 5:9, 5:15, 16:23, 19:6, 23:4, 23:7, 23:9, 26:2, 31:7, 31:9, 31:12, 31:13, 31:15, 31:21, 31:22
**woke** [1] - 22:2
**word** [4] - 8:20, 71:4, 89:19
**words** [11] - 12:1, 22:18, 22:20, 46:7, 46:12, 49:14, 69:13, 69:14, 71:19, 77:3, 92:11
**works** [3] - 6:15, 13:21, 65:8
**world** [1] - 21:5
**worry** [2] - 47:17, 67:12
**worth** [1] - 77:17
**worthwhile** [1] - 70:13
**write** [3] - 54:12, 77:10, 89:23
**writing** [3] - 45:22, 46:3, 90:6
**written** [2] - 15:14, 54:11
**wrongly** [1] - 28:3
**wrote** [1] - 70:2

## Y

**yelling** [3] - 90:20, 91:10, 91:21
**York** [2] - 74:4, 75:17
**you-all** [10] - 10:12, 14:11, 60:1, 70:4, 70:14, 71:12, 71:15, 72:5
**yourself** [3] - 4:6, 15:11, 57:7
**yourselves** [1] - 94:12

## Z

**zip** [1] - 74:22

```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3   UNITED STATES OF AMERICA,
                                     Criminal Action
4            Plaintiff,              No. 1:22-CR-00096-CKK

5        vs.                         September 15, 2023
                                     9:00 a.m.
6   JONATHAN DARNEL,
    JEAN MARSHALL
7   and JOAN BELL,

8            Defendants.             Day 8

9   _____

10                 TRANSCRIPT OF THE JURY TRIAL
        BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
11               UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14  For the Government:

15          REBECCA G. ROSS, ESQUIRE
            UNITED STATES ATTORNEY'S OFFICE
16          United States Attorney's Office for the District of
            Columbia
17          610 D. Street NW
            Washington, D.C. 20530
18

19          SANJAY HARIVADEN PATEL, ESQUIRE
            DOJ-CRT
20          Civil Rights Division, Criminal Section
            950 Pennsylvania Avenue NW
21          Washington, D.C. 20004

22

23

24

25
```

```
1    (APPEARANCES CONTINUED:)

2


3    For Defendant, Jonathan Darnel:

4            CHRISTOPHER MICHAEL DAVIS, ESQUIRE
             DAVIS & DAVIS
5            1350 Connecticut Avenue NW
             Suite 202
6            Washington, D.C. 20036

7


8    For Defendant, Jean Marshall:

9            JOHN L. MACHADO, ESQUIRE
             LAW OFFICE OF JOHN MACHADO
10           503 D Street NW
             Suite 310
11           Washington, D.C. 20001

12


13   For Defendant, Joan Bell:

14           Joan Bell, Pro Se

15
     Court Reporter:
16
             Stacy Johns, RPR
17           Official Court Reporter

18           Proceedings recorded by mechanical stenography,
             transcript produced by computer-aided transcription
19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

THE COURT:  All right.  Let's call the case.

DEPUTY CLERK:  Criminal Case 22-096, the United States versus Jonathan Darnel, Jean Marshall and Joan Bell.

Counsel, would you please identify yourself for the record.

MS. ROSS:  Good morning, Your Honor.  Rebecca Ross and Sanjay Patel on behalf of the United States.  We're joined at counsel table by paralegal Henry Fronk.

THE COURT:  Good morning.

And for Mr. Darnel.

MR. DAVIS:  Good morning, Your Honor.  Christopher Davis on behalf of Jonathan Darnel, who is present.

THE COURT:  Good morning to both of you.

Ms. Marshall.

MR. MACHADO:  Good morning, Your Honor.  John Machado on behalf of Jean Marshall, who is present.

THE COURT:  Good morning to both of you.

And, Ms. Bell, good morning.

MS. BELL:  Good morning, Your Honor.  Joan Bell.

THE COURT:  We just sent you by email the very last version, since we got things a little on the late.  So you should be able to read it as I go through it.  Besides the nits, which you brought to my attention, "disrupt" and whatever, some other things, I did the more substantive stuff.

```
1    I got the Government's proposed changing "and/or" to "and" in
2    the part that says, quote, "injure, oppress, threaten, and/or
3    intimidate," because the Government is right that the
4    indictment charge is in the conjunctive, changing "and" to
5    "or."
6            As to the third element, the Government showed beyond
7    a reasonable doubt that a defendant's purpose or intent in
8    joining the conspiracy was to use force and physical
9    obstruction, to hinder, interfere with and prevent the patients
10   and employees at the Washington Surgi-Clinic in their legal
11   right to obtain or seek to obtain or to provide or seek to
12   provide reproductive health services, including but not
13   necessarily limited to abortion services.  So it's correct that
14   the indictment is in the disjunctive.
15           Mr. Machado, we adopted most of your non-substantive
16   changes.  I didn't change the pro se defendant instruction to
17   pass.  I think it should be what her rights are in terms of
18   what she can do.  She didn't testify or do a closing, but it
19   points out that she had the right to do so.
20           I removed the number of witnesses and exhibits because
21   no defense was put on.  I also removed uncalled witnesses,
22   since no one put on a defense case.  I did not remove, quote,
23   "interfere with" from "hinder, interfere with or prevent in the
24   conspiracy against rights instructions."
25           This came up as an issue in the last trial based on a
```

```
1    note from the jury, and quite a bit of time and research,

2    frankly, was conducted.  I made a fairly intensive oral ruling.

3    I am putting it in writing.  It's obviously an older statute

4    and it's totally different than all of the other conspiracy

5    statutes that most of us are familiar with.

6         There is case law that sets out that it's to be

7    interpreted broadly.  There's a Supreme Court case that

8    interprets it and a bunch of other cases.  So based on the case

9    law from a legal perspective, I think it's correct to leave

10   that language in.  But your objection is noted for the record.

11        We had a long discussion with counsel and the

12   Government.  So there's a record that would match whatever

13   argument you would make.  So they've already made it for you,

14   so to speak.  And I will be putting it in writing.  I just

15   haven't had a chance to put it down in writing.

16        Okay.  So I think we're ready to go.  Anything else?

17        MR. PATEL:  Your Honor, one matter the Government

18   would like to bring to your attention, the Government is

19   requesting that Your Honor make a definitive ruling as to what

20   your decision would have been had Mr. Davis -- this is with

21   regards to the unredacted portion of the exhibit that he did

22   present or tried to present to the jury.

23        THE COURT:  I planned on put something in writing, but

24   there was not enough time.  Based on the discussion we had, I'm

25   going to be issuing something in writing.
```

1        MR. PATEL:  Okay.  And just one thing, Your Honor.

2    The Government would just note that had Mr. Davis attempted to

3    present that portion of the redacted exhibit at trial, the

4    Government would have lodged several objections.

5        THE COURT:  I understand.  You made your objections.

6    I'm going by what Mr. Davis said was the purpose of getting it

7    in or what he would have said why he -- what the basis was for

8    it and what your arguments were.

9        MR. PATEL:  Yes.  Thank you, Judge.

10        THE COURT:  Mr. Davis.

11        MR. DAVIS:  Yes, Your Honor.  I understand Your

12    Honor's ruling.  One thing I didn't mention today -- and I'm

13    not beating a dead horse.  I'm not asking you to reconsider.

14    But another co-conspirator statement wouldn't have been

15    admissible because it wasn't being admitted against the party.

16    However, state of mind indicative of his actions later on, we

17    would submit it would have been submitted for that purpose to

18    explain his actions later on.

19        THE COURT:  It would have been helpful to have that at

20    the time, but I don't think it would have changed my ruling.

21    But I will put it into the mix in terms of the discussion that

22    I have.

23        MR. DAVIS:  Thank you, Your Honor.

24        THE COURT:  All right.  I think we're ready for the

25    jury.

```
1          MR. BRENNWALD:  Your Honor, I do have a hearing at
2  10:30, but I think my part will be at 11:00 before Judge Cobb.
3          THE COURT:  Yeah, it depends.  I try not to rush
4  through it.  I haven't timed it.
5          MR. BRENNWALD:  I'm just letting you know.  And maybe
6  Ms. Patterson could let them know.  It's a five co-defendant
7  hearing.  So it's on Zoom.
8          THE COURT:  Did you alert her that you might be
9  delayed a little bit?
10          MR. BRENNWALD:  I actually told her in person
11  yesterday.
12          THE COURT:  The one key part is the exhibits.  We need
13  to be able to send them back, which means you need to have
14  looked at them and sign off on them.
15          MR. BRENNWALD:  Yes, Your Honor.
16          THE COURT:  Did you do that or not?
17          MR. BRENNWALD:  No, not yet.  I'll do that now.  We
18  discussed it but...
19          THE COURT:  Okay.  Well, I'm not letting you go
20  without that being done because it will delay them actually
21  getting anything to look at.
22          MR. BRENNWALD:  Yes, Your Honor.
23          THE COURT:  But I don't have a problem with giving her
24  a call and just telling her --
25          MR. BRENNWALD:  Ms Bell just told me she agrees to all
```

1    the exhibits, as is her custom.  I don't know if she should be
2    signing or I should be signing.
3         THE COURT:  I think she needs to sign.  Basically, you
4    didn't produce anything.  It's just making sure that the
5    Government's exhibits, as they presented it, are the correct
6    ones going back.  That's why I make counsel responsible to take
7    a look at them and make absolutely certain that these are the
8    exhibits.
9         Do you have a flash drive?  Is that what you're giving
10   them?
11        MS. ROSS:  Your Honor, considering the issues that the
12   jury had last time, we made sure to give them the drive that
13   the Court requested last time that worked for the videos.
14        THE COURT:  Okay.  Perfect.
15        MS. ROSS:  And then we're giving them paper copies of
16   the exhibits that we were able to and the rest is on the flash
17   drive.
18        THE COURT:  Okay.  That's what all defense counsel
19   need to look on.
20      (Whereupon, the jury enters the courtroom and the following
21   proceedings were had:)
22        THE COURT:  Good morning, members of the jury.  All
23   right.  We're ready to proceed at this point.  The time has now
24   come when all the evidence is in.  You've heard the closing
25   arguments of the lawyers.  And what I'm -- oh, she needs --

1   hold on one second.

2          Is it working?  If it's not, we can -- she should be

3   right back.  I don't know where she went.  She has to lock the

4   door to the other -- it's not working?

5          JUROR:  No.

6          THE COURT:  We've got a whole stack of them.  So we'll

7   wait a minute.

8          Dorothy, the earphones are not working.

9          DEPUTY CLERK:  Can you say something?

10         THE COURT:  Hello, hello.  Hello, hello.

11         Thank you.

12         All right.  I'm going to let you know upfront that you

13   will be getting two copies of the instructions that I'm going

14   to read to you.  So you don't have to sit there and be worried

15   that you need to write things down because you need to remember

16   it.  You're going to be in a position to review everything that

17   I have said.  We'll give you two copies, so that you have

18   enough to be able to look at it.

19         Now, that doesn't mean you should tune out.  It's

20   important that you listen to it so you appreciate hearing it,

21   what's actually in the book, what the instructions are, so you

22   know what to go back and take a look at.

23         So I'd ask you to pay attention.  I think somebody

24   said they were boring.  Never boring.  I'll try to keep the

25   tone such that it sounds more interesting than just sort of

1   droning on.

2         So I'm going to be instructing you on the law that

3   should control your deliberations in the case.  I'm going to

4   divide my instructions up roughly into three parts.  First, I'm

5   going to discuss some of the general principals of law, some of

6   which we've discussed before, but to emphasize them and say

7   them again.  There's also some new ones.

8         Second, I'll discuss with you the instructions that

9   apply to the elements of the offenses that are charged in this

10   case.

11         Finally, I'll have some closing remarks about your

12   deliberations in this matter.

13         So let me start with the general principals.  First,

14   I'm sure by now that you understand that the jury and the

15   Court, that's you and I, have quite different responsibilities

16   in a trial.  My function is to conduct the trial in an orderly,

17   fair and efficient manner, to rule on questions of law and to

18   instruct you on the law that applies in this case.

19         It's your duty to accept the law as I instruct you.

20   You should consider all the instructions as a whole.  You may

21   not ignore or refuse to follow any of them.

22         Now, if counsel or a witness stated the law

23   differently than what I am giving you, my instructions of the

24   law controls.  So you should be following what these are here.

25   If you've heard discussion that's different, put that out of

1   your mind.  Refer to these instructions.

2          So first, I'm going to start with the function of the

3   jury.  Your function as the jury is to determine what the facts

4   are in this case.  You are the sole judges of the facts.  While

5   it's my responsibility to decide what is admitted as evidence

6   during the trial, you alone decide what weight, if any, to give

7   to that evidence.  You alone decide the credibility or

8   believability of the witnesses.

9          Now, as human beings, we all have personal likes and

10  dislikes, opinions, prejudices and biases.  Generally, we're

11  aware of these things.  But you also should consider the

12  possibility that you have implicit biases, that is biases of

13  which you may not be consciously aware.  Personal prejudices,

14  preferences or biases have no place in a courtroom, where our

15  goal is to arrive at a just and impartial verdict.

16         All people deserve fair treatment in our system of

17  justice, regardless of any personal characteristic, such as

18  race, national or ethnic origin, religion, age, disability,

19  sex, gender identity or expression, sexual orientation,

20  education or income level.

21         You should determine the facts solely from a fair

22  consideration of the evidence.  You should decide the case

23  without prejudice, fear, sympathy, favoritism or consideration

24  of public opinion.  You may decide the case only based on the

25  law and the facts before you.

1        Moreover, you're not to be concerned with the wisdom

2  of any law or rule of law as I state them.  Nor should you be

3  concerned with your opinion, good or bad or neutral, of the

4  defendant's advocacy or the services the clinic in this case

5  provided at the time of the charged conduct.

6        It would be a violation of your sworn duty to base a

7  verdict upon any other view of the law than that given in the

8  instructions of the Court, just as it would be a violation of

9  your sworn duty as judges of the facts to base a verdict upon

10  anything but the evidence in the case.

11        You may not take anything I may have said or done as

12  indicating during the course of the trial how I think you

13  should decide this case.  If you believe that I expressed or

14  indicated any such opinion, it was intentional and you should

15  ignore it.  The verdict in this case is your sole and exclusive

16  responsibility.

17        MR. BRENNWALD:  Your Honor, could we get on the phone

18  for one second?

19        THE COURT:  I'm sorry?

20        MR. BRENNWALD:  Could we get on the phone for one

21  second?

22        THE COURT:  Yes.

23        MR. BRENNWALD:  The Court misspoke.  When you said if

24  I have expressed any opinion, it was "intentional."  I know you

25  meant to say "unintentional," but we all heard "intentional."

1    THE COURT:  Let me say that again.  Thank you.

2    (Whereupon, the following proceedings were had in open

3 court:)

4    THE COURT:  Counsel has brought to my attention that

5 I've made a mistake here in reading it.  So this gets to

6 whether if I've -- you may not -- I'll repeat this to make it

7 correct.

8    You may not take anything I may have said or done as

9 indicating how I think you should decide this case.  If you

10 believe that I have expressed or indicated any such opinion, it

11 was unintentional and you should ignore it.

12    As I indicated originally, you should try not to

13 develop opinions at all.  But if you think I have, it wasn't

14 intentional.  It was unintentional and you should ignore it.

15 The verdict in this case is your sole and exclusive

16 responsibility.

17    So I misspoke, the instruction is correct.

18    Now, the jury's recollection controls.  If there's

19 been any reference by me or the attorneys to the evidence is

20 different from your own memory of the evidence, it's your

21 memory that should control during your deliberations.

22    Inadmissible and stricken evidence:  The lawyers in

23 this case sometimes objected when the other side asked a

24 question, made an argument or offered evidence that the

25 objecting lawyer believed was not proper.  You must not hold

1  such objections against the lawyer who made them or the party

2  they represent.  It's the lawyer's responsibility to object to

3  evidence that they believe is not admissible.

4       If, during the course of the trial, I sustained an

5  objection to a lawyer's question, you should ignore the

6  question and you must not speculate as to what the answer would

7  have been.  If after a witness answered a question I rule that

8  the answer should be stricken or portions of it stricken, you

9  should ignore both the question and the answer, and they should

10 play no part in your deliberations.

11      Again, questions are not evidence and simply because

12 an attorney may have proposed a fact to a witness in a question

13 doesn't mean that purported fact is true or, even if true, a

14 fact that you may consider.  You may only consider the

15 testimony and exhibits in evidence.

16      Now, evidence in the case:  During your deliberations,

17 you may consider only the evidence properly admitted in this

18 trial.  The evidence in this case consists of the sworn

19 testimony of the witnesses and the exhibits that were admitted

20 into evidence.  When you consider the evidence, you are

21 permitted to draw from the facts that you find have been proven

22 such reasonable inferences as you feel are justified in the

23 light of your experience.

24      You should give any evidence such weight in your

25 judgment it's fairly entitled to receive.  And you will be

1   receiving the evidence that has been admitted in various forms
2   so that you can watch it.

3       Statements of counsel:  Statements and arguments of
4   the lawyers are important because they're intended to help you
5   understand the evidence and the contentions of the parties.
6   However, the statements and arguments of the lawyers, again,
7   are not evidence.  They are only intended to assist you in
8   understanding the evidence.  Similarly, the questions of the
9   lawyers, again, are not evidence.

10      Moreover, occasionally during argument, a lawyer for
11  one side or the other may appear to state his or her belief or
12  opinion concerning the facts in the case or the credibility of
13  testimony.  A lawyer is not permitted to state his or her
14  belief or opinion during argument, nor may a lawyer state his
15  or her beliefs or opinion during an objection.  He or she is
16  permitted only to argue based on what the evidence in this case
17  shows.

18      So if you think a lawyer has expressed his or her
19  personal belief or opinion during argument, you must disregard
20  any such expression and judge the case only on the evidence.

21      Now, Ms Bell decided that she would represent herself,
22  and the law permits a criminal defendant to represent herself,
23  or, in legal terms, to proceed pro se.  In this case, Ms Bell
24  has decided to represent herself and not to use the services of
25  a lawyer.  Ms. Bell has a Constitutional right to do so.  Her

1    decision has no bearing on whether she's guilty or not guilty

2    and it must not affect your consideration of the case.

3        Because Ms Bell has decided to act as her own lawyer,

4    you will hear her speak at various terms during the trial.

5    You've heard that.  She may make an opening statement and

6    closing arguments.  She's allowed to; she's chosen not to.  She

7    may ask questions of witnesses, make objections and argue to

8    the Court.  So you know what she could actually do, and she's

9    made choices during the course of the trial as to what she

10    wanted to do.

11        I want to remind you that when Ms Bell speaks in these

12    parts of the trial, she's acting as a lawyer in the case and

13    her words not on the witness stand are not evidence.  The only

14    evidence in this case comes from the witness who testified

15    under oath on the witness stand and from exhibits that are

16    admitted.

17        Just so you understood the role of Ms Bell in terms of

18    her participation in the trial.

19        Now, the burden of proof:  Every defendant in a

20    criminal case is presumed to be innocent.  This presumption of

21    innocence remains with the defendant throughout the trial,

22    unless and until the Government has proven that he or she is

23    guilty beyond a reasonable doubt.

24        This burden never shifts throughout the trial.  The

25    law does not require any defendant to prove their innocence or

1    to produce any evidence at all.  If you find that the

2    Government has proven beyond a reasonable doubt every element

3    of a particular offense with which a defendant is charged, it's

4    your duty to find that defendant guilty of that offense.

5           On the other hand, if you find the Government has

6    failed to prove any element of a particular offense beyond a

7    reasonable doubt, it's your duty to find one or more of the

8    defendants not guilty of that offense.

9           Now, reasonable doubt:  The Government has the burden

10    of proving separately each defendant guilty beyond a reasonable

11    doubt as to each count or charge against them.  Some of you may

12    have served as jurors in civil cases where you were told that

13    it's only necessary to prove that a fact is more likely true

14    than not true, which we call the preponderance of the evidence.

15    In criminal cases, the Government's proof must be more powerful

16    than that.  It must be beyond a reasonable doubt.

17           Proof beyond a reasonable doubt is proof that leaves

18    you firmly convinced of the defendant's guilt.  Now, there are

19    very few things in this world that we know with absolute

20    certainty, and in criminal cases, the law does not require

21    proof that overcomes every possible doubt.

22           If, based on your consideration of the evidence, you

23    are firmly convinced that this defendant is guilty of the crime

24    charged, you must find him or her guilty.  If, on the other

25    hand, you think there's a real possibility that a defendant is

1    not guilty, you must give him or her the benefit of the doubt

2    and find him or her not guilty.

3         Now, direct and circumstantial evidence:  There are

4    two types of evidence from which you may determine what the

5    facts are in this case:  Direct evidence and circumstantial

6    evidence.  When a witness, such as an eyewitness, asserts

7    actual knowledge of a fact, that witness's testimony is direct

8    evidence.  On the other hand, evidence of facts and

9    circumstances from which reasonable inferences may be drawn is

10   circumstantial evidence.

11        So let me give you an example.  Assume a person looked

12   out a window and saw that snow was falling.  If he later

13   testified in court about what he had seen, his testimony would

14   be direct evidence that snow was falling at the time he saw it

15   happen.

16        Assume, however, that he looked out of a window and

17   saw no snow on the ground and then went to sleep and saw snow

18   on the ground after he woke up.  His testimony about what he

19   had seen would be circumstantial evidence that it had snowed

20   while he was asleep.

21        The law says that both direct and circumstantial

22   evidence are acceptable as a means of proving a fact.  The law

23   does not favor one form of evidence over another.  It's for you

24   to decide how much weight to give to any particular evidence,

25   whether it's direct or circumstantial.  You're permitted to

1    give equal weight to both.  Circumstantial evidence does not
2    require a greater degree of certainty than direct evidence.

3         In reaching a verdict in this case, you should
4    consider all of the evidence presented, both direct and
5    circumstantial.

6         Now, you will, as I indicated, be getting exhibits.
7    Some of these may have redactions and other things that are
8    blacked out or omitted.  So in addition, during the course of
9    the trial, a number of exhibits admitted into evidence were
10   also redacted, which means that you can't read it.  We've
11   blacked it out in some form.

12        Sometimes only portions of an exhibit were admitted,
13   such as a document with some words blocked out or otherwise
14   removed.  There are a variety of reasons why only a portion of
15   an exhibit is admitted, including that the other portions are
16   inadmissible or implicate an individual's privacy, in order to
17   conform with some local rules of procedure.

18        As you examine these exhibits, you should consider
19   only the portions that were admitted in these exhibits, which
20   are the ones you could read.  On the whole, you are to decide
21   the facts only from the evidence that's before you.  You
22   shouldn't speculate about whatever it is that's blocked out.

23        Credibility of witnesses:  In determining whether the
24   Government has proved the charges against the defendant beyond
25   a reasonable doubt, you must consider the testimony of all the

1 witnesses who have testified.  You are the sole judges of the
2 credibility of the witnesses.  You alone determine whether to
3 believe any witness and the extent to which any witness should
4 be believed.
5      Judging a witness's credibility means evaluating
6 whether the witness has testified truthfully and also whether
7 the witness accurately observed, recalled and described the
8 matters about which the witness testified.
9      You may consider anything that in your judgment
10 affects the credibility of any witness.  So, for example, you
11 may consider the demeanor and the behavior of the witness on
12 the witness stand, the witness's manner of testifying, whether
13 the witness impresses you as a truthful person, whether the
14 witness impresses you as having an accurate memory, whether the
15 witness has any reason for not telling the truth, whether the
16 witness had a full opportunity to observe the matters about
17 which he or she has testified, whether the witness has any
18 interest in the outcome of this case, stands to gain anything
19 by testifying or has a friendship or hostility toward other
20 people concerned with this case.
21      In evaluating the accuracy of a witness's memory, you
22 may consider the circumstances surrounding the event, including
23 the time that elapsed between the event and any later
24 recollection of the events and the circumstances under which
25 the witness was asked to recall details of the event.

1       You may consider whether there are inconsistencies in

2   a witness's testimony.  You may also consider any

3   inconsistencies between the witness's testimony and any other

4   evidence that you credit.

5       You may consider whether any inconsistencies are the

6   result of lapses in memory, mistake, misunderstanding,

7   intentional falsehood or differences in perception.  You may

8   consider the reasonableness or the unreasonableness, the

9   probability or the improbability of the testimony of a witness

10  in determining whether to accept it as true and accurate.  You

11  may consider whether the witness has been contradicted or

12  supported by other evidence that you credit.

13      If you believe any witness has shown him or herself to

14  be biased or prejudiced for or against either side in the trial

15  or motivated by self-interest, you may consider and determine

16  whether such bias or prejudice has colored the testimony of the

17  witness, so as to effect the desire and capability of that

18  witness to tell the truth.

19      So in sum, you should give the testimony of each

20  witness such weight as in your judgment it's fairly entitled to

21  receive.

22      Now, there are particular instructions about specific

23  testimony.  So you've heard testimony from Government witness

24  Caroline Davis.  The Government is permitted to use a witness

25  who testifies that she participated in the offenses charged

1    against the defendant, although the testimony of such a witness

2    should be considered with caution.  You should give her

3    testimony as much weight as in your judgment it deserves.

4         Now, a witness with a plea agreement:  You've heard

5    evidence from, again, Government witness Caroline Davis entered

6    into a plea agreement with the Government, pursuant to which

7    Ms. Davis agreed to testify truthfully in this case and the

8    Government agreed to bring Ms. Davis's cooperation to the

9    attention of her sentencing judge in Michigan.

10        The Government is permitted to enter into this kind of

11   plea agreement.  You, in turn, may accept the testimony of such

12   a witness and convict one or more of the defendants on the

13   basis of this testimony alone, if it convinces you of one or

14   more of the defendant's guilt beyond a reasonable doubt.

15        A witness who has entered into a plea agreement is

16   under the same obligation to tell the truth as is any other

17   witness.  The plea agreement does not protect her against a

18   prosecution for perjury or false statement should she lie under

19   oath.

20        However, you may consider whether a witness who has

21   entered into such an agreement has an interest different from

22   other types of witnesses.  You may consider whether the plea

23   agreement the witness entered into with the Government has

24   motivated her to testify falsely against the defendants.  The

25   testimony of a witness who has entered into a plea agreement

1   should be considered with caution.  You should give the

2   testimony as much weight as in your judgment it deserves.

3          Now, testimony from the law enforcement:  In this

4   case, you've heard testimony from an agent of the Federal

5   Bureau of Investigation and several local police officers.  A

6   law enforcement officer's testimony should be evaluated by you

7   just as any other evidence in the case.  In evaluating the

8   officer's credibility, you should use the same guidelines --

9          God bless you.

10         You should use the same guidelines that you apply to

11  the testimony of any witness.  In no event should you give

12  either greater or lesser weight the testimony of any witness

13  merely because there are a law enforcement officer.

14         Now, there was testimony of other acts' evidence that

15  were admitted for limited purposes.  So let me read these

16  instructions that I read during the course of the trial, in

17  terms of how you'd use specific evidence and how you are to

18  consider them.

19         So the defendants in this case are charged with having

20  committed specific acts leading up to and on October 22nd,

21  2020.  The government has presented evidence, through the

22  testimony of Shrewsbury Police Department Officer Rumola that

23  one of the defendants, Ms Bell, has committed acts other than

24  those charged in this case.

25         This evidence concerns Ms Bell's alleged conduct on or

about October 14th, 2020, in Shrewsbury, New Jersey. This
evidence is offered to prove Ms Bell's intent and motive
leading up to and on October 22nd, 2020. The evidence is
offered for this purpose only, and you may not consider the
evidence for any other purpose.

You must consider whether you believe the Government's
evidence and whether you find that it helps you decide whether
Ms Bell committed the unlawful conduct charged in this case.
Your responsibility is to decide whether the Government proves
beyond a reasonable doubt the unlawful conduct charged in this
case.

So this evidence that I've just referred to is to be
considered as to Ms Bell only. Ms Bell is on trial only for
the acts charged in the indictment and may not be held
responsible in this case for any other acts.

Now, also, there was another instruction that was
given. Again, the defendants in this case are charged with
having committed specific acts leading up to and on
October 22nd, 2020. The Government presented evidence through
the testimony of Alexandria Police Department Officer Honaker
that two defendants, Mr. Darnel and Ms Bell, have committed
acts other than those charged in this case.

This evidence concerns Mr. Darnel's and Ms Bell's
alleged conduct on or about November 16th, 2021, in Alexandria,
Virginia. This evidence is offered to prove Mr. Darnel's and

1   Ms Bell's intent and motive leading up to and on October 22nd,

2   2020.  The evidence is also offered to show whether or not

3   Mr. Darnel and/or Ms Bell conspired with others up to and on

4   October 22nd, 2020.

5         The evidence is offered for these purposes only and

6   you may not consider the evidence for any other purpose.  You

7   must decide whether you believe the Government's evidence and

8   whether you find that it helps you decide whether Mr. Darnel

9   and/or Ms Bell committed the unlawful conduct charged in this

10  case.

11        Your responsibility is to decide whether the

12  Government proves beyond a reasonable doubt the unlawful

13  conduct charged in this case.

14        So the evidence that I've just spoken about is to be

15  considered as to Mr. Darnel and Ms Bell only.  And I remind

16  you, Mr. Darnel and Ms Bell are on trial only for the acts

17  charged in the indictment and may not be held responsible in

18  this case for any other acts.

19        And there was one other instruction given to evidence

20  somewhat similar to this.  Again, the defendants in this case

21  are charged with having committed specific acts leading up to

22  and on October 22nd, 2020.  The Government has presented

23  evidence through the testimony of former Montgomery County

24  Police Department Officer Matthews that one defendant,

25  Mr. Darnel, has committed acts other than those charged in this

1    case.

2         This evidence concerns Mr. Darnel's alleged conduct on

3    or about January 30th, 2021, in Silver Spring, Maryland.  This

4    evidence is offered to prove Mr. Darnel's intent and motive

5    leading up to and on October 22nd, 2020.

6         The evidence is offered for this purpose only, and you

7    may not consider the evidence for any other purpose.  You must

8    decide whether you believe the Government's evidence and

9    whether you find that it helps you decide whether Mr. Darnel

10   committed the unlawful conduct charged in this case.

11        Your responsibility is to decide whether the

12   Government proves beyond a reasonable doubt the unlawful

13   conduct charged here.  This evidence is to be considered as to

14   Mr. Darnel only.  Mr. Darnel is on trial only for the acts

15   charged in the indictment and may not be held responsible in

16   this case for any other acts.

17        Now, there was some testimony, again, admitted for a

18   limited purpose, and that related to some testimony from

19   Ms. Shampy Holler.  And this is an instruction I gave you

20   during the course of the trial as well.

21        You've heard testimony from Ms. Shampy Holler

22   regarding the circumstances of her pregnancy and why she sought

23   to terminate her pregnancy on October 22nd, 2020.  You're to

24   consider this testimony only for the purpose of determining

25   whether one or more defendants in this case obstructed

Ms. Holler in her alleged efforts to receive abortion services
that day and for no other purpose.  I'll remind you that this
case is not about the propriety of abortion or one form of
abortion over another.

I will also remind you that when I instruct you to
consider evidence for a limited purpose, you may only consider
the evidence for that limited purpose.

Now, the right of a defendant not to testify.  As I've
told you at the beginning and throughout the case, every
defendant in a criminal case has an absolute right not to
testify.  Mr. Darnel, Ms. Marshall and Ms Bell have each chosen
to exercise this right.  You must not hold this decision
against either of them and it would be improper for you to
speculate as to the reason or reasons for each of the
defendants' decisions.  You must not assume each defendant is
guilty because each chose not to testify.

Again, I'd remind you that the indictment is merely
the formal way of accusing a person of a crime, and you must
not consider the indictment as evidence of any kind.  You may
not consider it evidence of any defendant's guilt or draw any
inference of guilt from it.

Also, one of the questions that you were asked when we
were selecting this jury was whether the nature of the charges
itself would affect your ability to reach a fair and impartial
verdict.  We asked you that question because you must not allow

1    the nature of a charge to affect your verdict, including the

2    Government's decision as to which charges to bring.  You must

3    consider only the evidence that has been presented in the case

4    in reaching a fair and impartial verdict.

5            They do keep these courtrooms cold.  To keep us awake,

6    I think.

7            All right.  Let me move to part two and let me talk to

8    you about the specific offenses charged in this case.

9            So this is an explanation of the charges, multiple

10   defendants, multiple counts.  Again, each count of the

11   indictment charges a separate offense.  Moreover, each

12   defendant is entitled to have the issue of his or her guilt as

13   to each of the crimes for which he or she is on trial

14   determined from his own conduct and from the evidence that

15   applies to him or her as if he or she were being tried alone.

16           You should, therefore, consider separately each

17   offense and the evidence which applies to it, and you should

18   return separate verdicts as to each count of the indictment, as

19   well as to each defendant.  The fact that you may find any one

20   defendant guilty or not guilty on any one count of the

21   indictment should not influence your verdict with respect to

22   any other count of the indictment for that defendant, nor

23   should it influence your verdict with respect to any other

24   defendant as to that count or any other count in the

25   indictment.

So you must find either of the defendants -- so you
may find either of the defendants guilty or not guilty on any
one or more counts of the indictment and you may return
different verdicts as to different defendants as to different
counts.  You'll be provided -- and I'll speak to you about
that -- a verdict form to record your verdict, which I'll show
you and explain to you later.

Count one, which is conspiracy against rights.  First,
I'll explain to you the elements of the offense of conspiracy
against rights.  It's against the law to agree with someone to
commit a crime.  That is called a conspiracy.  More
specifically, it is against the law to agree with someone to
injure, oppress, threaten or intimidate any person in the free
exercise of any right or privilege secured to him or her by the
laws of the United States.

You're instructed that the laws of the United States
provide employees of a reproductive health clinic to provide
reproductive health services, including abortion, where
permitted by state law, without being unlawfully obstructed or
impeded.  You're instructed that the laws of the United States
provide patients seeking such services the same right.

I'll explain what I mean by, quote, "obstructed" or
"impeded," unquote, later.

The indictment in this case charges the defendants
with conspiring and agreeing to injure, oppress, threaten and

1  intimidate patients and employees of the Washington

2  Surgi-Clinic, a reproductive health clinic in the District of

3  Columbia.

4         To prove a conspiracy against rights, the Government

5  must show the following three elements beyond a reasonable

6  doubt:  One, that two or more persons reached an agreement or

7  came to an understanding to injure, oppress, threaten or

8  intimidate the patients and/or employees of the Washington

9  Surgi-Clinic.

10        Two, the defendant voluntarily and intentionally

11 joined in the agreement or understanding, either at the time it

12 was first reached or at some later time, while the agreement or

13 understanding was ongoing.

14        And, three, at the time that the defendant joined in

15 the agreement or understanding, the defendant intended to

16 hinder, interfere with or prevent the patients and/or employees

17 of the Washington Surgi-Clinic in their right to obtain or seek

18 to obtain or to provide or seek to provide reproductive health

19 services permitted by state law.

20        As to the first element, the Government must show that

21 a defendant joined the alleged conspiracy between on or about

22 October 7th, 2020 and on or about October 22nd, 2020.  This

23 doesn't have to be a formal agreement or plan in which everyone

24 involved sat down and worked out the details.  On the other

25 hand, merely because people get together, talk about common

1    interests or do similar things does not necessarily show that
2    an agreement exists.
3          For this first element, it is enough that the
4    Government prove beyond a reasonable doubt that there was a
5    common understanding among those who were involved to injure,
6    oppress, threaten or intimidate the patients and/or employees
7    of the Washington Surgi-Clinic.
8          The terms, quote, "injure, oppress, threaten or
9    intimidate," unquote, are not used in any technical sense but
10   cover a variety of conduct intended to harm, frighten, punish,
11   prevent or obstruct a person's exercise or enjoyment of a right
12   guaranteed by the laws of the United States.
13         As to the second element, the Government must show
14   that a defendant voluntarily and intentionally joined in the
15   alleged agreement or understanding to disrupt patients and/or
16   employees of the Washington Surgi-Clinic.
17         It's not necessary to find that a defendant agreed to
18   all the details of the alleged conspiracy or knew the identity
19   of all the other people that the Government claims were
20   participating in the agreement.  A person becomes -- a person
21   may become a member of a conspiracy, even if that person agrees
22   to play only a minor role, as long as that person understands
23   the unlawful nature of the plan and voluntarily and
24   intentionally joins in it with the intent to advance or further
25   the unlawful object of the conspiracy.

1        The defendant, however, need not know that the object

2   of the conspiracy violated any particular law or any law at

3   all.  Instead, the defendant must enter an agreement to perform

4   acts which are, in fact, illegal.

5        Even if a defendant is not part of the agreement at

6   every stage, he or she can become a member of the conspiracy

7   later, so long as the Government proves beyond a reasonable

8   doubt that he or she intentionally joined in the agreement.

9        That said, mere presence at the scene of the agreement

10  of the crime or merely being with the other participants does

11  not show that a defendant knowingly joined in the agreement.

12  Also, unknowingly acting in a way that helps the participants

13  or merely knowing about the agreement itself without more does

14  not make a defendant part of the conspiracy.

15       Some of the people who may have been involved in the

16  conspiracy are not on trial.  This doesn't matter.  There's no

17  requirement --

18       Are you okay?  Do you need some water?  We have some

19  water if you'd like that.  Are you okay?

20       All right.  Let me just start that paragraph again.

21       Some of the people who may have been involved in the

22  conspiracy are not on trial.  This does not matter.  There's no

23  requirement that all members of a conspiracy be charged or

24  prosecuted or tried together in one proceeding, nor is there

25  any requirement that the names of the other conspirators be

1    known.  An indictment can charge a defendant with a conspiracy
2    involving people whose names are not known, as long as the
3    Government can prove that the defendant conspired with one or
4    more of them.

5         In determining whether a conspiracy between two or
6    more persons existed and whether the defendant was one of its
7    members, you may consider the acts and the statements of any
8    other member of the conspiracy as evidence against all of the
9    defendants, whether done in or out of his or her presence,
10   while the conspiracy existed.

11        When persons enter into an agreement to commit a
12   crime, they become agents for each other, so that everything
13   which is said or done by one of them in furtherance of that
14   purpose is deemed to be the act or statement of all who have
15   joined in that conspiracy and is evidence against all other
16   conspirators.

17        However, statements of any conspirator which are made
18   before the conspiracy's existence or after its termination may
19   be considered as evidence only against the person making such
20   statements.

21        As to the third element, the Government must show
22   beyond a reasonable doubt that a defendant's purpose or intent
23   in joining the conspiracy was to use force or physical
24   obstruction to hinder, interfere with or prevent the patients
25   and employees of the Washington Surgi-Clinic in their legal

1  right to obtain or seek to obtain or provide or seek to provide

2  reproductive health services, including but not necessarily

3  limited to abortion services.

4       The Government need not show that any of the

5  defendants actually succeeded in preventing any patient or

6  employee of the Washington Surgi-Clinic from accessing any

7  particular reproductive health services, merely that a

8  defendant conspired with another to do so.

9       To meet this element, you need only find that the

10 purpose of the conspiracy was to violate a right protected by

11 the Constitution or laws of the United States.  This element

12 can be met, even if the conspirators were also motivated by

13 some other emotion of aim, so long as one purpose of the

14 conspiracy was to deprive the Washington Surgi-Clinic's

15 patients and/or employees from exercising the statutory right

16 to be free from the use of force, threats of force or physical

17 obstruction, to stop them from accessing and/or providing one

18 or more reproductive health services.

19      Now, this is the instruction on count two, freedom of

20 access to clinic entrances.  Count two charges the defendant

21 with obstructing access to a reproductive health clinic.  The

22 Government must prove the following elements beyond a

23 reasonable doubt:  One, a defendant used force or physical

24 obstruction; two, a defendant intentionally injured,

25 intimidated or interfered with Ashley Jones or the employees of

1   the Washington Surgi-Clinic or attempted to do so; and three, a

2   defendant did so because Ashley Jones was obtaining or the

3   Washington Surgi-Clinic was providing reproductive health

4   services.

5        As to the first element, the term, quote, "force,"

6   unquote, means power and/or violence exerted upon or against a

7   person or property.  The term, quote, "physical obstruction,"

8   unquote, means rendering impassable an entrance to or an exit

9   from a facility that provides reproductive health services or

10  rendering passage to or from such a facility unreasonably

11  difficult or hazardous.  A defendant need not obstruct a

12  particular person at a particular time, but rather need only

13  obstruct an entrance to or exit from a clinic with the specific

14  intent to do so.

15       As to the second element, the term, quote,

16  "intimidate," unquote, means to place a person in reasonable

17  expectation of bodily harm to themself or another.  The term,

18  quote, "interfere," unquote, means to restrict a person's

19  freedom of movement.

20       As to the third element, quote, "reproductive health

21  services," unquote, means reproductive health services provided

22  in a hospital, clinic, physician's office or other facility,

23  and includes medical, surgical, counseling or referral services

24  relating to the human reproductive system, including services

25  relating to pregnancy or the termination of a pregnancy.

1    A provider of reproductive health services includes

2    any staff member who's an integral part of the business where

3    reproductive health services are provided.  You're instructed

4    that there's no law in the District of Columbia limiting the

5    stage of pregnancy at which an abortion may be performed.

6    So long as Ashley Jones's status as a reproductive

7    health services' patient or the Washington Surgi-Clinic's

8    employees' roles as reproductive health services providers was

9    one cause of the defendant's conduct, that is enough to satisfy

10   the third element.  Either person's status does not need to be

11   the sole reason why the defendant took action against them, so

12   long as either the provision or receipt of reproductive health

13   services was one reason why the defendant took action against

14   them.

15   Now, an instruction about willfully causing an act to

16   be done.  You may find a defendant guilty of the crime charged

17   in count two without finding that they personally committed

18   each of the acts constituting the events or was personally

19   present at the commission of the offense.

20   A defendant is liable for an act which they willfully

21   caused to be done if the act would be criminal if performed by

22   them directly or by another.

23   To, quote, "cause," unquote, an act to be done means

24   to bring it about.  You may convict one or more of the

25   defendants of the offense charged in count two if you find that

the Government has proven beyond a reasonable doubt each
element of that offense and that that defendant willfully
caused such an act to be done with the intent to commit the
offense.

Now, the instruction on aiding and abetting:  A
defendant may be found guilty on count two of the indictment,
even if the defendant did not personally commit the acts
constituting the offense but, nevertheless, aided and abetted
in the crime's commission.

For a defendant to be guilty of aiding and abetting on
count two, the Government must show the following elements
beyond a reasonable doubt:  One, the specific offense charged
in count two was committed by someone; two, the defendant aided
counseled, commanded, induced or procured that person with
respect to at least one element of the offense charged in count
two; three, the defendant acted with the intent to facilitate
the offense charged in count two; and, four, the defendant
acted before the offense charged in count two was completed.

It's not enough that the defendant merely associated
with the person committing the offense charged in count two or
unknowingly or unintentionally did things that were helpful to
that person.  Rather, the evidence must show beyond a
reasonable doubt that the defendant acted with the knowledge
and intent of helping that person commit the offense charged in
count two.

1          A defendant acts with the intent to facilitate a crime

2     when the defendant actively participates in a criminal venture

3     which -- excuse me, let me read this again.

4          A defendant acts with the intent to facilitate a crime

5     when the defendant actively participates in a criminal venture

6     with advance knowledge of the crime, and having acquired that

7     knowledge when the defendant still had a realistic opportunity

8     to withdraw from the crime.  "Advanced knowledge" means

9     knowledge at a time the person can attempt to alter the plan or

10    withdraw from the enterprise.

11         Knowledge may, but does not have to, exist before the

12    underlying crime has begun.  It is sufficient if the knowledge

13    gained in the midst of the underlying crime, as long as the

14    individual continues to participate in the crime and has a

15    realistic opportunity to withdraw.

16         We read these over several times.  There's always some

17    little things.  Let me read the one sentence again.

18         It's sufficient if the knowledge is gained in the

19    midst of the underlying crime, as long as the individual

20    continues to participate in the crime and has a realistic

21    opportunity to withdraw.  You may, but need not, infer that the

22    defendant had sufficient foreknowledge if you find that the

23    defendant continued his or her participation in the crime after

24    learning that it was being committed.

25         Now, co-conspirator's liability:  A member of a

1 conspiracy who commits another crime during the existence or
2 life of a conspiracy and commits this other crime in order --
3 in furtherance or somehow advance the goals or objectives of a
4 conspiracy may be considered by you to be acting as the agent
5 of the other members of the conspiracy. The illegal actions of
6 this conspirator in committing this crime may be attributed to
7 other individuals, who are then members of the conspiracy.

8 Under certain conditions, therefore, a defendant may
9 be found guilty of this other crime, even though he or she did
10 not participate directly in the acts constituting that offense.

11 If you find that the Government has proven a
12 particular defendant guilty of conspiracy beyond a reasonable
13 doubt, as charged in count one of the indictment, you may also
14 find that defendant guilty of the crime alleged in count two of
15 the indictment, provided you find that the elements of that
16 count, as defined in these instructions, have been established
17 beyond a reasonable doubt, and provided further that you also
18 find beyond a reasonable doubt that, one, the offense charged
19 in count two was committed by a member of the conspiracy as
20 detailed in count one of the indictment.

21 Two, the offense charged in count two was committed
22 during the existence or life of and in furtherance of the goals
23 or objectives of the conspiracy detailed in count one of the
24 indictment.

25 Three, the commission of the offense charge in count

1   two was reasonably foreseeable as a necessary or natural

2   consequence of the conspiracy detailed in count one of the

3   indictment. It's not necessary to find that the crime was

4   intended as part of the original plan, only that it was

5   foreseeable consequence of the original plan.

6        And, four, at the time the offense charged in count

7   two was committed, the particular defendant was a member of the

8   conspiracy detailed in count one of the indictment.

9        Now, proof of state of mind: Someone's intent or

10   knowledge ordinarily cannot be proved directly because there's

11   no way of knowing what a person's actually thinking. But you

12   may infer someone's intent or knowledge from the surrounding

13   circumstances. You may consider any statement made or acts

14   done or omitted by any defendant and all other facts and

15   circumstances received in evidence which indicate their intent

16   or knowledge.

17        You may infer, but are not required to infer, that a

18   person intends the natural and powerful consequences of acts he

19   or she intentionally did or intentionally did not do. It's

20   entirely up to you, however, to decide what facts to find from

21   the evidence received during this trial.

22        You should consider all the circumstances in evidence

23   that you think are relevant in determining whether the

24   Government has proved beyond a reasonable doubt that any

25   defendant acted with the necessary state of mind.

1          Now, the indictment claims that the charged offenses

2     were committed, quote, "on or about October 7th, 2020, and

3     October 22nd, 2020."  The proof need not establish with

4     certainty the exact date of each alleged offense.  It's

5     sufficient if the evidence in the case establishes beyond a

6     reasonable doubt that the offense was committed on a date

7     reasonably near the date alleged.

8          All right.  We're ready to move to part three.  So the

9     first thing is selection of a foreperson.  When you return to

10    the jury room, you should first select a foreperson to --

11    excuse me, preside over your deliberations and to be your

12    spokesperson here in court.

13         Now, there are no specific rules regarding how you

14    should select a foreperson.  That's up to you.  However, as you

15    go about the task, be mindful of your mission to reach a fair

16    and just verdict based on the evidence.  Consider selecting a

17    foreperson who will be able to facilitate your discussions, who

18    can help you organize the evidence, who will encourage civility

19    and mutual respect among all of you, who will invite each juror

20    to speak up regarding his or her views about the evidence and

21    who will promote a full and fair consideration of that

22    evidence.

23         Now, communications between the Court and the jury

24    during your deliberations:  If it becomes necessary during your

25    deliberations to communicate with me, you may send a note by

1   the clerk or the court security person, signed by your

2   foreperson or by one or more members of the jury.  No member of

3   the jury should try to communicate with me except by -- I'm

4   talking about the merits of the case.  And I will never

5   communicate with any member of the jury on any matter

6   concerning the merits of this case, except in writing or orally

7   here in open court.

8        Now, bear in mind, also, that you're never, under any

9   circumstances, to reveal to any person, not the clerk, the

10  Marshal or security officer or me, how jurors are voting until

11  after you've reached a unanimous verdict.  This means that you

12  should never tell me in writing, for instance, or in open court

13  how the jury is divided on any matter.  For example, you

14  indicate you're six to six, seven to five, eleven to one, or in

15  any other fashion, whether the vote is for conviction or

16  acquittal or on any other issue in the case.

17        So you should never note or otherwise indicate any

18  indication of where you are or how things are in terms of how

19  people are voting.

20        Now, a verdict must represent the considered judgment

21  of each juror, and in order to return a verdict, each juror

22  must agree on the verdict.  In other words, your verdict on

23  each count must be unanimous.

24        The question of possible punishment of either

25  defendant in the event of any conviction is not a concern of

1  yours and should not enter into or influence your deliberations

2  in any way.  The duty of imposing sentence in the event of a

3  conviction rests exclusively with me.  Your verdict should be

4  based solely on the evidence in the case.  You should not

5  consider the matter of punishment at all.

6      Now, the attitude and conduct of jurors at the

7  beginning of their deliberations are a matter of considerable

8  importance.  It may not be useful for a juror upon entering the

9  jury room to voice a strong expression of an opinion on the

10  case or to announce a determination to stand for a certain

11  verdict.

12      When one does that at the outset, a sense of pride may

13  cause that juror to hesitate to back away from an announced

14  position after discussion of the case.

15      So if you announce it, you may hesitate to back away

16  from that position after there's a further discussion.

17      Furthermore, many jurors find it useful to avoid an

18  initial vote on retiring to the jury room.  Calmly reviewing

19  and discussing the case at the beginning of deliberations is

20  often a more useful way to proceed.  Remember that you're not

21  partisans or advocates in this matter, but you are judges of

22  the facts.

23      Now, as I indicated, we will be sending into the jury

24  room with you the exhibits that have been admitted into

25  evidence.  You may examine any or all of them as you consider

1    your verdicts.  Please keep in mind that exhibits that were

2    only marked for identification and were not admitted into

3    evidence will not be given to you to examine or consider in

4    reaching your verdict.  So you're only going to get the

5    exhibits that are admitted.

6            Now, obviously, some of these are electronic, and we

7    will be giving you a way so that you can look at it

8    electronically on the screen.  As you go in on the left,

9    there's a screen there.  And we will give you something that

10   makes it easier.  So just as you've watched it in court, you'll

11   be able to see, for instance, the videos.

12           I will also be providing you two copies of my

13   instructions, so you can take a look at them.  During the

14   deliberations, you may, if you want, refer to these

15   instructions.  While you may refer to any particular portion of

16   the instructions, you are to consider the instructions as a

17   whole and you may not follow some and ignore others.  If you

18   have any questions about the instructions, please feel free to

19   send me a note.  And please return your instructions to me when

20   your verdict is rendered.

21           Now, you will be provided with a verdict form for you

22   to use when you've concluded your deliberations.  The form is

23   not evidence in the case and nothing in it should be taken to

24   suggest or convey any opinion by me as to what the verdict

25   should be.  Nothing in the form replaces the instructions of

law that I've already given you.  And nothing in it replaces or
modifies the instructions about the elements which the
Government must prove beyond a reasonable doubt.

The form is meant only to assist you in recording your
verdict and, ultimately, indicating your verdict and announcing
it in court.

So the verdict form will have for each of the
defendant -- will list the defendant.  It will then indicate:
Count one and will say, with respect to the offense of
conspiracy against rights, we, the jury, find defendant,
whichever defendant, guilty/not guilty.  You indicate what your
unanimous verdict is.

Count two:  With respect to the offense of clinic
access obstruction, we, the jury, find, whichever defendant,
guilty/not guilty.  You indicate that.

Now, the special findings:  If you have found a
specific defendant guilty on count two, then you need to -- on
which the following grounds, either or both, have you found the
defendant guilty on count two?  And so it then has a special
finding:  Force, guilty/not guilty?  Physical obstruction,
guilty/not guilty?

So in other words, if you find a defendant guilty on
count two, you then indicate which grounds, either or both,
that you have based your guilty verdict on.

Now, if you found the defendant not guilty on count

1 two, then you don't go on to the special finding. You only do
2 it if you find them guilty.
3         As I said, there's a verdict form for each of the
4 defendants.
5         I'm going to give you two copies of it. I would
6 ask -- they're duplicates. The foreperson is the person that
7 fills out and signs it. You fill out both of them. When
8 you've reached a unanimous verdict, you'll send a note to us
9 indicating that, and you'll give us one of the verdict forms
10 and you'll keep the other one.
11         What will happen is we will bring you into the
12 courtroom. I'll ask for the foreperson to stand, either give
13 your jury number or your seat number. I'll ask you if you've
14 reached a unanimous verdict as to each of the defendants.
15 Assuming that the answer is yes, we'll then go through the
16 verdict form as to what the unanimous verdict is for each of
17 the defendants.
18         Now, I don't want you to be surprised if either the
19 attorneys or parties ask to have the jury polled. That's to
20 make sure that it's truly a unanimous verdict. If there's that
21 request, what I'll do is I'll say, juror in seat number 1,
22 you've heard the verdict stated by your foreperson. Do you
23 agree with it, yes or no? And you indicate whether or not you
24 agree with it. And I'll just call you by your seat number,
25 just to make sure that it's actually unanimous.

1          Now, I'm giving you this cautionary instruction.  I

2  know I've been giving it to you throughout and you may be sort

3  of tired of hearing it, but it's important that you hear it

4  once again to make sure that there isn't any issue in terms of

5  publicity, communication and research.

6          I want to remind you that in some cases -- maybe not

7  this one, but in some cases there may be reports in the

8  newspaper, radio, internet, television or social media about

9  this particular case.  If there should be such media coverage

10  in this case or on social media or whatever, you may be tempted

11  to read it, listen, watch it.  Don't.

12          You must not read, listen, watch it -- reports.  You

13  have to decide this case solely on the evidence presented in

14  the courtroom.  You've been listening to it.  These other

15  people may or may not have been.  It's their opinions.

16  Completely exclude that.  So I would ask, if you come across it

17  by chance, please don't read them or listen to them.

18          If any publicity about the case from whatever source

19  inadvertently comes to your attention, do not discuss it with

20  the other jurors or anyone else.  Let me know.  You can let me

21  know through the clerk as soon as it happens as you can, and

22  then I'll briefly discuss it with you.

23          Also, as you retire to the jury room to deliberate, I

24  want to remind you of an instruction I gave you at the

25  beginning.  During deliberations, you may not communicate with

1   anyone not on the jury about this case.

2         This includes any electronic communications again,

3   email, text, blogging, social media, anything.  In addition,

4   you may not conduct any independent investigation during your

5   deliberations, looking up what the clinic is or whatever.

6   You've got the evidence.  This means you may not conduct any

7   research in person or electronically via the Internet or in any

8   other way.

9         If you have questions in any way about, you know, the

10  instructions, send them back to me and then I will instruct you

11  as to the meaning.  I don't want you doing any independent

12  research.  I'm the source of giving you any additional

13  information you think you need.

14        Now, I'm going to be excusing you in a moment.  The

15  alternates --

16        Let me talk to counsel for a second.

17    (Whereupon, the following proceedings were held at sidebar

18  outside of the presence of the jury:)

19        THE COURT:  Everybody on?  Mr. Davis, can you hear?

20  Mr. Davis, can you hear me?

21        MR. DAVIS:  Yes, I can hear you.

22        THE COURT:  Good.  I just want to make sure.  I've

23  corrected a couple things.  I have in one contact lens that I

24  read with, and I couldn't find the one that I usually use this

25  morning.  So that was part of my problem reading.  I read out

1   of the right eye.

2          Anyway, there's a couple little things, minor things

3   that need to be fixed, which I did orally, but I will make sure

4   that they're done before it goes back.

5          But besides preserving all of your objections, the

6   objections that other counsel made in the first trial, which

7   obviously apply to you and all other discussions, anything else

8   before I let the alternates go?  Anything else you want to

9   bring up?

10          MS. ROSS:  Nothing from the Government, Your Honor.

11          THE COURT:  Mr. Davis.

12          MR. DAVIS:  Nothing for Mr. Darnel.

13          THE COURT:  Mr. Machado.

14          MR. MACHADO:  Nothing on behalf of Ms. Marshall.

15   Thank you.

16          THE COURT:  Ms Bell, anything?

17          I can't hear you.  You need to push it in, press it

18   in.

19          MS. BELL:  Nothing.

20          THE COURT:  Nothing?  I still can't hear you.

21          MR. BRENNWALD:  It doesn't appear to be working.

22          THE COURT:  Either that or you have to really push it

23   in.

24          MS. BELL:  Nothing.

25          THE COURT:  Okay.  Great.  Thank you.

1    (Whereupon, the following proceedings were had in open

2  court:)

3         THE COURT:  All right.  The last thing I must do

4  before you begin your deliberations is to excuse the alternate

5  jurors.  As I told you before, the selection of alternates was

6  an entirely random process.  And we did it before we chose the

7  jury.  In other words, we just picked seat numbers.  Or they

8  did.  I didn't.  They picked seat numbers.  There's certainly

9  nothing personal about it.

10         We selected three seats to be the alternate seats

11  before any of you entered the courtroom.  Since the rest of you

12  have remained healthy and attentive, happily, I can now excuse

13  these jurors.  And they are in seats three, seven and eight.

14         Don't leave quite yet.  I know you're eager.

15         Before you three leave, I'm going to ask you to tear

16  out pages from your notebook, and I ask that you write down

17  your name and daytime phone number and hand this to the clerk.

18         I do this because it's possible, although unlikely and

19  hopefully not, we'll need to summon you back to rejoin the jury

20  in case something happens to a regular juror.  So since that

21  possibility always exists, I'm going to instruct you not to

22  discuss the case with anyone until we call you.  Once we have a

23  verdict, we'll let you know you're no longer considered part of

24  the jury.

25         My early instructions on use of the Internet still

1    applies.  Don't research, communicate on the Internet or

2    anything else.  In all likelihood, we'll be calling you to tell

3    you that there's been a verdict and you're now free to discuss,

4    should you choose so, although you're not required to.  There

5    is, however, the small chance that we'll need to bring you back

6    on the jury, which is why I've asked you not to discuss the

7    case and act as you have been acting as part of the jury.

8            I want to thank you very much for your service.  I

9    know it took a long time to select the jury, to go through

10   listening to the evidence.  It takes you away from your other

11   responsibilities that you have, and it's certainly a service to

12   the public.  And I appreciate your timeliness in the morning

13   and everything else that you've done.

14           Do they need to go to the jury office?  No.  Okay.

15           So you can just leave your badge and your notes, along

16   with your phone number, so we know how to get you and say we no

17   longer need you.  But thank you very much.

18           (Alternate jurors leave courtroom.)

19           THE COURT:  And you're going to be helped in terms of

20   where you go next.

21           Okay.  So I've told you about the polling in terms of

22   if you come back, they may ask for that, just so you're not

23   surprised.  So at this point, you can retire to begin your

24   deliberations.  And I want to indicate a couple of things.

25   We'll get all the exhibits for you to take a look at.

1    Hopefully, we will not have any problem with your looking at

2    the electronic ones.  If there's anything you need, just send

3    notes back.  Just send notes.

4              Oh, knocked that off.

5              You're going to start your deliberations.  If you need

6    to communicate, send notes.  And there will be somebody sitting

7    outside from the court security that you can give the notes,

8    who will give it to the deputy clerk, who will give it to me.

9    The exhibits will, as I said, go back.  If you have any

10   problems with them, just immediately let us know or anything

11   else.

12             Lunch is 12:30 to 1:30, in terms of taking a break.  I

13   think you ordered it and will be eating it in the jury room.

14   Your deliberations should take place when all of you are there.

15   So if somebody goes to the restroom, is standing and stretching

16   and not paying attention or during lunch, you should not be

17   talking -- deliberating.  You can talk but not about the case.

18   Deliberations should be where everybody's participating, so

19   everybody hears the same things in terms of making a decision

20   here.

21             What I would ask is the foreperson -- you can

22   obviously take, just as we have, a morning or an afternoon

23   break, a lunch break, if there are periods -- just keep track

24   of the time.  We're not strict about it.  There's no how long

25   you have to deliberate.  There's no such standard.  But it does

1  help us to know roughly how long you have actually been

2  deliberating by just telling us when you're not deliberating.

3  Just keep track of that.

4        For your own information, there's no limit as to when

5  you're supposed to be completed with your deliberations and

6  reaching your unanimous verdict.  I will just say to you that

7  we will probably break -- if you have not reached a verdict by

8  the end of the day, we will break at around 4:45.  So you're

9  not left here until you reach a verdict, just so you know.  We

10 actually stop at a reasonable time.  All right?

11       So let me have you follow Ms. Patterson.  You can take

12 your notebooks this time, because you can use them.

13    (Jury exits the courtroom.)

14       MR. BRENNWALD:  Your Honor, I'm going to give

15 Ms. Patterson my cell number, since I'll be in a hearing before

16 Judge Cobb.  It's a Zoom hearing, so I'm not going to the

17 courtroom, I don't think.

18       THE COURT:  Where will you be?

19       MR. BRENNWALD:  Probably just down the hallway

20 somewhere where there won't be a lot of noise.

21       THE COURT:  Okay.  One thing you could do is we can

22 probably give you the witness room because nobody is going to

23 be in there, if you want to do that.

24       MR. BRENNWALD:  That's fine.

25       THE COURT:  What I would ask is we need to have a

1    number -- I don't want to get a voicemail when we call you.  So

2    I have to have a number where you're actually at when we get

3    you.  I'm going to make the defendants' counsel responsible for

4    your clients.  They need to be with you or someplace.  Unlike

5    Superior Court, we can't do an announcement.  So we need to be

6    able to find you.

7            Lunch, as I said, is 12:30 to 1:30.  So you know that

8    they're not going to be deliberating.  I would not zip off to

9    your offices immediately.  I find that we get notes shortly

10   after they go back.  They start and they have questions.

11   That's when we got, frankly, some of our more difficult notes

12   the last time.

13           So I would ask that you not go back there immediately.

14   Let me just ask, you-all three don't have to be here, but I

15   have to have one person that we can count on.

16           MS. ROSS:  I'm going to leave my cell phone number,

17   Your Honor, and we'll be nearby.

18           THE COURT:  What's "nearby"?

19           MS. ROSS:  If Your Honor recommends we stay in the

20   courthouse for the next little bit, we will.

21           THE COURT:  I would stay in the courthouse at least

22   until -- I'd stay, if you can, until lunch.  We can open the

23   witness rooms.

24           Can we open them?

25           You can hang out there, if you want.  You can do your

1    Zoom in there.

2              MR. BRENNWALD:  Your Honor, I think we're going to be

3    in the cafeteria.  It's just easier.

4              THE COURT:  That's fine.  Whatever you want.

5              MS. ROSS:  We'll stay until lunch, Your Honor, and

6    then we'll probably head back to the office.  But I'll leave my

7    cell phone number and we'll be back.

8              THE COURT:  Okay.  Mr. Davis, where are you going to

9    be?

10             MR. DAVIS:  Your Honor, I'm just going to stay in the

11   courthouse.  My office is in DuPont, but it takes 30 minutes to

12   get here.

13             THE COURT:  Okay.  So we'll call.

14             Mr. Machado, where are you going to be?

15             MR. MACHADO:  I'll either be near the courtroom or

16   downstairs in the cafeteria.

17             THE COURT:  Okay.  Ms Bell, where do you plan on

18   going?

19             MS. BELL:  Either the courtroom area or the cafeteria.

20             THE COURT:  Okay.  If you'd stay in the courthouse,

21   then I think it would be helpful.

22             MS. BELL:  Definitely.

23             THE COURT:  Assuming we don't get any notes or any

24   reason to come back, I need you to come back at the end of the

25   day when I excuse them, because sometimes we get a verdict at

1   that point or something comes up.

2          What I will do is, in terms of notes, if they send a

3   note that says we need pencils or something else, I'll just

4   keep track of those things and not bother you about them.  If

5   there's one that can be easily answered with a note back, I may

6   get in touch with you and just say -- you know, it may be that

7   they're asking a question about facts I can't answer, and we

8   just send a note back that says, you know, it's your memory

9   that controls, or something of that nature.

10          We don't need to convene everybody back here.  I'll

11  call you and ask if that's okay, and we'll just send a note

12  back in response to it.

13          If it looks like it's something we need to talk about

14  or you think we do, that's fine.  Then we'll come back.  I do

15  have a matter at 11:30 with somebody who's locked up.  I don't

16  think it's going to take more than about a half an hour, in the

17  courtroom.  Otherwise, I don't have anything particularly

18  that's scheduled.

19          But any questions?  Anything from the Government?

20          MS. ROSS:  No.  If we don't hear from you, we'll be

21  back at 4:45 regardless.

22          THE COURT:  Right.

23          Mr. Davis, anything?

24          MR. DAVIS:  No questions.

25          THE COURT:  Mr. Machado.

1     MR. MACHADO:  No, Your Honor.

2         I just want to let the Court know I'm about two-thirds

3  of the way through the exhibits.  I think Mr. Davis has already

4  signed off.  I'm trying to get them as quickly as possible.

5         THE COURT:  Okay.  You can't leave until you've looked

6  through them and signed off on them, so that we make sure that

7  they can get them back.

8         MR. MACHADO:  I was hoping to go to the restroom and

9  come back.

10        THE COURT:  That's fine.  I don't have anything until

11 11:30.  So it's not a problem.

12        MR. BRENNWALD:  I've told Ms Bell to talk to

13 Mr. Machado about the exhibits, since she needs to be the one

14 to sign off.

15        THE COURT:  Okay.  All right.  Can you call Judge Cobb

16 and just say he's on his way, we just finished.

17        Do we have a way of contacting Ms Bell?  Did you give

18 her -- give Ms. Patterson your cell phone number, however we

19 can get it.

20        As long as I don't get voicemail.  I need to get

21 somebody, a live person at the other end, so I can talk to

22 them.

23        If there are any issues about the exhibits, let me

24 know.  I'm just going to be back in chambers.

25        Dorothy, anything else that we needed to talk about?

1        DEPUTY CLERK:  No.

2     (A recess was taken at 10:38 AM)

3        THE COURT:  Good afternoon, everyone.

4        MR. MACHADO:  Good afternoon.

5        THE COURT:  All right.  They've sent a note back and

6   they have a verdict.  I will say that they -- well, never mind.

7      (Whereupon, the jury enters the courtroom and the following

8   proceedings were had:)

9        THE COURT:  Good afternoon, members of the jury.  I

10  understand that we have a verdict as to each of the defendants.

11  I would simply ask those that are in the courtroom to be please

12  respectful of their verdict, and, therefore, I don't want to

13  hear from anyone as this process goes on.  If the foreperson

14  would please rise.

15        All right.  And you're in seat number 6; is that

16  correct?

17        JUROR:  Yes.

18        THE COURT:  So has the jury reached a unanimous

19  verdict on each of the charges as to each of the defendants?

20        JUROR:  Yes, we have.

21        THE COURT:  You can take your mask off.  It's harder

22  to hear you.

23        So let me go through it.  As to Defendant Jonathan

24  Darnel with respect to the offense of conspiracy against

25  rights, we the jury find Defendant Jonathan Darnel guilty or

1    not guilty?

2              JUROR:  Guilty.

3              THE COURT:  Count 2 with respect to the offense of

4    clinic access obstruction, we the jury find Defendant Jonathan

5    Darnel guilty, not guilty?

6              JUROR:  Guilty.

7              THE COURT:  Under those circumstances.  We went on to

8    the special findings.  The findings as to force, guilty or not

9    guilty?

10             JUROR:  Guilty.

11             THE COURT:  As to physical obstruction, guilty or not

12   guilty?

13             JUROR:  Guilty.

14             THE COURT:  All right.  As to Defendant Jean Marshall,

15   with respect to the offense of conspiracy against rights, we

16   the jury find the defendant Jean Marshall guilty, not guilty?

17             JUROR:  Guilty.

18             THE COURT:  As to count 2 -- that was count 1.  With

19   respect to count 2 with the -- excuse me, with respect to the

20   offense of clinic access obstruction, we the jury find

21   Defendant Jean Marshall guilty, not guilty?

22             JUROR:  Guilty.

23             THE COURT:  All right.  There was a special findings

24   as to count 2, force, guilty or not guilty?

25             JUROR:  Guilty.

1          THE COURT:  Physical obstruction, guilty or not

2  guilty?

3          JUROR:  Guilty.

4          THE COURT:  As to Defendant Joan Bell, count 1 with

5  respect to the offense of conspiracy against rights, we the

6  jury find Defendant Joan Bell guilty, not guilty?

7          JUROR:  Guilty.

8          THE COURT:  Count 2, with respect to the offense of

9  clinic access obstruction, we the jury find Defendant Joan Bell

10 guilty, not guilty.

11         JUROR:  Guilty.

12         THE COURT:  There were special finings as to force.

13 Guilty or not guilty?

14         JUROR:  Guilty.

15         THE COURT:  As to physical obstruction, guilty or not

16 guilty?

17         JUROR:  Guilty.

18         THE COURT:  All right.  Thank you.  You can sit down.

19         Anything further from counsel?

20         MR. MACHADO:  We would request a polling of the jury,

21 Your Honor.

22         THE COURT:  All right.  You remember what I said about

23 polling to make sure that it is unanimous.  So I'm going to

24 call on you by your seat number and ask you, you've heard the

25 verdict as stated by your foreperson as to each defendant as to

1   each of the charges.  So juror in seat number 1, do you agree
2   with the verdict as stated by your foreperson as to counts 1
3   and 2 as to each of the defendants?
4          JUROR:  I do.
5          THE COURT:  Juror in seat number 2, you've heard the
6   verdict spoken by your foreperson as to counts 1 and count 2 as
7   to each of the defendants.  Do you agree?
8          JUROR:  I do.
9          THE COURT:  Juror in seat number 4, you've heard the
10  verdict as stated by your foreperson as to counts 1 and 2 as to
11  each of the defendants.  Do you agree or not agree?
12         JUROR:  I do.
13         THE COURT:  Juror in seat number 5, you've heard the
14  verdict as stated by your foreperson as to each count as to
15  each defendant.  Do you agree with the verdict?
16         JUROR:  I do.
17         THE COURT:  Juror in seat number 6, you you've stated
18  the verdict.  Do you agree with the verdict that you have
19  stated as to counts 1 and count 2 as to each defendant?
20         JUROR:  I do.
21         THE COURT:  All right.  Juror in seat number 9.
22         JUROR:  I do.
23         THE COURT:  Okay.  I'm assuming you're answering that
24  you agree with the verdict as stated by your foreperson as to
25  count 1 and 2 as to each of the defendants?

1            JUROR:  Yes, I do.

2            THE COURT:  All right.  Juror in seat number 10,

3    you've heard the verdict as stated by your foreperson as to

4    counts 1 and 2 as to each of the defendants.  You agree with

5    it?

6            JUROR:  I do.

7            THE COURT:  Juror in seat number 11, you've heard the

8    verdict as stated by your foreperson as to counts 1 and 2 as to

9    each of the defendants.  Do you agree with it?

10           JUROR:  I do.

11           THE COURT:  Juror in seat number 11, you've heard the

12   verdict as stated by your foreperson as to counts 1 and 2 as to

13   each of the defendants.  Do you agree with it?

14           JUROR:  Yes, I do.

15           THE COURT:  Juror in seat number 12, you've heard the

16   verdict as stated by your foreperson as to counts 1 and 2 as to

17   each of the defendants.  Do you agree with it?

18           JUROR:  I do.

19           THE COURT:  All right.  Juror in seat number 14,

20   you've heard the verdict as stated by your foreperson as to

21   counts 1 and 2 as to each of the defendants.  Do you agree with

22   it?

23           JUROR:  Yes.

24           THE COURT:  Juror in seat number 15, you've heard the

25   verdict as stated by your foreperson as to counts 1 and 2 as to

1　each of the defendants.  Do you agree with it?

2　　　　JUROR:  I do.

3　　　　THE COURT:  All right.  I want to thank the jury.  I

4　know there was a long process in terms of the selection.

5　You've been very attentive, very timely.  I know it's a

6　difficult decision to be a juror, and I know that you've taken

7　it seriously.  So we thank you for being responsible citizens.

8　And let me excuse you at this time with the thanks of the

9　Court.  Ms. Patterson -- if you'll hang on to it, she will get

10　that one.

11　　　　JUROR:  Thank you, Your Honor.

12　　　(Jury exits the courtroom)

13　　　　MR. MACHADO:  Your Honor, I don't know if the Court

14　wanted to instruct them that they can talk about the case --

15　　　　THE COURT:  I'm not giving them any instructions as

16　far as I'm concerned since we still have not finished this

17　process and because of some other issues in terms of how people

18　have acted with the jurors.  I would just assume -- I gave them

19　instructions to start with.  I'm not going to reiterate them

20　again.

21　　　　MR. MACHADO:  Thanks, Your Honor.

22　　　　THE COURT:  So you can go ahead and sit down.

23　　　　The next order of business is 18 U.S.C. 3143(a)(2)that

24　provides that the Court must without discretion step a

25　defendant back upon a verdict finding that defendant was guilty

1    of, among other things, a crime of violence unless I think

2    there's a substantial likelihood that I would grant a Rule 29

3    motion, or the government is going to recommend no term of

4    incarceration.

5           So let me start with the government as to your

6    position as to what recommendation you would be making.

7           MS. ROSS:  Your Honor, the government will be

8    requesting jail time for each defendant.

9           THE COURT:  All right.  Based on the trial record as I

10   have seen it, there is not a likelihood that I will grant a

11   Rule 29 motion.  I will, of course, consider one that's filed.

12   But at least at this point, based on what I've seen and the

13   record I have, I would not.

14          Pursuant to 18 U.S.C. 5156(a)4(A) a crime of violence

15   is among other things -- and this is this definition -- "An

16   offense that has an element of the offense, the used, attempted

17   use or threatened use of physical force against the person of

18   property of another."

19          So in this particular case, each of the defendants on

20   count 2 have been found guilty of using force, which is why we

21   broke it out.

22          So for the finding for each of the defendants using

23   force within the meeting of the FACE Act, which is what the

24   jury has returned as their verdict, I do not have any

25   discretion in terms that the defendant must be stepped back.

1          I will say that the first trial has appealed the

2      ruling of the Court, which is exactly the same as this one.

3      And I would suggest to you, if I could, that you note the

4      appeal.  And they've been working on different briefing

5      schedules, so you may want to ask to consolidate it.  If you do

6      it early enough, you can do that.  There's no decision in this

7      jurisdiction about its application with the FACE Act.  So

8      there's nothing here.  There is elsewhere, but not here.

9          I don't know whether you want to set at this point a

10     Rule 29 schedule for doing things or you want to suggest one at

11     a later point.  Defense counsel?

12         MR. MACHADO:  Your Honor, has a Rule 29 schedule

13     already been set in the prior case?

14         THE COURT:  I think we did set it, didn't we?

15         LAW CLERK:  We did Your Honor.  The deadlines are as

16     follows:  Defendants' post trial motion is due September 29th.

17     Government's opposition due October 13th.  Reply due October

18     27.

19         THE COURT:  2-7 or 2-2?

20         LAW CLERK:  2-7, Your Honor.

21         THE COURT:  I don't know whether that's

22     September 29th.  What you may want to do is at least have a

23     discussion with them to see.  Some of these issues are going to

24     be the same, some may not.  Obviously there will be some

25     individual issues for each of your defendants.

```
 1              I had suggested they do a consolidated one about
 2     themes and arguments that all of them are making and then do
 3     something separately for your individual defendant so I don't
 4     wind up with eight different briefs, half of which are saying
 5     the same thing.  So if you can coordinate it with them, you may
 6     want to.
 7              I don't know whether the schedule works for you or
 8     not.  Do you want to talk to each other for a second?
 9              Ms Bell, I don't know whether you want to have the
10     services of Mr. Brennwald.  I would do it at least for the
11     appeal.
12              MR. BRENNWALD:  That's fine, Your Honor.
13              THE COURT:  Because it's going to be very technical.
14              MS. BELL:  Thank you, yes.
15              MR. MACHADO:  Your Honor -- let me check with --
16              THE COURT:  Why don't you come up so we can hear you,
17     actually.
18              MR. MACHADO:  Mr. Davis and I had spoken.  I just
19     wanted to consult with Ms Bell, also.
20              THE COURT:  Certainly, go ahead.
21              MR. MACHADO:  Your Honor the September 29th date may
22     be a little tight.  We'd ask if we can set it about a month
23     out.
24              THE COURT:  Propose dates to me.  Give me what you're
25     proposing.  It should be the initial filing, and then the
```

1   government could decide when they want to respond to it.

2           MR. MACHADO:  Yes, Your Honor.  Thank you.  With

3   Mr. Davis hearing what I'm saying as well, I'll suggest if we

4   can have -- is October 30th?  It's a Monday.

5           THE COURT:  Whatever you want.  Don't push it out too

6   far but if October 30th --

7           MR. MACHADO:  Is that fine with you, Mr. Davis?

8           THE COURT:  I think there should be obviously

9   transcripts that you can use.  October 30th is a Monday.  Is

10   that a case -- Mr. Brennwald, would that work for you?

11           MR. BRENNWALD:  Yes, Your Honor.

12           THE COURT:  Mr. Davis?

13           MR. DAVIS:  That works for me, yes.

14           THE COURT:  When does the government want to respond?

15   You all have obviously responded to some degree to the other

16   one, which you're responding October 13th.

17           MS. ROSS:  Your Honor, two weeks after their deadline

18   would work for the government, if it's amenable to the Court.

19           THE COURT:  So October 13th.  And when do you want to

20   reply?

21           MR. MACHADO:  I would ask for two weeks as well, Your

22   Honor.

23           THE COURT:  Okay.  So that's November 27th.  All

24   right, I'll put an order out indicating the schedule.  I don't

25   know whether you wanted to make a record in terms of your -- my

1  stepping them back or whether you want to just rely on what
2  you're going to file on appeal.
3      MR. MACHADO:  Well, Your Honor, I know the Court heard
4  argument on this point.  We would join in the arguments.
5  Obviously, the Court has ruled and there's not much
6  difference -- at least as far as the verdicts are concerned.
7      THE COURT:  It was certainly a new issue for all of
8  us.
9      MR. MACHADO:  So we would join in those arguments and
10 adopt them.  I don't know if Mr. Davis has some additional
11 argument he wants to make.  But on behalf of Ms. Marshall, I do
12 want to ask for the Court to consider, Ms. Marshall being a
13 person of some age, I have a letter from the New England
14 Baptist Hospital where she has indicated -- well, she is going
15 to be scheduled for a right total hip replacement to treat her
16 hip osteoarthritis.
17     I have a letter that was provided by a Dr. Carl
18 Tomwell (ph.).  I'll give a copy of the government.
19     THE COURT:  Is it scheduled already?
20     MR. MACHADO:  It is scheduled for October 24th, 2023.
21     THE COURT:  We can deal with that as it comes along.
22     MR. MACHADO:  I'll make the request at this point,
23 although maybe the Court will allow me to follow up.  But our
24 hope is the Court would consider possibly home confinement when
25 we will ask for a variance, no doubt, at the time of sentencing

1   to take that into consideration, particularly because of her

2   age.

3            THE COURT:  I think the problem is the statute --

4   assuming that I'm correct about the -- that is the correct

5   definition about crime of violence, and assuming that it

6   applies the way I indicated in terms of force and the way the

7   FACE Act is actually written, it's a statute that gives me no

8   discretion.  But I don't have any problem.  I certainly will

9   indicate a medical issue, which we can do with the step back

10  order.

11           MR. MACHADO:  Your Honor, we have prepared a medical

12  alert order in anticipation.  So it just needs to be signed by

13  my client, but we'll submit it to the Court.

14           THE COURT:  I don't need the hip replacement.  Is

15  there something else that needs to be looked at?

16           MR. MACHADO:  Yes, there are other things, but I don't

17  think there's any reason to put it on public record.

18           THE COURT:  That's fine.

19           MR. MACHADO:  I will also attach a copy of the medical

20  alert, for what it's worth --

21           THE COURT:  That's fine, not a problem.

22           MR. MACHADO:  -- in case you need information.

23           My request as far as home confinement, it is the

24  Court's position that it doesn't have discretion to choose to

25  do home confinement as part to step --

1         THE COURT:  Not at this point in terms of the step

2    back.  We're not discussing the sentencing.  We're discussing

3    pending sentencing.

4         MR. MACHADO:  I understand.  Thank you, Your Honor.

5         THE COURT:  Anything, Mr. Davis?  I'm assuming you're

6    joining the arguments that have already been made by the other

7    defendants.  We did spend a fair amount of time actually

8    looking at this, and they made arguments at the time.

9         MR. DAVIS:  I actually had the opportunity to read the

10   briefs that have been filed in the Circuit.  And I would

11   just -- I mean, Your Honor has ruled and I don't expect Your

12   Honor to revisit that ruling at this stage of the game, but we

13   joined in the arguments that the others made before.

14        THE COURT:  Okay.  Perfect.

15        MR. DAVIS:  I know this from the briefs that this is

16   what it is, but it's the FACE Act and it's the force box that

17   was checked that is leading to this automatic detention,

18   correct?

19        THE COURT:  Yes, because I specifically asked the --

20   so there wouldn't be any ambiguity as whether they were finding

21   force or not as part of their verdict.  Because there's force

22   and then there's just physical obstruction.  That's why it was

23   separated out among other things for sentencing purposes, as

24   well, it makes a difference.  I wanted to have the jury make

25   this decision, not me, as to whether force was used or not

1    used.  That's why I separated it.

2         MR. DAVIS:  We would just submit -- and I'm certain

3    the others have done this too -- the force required by the

4    statute particularly as it applies to this case, it's inclusive

5    of reckless force, and I think that that would take it out

6    another realm of a crime of violence.

7         THE COURT:  As I said, we don't have any cases here.

8    I did look at some other places, so we'll see what they come

9    back with.

10        MR. DAVIS:  Certainly, Your Honor.

11        THE COURT:  You certainly should make sure it gets all

12   up there.  It's a decision that covers everybody.

13        MR. BRENNWALD:  Your Honor, for Ms Bell, we join the

14   argument.  And I would just note for the record, I have given

15   the Deputy Marshal a medical alert form for Ms Bell.

16        THE COURT:  All right.  So we've got the briefing

17   schedule.  We'll wait to hear what the Court of Appeals has to

18   say.  Once Rule 29s are ruled on, Obviously, you know, we'll

19   set other dates as necessary.  All right.  Parties are excused.

20      (Proceedings concluded at 3:07 PM)

21

22

23

24

25

C E R T I F I C A T E


I, Stacy Johns, certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.



/s/ Stacy Johns                    Date: September 16, 2023

Stacy Johns, RPR
Official Court Reporter

**DEPUTY CLERK: [3]**
3/3 9/9 58/1

**JUROR: [29]** 9/5 58/17
58/20 59/2 59/6 59/10
59/13 59/17 59/22
59/25 60/3 60/7 60/11
60/14 60/17 61/4 61/8
61/12 61/16 61/20
61/22 62/1 62/6 62/10
62/14 62/18 62/23 63/2
63/11

**LAW CLERK: [2]** 65/15
65/20

**MR. BRENNWALD:**
**[19]** 7/1 7/5 7/10 7/15
7/17 7/22 7/25 12/17
12/20 12/23 49/21
53/14 53/19 53/24 55/2
57/12 66/12 67/11
71/13

**MR. DAVIS: [12]** 3/12
6/11 6/23 48/21 49/12
55/10 56/24 67/13 70/9
70/15 71/2 71/10

**MR. MACHADO: [25]**
3/16 49/14 55/15 57/1
57/8 58/4 60/20 63/13
63/21 65/12 66/15
66/18 66/21 67/2 67/7
67/21 68/3 68/9 68/20
68/22 69/11 69/16
69/19 69/22 70/4

**MR. PATEL: [3]** 5/17
6/1 6/9

**MS. BELL: [6]** 3/20
49/19 49/24 55/19
55/22 66/14

**MS. ROSS: [10]** 3/7
8/11 8/15 49/10 54/16
54/19 55/5 56/20 64/7
67/17

**THE COURT: [113]**

**/**

**/s [1]** 72/8

**0**

**096 [1]** 3/3

**1**

**10 [1]** 62/2
**10:30 [1]** 7/2
**10:38 [1]** 58/2
**11 [2]** 62/7 62/11
**11:00 [1]** 7/2
**11:30 [2]** 56/15 57/11
**12 [1]** 62/15
**12:30 [2]** 52/12 54/7
**1350 [1]** 2/5
**13th [3]** 65/17 67/16
67/19
**14 [1]** 62/19
**14th [1]** 24/1
**15 [2]** 1/5 62/24
**16 [1]** 72/8
**16th [1]** 24/24
**18 [2]** 63/23 64/14

**1:22-CR-00096-CKK [1]**
1/4
**1:30 [2]** 52/12 54/7

**2**

**2-2 [1]** 65/19
**2-7 [2]** 65/19 65/20
**20001 [1]** 2/11
**20004 [1]** 1/21
**20036 [1]** 2/6
**202 [1]** 2/5
**2020 [13]** 23/21 24/1
24/3 24/19 25/2 25/4
25/22 26/5 26/23 30/22
30/22 41/2 41/3
**2021 [2]** 24/24 26/3
**2023 [3]** 1/5 68/20 72/8
**20530 [1]** 1/17
**22nd [10]** 23/20 24/3
24/19 25/1 25/4 25/22
26/5 26/23 30/22 41/3
**24th [1]** 68/20
**27 [1]** 65/18
**27th [1]** 67/23
**29 [4]** 64/2 64/11 65/10
65/12
**29s [1]** 71/18
**29th [2]** 65/16 65/22

**3**

**30 minutes [1]** 55/11
**30th [3]** 26/3 67/4 67/6
**310 [1]** 2/10
**3143 [1]** 63/23
**3:07 [1]** 71/20

**4**

**4:45 [2]** 53/8 56/21

**5**

**503 [1]** 2/10
**5156 [1]** 64/14

**6**

**610 [1]** 1/17

**7**

**7th [2]** 30/22 41/2

**9**

**950 [1]** 1/20
**9:00 [1]** 1/5

**A**

**a.m [1]** 1/5
**abetted [1]** 37/8
**abetting [2]** 37/5 37/10
**ability [1]** 27/4
**able [7]** 3/23 7/13 8/16
9/18 41/17 44/11 54/6
**abortion [7]** 4/13 27/1
27/3 27/4 29/18 34/3
36/5
**about [49]** 10/11 18/13
18/18 19/22 20/8 20/16
21/22 24/1 24/24 25/14
26/3 27/3 28/8 29/5
30/21 30/22 30/25
32/13 36/15 36/24 41/2

**41/15 41/20 42/4 44/18**
45/2 47/8 47/18 48/1
48/9 50/9 51/21 52/17
52/24 56/4 56/7 56/13
56/16 57/2 57/13 57/23
57/25 60/22 63/14 65/7
66/1 66/22 69/4 69/5
**above [1]** 72/5
**above-entitled [1]** 72/5
**absolute [2]** 17/19
27/10
**absolutely [1]** 8/7
**accept [3]** 10/19 21/10
22/11
**acceptable [1]** 18/22
**access [6]** 34/20 34/21
45/14 59/4 59/20 60/9
**accessing [2]** 34/6
34/17
**accuracy [1]** 20/21
**accurate [3]** 20/14
21/10 72/4
**accurately [1]** 20/7
**accusing [1]** 27/18
**acquired [1]** 38/6
**acquittal [1]** 42/16
**across [1]** 47/16
**act [12]** 16/3 33/14
36/15 36/20 36/21
36/23 37/3 51/7 64/23
65/7 69/7 70/16
**acted [5]** 37/16 37/18
37/23 40/25 63/18
**acting [4]** 16/12 32/12
39/4 51/7
**action [3]** 1/3 36/11
36/13
**actions [3]** 6/16 6/18
39/5
**actively [2]** 38/2 38/5
**acts [21]** 23/20 23/23
24/14 24/15 24/18
24/22 25/16 25/18
25/21 25/25 26/14
26/16 32/4 33/7 36/18
37/7 38/1 38/4 39/10
40/13 40/18
**acts' [1]** 23/14
**actual [1]** 18/7
**actually [14]** 7/10 7/20
9/21 16/8 34/5 40/11
46/25 53/1 53/10 54/2
66/17 69/7 70/7 70/9
**addition [2]** 19/8 48/3
**additional [2]** 48/12
68/10
**admissible [2]** 6/15
14/3
**admitted [15]** 6/15 11/5
14/17 14/19 15/1 16/16
19/9 19/12 19/15 19/19
23/15 26/17 43/24 44/2
44/5
**adopt [1]** 68/10
**adopted [1]** 4/15
**advance [3]** 31/24 38/6
39/3
**Advanced [1]** 38/8

**advocacy [1]** 12/4
**advocates [1]** 43/21
**affect [3]** 16/2 27/24
28/1
**affects [1]** 20/10
**after [9]** 14/7 18/18
33/18 38/23 42/11
43/14 43/16 54/10
67/17
**afternoon [4]** 52/22
58/3 58/4 58/9
**again [17]** 10/7 13/1
14/11 15/6 15/9 22/5
24/17 25/20 26/17
27/17 28/10 32/20 38/3
38/17 47/4 48/22 52/20
**against [26]** 4/24 6/15
14/1 17/11 19/24 21/14
22/1 22/17 22/24 27/13
29/8 29/10 29/10 29/12
30/4 33/8 33/15 33/19
35/6 36/11 36/13 45/10
58/24 59/15 60/5 64/17
**age [3]** 11/18 68/13
69/2
**agent [2]** 23/4 39/4
**agents [1]** 33/12
**agree [18]** 29/10 29/12
42/22 46/23 46/24 61/1
61/7 61/11 61/11 61/15
61/18 61/24 62/4 62/9
62/13 62/17 62/21 63/1
**agreed [3]** 22/7 22/8
31/17
**agreeing [1]** 29/25
**agreement [23]** 22/4
22/6 22/11 22/15 22/17
22/21 22/23 22/25 30/6
30/11 30/12 30/15
30/23 31/2 31/15 31/20
32/3 32/5 32/8 32/9
32/11 32/13 33/11
**agrees [2]** 7/25 31/21
**ahead [2]** 63/22 66/20
**aided [3]** 2/18 37/8
37/13
**aiding [2]** 37/5 37/10
**aim [1]** 34/13
**alert [2]** 7/8 69/12
69/20 71/15
**Alexandria [2]** 24/20
24/24
**all [58]** 3/2 5/4 6/24
7/25 8/18 8/22 8/24
9/12 10/20 11/9 11/16
12/25 13/13 17/1 19/4
19/25 28/7 31/18 31/19
32/3 32/20 32/23 33/8
33/14 33/15 40/14
40/22 41/8 41/19 43/5
43/25 49/5 49/7 50/3
51/2 51/25 52/14 53/10
54/14 57/15 58/5 58/15
59/14 59/23 60/18
60/22 61/21 62/2 62/19
63/3 64/9 66/2 67/15
67/23 68/7 71/11 71/16
71/19

**alleged [10]** 23/25
24/24 26/2 27/1 30/21
31/15 31/18 39/14 41/4
41/7
**allow [2]** 27/25 68/23
**allowed [1]** 16/6
**alone [5]** 11/6 11/7
20/2 22/13 28/15
**along [2]** 51/15 68/21
**already [6]** 5/13 45/1
57/3 65/13 68/19 70/2
**also [19]** 4/21 10/7
11/11 19/10 20/6 21/2
24/16 25/2 27/5 27/22
32/12 34/12 39/13
39/17 42/8 44/12 47/23
66/19 69/19
**alter [1]** 38/9
**alternate [3]** 50/4 50/10
51/18
**alternates [3]** 48/15
49/8 50/5
**although [4]** 22/1
50/18 51/4 68/23
**always [2]** 38/16 50/21
**am [3]** 5/3 10/23 58/2
**ambiguity [1]** 70/20
**amenable [1]** 67/18
**AMERICA [1]** 1/3
**among [5]** 31/5 41/19
64/1 64/15 70/23
**amount [1]** 70/7
**announce [2]** 43/10
43/15
**announced [1]** 43/13
**announcement [1]**
54/5
**announcing [1]** 45/5
**another [10]** 6/14
18/23 24/16 27/4 34/8
35/17 36/22 39/1 64/18
71/6
**answer [5]** 14/6 14/8
14/9 46/15 56/7
**answered [2]** 14/7 56/5
**answering [1]** 61/23
**anticipation [1]** 69/12
**any [95]**
**anyone [4]** 47/20 48/1
50/22 58/13
**anything [22]** 5/16 7/21
8/4 12/10 12/11 13/8
20/9 20/18 48/3 49/7
49/9 49/16 51/2 52/22
52/10 56/17 56/19
56/23 57/10 57/25
60/19 70/5
**Anyway [1]** 49/2
**appeal [3]** 65/4 66/11
68/2
**appealed [1]** 65/1
**Appeals [1]** 71/17
**appear [2]** 15/11 49/21
**APPEARANCES [2]**
1/13 2/1
**application [1]** 65/7
**applies [6]** 10/18 28/15
28/17 51/1 69/6 71/4

A-183

## A

apply [3]  10/9 23/10 49/7
appreciate [2]  9/20 51/12
are [76]
area [1]  55/19
argue [2]  15/16 16/7
argument [8]  5/13 13/24 15/10 15/14 15/19 68/4 68/11 71/14
arguments [11]  6/8 8/25 15/3 15/6 16/6 66/2 68/4 68/9 70/6 70/8 70/13
around [1]  53/8
arrive [1]  11/15
as [183]
Ashley [3]  34/25 35/2 36/6
ask [22]  9/23 16/7 46/6 46/12 46/13 46/19 47/16 50/15 50/16 51/22 52/21 53/25 54/13 54/14 56/11 58/11 60/24 65/5 66/22 67/21 68/12 68/25
asked [6]  13/23 20/25 27/22 27/25 51/6 70/19
asking [2]  6/13 56/7
asleep [1]  18/20
asserts [1]  18/6
assist [2]  15/7 45/4
associated [1]  37/19
assume [4]  18/11 18/16 27/15 63/18
assuming [6]  46/15 55/23 61/23 69/4 69/5 70/5
attach [1]  69/19
attempt [1]  38/9
attempted [3]  6/2 35/1 64/16
attention [7]  3/24 5/18 9/23 13/4 22/9 47/19 52/16
attentive [2]  50/12 63/5
attitude [1]  43/6
attorney [1]  14/12
ATTORNEY'S [2]  1/15 1/16
attorneys [2]  1/19 46/19
attributed [1]  39/6
automatic [1]  70/17
Avenue [2]  1/20 2/5
avoid [1]  43/17
awake [1]  28/5
aware [2]  11/11 11/13
away [3]  43/13 43/15 51/10

## B

back [35]  7/13 8/6 9/3 9/22 43/13 43/15 48/10 49/4 50/19 51/5 51/22 52/3 52/9 54/10 54/13 55/6 55/7 55/24 55/24
56/15 56/8 56/10 56/12 56/14 56/21 57/7 57/9 57/24 58/5 63/25 64/25 68/1 69/9 70/2 71/9
bad [1]  12/3
badge [1]  51/15
Baptist [1]  68/14
base [2]  12/6 12/9
based [14]  4/25 5/8 5/24 11/24 15/16 17/22 41/16 43/4 45/24 64/9 64/12
Basically [1]  8/3
basis [2]  6/7 22/13
be [130]
bear [1]  42/8
bearing [1]  16/1
beating [1]  6/13
because [23]  4/3 4/20 6/15 7/20 9/15 14/11 15/4 16/3 23/13 27/16 27/25 30/25 35/2 40/10 50/18 53/12 53/22 55/25 63/17 66/13 69/1 70/19 70/21
become [3]  31/21 32/6 33/12
becomes [2]  31/20 41/24
been [26]  5/20 6/14 6/17 6/19 13/19 14/7 14/21 15/1 21/11 28/3 32/15 32/21 39/16 43/24 47/2 47/14 47/15 51/3 51/7 53/1 63/5 64/20 65/4 65/13 70/6 70/10
before [17]  1/10 7/2 10/6 11/25 19/21 31/18 37/18 38/11 49/4 49/8 50/4 50/5 50/6 50/11 50/15 53/15 70/13
begin [2]  50/4 51/23
beginning [4]  27/9 43/7 43/19 47/25
begun [1]  38/12
behalf [5]  3/8 3/13 3/17 49/14 68/11
behavior [1]  20/11
being [8]  6/15 7/20 28/15 29/19 32/10 38/24 63/7 68/12
beings [1]  11/9
belief [3]  15/11 15/14 15/19
beliefs [1]  15/15
believability [1]  11/8
believe [8]  12/13 13/10 14/3 20/3 21/13 24/6 25/7 26/8
believed [2]  13/25 20/4
BELL [34]  1/7 2/13 2/14 3/4 3/19 3/20 7/25 15/21 15/23 15/25 16/3 16/11 16/17 23/23 24/8 24/13 24/13 24/21 25/5 25/9 25/15 25/16 27/11 49/16 55/17 57/12
Bell's [4]  23/25 24/2 24/23 25/1
benefit [1]  18/1
besides [2]  3/23 49/5
between [5]  20/23 21/3 30/21 33/5 41/23
beyond [26]  4/6 16/23 17/2 17/6 17/10 17/16 17/17 19/24 22/14 24/10 25/12 26/12 30/5 31/4 32/7 33/22 34/22 37/1 37/12 37/22 39/12 39/17 39/18 40/24 41/5 45/3
bias [1]  21/16
biased [1]  21/14
biases [4]  11/10 11/12 11/12 11/14
bit [3]  5/1 7/9 54/20
blacked [2]  19/8 19/11
bless [1]  23/9
blocked [2]  19/13 19/22
blogging [1]  48/3
bodily [1]  35/17
book [1]  9/21
boring [2]  9/24 9/24
both [9]  3/14 3/18 14/9 18/21 19/1 19/4 45/18 45/23 46/7
bother [1]  56/4
box [1]  70/16
break [5]  52/12 52/23 52/23 53/7 53/8
Brennwald [2]  66/10 67/10
briefing [2]  65/4 71/16
briefly [1]  47/22
briefs [2]  66/4 70/10 70/15
bring [7]  5/18 22/8 28/2 36/24 46/11 49/9 51/5
broadly [1]  5/7
broke [1]  64/21
brought [2]  3/24 13/4
bunch [1]  5/8
burden [3]  16/19 16/24 17/9
Bureau [1]  23/5
business [2]  36/2 63/23

## C

cafeteria [3]  55/3 55/16 55/19
call [10]  3/2 7/24 17/14 46/24 50/22 54/1 55/13 56/11 57/15 60/24
called [1]  29/11
calling [1]  51/2
Calmly [1]  43/18
came [2]  4/25 30/7
can [49]  4/18 9/2 9/9 15/2 32/6 33/1 33/3 34/12 38/9 41/18 44/7 44/13 47/20 47/21
can't [6]  19/10 49/17 49/20 54/5 56/7 57/5
cannot [1]  40/10
capability [1]  21/17
Carl [1]  68/17
Caroline [2]  21/24 22/5
case [81]
Case 22-096 [1]  3/3
cases [7]  5/8 17/12 17/15 17/20 47/6 47/7 71/7
cause [3]  36/9 36/23 43/13
caused [2]  36/21 37/3
causing [1]  36/15
caution [2]  22/2 23/1
cautionary [1]  47/1
cell [2]  53/15 54/16 55/7 57/18
certain [4]  8/7 39/8 43/10 71/2
certainly [7]  50/8 51/11 66/20 68/7 69/8 71/10 71/11
certainty [3]  17/20 19/2 41/4
certify [1]  72/3
chambers [1]  57/24
chance [3]  5/15 47/17 51/5
change [1]  4/16
changed [1]  6/20
changes [1]  4/16
changing [2]  4/1 4/4
characteristic [1]  11/17
charge [5]  4/4 17/11 28/1 33/1 39/25
charged [35]  10/9 12/5 17/3 17/24 21/25 23/19 23/24 24/8 24/10 24/14 24/17 24/22 25/9 25/13 25/17 25/21 25/25 26/10 26/13 26/15 28/8 32/23 36/16 36/25 37/12 37/15 37/17 37/18 37/20 37/24 39/13 39/18 39/21 40/6 41/1
charges [9]  19/24 27/23 28/2 28/9 28/11 29/24 34/20 58/19 61/1
check [1]  66/15
checked [2]  70/17
choices [1]  16/9
choose [2]  51/4 69/24
chose [2]  27/16 50/6
chosen [2]  16/6 27/11
CHRISTOPHER [2]  2/4 3/12
Circuit [1]  70/10
circumstances [9]  18/9 20/22 20/24 26/22 40/13 40/15 40/22 42/9 59/7
circumstantial [8]  18/3 18/5 18/10 18/19 18/21 18/25 19/1 19/5
citizens [1]  63/7
civil [2]  1/20 17/12
civility [1]  41/18
CKK [1]  1/4
claims [2]  31/19 41/1
clerk [5]  42/1 42/9 47/21 50/17 52/8
client [1]  69/13
clients [1]  54/4
clinic [22]  4/10 12/4 29/17 30/2 30/2 30/9 30/17 31/7 31/16 33/25 34/6 34/20 34/21 35/1 35/3 35/13 35/22 45/13 48/5 59/4 59/20 60/9
Clinic's [2]  34/14 36/7
closing [4]  4/18 8/24 10/11 16/6
co [3]  6/14 7/6 38/25
co-conspirator [1]  6/14
co-conspirator's [1]  6/14
co-defendant [1]  7/6
Cobb [3]  7/2 53/16 57/15
cold [1]  28/5
COLLEEN [1]  1/10
colored [1]  21/16
COLUMBIA [4]  1/1 1/16 30/3 36/4
come [9]  8/24 47/16 51/22 55/24 55/24 56/14 57/9 66/16 71/8
comes [4]  16/14 47/19 56/1 68/21
commanded [1]  37/14
commission [3]  36/19 37/9 39/25
commit [5]  29/11 33/11 37/3 37/7 37/24
commits [2]  39/1 39/2
committed [17]  23/20 23/23 24/8 24/18 24/21 25/9 25/21 25/25 26/10 36/17 37/13 38/24 39/19 39/21 40/7 41/2 41/6
committing [2]  37/20 39/6
common [2]  30/25 31/5
communicate [6]  41/25 42/3 42/5 47/25 51/1 52/6
communication [1]  47/5
communications [2]

**C**

communications... [2] 41/23 48/2
completed [2] 37/18 53/5
Completely [1] 47/16
computer [1] 2/18
computer-aided [1] 2/18
concern [1] 42/25
concerned [5] 12/1 12/3 20/20 63/16 68/6
concerning [2] 15/12 42/6
concerns [3] 23/25 24/23 26/2
concluded [2] 44/22 71/20
conditions [1] 39/8
conduct [17] 10/16 12/5 23/25 24/8 24/10 24/24 25/9 25/13 26/2 26/10 26/13 28/14 31/10 36/9 43/6 48/4 48/6
conducted [1] 5/2
confinement [3] 68/24 69/23 69/25
conform [1] 19/17
conjunctive [1] 4/4
Connecticut [1] 2/5
consciously [1] 11/13
consequence [2] 40/2 40/5
consequences [1] 40/18
consider [43] 10/20 11/11 14/14 14/14 14/17 14/20 19/14 19/18 19/25 20/9 20/11 20/22 21/1 21/2 21/5 21/8 21/11 21/15 22/20 22/22 23/18 24/4 24/6 25/6 26/7 26/24 27/6 27/6 27/19 27/20 28/3 28/16 33/7 40/13 40/22 41/16 43/5 43/25 44/3 44/16 64/11 68/12 68/24
considerable [1] 43/7
consideration [6] 11/22 11/23 16/2 17/22 41/21 69/1
considered [9] 22/2 23/1 24/13 25/15 26/13 33/19 39/4 42/20 50/23
considering [1] 8/11
consists [1] 14/18
consolidate [1] 65/5
consolidated [1] 66/1
conspiracy [39] 4/8 4/24 5/4 29/8 29/9 29/11 30/4 30/21 31/18 31/21 31/25 32/2 32/6 32/14 32/16 32/22 32/23 33/1 33/5 33/8 33/10 33/15 33/23 34/10 34/14 39/1 39/2

**D**

D.C [4] 1/17 1/21 2/6 2/11
DARNEL [19] 1/6 2/3 3/4 3/11 3/13 24/21 25/3 25/8 25/15 25/16 25/25 26/9 26/14 26/14

39/4 39/5 39/7 39/12 39/19 39/23 40/2 40/8 45/10 58/24 59/15 60/5
conspiracy's [1] 33/18
conspirator [3] 6/14 33/17 39/6
conspirator's [1] 38/25
conspirators [3] 32/25 33/16 34/12
conspired [3] 25/3 33/3 34/8
conspiring [1] 29/25
constituting [3] 36/18 37/8 39/10
Constitution [1] 34/11
Constitutional [1] 15/25
consult [1] 66/19
contact [1] 48/23
contacting [1] 57/17
contentions [1] 15/5
continued [2] 2/1 38/23
continues [2] 38/14 38/20
contradicted [1] 21/11
control [2] 10/3 13/21
controls [3] 10/24 13/18 56/9
convene [1] 56/10
convey [1] 44/24
convict [2] 22/12 36/24
conviction [3] 42/15 42/25 43/3
convinced [2] 17/18 17/23
convinces [1] 22/13
cooperation [1] 22/8
coordinate [1] 66/5
copies [5] 8/15 9/13 9/17 44/12 46/5
copy [2] 68/18 69/19
correct [9] 4/13 5/9 8/5 13/7 13/17 58/16 69/4 69/4 70/18
corrected [1] 48/23
could [8] 7/6 12/17 12/20 16/8 19/20 53/21 65/3 67/1
couldn't [1] 48/24
counsel [13] 3/5 3/9 5/11 8/6 8/18 10/22 13/4 15/3 48/16 49/6 54/3 60/19 65/11
counseled [1] 37/14
counseling [1] 35/23
count [51] 17/11 28/10 28/18 28/20 28/22 28/24 28/24 29/8 34/19 34/20 36/17 36/25 37/6 37/11 37/13 37/15 37/17 37/18 37/20 37/25 39/13 39/14 39/16 39/19 39/20 39/21 39/23 39/25 40/2 40/6 40/8 42/23 45/9 45/13 45/17 45/19 45/23 45/25 54/15 59/3

59/18 59/18 59/19 59/24 60/4 60/8 61/6 61/14 61/19 61/25 64/20
count 2 [2] 59/18 59/24
counts [33] 28/10 29/3 29/5 61/2 61/6 61/10 61/19 62/4 62/8 62/12 62/16 62/21 62/25
counts 1 [8] 61/2 61/6 61/19 62/8 62/12 62/16 62/21 62/25
County [1] 25/23
couple [4] 48/23 49/2 51/24
course [7] 12/12 14/4 16/9 19/8 23/16 26/20 64/11
court [35] 1/1 2/15 2/17 5/7 8/13 10/15 12/8 12/23 13/3 16/8 18/13 41/12 41/23 42/1 42/7 42/12 44/10 45/6 50/2 52/7 54/5 57/2 63/9 63/13 63/24 65/2 67/18 68/3 68/5 68/12 68/23 68/24 69/13 71/17 72/9
contradicted
Court's [1] 69/24
courthouse [4] 54/20 54/21 55/11 55/20
courtroom [14] 8/20 11/14 46/12 47/14 50/11 51/18 53/13 53/17 55/15 55/19 56/17 58/7 58/11 63/12
courtrooms [1] 28/5
cover [1] 31/10
coverage [1] 47/9
covers [1] 71/12
CR [1] 1/4
credibility [7] 11/7 15/12 19/23 20/2 20/5 20/10 23/8
credit [2] 21/4 21/12
crime [26] 17/23 27/18 29/11 32/10 33/12 36/16 38/1 38/4 38/6 38/8 38/12 38/13 38/14 38/19 38/20 38/23 39/1 39/2 39/6 39/9 39/14 40/3 64/1 64/14 69/5 71/6
crime's [1] 37/9
crimes [1] 28/13
criminal [11] 1/3 1/20 3/3 15/22 16/20 17/15 17/20 27/10 36/21 38/2 38/5
CRT [1] 1/19
custom [1] 8/1

27/11 49/12 58/24 58/25 59/5
Darnel's [4] 24/23 24/25 26/2 26/4
date [5] 41/4 41/6 41/7 66/21 72/8
dates [2] 66/24 71/19
DAVIS [23] 2/4 2/4 2/4 3/13 5/20 6/2 6/6 6/10 21/24 22/5 22/7 48/19 48/20 49/11 55/8 56/23 57/3 66/18 67/3 67/7 67/12 68/10 70/5
Davis's [1] 22/8
day [4] 1/8 27/2 53/8 55/25
daytime [1] 50/17
dead [1] 6/13
deadline [1] 67/17
deadlines [1] 65/15
deal [1] 68/21
decide [20] 11/5 11/6 11/7 11/22 11/24 12/13 13/9 18/24 19/20 24/7 24/9 25/7 25/8 25/11 26/8 26/9 26/11 40/20 47/13 67/1
decided [3] 15/21 15/24 16/3
decision [9] 5/20 16/1 27/12 28/2 52/19 63/6 65/6 70/25 71/12
decisions [1] 27/15
deemed [1] 33/14
defendant [98]
defendant's [7] 4/7 12/4 17/18 22/14 27/20 33/22 36/9
defendants [37] 1/8 17/8 22/12 22/24 23/19 23/23 24/17 24/21 25/20 26/25 28/10 29/1 29/2 29/4 29/24 33/9 34/5 36/25 46/4 46/14 46/17 58/10 58/19 61/3 61/7 61/11 61/25 62/4 62/9 62/13 62/17 62/21 63/1 64/19 64/22 65/25 70/7
defendants' [3] 27/15 54/3 65/16
defense [4] 4/21 4/22 8/18 65/11
defined [1] 39/16
Definitely [1] 55/22
definition [2] 64/15 69/5
definitive [1] 5/19
degree [2] 19/2 67/15
delay [1] 7/20
delayed [1] 7/9
deliberate [2] 47/23 52/25
deliberating [4] 52/17 53/2 53/2 54/8
deliberations [21] 10/3 10/12 13/21 14/10 14/16 41/11 41/24

41/25 43/1 43/7 43/19 44/14 44/22 47/25 48/5 50/4 51/24 52/5 52/14 52/18 53/5
demeanor [1] 20/11
Department [3] 23/22 24/20 25/24
depends [1] 7/3
deprive [1] 34/14
deputy [2] 52/8 71/15
described [1] 20/7
deserve [1] 11/16
deserves [2] 22/3 23/2
desire [1] 21/17
detailed [4] 39/20 39/23 40/2 40/8
details [3] 20/25 30/24 31/18
detention [1] 70/17
determination [1] 43/10
determine [5] 11/3 11/21 18/4 20/2 21/15
determined [1] 28/14
determining [5] 19/23 21/10 26/24 33/5 40/25
develop [1] 13/13
did [19] 3/25 4/22 5/21 7/8 7/16 35/2 37/7 37/21 39/9 40/19 40/19 49/3 50/6 50/8 57/17 65/14 65/15 70/7 71/8
didn't [6] 4/16 4/18 6/12 8/4 50/8 65/14
difference [2] 68/6 70/24
differences [1] 21/7
different [10] 5/4 10/15 10/25 13/20 22/21 29/4 29/4 29/4 65/4 66/4
differently [1] 10/23
difficult [3] 35/11 54/11 63/6
direct [8] 18/3 18/5 18/7 18/14 18/21 18/25 19/2 19/4
directly [3] 36/22 39/10 40/10
disability [1] 11/18
discretion [4] 63/24 64/25 69/8 69/24
discuss [7] 10/5 10/8 47/19 47/22 50/22 51/3 51/6
discussed [2] 7/18 10/6
discussing [3] 43/19 70/2 70/2
discussion [7] 5/11 5/24 6/21 10/25 43/14 43/16 65/23
discussions [2] 41/17 49/7
disjunctive [1] 4/14
dislikes [1] 11/10
disregard [1] 15/19
disrupt [2] 3/24 31/15
DISTRICT [6] 1/1 1/1

**D**

DISTRICT... [4]  1/11
1/16 30/2 36/4
divide [1]  10/4
divided [1]  42/13
Division [1]  1/20
do [67]  4/18 4/18 4/19
7/1 7/16 7/17 8/9 15/25
16/8 16/10 28/5 31/1
32/18 34/8 35/1 35/14
40/19 46/1 46/21 46/22
47/19 50/3 50/18 51/14
53/21 53/23 54/5 54/25
55/17 56/2 56/14 56/14
57/17 61/1 61/4 61/7
61/8 61/11 61/12 61/15
61/16 61/18 61/20
61/22 62/1 62/6 62/9
62/10 62/13 62/14
62/17 62/18 62/21 63/1
63/2 64/24 65/5 65/6
65/22 66/1 66/2 66/8
66/10 67/19 68/11 69/9
69/25
document [1]  19/13
does [14]  16/25 17/20
18/23 19/1 22/17 31/1
32/10 32/13 32/22
36/10 38/11 43/12
52/25 67/14
doesn't [6]  9/19 14/13
30/23 32/16 49/21
69/24
doing [2]  48/11 65/10
DOJ [1]  1/19
DOJ-CRT [1]  1/19
don't [38]  6/20 7/23 8/1
9/3 9/14 46/1 46/18
47/11 47/17 48/11
50/14 51/1 53/17 54/1
54/14 55/23 56/10
56/15 56/17 56/20
57/10 57/20 58/12
63/13 65/9 65/21 66/3
66/7 66/9 66/16 67/5
67/24 68/10 69/8 69/14
69/16 70/11 71/7
done [13]  7/20 12/11
13/8 33/9 33/13 36/16
36/21 36/23 37/3 40/14
49/4 51/13 71/3
door [1]  9/4
Dorothy [2]  9/8 57/25
doubt [30]  4/7 16/23
17/2 17/7 17/9 17/11
17/16 17/17 17/21 18/1
19/25 22/14 24/10
25/12 26/12 30/6 31/4
32/8 33/22 34/23 37/1
37/12 37/23 39/13
39/17 39/18 40/24 41/6
45/3 68/25
down [7]  5/15 9/15
30/24 50/16 53/19
60/18 63/22
downstairs [1]  55/16
Dr. [1]  68/17
Dr. Carl [1]  68/17

**E**

draw [2]  14/21 27/20
drawn [1]  18/9
drive [3]  8/9 8/12 8/17
droning [1]  10/1
due [3]  65/16 65/17
65/17
duplicates [1]  46/6
DuPont [1]  55/11
during [23]  14/6 12/12
13/21 14/4 14/16 15/10
15/14 15/15 15/19 16/4
16/9 19/8 23/16 26/20
39/1 39/22 40/21 41/24
41/24 44/13 47/25 48/4
52/16
duty [6]  10/19 12/6
12/9 17/4 17/7 43/2

**E**

each [48]  17/10 17/11
21/19 27/11 27/14
27/15 27/16 28/10
28/11 28/13 28/16
28/18 28/19 33/12
36/18 37/1 41/4 41/19
42/21 42/21 42/23 45/7
46/3 46/14 46/16 58/10
58/19 58/19 60/25 61/1
61/3 61/7 61/11 61/14
61/15 61/19 61/25 62/4
62/9 62/13 62/17 62/21
63/1 64/8 64/19 64/22
65/25 66/8
eager [1]  50/14
early [2]  50/25 65/6
earphones [1]  9/8
easier [2]  44/10 55/3
easily [1]  56/5
eating [1]  52/13
education [1]  11/20
effect [1]  21/17
efficient [1]  10/17
efforts [1]  27/1
eight [2]  50/13 66/4
either [16]  21/14 23/12
27/13 29/1 29/2 30/11
36/10 36/12 42/24
45/18 45/23 46/12
46/18 49/22 55/15
55/19
elapsed [1]  20/23
electronic [3]  44/6 48/2
52/2
electronically [2]  44/8
48/7
element [16]  4/6 17/2
17/6 30/20 31/3 31/13
33/21 34/9 34/11 35/5
35/15 35/20 36/10 37/2
37/15 64/16
elements [7]  10/9 29/9
30/5 34/22 37/11 39/15
45/2
eleven [1]  42/14
else [10]  5/16 47/20
49/7 49/8 51/2 51/13
52/11 56/3 57/25 69/15
elsewhere [1]  65/8

email [2]  3/21 48/3
emotion [1]  34/13
emphasize [1]  10/6
employee [1]  34/6
employees [10]  4/10
29/17 30/1 30/8 30/16
31/6 31/16 33/25 34/15
34/25
employees' [1]  36/8
encourage [1]  41/18
end [3]  53/8 55/24
57/21
enforcement [3]  23/3
23/6 23/13
England [1]  68/13
enjoyment [1]  31/11
enough [6]  5/24 9/18
31/3 36/9 37/19 65/6
enter [4]  22/10 32/3
33/11 43/1
entered [6]  22/5 22/15
22/21 22/23 22/25
50/11
entering [1]  43/8
enterprise [1]  38/10
enters [2]  8/20 58/7
entirely [2]  40/20 50/6
entitled [4]  14/25 21/20
28/12 72/5
entrance [2]  35/8 35/13
entrances [1]  34/20
equal [1]  19/1
ESQUIRE [4]  1/15 1/19
2/4 2/9
establish [1]  41/3
established [1]  39/16
establishes [1]  41/5
ethnic [1]  11/18
evaluated [1]  23/6
evaluating [3]  20/5
20/21 23/7
even [6]  14/13 31/21
32/5 34/12 37/7 39/9
event [6]  20/22 20/23
20/25 23/11 42/25 43/2
events [2]  20/24 36/18
every [5]  16/19 17/2
17/21 27/9 32/6
everybody [4]  48/19
52/19 56/10 71/12
everybody's [1]  52/18
everyone [2]  30/23
58/3
everything [3]  9/16
33/12 51/13
evidence [102]
exact [1]  41/4
exactly [1]  65/2
examine [3]  19/18
43/25 44/3
example [3]  18/11
20/10 42/13
except [2]  42/3 42/6
exclude [1]  47/16
exclusive [2]  12/15
13/15
exclusively [1]  43/3
excuse [7]  38/3 41/11

50/4 50/12 55/25 59/19
63/8
excused [1]  71/19
excusing [1]  48/14
exercise [3]  27/12
29/14 31/11
exercising [1]  34/15
exerted [1]  35/6
exhibit [4]  5/21 6/3
19/12 19/15
exhibits [21]  4/20 7/12
8/1 8/5 8/8 8/16 14/15
14/19 16/15 19/6 19/9
19/18 19/19 43/24 44/1
44/5 51/25 52/9 57/3
57/13 57/23
exist [1]  38/11
existed [2]  33/6 33/10
existence [3]  33/18
39/1 39/22
exists [2]  31/2 50/21
exit [2]  35/8 35/13
exits [2]  53/13 63/12
expect [1]  70/11
expectation [1]  35/17
experience [1]  14/18
explain [4]  6/18 29/7
29/9 29/22
explanation [1]  28/9
expressed [4]  12/13
12/24 13/10 15/18
expression [1]  11/19
15/20 43/9
extent [1]  20/3
eye [1]  49/1
eyewitness [1]  18/6

**F**

FACE [4]  64/23 65/7
69/7 70/16
facilitate [4]  37/16 38/1
38/4 41/17
facility [3]  35/9 35/10
35/22
fact [8]  14/12 14/13
14/14 17/13 18/7 18/22
28/19 32/4
facts [14]  11/3 11/4
11/21 11/25 12/9 14/21
15/12 18/5 18/8 19/21
40/14 40/20 43/22 56/7
failed [1]  17/6
fair [8]  10/17 11/16
11/21 27/24 28/4 41/15
41/21 70/7
fairly [3]  5/2 14/25
21/20
falling [2]  18/12 18/14
false [1]  22/18
falsehood [1]  21/7
falsely [1]  22/24
familiar [1]  5/5
far [4]  63/16 67/6 68/6
69/23
fashion [1]  42/15
favor [1]  18/23
favoritism [1]  11/23
fear [1]  11/23

Federal [1]  23/4
feel [2]  14/22 44/18
few [1]  17/19
file [1]  68/2
filed [2]  64/11 70/10
filing [1]  66/25
fill [1]  46/7
fills [1]  46/7
Finally [1]  10/11
find [38]  14/21 17/1
17/4 17/5 17/7 17/24
18/2 24/7 25/8 26/9
28/19 29/1 29/2 31/17
34/9 36/16 36/25 38/22
39/11 39/14 39/15
39/18 40/3 40/20 43/17
45/10 45/14 45/22 46/2
48/24 54/6 54/9 58/25
59/4 59/16 59/20 60/6
60/9
finding [6]  36/17 45/20
46/1 63/25 64/22 70/20
findings [4]  45/16 59/8
59/8 59/23
fine [8]  53/24 55/4
56/14 57/10 66/12 67/7
69/18 69/21
finings [1]  60/12
finished [2]  57/16
63/16
firmly [7]  17/18 17/23
first [12]  10/4 10/13
11/2 29/8 30/12 30/20
31/3 35/5 41/9 41/10
49/6 65/1
five [2]  7/6 42/14
fixed [1]  49/3
flash [2]  8/9 8/16
follow [6]  10/21 44/17
53/11 68/23
following [10]  8/20
10/24 13/2 30/5 34/22
37/11 45/18 48/17 50/1
58/7
follows [1]  65/16
force [20]  4/8 33/23
34/16 34/16 34/23 35/5
45/20 59/8 59/24 60/12
64/17 64/20 64/23 69/6
70/16 70/21 70/21
70/25 71/3 71/5
foregoing [1]  72/3
foreknowledge [1]
38/22
foreperson [22]  41/9
41/10 41/14 41/17 42/2
46/6 46/12 46/22 52/21
58/13 60/25 61/2 61/6
61/10 61/11 61/24 62/3
62/8 62/12 62/16 62/20
62/25
foreseeable [2]  40/1
40/5
form [12]  18/23 19/11
27/3 29/6 44/21 44/22
44/25 45/4 45/7 46/3
46/16 71/15
formal [2]  27/18 30/23

**F**

former [1] 25/23
forms [2] 15/1 46/9
found [6] 37/6 39/9
45/16 45/18 45/25
64/20
four [2] 37/17 40/6
frankly [2] 5/2 54/11
free [4] 29/13 34/16
44/18 51/3
freedom [2] 34/19
35/19
friendship [1] 20/19
frighten [1] 31/10
Fronk [1] 3/9
full [2] 20/16 41/21
function [4] 10/16 11/2
11/3
further [4] 31/24 39/17
43/16 60/19
furtherance [3] 33/13
39/3 39/22
Furthermore [1] 43/17

**G**

gain [1] 20/18
gained [2] 38/13 38/18
game [1] 70/12
gave [3] 26/19 47/24
63/18
gender [1] 11/19
general [2] 10/5 10/13
Generally [1] 11/10
get [19] 12/17 12/20
30/25 44/4 51/16 51/25
54/1 54/2 54/9 55/12
55/23 55/25 56/6 57/4
57/7 57/19 57/20 57/20
63/9
gets [2] 13/5 71/11
getting [4] 6/6 7/21
9/13 19/6
give [25] 8/12 9/17
11/6 14/24 18/1 18/11
18/24 19/1 21/19 22/2
23/1 23/11 44/9 46/5
46/9 46/12 52/7 52/8
52/8 53/14 53/22 57/17
57/18 66/24 68/18
given [6] 12/7 24/17
25/19 44/3 45/1 71/14
gives [1] 69/7
giving [9] 7/23 8/9 8/15
10/23 44/7 47/1 47/2
48/12 63/15
go [19] 3/23 5/16 7/19
9/22 41/15 44/8 46/1
46/15 49/8 51/9 51/14
51/20 52/9 54/10 54/13
57/8 58/23 63/22 66/20
goal [1] 11/15
goals [2] 39/3 39/22
God [1] 23/9
goes [3] 49/4 52/15
58/13
going [37] 5/25 6/6 8/6
9/12 9/13 9/16 10/2
10/3 10/5 11/2 44/4

46/5 48/14 50/15 50/21
51/19 52/5 53/14 53/16
53/22 54/3 54/8 54/16
55/2 55/8 55/10 55/14
55/18 56/16 57/24
60/23 63/19 64/3 65/23
66/13 68/2 68/14
good [14] 3/7 3/10 3/12
3/14 3/16 3/18 3/19
3/20 8/22 12/3 48/22
58/3 58/4 58/9
got [6] 3/22 4/1 9/6
48/6 54/11 71/16
government [50] 1/14
4/3 4/6 5/12 5/17 5/18
6/2 6/4 16/22 17/2 17/5
17/9 19/24 21/23 21/24
22/5 22/6 22/8 22/10
22/23 23/21 24/9 24/19
25/12 25/22 26/12 30/4
30/20 31/4 31/13 31/19
32/7 33/3 33/21 34/4
34/22 37/1 37/11 39/11
40/24 45/3 49/10 56/19
64/3 64/5 64/7 67/1
67/14 67/18 68/18
Government's [8] 4/1
8/5 17/15 24/6 25/7
26/8 28/2 65/17
grant [2] 64/2 64/10
Great [1] 49/25
greater [2] 19/2 23/12
ground [2] 18/17 18/18
grounds [2] 45/18
45/23
guaranteed [1] 31/12
guidelines [2] 23/8
23/10
guilt [5] 17/18 22/14
27/20 27/21 28/12
guilty [73]
guilty/not [4] 45/11
45/15 45/20 45/21

**H**

had [20] 4/19 5/11 5/15
5/20 5/24 6/2 8/12 8/21
13/2 18/13 18/19 18/19
20/16 38/7 38/22 50/1
58/8 66/1 66/18 70/9
half [2] 56/16 66/4
hallway [1] 53/19
hand [5] 17/5 17/25
18/8 30/25 50/17
hang [2] 54/25 63/9
happen [2] 18/15 46/11
happens [2] 47/21
50/20
happily [1] 50/12
harder [1] 58/21
HARIVADEN [1] 1/19
harm [2] 31/10 35/17
has [51] 8/23 9/3 13/4
15/1 15/18 15/24 15/25
16/1 16/3 16/22 17/2
17/5 17/9 19/24 20/6
20/15 20/17 20/17
20/19 21/11 21/13

21/16 22/15 22/20
22/21 22/23 22/25
23/21 23/23 25/22
25/25 27/10 28/3 37/1
38/12 38/14 38/20
39/11 40/24 45/19 57/3
58/18 64/16 64/24 65/1
65/12 68/5 68/10 68/14
70/11 71/17
have [101]
haven't [2] 5/15 7/4
having [5] 20/14 23/19
24/18 25/21 38/6
hazardous [1] 35/11
he [20] 5/21 6/7 6/7
15/15 16/22 18/12
18/13 18/14 18/16
18/18 18/18 18/20
20/17 28/13 28/15 32/6
32/8 39/9 40/18 68/11
he's [1] 57/16
head [1] 55/6
health [18] 4/12 29/17
29/18 30/2 30/18 34/2
34/7 34/18 34/21 35/3
35/9 35/20 35/21 36/1
36/3 36/7 36/8 36/12
healthy [1] 50/12
hear [2] 16/4 47/3
48/19 48/20 48/21
49/17 49/20 56/20
58/13 58/22 66/16
71/17
heard [20] 8/24 10/25
12/25 16/5 21/23 22/4
23/4 26/21 46/22 60/24
61/5 61/9 61/13 62/3
62/7 62/11 62/15 62/20
62/24 68/3
hearing [7] 7/1 7/7 9/20
47/3 53/15 53/16 67/3
hears [1] 52/19
held [4] 24/14 25/17
26/15 48/17
hello [4] 9/10 9/10 9/10
9/10
help [3] 15/4 41/18
53/1
helped [1] 51/19
helpful [3] 6/19 37/21
55/21
helping [1] 37/24
helps [4] 24/7 25/8
26/9 32/12
Henry [1] 3/9
her [34] 4/17 7/8 7/10
7/23 7/24 8/1 15/11
15/13 15/15 15/18
15/25 16/3 16/4 16/13
16/18 17/24 18/1 18/2
22/2 22/9 22/17 22/24
26/22 26/23 27/1 28/12
28/15 29/14 33/9 38/23
41/20 57/18 68/15 69/11
here [13] 10/24 13/5
26/13 41/12 42/7 52/20
53/9 54/14 55/12 56/10
65/8 65/8 71/7

herself [4] 15/21 15/22
15/24 21/13
hesitate [1] 43/13
43/15
him [6] 17/24 18/1 18/2
21/13 28/15 29/14
hinder [4] 4/9 4/23
30/16 33/24
hip [2] 68/15 68/16
69/14
his [14] 6/11 6/16 6/18
15/11 15/13 15/14
15/18 18/13 18/18
28/12 28/14 33/9 38/23
41/20 57/16
hold [3] 9/1 13/25
27/12
Holler [3] 26/19 26/21
27/1
home [3] 68/24 69/23
69/25
Honaker [1] 24/20
Honor [44] 3/7 3/12
3/16 3/20 5/17 5/19 6/1
6/11 6/23 7/1 7/15 7/22
8/11 12/17 49/10 53/14
54/17 54/19 55/2 55/5
55/10 57/1 60/21 63/11
63/13 63/21 64/7 65/12
65/15 65/20 66/12
66/15 66/21 67/2 67/11
67/17 67/22 68/3 69/11
70/4 70/11 70/12 71/10
71/13
Honor's [1] 6/12
HONORABLE [1] 1/10
hope [1] 68/24
hopefully [2] 50/19
52/1
hoping [1] 57/8
horse [1] 6/13
hospital [2] 35/22
68/14
hostility [1] 20/19
hour [1] 56/16
how [24] 12/12 13/9
18/24 23/17 23/17
41/13 42/10 42/13
42/18 42/18 51/16
52/24 53/1 63/17
however [10] 6/16 15/6
18/16 22/20 32/1 33/17
40/20 41/14 51/5 57/18
human [2] 11/9 35/24

**I**

I'd [3] 9/23 27/17 54/22
I'll [25] 7/17 9/24 10/8
10/11 13/6 27/2 29/5
29/6 29/9 29/22 46/12
46/13 46/21 46/21
46/24 47/22 53/15 55/6
55/15 56/3 56/10 67/3
67/18 68/15 69/11
I'm [39] 5/24 6/6 6/12
6/13 7/5 7/19 8/9 9/12
9/13 10/2 10/3 10/4
10/14 11/2 12/19 42/3

46/5 47/1 48/12 48/14
50/15 50/21 53/14
53/16 54/3 54/5 55/10
57/2 57/4 57/24 60/23
61/23 63/15 63/16
63/19 67/3 69/4 70/5
71/2
I've [12] 13/5 13/6
24/12 25/14 27/8 45/1
47/2 48/22 51/6 51/21
57/12 64/12
identification [1] 44/2
identify [1] 3/5
identity [2] 11/19 31/18
ignore [7] 10/21 12/15
13/11 13/14 14/5 14/9
44/17
illegal [2] 32/4 39/5
immediately [3] 52/10
54/9 54/13
impartial [1] 11/15
27/24 28/4
impassable [1] 35/8
impeded [2] 29/20
29/23
implicate [1] 19/16
implicit [1] 11/12
importance [1] 43/8
important [3] 9/20 15/4
47/3
imposing [1] 43/2
impresses [2] 20/13
20/14
improbability [1] 21/9
improper [1] 27/13
inadmissible [2] 13/22
19/16
inadvertently [1] 47/19
incarceration [1] 64/4
includes [3] 35/23 36/1
48/2
including [7] 4/12
19/15 20/22 28/1 29/18
34/2 35/24
inclusive [1] 71/4
income [1] 11/20
inconsistencies [3]
21/1 21/3 21/5
independent [2] 48/4
48/11
indicate [10] 40/15
42/14 42/17 45/8 45/11
45/15 45/23 46/23
51/24 69/9
indicated [7] 12/14
13/10 13/12 19/6 43/23
68/14 69/6
indicating [5] 12/12
13/9 45/5 46/9 67/24
indication [1] 42/18
indicative [1] 6/16
indictment [23] 4/5
4/14 24/14 25/17 26/15
27/17 27/19 28/11
28/18 28/21 28/22
28/25 29/3 29/24 37/1
37/6 39/13 39/15 39/20
39/24 40/3 40/8 41/1

A-187

**I**

individual [4] 38/14
38/19 65/25 66/3
individual's [1] 19/16
individuals [1] 39/7
induced [1] 37/14
infer [4] 38/21 40/12
40/17 40/17
inference [1] 27/21
inferences [2] 14/22
18/9
influence [3] 28/21
28/23 43/1
information [3] 48/13
53/4 69/22
initial [2] 43/18 66/25
injure [6] 4/2 29/13
29/25 30/7 31/5 31/8
injured [1] 34/24
innocence [2] 16/21
16/25
innocent [1] 16/20
instance [2] 42/12
44/11
Instead [1] 32/3
instruct [6] 10/18
10/19 27/5 48/10 50/21
63/14
instructed [3] 29/16
29/20 36/3
instructing [1] 10/2
instruction [10] 4/16
13/17 24/16 25/19
26/19 34/19 36/15 37/5
47/1 47/24
instructions [24] 4/24
9/13 9/21 10/4 10/8
10/20 10/23 11/1 12/8
21/22 23/16 39/16
44/13 44/14 44/16
44/16 44/18 44/19
44/25 45/2 48/10 50/25
63/15 63/19
integral [1] 36/2
intended [5] 15/4 15/7
30/15 31/10 40/4
intends [1] 40/18
intensive [1] 5/2
intent [15] 4/7 24/2
25/1 26/4 31/24 33/22
35/14 37/3 37/16 37/24
38/1 38/4 40/9 40/12
40/15
intentional [5] 12/14
12/24 12/25 13/14 21/7
intentionally [7] 30/10
31/14 31/24 32/8 34/24
40/19 40/19
interest [3] 20/18 21/15
22/21
interesting [1] 9/25
interests [1] 31/1
interfere [6] 4/9 4/23
4/23 30/16 33/24 35/18
interfered [1] 34/25
internet [4] 47/8 48/7
50/25 51/1
interpreted [1] 5/7

interprets [1] 5/8
intimidate [7] 4/3 29/13
30/1 30/8 31/6 31/9
35/16
intimidated [1] 34/25
investigation [2] 23/5
48/4
invite [1] 41/19
involved [4] 30/24 31/5
32/15 32/21
involving [1] 33/2
is [136]
isn't [1] 47/4
issue [6] 4/25 28/12
42/16 47/4 68/7 69/9
issues [5] 8/11 57/23
63/17 65/23 65/25
issuing [1] 5/25
it [156]
it's [52] 4/13 5/3 5/4 5/6
5/9 7/6 7/7 8/4 9/2 9/4
9/19 10/19 11/5 13/20
14/2 14/25 17/3 17/7
17/13 18/23 18/25
21/20 29/10 31/17
37/19 38/18 40/3 40/19
41/4 46/20 46/25 47/3
47/15 50/18 51/11
53/16 55/3 56/8 56/13
56/16 57/11 58/21 63/5
66/13 67/4 67/18 69/7
69/20 70/16 70/16 71/4
71/12
its [3] 33/6 33/18 65/7
itself [2] 27/24 32/13

**J**

jail [1] 64/8
January [1] 26/3
January 30th [1] 26/3
JEAN [7] 1/6 2/8 3/4
3/17 59/14 59/16 59/21
Jersey [1] 24/1
JOAN [8] 1/7 2/13 2/14
3/4 3/20 60/4 60/6 60/9
JOHN [3] 2/9 2/9 3/16
Johns [4] 2/16 72/3
72/8 72/9
join [3] 68/4 68/9 71/13
joined [9] 3/8 30/11
30/14 30/21 31/14 32/8
32/11 33/15 70/13
joining [3] 4/8 33/23
70/6
joins [1] 31/24
JONATHAN [7] 1/6 2/3
3/4 3/13 58/23 58/25
59/4
Jones [2] 34/25 35/2
Jones's [1] 36/6
judge [7] 1/11 6/9 7/2
15/20 22/9 53/16 57/15
judges [4] 11/4 12/9
20/1 43/21
Judging [1] 20/5
judgment [6] 14/25
20/9 21/20 22/3 23/2
42/20

jurisdiction [1] 65/7
juror [20] 41/19 42/21
42/21 43/8 43/13 46/21
50/20 61/1 61/5 61/9
61/13 61/17 61/21 62/2
62/7 62/11 62/15 62/19
62/24 63/6
jurors [9] 17/12 42/10
43/6 43/17 47/20 50/5
50/13 51/18 63/18
jury [50] 1/10 5/1 5/22
6/25 8/12 8/20 8/22
10/14 11/3 11/3 27/23
41/10 41/23 42/2 42/3
42/5 42/13 43/9 43/18
43/23 45/10 45/14
46/13 46/19 47/23 48/1
48/18 50/7 50/19 50/24
51/6 51/7 51/9 51/14
52/13 53/13 58/7 58/9
58/18 58/25 59/4 59/16
59/20 60/6 60/9 60/20
63/3 63/12 64/24 70/24
jury's [1] 13/12
just [53] 3/21 5/14 6/1
6/2 7/5 7/24 7/25 8/4
9/25 11/15 12/8 16/17
23/7 24/12 25/14 32/20
41/16 44/10 46/24
46/25 48/22 50/7 51/15
51/22 52/2 52/3 52/10
52/22 52/23 53/2 53/3
53/6 53/9 53/19 54/14
55/3 55/10 56/3 56/6
56/8 56/11 57/2 57/16
57/16 57/24 63/18
66/18 68/1 69/12 70/11
70/22 71/2 71/14
justice [1] 11/17
justified [1] 14/22

**K**

keep [8] 9/24 28/5 28/5
44/1 46/10 52/23 53/3
56/4
key [1] 7/12
kind [2] 22/10 27/19
knew [1] 31/18
knocked [1] 52/4
know [39] 7/5 7/6 8/1
9/3 9/12 9/22 12/24
16/8 17/19 32/1 47/2
47/20 47/21 48/9 50/14
50/23 51/9 51/16 52/10
53/1 53/9 54/7 56/6
56/8 57/2 57/24 63/4
63/5 63/6 63/13 65/9
65/21 66/7 66/9 67/25
68/3 68/10 70/15 71/18
knowing [2] 32/13
40/11
knowingly [1] 32/11
knowledge [12] 18/7
37/23 38/6 38/7 38/8
38/9 38/11 38/12 38/18
40/10 40/12 40/16
known [2] 33/1 33/2
KOLLAR [1] 1/10

KOLLAR-KOTELLY [1]
1/10
KOTELLY [1] 1/10

**L**

language [1] 5/10
lapses [1] 21/6
last [6] 3/21 4/25 8/12
8/13 50/3 54/12
late [1] 3/22
later [9] 6/16 6/18
18/12 20/23 29/7 29/23
30/12 32/7 65/11
law [30] 2/9 5/6 5/9
10/2 10/5 10/17 10/18
10/19 10/22 10/24
11/25 12/2 12/2 12/7
15/22 16/25 17/20
18/21 18/22 23/3 23/6
23/13 29/10 29/12
29/19 30/19 32/2 32/2
36/4 45/1
laws [5] 29/15 29/16
29/20 31/12 34/11
lawyer [9] 13/25 14/1
15/10 15/13 15/14
15/18 15/25 16/3 16/12
lawyer's [2] 14/2 14/5
lawyers [5] 8/25 13/22
15/4 15/6 15/9
leading [3] 23/20 24/3
24/18 25/1 25/21 26/5
70/17
learning [1] 38/24
least [6] 37/15 54/21
64/12 65/22 66/10 68/6
leave [6] 5/9 50/14
50/15 51/15 51/18
54/16 55/6 57/5
leaves [1] 17/17
left [2] 44/8 53/9
legal [4] 4/10 5/9 15/23
33/25
lens [1] 48/23
lesser [1] 23/12
let [25] 7/6 9/12 10/13
13/1 18/11 23/15 28/7
28/7 32/20 38/3 38/17
47/20 47/20 48/16 49/8
50/23 52/10 53/11
54/14 57/2 57/23 58/23
63/8 64/5 66/15
Let's [1] 3/2
letter [2] 68/13 68/17
letting [2] 7/5 7/19
level [1] 11/20
liability [1] 38/25
liable [1] 36/20
lie [1] 22/18
life [2] 39/2 39/22
light [1] 14/23
like [3] 5/18 32/19
56/13
likelihood [3] 51/2 64/2
64/10
likely [1] 17/13
likes [1] 11/9
limit [1] 53/4

limited [6] 4/13 23/15
26/18 27/6 27/7 34/3
limiting [1] 36/4
list [1] 45/8
listen [4] 9/20 47/11
47/12 47/17
listening [2] 47/14
51/10
little [6] 3/22 7/9 38/17
49/2 54/20 66/22
live [1] 57/21
local [2] 19/17 23/5
lock [1] 9/3
locked [1] 56/15
lodged [1] 6/4
long [14] 5/11 31/22
32/7 33/2 34/13 36/6
36/12 38/13 38/19 51/9
52/24 53/1 57/20 63/4
longer [2] 50/23 51/17
look [9] 7/21 8/7 8/19
9/18 9/22 44/7 44/13
51/25 71/8
looked [5] 7/14 18/11
18/16 57/5 69/15
looking [3] 48/5 52/1
70/8
looks [1] 56/13
lot [1] 53/20
lunch [6] 52/12 52/16
52/23 54/7 54/22 55/5

**M**

MACHADO [8] 2/9 2/9
3/16 4/15 49/13 55/14
56/25 57/13
made [14] 5/2 5/13 6/5
8/12 13/5 13/24 14/1
16/9 33/17 40/13 49/6
70/6 70/8 70/13
make [21] 5/13 5/19
8/6 8/7 13/6 16/5 16/7
32/14 46/20 46/25 47/4
48/22 49/3 54/5 57/9
60/23 67/25 68/11
68/22 70/24 71/11
makes [1] 44/10 70/24
making [5] 8/4 33/19
52/19 64/6 66/2
manner [2] 10/17 20/12
many [1] 43/17
marked [1] 44/2
Marshal [2] 42/10
71/15
MARSHALL [12] 1/6
2/8 3/4 3/15 3/17 27/11
49/14 59/14 59/16
59/21 68/11 68/12
Maryland [1] 26/3
mask [1] 58/21
match [1] 5/12
matter [11] 5/17 10/12
32/16 32/22 42/5 42/13
43/5 43/7 43/21 56/15
72/5
matters [2] 20/8 20/16
Matthews [1] 25/24
may [85]

**M**

**maybe [3]** 7/5 47/6 68/23
**me [41]** 7/25 10/13 13/1 13/19 18/11 23/15 28/7 28/7 32/20 38/3 38/3 38/17 41/11 41/25 42/3 42/10 42/12 42/3 44/19 44/19 44/24 47/20 47/20 48/10 48/16 48/20 52/8 53/11 54/14 57/23 58/23 59/19 63/8 64/5 66/15 66/24 66/24 67/13 68/23 69/7 70/25
**mean [4]** 9/19 14/13 29/22 70/11
**meaning [1]** 48/11
**means [13]** 7/13 18/22 19/10 20/5 35/6 35/8 35/16 35/18 35/21 36/23 38/8 42/11 48/6
**meant [2]** 12/25 45/4
**mechanical [1]** 2/18
**media [4]** 47/8 47/9 47/10 48/3
**medical [5]** 35/23 69/9 69/11 69/19 71/15
**meet [1]** 34/9
**meeting [1]** 64/23
**member [9]** 31/21 32/6 33/8 36/2 38/25 39/19 40/7 42/2 42/5
**members [7]** 8/22 32/23 33/7 39/5 39/7 42/2 58/9
**memory [6]** 13/20 13/21 20/14 20/21 21/6 56/8
**mention [1]** 6/12
**mere [1]** 32/9
**merely [7]** 23/13 27/17 30/25 32/10 32/13 34/7 37/19
**merits [2]** 42/4 42/6
**met [1]** 34/12
**MICHAEL [1]** 2/4
**Michigan [1]** 22/9
**midst [2]** 38/13 38/19
**might [1]** 7/8
**mind [7]** 6/16 11/1 40/9 40/25 42/8 44/1 58/6
**mindful [1]** 41/15
**minor [2]** 31/22 49/2
**minute [1]** 9/7
**minutes [1]** 55/11
**mission [1]** 41/15
**misspoke [2]** 12/23 13/17
**mistake [2]** 13/5 21/6
**misunderstanding [1]** 21/6
**mix [1]** 6/21
**modifies [1]** 45/2
**moment [1]** 48/14
**Monday [2]** 67/4 67/9
**Montgomery [1]** 25/23
**month [1]** 66/22

**more [20]** 3/25 9/25 17/7 17/13 17/15 22/12 22/14 26/25 29/3 29/11 30/6 32/13 33/4 33/6 34/18 36/24 42/2 43/20 54/11 56/16
**Moreover [3]** 12/1 15/10 28/11
**morning [12]** 3/7 3/10 3/12 3/14 3/16 3/18 3/19 3/20 8/22 48/25 51/12 52/22
**most [2]** 4/15 5/5
**motion [3]** 64/3 64/11 65/16
**motivated [1]** 21/15 22/24 34/12
**motive [3]** 24/2 25/1 26/4
**move [2]** 28/7 41/8
**movement [1]** 35/19
**Mr [7]** 3/11 6/10 49/11 49/13 55/14 56/25 67/12
**Mr. [32]** 4/15 5/20 6/2 6/6 24/21 24/23 24/25 25/3 25/8 25/15 25/16 25/25 26/2 26/4 26/9 26/14 26/14 27/11 48/19 48/20 49/12 55/8 56/23 57/3 57/13 66/10 66/18 67/3 67/7 67/10 68/10 70/5
**Mr. Brennwald [2]** 66/10 67/10
**Mr. Darnel [11]** 24/21 25/3 25/8 25/15 25/16 25/25 26/9 26/14 26/14 27/11 49/12
**Mr. Darnel's [4]** 24/23 24/25 26/2 26/4
**Mr. Davis [13]** 5/20 6/2 6/6 48/19 48/20 55/8 56/23 57/3 66/18 67/3 67/7 68/10 70/5
**Mr. Machado [2]** 4/15 57/13
**Ms [30]** 3/19 7/25 15/21 15/23 16/3 16/11 16/17 23/23 23/25 24/2 24/8 24/13 24/13 24/21 24/23 25/1 25/3 25/9 25/15 25/16 27/11 49/16 55/17 57/12 57/17 66/9 66/19 68/12 71/13 71/15
**Ms Bell [24]** 7/25 15/21 15/23 16/3 16/11 16/17 23/23 24/8 24/13 24/13 24/21 25/3 25/9 25/15 25/16 27/11 49/16 55/17 57/12 57/17 66/9 66/19 71/13 71/15
**Ms Bell's [4]** 23/25 24/2 24/23 25/1
**Ms. [15]** 3/15 7/6 15/25 22/7 22/8 26/19 26/21 27/1 27/11 49/14 53/11

**53/15 57/18 63/9 68/11
**Ms. Bell [1]** 15/25
**Ms. Davis [1]** 22/7
**Ms. Davis's [1]** 22/8
**Ms. Holler [1]** 27/1
**Ms. Marshall [1]** 3/15 27/11 49/14 68/11
**Ms. Patterson [5]** 7/6 53/11 53/15 57/18 63/9
**Ms. Shampy [2]** 26/19 26/21
**much [6]** 18/24 22/3 23/2 51/8 51/17 68/5
**multiple [2]** 28/9 28/10
**must [34]** 13/25 14/6 15/19 16/2 17/15 17/16 17/24 18/1 19/25 24/6 25/7 26/7 27/12 27/15 27/18 27/25 28/2 29/1 30/5 30/20 31/13 32/3 33/21 34/22 37/11 37/22 42/20 42/22 42/23 45/3 47/12 50/3 63/24 64/25
**mutual [1]** 41/19
**my [18]** 3/24 6/20 7/2 10/4 10/16 10/23 11/5 13/4 44/12 48/25 50/25 53/15 54/16 55/6 55/11 67/25 69/13 69/23

**N**

**name [1]** 50/17
**names [2]** 32/25 33/2
**national [1]** 11/18
**natural [2]** 40/1 40/18
**nature [4]** 27/23 28/1 31/23 56/9
**near [2]** 41/7 55/15
**nearby [2]** 54/17 54/18
**necessarily [3]** 4/13 31/1 34/2
**necessary [7]** 17/13 31/17 40/1 40/3 40/25 41/24 71/19
**need [34]** 7/12 7/13 8/19 9/15 9/15 32/1 32/18 34/4 34/9 35/11 35/12 36/10 38/21 41/3 45/17 48/13 49/3 49/17 50/19 51/5 51/14 51/17 52/2 52/5 53/25 54/4 54/5 55/24 56/3 56/10 56/13 57/20 69/14 69/22
**needed [1]** 57/25
**needs [5]** 8/3 8/25 57/13 69/12 69/15
**neutral [1]** 12/3
**never [7]** 9/24 16/24 42/4 42/8 42/12 42/17 58/6
**nevertheless [1]** 37/8
**new [4]** 10/7 24/1 68/7 68/13
**newspaper [1]** 47/8
**next [3]** 51/20 54/20 63/23

**nits [1]** 3/24
**no [32]** 1/4 4/21 4/22 7/17 9/5 11/14 14/10 16/1 18/17 23/11 27/2 32/16 32/22 36/4 40/11 41/13 42/2 46/23 50/23 51/14 51/16 52/24 52/25 53/4 56/20 56/24 57/1 58/1 64/3 65/6 68/25 69/7
**nobody [1]** 53/22
**noise [1]** 53/20
**non [1]** 4/15
**non-substantive [1]** 4/15
**not [158]**
**note [13]** 5/1 6/2 41/25 42/17 44/19 46/8 56/3 56/5 56/8 56/16 56/18 65/3 71/14
**notebook [1]** 50/16
**notebooks [1]** 53/12
**noted [1]** 5/10
**notes [9]** 51/15 52/3 52/3 52/6 52/7 54/9 54/11 55/23 56/2
**nothing [11]** 44/23 44/25 45/1 49/10 49/12 49/14 49/19 49/20 49/24 50/9 65/8
**November [2]** 24/24 67/23
**November 16th [1]** 24/24
**November 27th [1]** 67/23
**now [42]** 7/17 8/23 9/19 10/14 10/22 11/9 13/18 14/16 15/21 16/19 17/9 17/18 18/3 19/6 21/22 22/4 23/3 23/14 24/16 26/17 27/8 34/19 36/15 37/5 38/25 40/9 41/1 41/13 41/23 42/8 42/20 43/6 43/23 44/6 44/21 45/16 45/25 46/18 47/1 48/14 50/12 51/3
**number [28]** 4/20 19/9 46/13 46/13 46/21 46/24 50/17 51/16 53/15 54/1 54/2 54/16 55/7 57/18 58/15 60/24 61/1 61/5 61/9 61/13 61/17 61/21 62/2 62/7 62/11 62/15 62/19 62/24
**number 1 [2]** 46/21 61/1
**number 10 [1]** 62/2
**number 11 [2]** 62/7 62/11
**number 12 [1]** 62/15
**number 14 [1]** 62/19
**number 15 [1]** 62/24
**number 2 [1]** 61/5
**number 4 [1]** 61/9
**number 5 [1]** 61/13

**number 6 [2]** 58/15 61/17
**number 9 [1]** 61/21
**numbers [2]** 50/7 50/8
**NW [4]** 1/17 1/20 2/5 2/10

**O**

**oath [2]** 16/15 22/19
**object [3]** 14/2 31/25 32/1
**objected [1]** 13/23
**objecting [1]** 13/25
**objection [3]** 5/10 14/5 15/15
**objections [6]** 6/4 6/5 14/1 16/7 49/5 49/6
**objectives [2]** 39/3 39/23
**obligation [1]** 22/16
**observe [1]** 20/16
**observed [1]** 20/7
**obstruct [3]** 31/11 35/11 35/13
**obstructed [3]** 26/25 29/19 29/22
**obstructing [1]** 34/21
**obstruction [14]** 4/9 33/24 34/17 34/24 35/7 45/14 45/20 59/4 59/11 59/20 60/1 60/9 60/15 70/22
**obtain [6]** 4/11 4/11 30/17 30/18 34/1 34/1
**obtaining [1]** 35/2
**obviously [9]** 5/3 44/6 49/7 52/22 65/24 67/8 67/15 68/5 71/18
**occasionally [1]** 15/10
**October [21]** 23/20 24/1 24/3 24/19 25/1 25/4 25/22 26/5 26/23 30/22 30/22 41/2 41/3 65/17 65/17 67/4 67/6 67/9 67/16 67/19 68/20
**October 13th [2]** 67/16 67/19
**October 14th [1]** 24/1
**October 22nd [10]** 23/20 24/3 24/19 25/1 25/4 25/22 26/5 26/23 30/22 41/3
**October 24th [1]** 68/20
**October 30th [2]** 67/4 67/6
**October 30th is [1]** 67/9
**October 7th [2]** 30/22 41/2
**off [7]** 7/14 52/4 54/8 57/4 57/6 57/14 58/21
**offense [35]** 17/3 17/4 17/6 17/8 28/11 28/17 29/9 36/19 36/25 37/2 37/4 37/8 37/12 37/15 37/17 37/18 37/20 37/24 39/10 39/18 39/21 39/25 40/6 41/4

**O**

**offense... [11]** 41/6 45/9 45/13 58/24 59/3 59/15 59/20 60/5 60/8 64/16 64/16
**offenses [4]** 10/9 21/25 28/8 41/1
**offered [8]** 13/24 24/2 24/4 24/25 25/2 25/5 26/4 26/6
**office [7]** 1/15 1/16 2/9 35/22 51/14 55/6 55/11
**officer [5]** 23/13 23/22 24/20 25/24 42/10
**officer's [2]** 23/6 23/8
**officers [1]** 23/5
**offices [1]** 54/9
**Official [2]** 2/17 72/9
**often [1]** 43/20
**oh [2]** 8/25 52/4
**okay [21]** 5/16 6/1 7/19 8/14 8/18 32/18 32/19 49/25 51/14 51/21 53/21 55/8 55/13 55/17 55/20 56/11 57/5 57/15 61/23 67/23 70/14
**older [1]** 5/3
**omitted [2]** 19/8 40/14
**once [3]** 47/4 50/22 71/18
**one [62]** 4/22 5/17 6/1 6/12 7/12 9/1 12/18 12/20 15/11 17/7 18/23 22/12 22/13 23/23 25/19 25/24 26/25 27/3 27/22 28/19 28/20 29/3 29/8 30/6 32/24 33/3 33/6 33/13 34/13 34/17 34/23 36/9 36/13 36/24 37/12 37/15 38/17 39/13 39/18 39/20 39/23 40/2 40/8 42/2 42/14 43/12 45/9 46/9 46/10 47/7 48/23 48/24 53/21 54/15 56/5 57/13 63/10 64/11 65/2 65/10 66/1 67/16
**ones [4]** 8/6 10/7 19/20 52/2
**ongoing [1]** 30/13
**only [33]** 11/24 14/14 14/17 15/7 15/16 15/20 16/13 17/13 19/12 19/14 19/19 19/21 24/4 24/13 24/13 25/5 25/15 25/16 26/6 26/14 26/14 26/24 27/6 28/3 31/22 33/19 34/9 35/12 40/4 44/2 44/4 45/4 46/1
**open [6]** 13/2 42/7 42/12 50/1 54/22 54/24
**opening [1]** 16/5
**opinion [11]** 11/24 12/3 12/14 12/24 13/10 15/12 15/14 15/15 15/19 43/9 44/24
**opinions [3]** 11/10 13/13 47/15

**opportunity [5]** 20/16 38/7 38/15 38/21 70/9
**opposition [1]** 65/17
**oppress [6]** 4/2 29/13 29/25 30/7 31/6 31/8 38/20 39/10
**oral [1]** 5/2
**orally [2]** 42/6 49/3
**order [7]** 19/16 39/2 42/21 63/23 67/24 69/10 69/12
**ordered [1]** 52/13
**orderly [1]** 10/16
**ordinarily [1]** 40/10
**organize [1]** 41/18
**orientation [1]** 11/19
**origin [1]** 11/18
**original [2]** 40/4 40/5
**originally [1]** 13/12
**osteoarthritis [1]** 68/16
**other [70]** 3/25 5/4 5/8 9/4 12/7 13/23 15/11 17/5 17/24 18/8 19/7 19/15 20/19 21/3 21/12 22/16 22/22 23/7 23/14 23/23 24/5 24/15 24/22 25/6 25/18 25/19 25/25 26/7 26/16 27/2 28/22 28/23 28/24 30/24 31/19 32/10 32/25 33/8 33/12 33/15 34/13 35/22 39/2 39/5 39/7 39/9 40/14 42/15 42/16 42/22 45/22 46/10 47/14 47/20 48/8 49/6 49/7 50/7 51/10 57/21 63/17 64/1 64/15 66/8 67/15 69/16 70/6 70/23 71/8 71/19
**others [4]** 25/3 44/17 70/13 71/3
**otherwise [3]** 19/13 42/17 56/17
**our [4]** 11/14 11/16 54/11 68/23
**out [23]** 4/19 5/6 9/19 10/25 18/12 18/16 19/8 19/11 19/13 19/22 30/24 33/9 46/7 46/7 48/25 50/16 54/25 64/21 66/23 67/5 67/24 70/23 71/5
**outcome [1]** 20/18
**outset [1]** 43/12
**outside [2]** 48/18 52/7
**over [4]** 18/23 27/4 38/16 41/11
**overcomes [1]** 17/21
**own [4]** 13/20 16/3 21/14 53/4

**P**

**pages [1]** 50/16
**paper [1]** 8/15
**paragraph [1]** 32/20
**paralegal [1]** 3/9
**part [15]** 4/2 7/2 7/12 14/10 28/7 32/5 32/14 36/2 40/4 41/8 48/25

**50/23 51/7 69/25 70/21
**participants [2]** 32/10 32/12
**participate [3]** 38/14 38/20 39/10
**participated [1]** 21/25
**participates [2]** 38/2 38/5
**participating [2]** 31/20 52/18
**participation [2]** 16/18 38/23
**particular [13]** 17/3 17/6 18/24 21/22 32/2 34/7 35/12 35/12 39/12 40/7 44/15 47/9 64/19
**particularly [1]** 56/17 69/1 71/4
**parties [3]** 15/5 46/19 71/19
**partisans [1]** 43/21
**parts [2]** 10/4 16/12
**party [2]** 6/15 14/1
**pass [1]** 4/17
**passage [1]** 35/10
**PATEL [2]** 1/19 3/8
**patient [2]** 34/5 36/7
**patients [9]** 4/9 29/21 30/1 30/8 30/16 31/6 31/15 33/24 34/15
**Patterson [5]** 7/6 53/11 53/15 57/18 63/9
**pay [1]** 9/23
**paying [1]** 52/16
**pencils [1]** 56/3
**pending [1]** 70/3
**Pennsylvania [1]** 1/20
**people [10]** 11/16 20/20 30/25 31/19 32/15 32/21 33/2 42/19 47/15 63/17
**perception [1]** 21/7
**Perfect [2]** 8/14 70/14
**perform [1]** 32/3
**performed [2]** 36/5 36/21
**periods [1]** 52/23
**perjury [1]** 22/18
**permits [1]** 15/22
**permitted [8]** 14/21 15/13 15/16 18/25 21/24 22/10 29/19 30/19
**person [27]** 7/10 18/11 20/13 27/18 29/13 31/20 31/20 31/21 31/22 33/19 35/7 35/12 35/16 37/14 37/20 37/22 37/24 38/9 40/18 42/1 42/9 46/6 48/7 54/15 57/21 64/17 68/13
**person's [4]** 31/11 35/18 36/10 40/11
**personal [5]** 11/9 11/13 11/17 15/19 50/9
**personally [3]** 35/17 36/18 37/7

**persons [3]** 30/6 33/6 33/11
**perspective [1]** 5/9
**ph [1]** 68/18
**phone [7]** 12/17 12/20 50/17 51/16 54/16 55/7 57/18
**physical [11]** 4/8 33/23 34/16 34/23 35/7 45/20 59/11 60/1 60/15 64/17 70/22
**physician's [1]** 35/22
**picked [2]** 50/7 50/8
**place [3]** 11/14 35/16 52/14
**places [1]** 71/8
**Plaintiff [1]** 1/4
**plan [6]** 30/23 31/23 38/9 40/4 40/5 55/17
**planned [1]** 5/23
**play [2]** 14/10 31/22
**plea [7]** 22/4 22/6 22/11 22/15 22/17 22/22 22/25
**please [7]** 3/5 44/1 44/18 44/19 47/17 58/11 58/14
**PM [1]** 71/20
**point [9]** 8/23 51/23 56/1 64/12 65/9 65/11 68/4 68/22 70/1
**points [1]** 4/19
**police [4]** 23/5 23/22 24/20 25/24
**polled [1]** 46/19
**polling [3]** 51/21 60/20 60/23
**portion [4]** 5/21 6/3 19/14 44/15
**portions [4]** 14/8 19/12 19/15 19/19
**position [5]** 9/16 43/14 43/16 64/6 69/24
**possibility [3]** 11/12 17/25 50/21
**possible [4]** 17/21 42/24 50/18 57/4
**possibly [1]** 68/24
**post [1]** 65/16
**power [1]** 35/6
**powerful [2]** 17/15 40/18
**preferences [1]** 11/14
**pregnancy [5]** 26/22 26/23 35/25 35/25 36/5
**prejudice [2]** 11/23 21/16
**prejudiced [1]** 21/14
**prejudices [2]** 11/10 11/13
**prepared [1]** 69/11
**preponderance [1]** 17/14
**presence [3]** 32/9 33/9 48/18
**present [6]** 3/13 3/17 5/22 5/22 6/3 36/19
**presented [7]** 8/5 19/4

**23/21 24/19 25/22 28/3 47/13
**preserving [1]** 49/5
**preside [1]** 41/11
**press [1]** 49/17
**presumed [1]** 16/20
**presumption [1]** 16/20
**prevent [5]** 4/9 4/23 30/16 31/11 33/24
**preventing [1]** 34/5
**pride [1]** 43/12
**principals [2]** 10/5 10/13
**prior [1]** 65/13
**privacy [1]** 19/16
**privilege [1]** 29/14
**pro [3]** 2/14 4/16 15/23
**probability [1]** 21/9
**probably [4]** 53/7 53/19 53/22 55/6
**problem [7]** 7/23 48/25 52/1 57/11 69/3 69/8 69/21
**problems [1]** 52/10
**procedure [1]** 19/17
**proceed [3]** 8/23 15/23 43/20
**proceeding [1]** 32/24
**proceedings [8]** 2/18 8/21 13/2 48/17 50/1 58/8 71/20 72/4
**process [4]** 50/6 58/13 63/4 63/17
**procured [1]** 37/14
**produce [2]** 8/4 17/1
**produced [1]** 2/18
**promote [1]** 41/21
**proof [7]** 16/19 17/15 17/17 17/17 17/21 40/9 41/3
**proper [1]** 13/25
**properly [1]** 14/17
**property [2]** 35/7 64/18
**Propose [1]** 66/24
**proposed [2]** 4/1 14/12
**proposing [1]** 66/25
**propriety [1]** 27/3
**prosecuted [1]** 32/24
**prosecution [1]** 22/18
**protect [1]** 22/17
**protected [1]** 34/10
**prove [11]** 16/25 17/6 17/13 24/2 24/25 26/4 30/4 31/4 33/3 34/22 45/3
**proved [3]** 19/24 40/10 40/24
**proven [5]** 14/21 16/22 17/2 37/1 39/11
**proves [4]** 24/9 25/12 26/12 32/7
**provide [9]** 4/11 4/12 29/17 29/17 29/21 30/18 30/18 34/1 34/1
**provided [8]** 12/5 29/5 35/21 36/3 39/15 39/17 44/21 68/17
**provider [1]** 36/1

**P**

**providers [1]** 36/8
**provides [2]** 35/9 63/24
**providing [3]** 34/17 35/3 44/12
**proving [2]** 17/10 18/22
**provision [1]** 36/12
**public [3]** 11/24 51/12 69/17
**publicity [2]** 47/5 47/18
**punish [1]** 31/10
**punishment [2]** 42/24 43/5
**purported [1]** 14/13
**purpose [17]** 4/7 6/6 6/17 24/4 24/5 25/6 26/6 26/7 26/18 26/24 27/2 27/6 27/7 33/14 33/22 34/10 34/13
**purposes [3]** 23/15 25/5 70/23
**pursuant [2]** 22/6 64/14
**push [3]** 49/17 49/22 67/5
**put [8]** 4/21 4/22 5/15 5/23 6/21 10/25 67/24 69/17
**putting [2]** 5/3 5/14

**Q**

**question [9]** 13/24 14/5 14/6 14/7 14/9 14/12 27/25 42/24 56/7
**questions [10]** 10/17 14/11 15/8 16/7 27/22 44/18 48/9 54/10 56/19 56/24
**quickly [1]** 57/4
**quite [3]** 5/1 10/15 50/14
**quote [11]** 4/2 4/22 29/22 31/8 35/5 35/7 35/15 35/18 35/20 36/23 41/2

**R**

**race [1]** 11/18
**radio [1]** 47/8
**random [1]** 50/6
**rather [2]** 35/12 37/22
**reach [3]** 27/24 41/15 53/9
**reached [7]** 30/6 30/12 42/11 46/8 46/14 53/7 58/18
**reaching [4]** 19/3 28/4 44/4 53/6
**read [15]** 3/23 9/14 19/10 19/20 23/15 23/16 38/3 38/16 38/17 47/11 47/12 47/17 48/24 48/25 70/9
**reading [2]** 13/5 48/25
**ready [4]** 5/16 6/24 8/23 41/8
**real [1]** 17/25

**realistic [3]** 38/7 38/15 38/20
**really [1]** 49/22
**realm [1]** 71/6
**reason [6]** 20/15 27/14 36/11 36/13 55/24 69/17
**reasonable [31]** 4/7 14/22 16/23 17/2 17/7 17/9 17/10 17/16 17/17 18/9 19/25 22/14 24/10 25/12 26/12 30/5 31/4 32/7 33/22 34/23 35/16 37/1 37/12 37/23 39/12 39/17 39/18 40/24 41/6 45/3 53/10
**reasonableness [1]** 21/8
**reasonably [2]** 40/1 41/7
**reasons [2]** 19/14 27/14
**REBECCA [2]** 1/15 3/7
**recall [1]** 20/25
**recalled [1]** 20/7
**receipt [1]** 36/12
**receive [1]** 14/25 21/21 27/1
**received [2]** 40/15 40/21
**receiving [1]** 15/1
**recess [1]** 58/2
**reckless [1]** 71/5
**recollection [2]** 13/18 20/24
**recommend [1]** 64/3
**recommendation [1]** 64/6
**recommends [1]** 54/19
**reconsider [1]** 6/13
**record [9]** 3/6 5/10 5/12 29/6 64/9 64/13 67/25 69/17 71/14
**recorded [1]** 2/18
**recording [1]** 45/4
**redacted [2]** 6/3 19/10
**redactions [1]** 19/7
**refer [3]** 11/1 44/14 44/15
**reference [1]** 13/19
**referral [1]** 35/23
**referred [1]** 24/12
**refuse [1]** 10/21
**regarding [3]** 26/22 41/13 41/20
**regardless [2]** 11/17 56/21
**regards [1]** 5/21
**regular [1]** 50/20
**reiterate [1]** 63/19
**rejoin [1]** 50/19
**related [1]** 26/18
**relating [2]** 35/24 35/25
**relevant [1]** 40/23
**religion [1]** 11/18
**rely [1]** 68/1
**remained [1]** 50/12
**remains [1]** 16/21

**remarks [1]** 10/11
**remember [3]** 9/15 43/20 60/22
**remind [1]** 16/11 25/15 27/2 27/5 27/17 47/6 47/24
**remove [1]** 4/22
**removed [3]** 4/20 4/21 19/14
**rendered [1]** 44/20
**rendering [2]** 35/8 35/10
**repeat [1]** 13/6
**replacement [2]** 68/15 69/14
**replaces [2]** 44/25 45/1
**reply [2]** 65/17 67/20
**Reporter [2]** 2/15 2/17 72/9
**reports [2]** 47/7 47/12
**represent [5]** 14/2 15/21 15/22 15/24 42/20
**reproductive [19]** 4/12 29/17 29/18 30/2 30/18 34/2 34/7 34/18 34/21 35/3 35/9 35/20 35/21 35/24 36/1 36/3 36/6 36/8 36/12
**request [4]** 46/21 60/20 68/22 69/23
**requested [1]** 8/13
**requesting [2]** 5/19 64/8
**require [3]** 16/25 17/20 19/2
**required [2]** 40/17 51/4 71/3
**requirement [3]** 32/17 32/23 32/25
**research [5]** 5/1 47/5 48/7 48/12 51/1
**respect [13]** 28/21 28/23 37/15 41/19 45/9 45/13 58/24 59/3 59/15 59/19 59/19 60/5 60/8
**respectful [1]** 58/12
**respond [2]** 67/1 67/14
**responded [1]** 67/15
**responding [1]** 67/16
**response [1]** 56/12
**responsibilities [2]** 10/15 51/11
**responsibility [7]** 11/5 12/16 13/16 14/2 24/9 25/11 26/11
**responsible [6]** 8/6 24/15 25/17 26/15 54/3 54/4 53/6
**rest [2]** 8/16 50/11
**restrict [1]** 35/18
**restroom [2]** 52/15 57/8
**rests [1]** 43/3
**result [1]** 21/6
**retire [2]** 47/23 51/23
**retiring [1]** 43/18
**return [5]** 28/18 29/3

**41/9 42/21 44/19
**returned [1]** 64/24
**reveal [1]** 42/9
**review [1]** 9/16
**reviewing [1]** 43/18
**revisit [1]** 70/12
**right [42]** 3/2 4/3 4/11 4/19 6/24 8/23 9/3 9/12 15/25 27/8 27/10 27/12 28/7 29/14 29/21 30/17 31/11 32/20 34/1 34/10 34/15 41/8 49/1 50/3 53/10 56/22 57/15 58/5 58/15 59/14 59/23 60/18 60/22 61/21 62/2 62/19 63/3 64/9 67/24 68/15 71/16 71/19
**rights [10]** 1/20 4/17 4/24 29/8 29/10 30/4 45/10 58/25 59/15 60/5
**rise [1]** 58/14
**role [2]** 16/17 31/22
**roles [1]** 36/8
**room [7]** 41/10 43/9 43/18 43/24 47/23 52/13 53/22
**rooms [1]** 54/23
**ROSS [2]** 1/15 3/7
**roughly [2]** 10/4 53/1
**RPR [2]** 2/16 72/9
**rule [8]** 10/17 12/2 14/7 62/4 64/11 65/10 65/12 71/18
**Rule 29 [4]** 64/2 64/11 65/10 65/12
**Rule 29s [1]** 71/18
**ruled [1]** 68/5 70/11 71/18
**rules [2]** 19/17 41/13
**ruling [6]** 5/2 5/19 6/12 6/20 65/2 70/12
**Rumola [1]** 23/22
**rush [1]** 7/3

**S**

**said [14]** 6/6 6/7 9/17 9/24 12/11 12/23 13/8 32/9 33/13 46/3 52/9 54/7 60/22 71/7
**same [8]** 22/16 23/8 23/10 29/21 52/19 65/2 65/24 66/5
**SANJAY [2]** 1/19 3/8
**sat [1]** 30/24
**satisfy [1]** 36/9
**saw [4]** 18/12 18/14 18/17 18/17
**say [13]** 9/9 10/6 12/25 13/1 45/9 46/21 51/16 53/6 56/6 57/16 58/6 65/1 71/18
**saying [2]** 66/4 67/3
**says [4]** 4/2 18/21 56/3 56/8
**scene [1]** 32/9
**schedule [5]** 65/10 65/12 66/7 67/24 71/17
**scheduled [4]** 56/18

**68/15 68/19 68/20
**schedules [1]** 65/5
**screen [2]** 44/8 44/9
**se [3]** 2/14 4/16 15/23
**seat [19]** 46/13 46/21 46/24 50/7 50/8 58/15 60/24 61/1 61/5 61/9 61/13 61/17 61/21 62/2 62/7 62/11 62/15 62/19 62/24
**seats [3]** 50/10 50/10 50/13
**second [9]** 9/1 10/8 12/18 12/21 31/13 35/15 48/16 66/8
**Section [1]** 1/20
**secured [1]** 29/14
**security [3]** 42/1 42/10 52/7
**see [3]** 44/11 65/23 71/8
**seek [4]** 4/11 4/11 30/17 30/18 34/1 34/1
**seeking [1]** 29/21
**seen [4]** 18/13 18/19 64/10 64/12
**select [3]** 41/10 41/14 51/9
**selected [1]** 50/10
**selecting [2]** 27/23 41/16
**selection [3]** 41/9 50/5 63/4
**self [1]** 21/15
**self-interest [1]** 21/15
**send [11]** 7/13 41/25 44/19 46/8 48/10 52/2 52/3 52/6 56/2 56/8 56/11
**sending [1]** 43/23
**sense [2]** 31/9 43/12
**sent [2]** 3/21 58/5
**sentence [2]** 38/17 43/2
**sentencing [5]** 22/9 68/25 70/2 70/3 70/23
**separate [2]** 28/11 28/18
**separated [2]** 70/23 71/1
**separately [3]** 17/10 28/16 66/3
**September [5]** 1/5 65/16 65/22 66/21 72/8
**September 29th [1]** 65/22
**September 29th date [1]** 66/21
**seriously [1]** 63/7
**served [1]** 17/12
**service [2]** 51/8 51/11
**services [23]** 4/12 4/13 12/4 15/24 27/1 29/18 29/21 30/19 34/2 34/3 34/7 34/18 35/4 35/9 35/21 35/21 35/23 35/24 36/1 36/3 36/8 36/13 66/10

**S**

**services' [1]** 36/7
**set [5]** 65/9 65/13 65/14 66/22 71/19
**sets [1]** 5/6
**seven [2]** 42/14 50/13
**several [3]** 6/4 23/5 38/16
**sex [1]** 11/19
**sexual [1]** 11/19
**Shampy [2]** 26/19 26/21
**she [31]** 4/18 4/18 4/19 7/25 8/1 8/3 8/25 9/2 9/3 9/3 15/15 15/21 16/5 16/6 16/8 16/9 16/22 20/17 21/25 22/18 26/22 28/13 28/15 32/6 32/8 39/9 40/19 57/13 63/9 68/14 68/14
**she's [5]** 16/1 16/6 16/6 16/8 16/12
**shifts [1]** 16/24
**shortly [1]** 54/9
**should [61]** 3/23 4/17 8/1 8/2 9/2 9/19 10/3 10/20 10/24 11/11 11/21 11/22 12/2 12/13 12/14 13/9 13/11 13/12 13/14 13/21 14/5 14/8 14/9 14/9 14/24 19/3 19/18 20/3 21/19 22/2 22/22 22/18 23/1 23/1 23/6 23/8 23/10 23/11 28/16 28/17 28/21 28/23 40/22 41/10 41/14 42/3 42/12 42/17 43/1 43/3 43/4 44/23 44/25 47/9 51/4 52/14 52/16 52/18 66/25 67/8 71/11
**shouldn't [1]** 19/22
**show [11]** 25/2 29/6 30/5 30/20 31/1 31/13 32/11 33/21 34/4 37/11 37/22
**showed [1]** 4/6
**shown [1]** 21/13
**shows [1]** 15/17
**Shrewsbury [2]** 23/22 24/1
**side [3]** 13/23 15/11 21/14
**sidebar [1]** 48/17
**sign [3]** 7/14 8/3 57/14
**signed [4]** 42/1 57/4 57/6 69/12
**signing [2]** 8/2 8/2
**signs [1]** 46/7
**Silver [1]** 26/3
**similar [2]** 25/20 31/1
**Similarly [1]** 15/8
**simply [2]** 14/11 58/11
**since [7]** 3/22 4/22 50/11 50/20 53/15 57/13 63/16
**sit [3]** 9/14 60/18 63/22

**sitting [1]** 52/6
**six [2]** 42/14 42/14
**sleep [1]** 18/17
**small [1]** 51/5
**snow [4]** 18/12 18/14 18/17 18/17
**snowed [1]** 18/19
**so [102]**
**social [3]** 47/8 47/10 48/3
**sole [5]** 11/4 12/15 13/15 20/1 36/11
**solely [3]** 11/21 43/4 47/13
**some [32]** 3/25 10/5 10/5 10/7 10/11 17/11 19/7 19/11 19/13 19/17 26/17 26/18 30/12 32/15 32/18 32/18 32/21 34/13 38/16 44/6 44/17 47/6 47/7 54/11 63/17 65/23 65/24 65/24 67/15 68/10 68/13 71/8
**somebody [5]** 9/23 52/6 52/15 56/15 57/21
**somehow [1]** 39/3
**someone [3]** 29/10 29/12 37/13
**someone's [2]** 40/9 40/12
**someplace [1]** 54/4
**something [11]** 5/23 5/25 9/9 44/9 50/20 56/1 56/3 56/9 56/13 66/3 69/15
**sometimes [3]** 13/23 19/12 55/25
**somewhat [1]** 25/20
**somewhere [1]** 53/20
**soon [1]** 47/21
**sorry [1]** 12/19
**sort [2]** 9/25 47/2
**sought [1]** 26/22
**sounds [1]** 9/25
**source [2]** 47/18 48/12
**speak [4]** 5/14 16/4 29/5 41/20
**speaks [1]** 16/11
**special [6]** 45/16 45/19 46/1 59/8 59/23 60/12
**specific [10]** 21/22 23/17 23/20 24/18 25/21 28/8 35/13 37/12 41/13 45/17
**specifically [2]** 29/12 70/19
**speculate [3]** 14/6 19/22 27/14
**spend [1]** 70/7
**spoken [3]** 25/14 61/6 66/18
**spokesperson [1]** 41/12
**Spring [1]** 26/3
**stack [1]** 9/6
**Stacy [4]** 2/16 72/3 72/8 72/9

**staff [1]** 36/2
**stage [3]** 32/6 36/5 70/12
**stand [5]** 16/13 16/15 20/12 43/10 46/12
**standard [1]** 52/25
**standing [1]** 52/15
**stands [1]** 20/18
**start [7]** 10/13 11/2 32/20 52/5 54/10 63/19 64/5
**state [9]** 6/16 12/2 15/11 15/13 15/14 29/19 30/19 40/9 40/25
**stated [15]** 10/22 46/22 60/25 61/2 61/10 61/14 61/17 61/19 61/24 62/3 62/8 62/12 62/16 62/20 62/25
**statement [5]** 6/14 16/5 22/18 33/14 40/13
**statements [6]** 15/3 15/3 15/6 33/7 33/17 33/20
**STATES [12]** 1/1 1/3 1/11 1/15 1/16 3/3 3/8 29/15 29/16 29/20 31/12 34/11
**status [2]** 36/6 36/10
**statute [4]** 5/3 69/3 69/7 71/4
**statutes [1]** 5/5
**statutory [1]** 34/15
**stay [6]** 54/19 54/21 54/22 55/5 55/10 55/20
**stenography [1]** 2/18
**step [4]** 63/24 69/9 69/25 70/1
**stepped [1]** 64/25
**stepping [1]** 68/1
**still [4]** 38/7 49/20 50/25 63/16
**stop [2]** 34/17 53/10
**Street [2]** 1/17 2/10
**stretching [1]** 52/15
**stricken [3]** 13/22 14/8 14/8
**strict [1]** 52/24
**strong [1]** 43/9
**stuff [1]** 3/25
**submit [3]** 6/17 69/13 71/2
**submitted [1]** 6/17
**substantial [1]** 64/2
**substantive [2]** 3/25 4/15
**succeeded [1]** 34/5
**such [21]** 9/25 11/17 12/14 13/10 14/1 14/22 14/24 15/20 18/6 19/13 21/16 21/20 22/1 22/11 22/21 29/21 33/19 35/10 37/3 47/9 52/25
**sufficient [4]** 38/12 38/18 38/22 41/5
**suggest [4]** 44/24 65/3 65/10 67/3
**suggested [1]** 66/1

**Suite [2]** 2/5 2/10
**sum [1]** 21/19
**summon [1]** 50/19
**Superior [1]** 54/5
**supported [1]** 21/12
**supposed [1]** 53/5
**Supreme [1]** 5/7
**sure [11]** 8/4 8/12 10/14 46/20 46/25 47/4 48/22 49/3 57/6 60/23 71/11
**Surgi [12]** 4/10 30/2 30/9 30/17 31/7 31/16 33/25 34/6 34/14 35/1 35/3 36/7
**Surgi-Clinic [10]** 4/10 30/2 30/9 30/17 31/7 31/16 33/25 34/6 35/1 35/3
**Surgi-Clinic's [2]** 34/14 36/7
**surgical [1]** 35/23
**surprised [2]** 46/18 51/23
**surrounding [2]** 20/22 40/12
**sustained [1]** 14/4
**sworn [3]** 12/6 12/9 14/18
**sympathy [1]** 11/23
**system [2]** 11/16 35/24

**T**

**table [1]** 3/9
**take [13]** 8/6 9/22 12/11 13/8 44/13 51/25 52/14 52/22 53/11 56/16 58/21 69/1 71/5
**taken [3]** 44/23 58/2 63/6
**takes [2]** 51/10 55/11
**taking [1]** 52/12
**talk [10]** 28/7 30/25 48/16 52/17 56/13 57/12 57/21 57/25 63/14 66/8
**talking [2]** 42/4 52/17
**task [1]** 41/15
**tear [1]** 50/15
**technical [2]** 31/9 66/13
**television [1]** 47/8
**tell [4]** 21/18 22/16 42/12 51/2
**telling [1]** 7/24 20/15 53/2
**tempted [1]** 47/10
**term [5]** 35/5 35/7 35/15 35/17 64/3
**terminate [1]** 26/23
**termination [2]** 33/18 35/25
**terms [20]** 4/17 6/21 15/23 16/4 16/17 25/17 31/8 42/18 47/4 51/19 51/21 52/12 52/19 56/2 63/4 63/17 64/25 67/25 69/6 70/1

**testified [6]** 16/14 18/13 20/1 20/6 20/8 20/17
**testifies [1]** 21/25
**testify [6]** 4/18 22/7 22/24 27/8 27/11 27/16
**testifying [2]** 20/12 20/19
**testimony [33]** 14/15 14/19 15/13 18/7 18/13 18/18 19/25 21/22 21/23 21/9 21/16 21/19 21/23 21/23 22/1 22/3 22/11 22/13 22/25 23/2 23/3 23/4 23/6 23/11 23/12 23/14 23/22 24/20 25/23 26/17 26/18 26/21 26/24
**text [1]** 48/3
**than [11]** 5/4 9/25 10/23 12/7 17/14 17/16 19/2 23/23 24/22 25/25 56/16
**thank [15]** 6/9 6/23 9/11 13/1 49/15 49/25 51/8 51/17 60/18 63/3 63/7 63/11 66/14 67/2 70/4
**thanks [2]** 63/8 63/21
**that [290]**
**that's [23]** 8/6 8/18 10/15 10/25 19/21 19/22 41/14 46/19 53/24 54/11 55/4 56/11 56/14 56/18 57/10 64/15 65/21 66/12 67/23 69/18 69/21 70/22 71/1
**their [11]** 4/10 16/25 30/17 33/25 40/15 43/7 47/15 58/12 64/24 67/17 70/21
**them [50]** 7/6 7/13 7/14 7/14 7/20 8/7 8/10 8/12 8/15 9/6 10/6 10/7 10/21 12/2 14/1 17/11 23/18 27/13 33/4 33/13 34/17 36/11 36/14 36/22 43/25 44/13 46/2 46/7 47/1 47/17 48/10 52/10 53/12 54/24 55/25 56/4 57/4 57/6 57/6 57/7 57/22 63/14 63/15 63/18 63/19 65/23 66/2 66/5 68/1 68/10
**themes [1]** 66/2
**themself [1]** 35/17
**then [17]** 8/15 18/17 39/7 45/8 45/17 45/19 45/23 46/1 46/15 47/22 48/10 55/6 55/21 56/14 66/2 66/25 70/22
**there [41]** 5/6 5/24 9/14 17/18 18/3 19/14 21/1 21/22 23/13 23/14 24/16 25/19 26/17 31/4 32/24 41/13 44/9 47/4

**T**

**there... [23]** 47/7 47/9 51/4 52/6 52/14 52/23 53/20 53/23 54/13 54/25 55/1 57/23 59/23 60/12 63/4 64/10 65/8 65/24 67/8 69/15 69/16 70/20 71/12

**there's [29]** 5/7 5/12 10/7 13/18 17/25 32/16 32/22 36/4 38/16 40/10 43/16 44/9 46/3 46/20 49/2 50/8 51/3 52/2 52/24 52/25 53/4 56/5 64/2 65/6 65/8 68/5 69/17 70/21 70/22

**therefore [3]** 28/16 39/8 58/12

**these [18]** 8/7 10/24 11/1 11/11 16/11 19/7 19/18 19/19 23/15 25/5 28/5 38/16 39/16 44/6 44/14 47/14 50/13 65/23

**they [29]** 8/5 9/24 14/2 14/3 14/9 15/7 28/5 33/12 36/17 36/20 50/7 50/8 50/13 51/14 51/22 54/4 54/10 54/10 54/10 56/2 57/7 58/6 58/6 63/14 66/1 67/1 70/8 70/20 71/8

**they're [5]** 15/4 46/6 49/4 54/8 56/7

**they've [3]** 5/13 58/5 65/4

**thing [6]** 6/1 6/12 41/9 50/3 53/21 66/5

**things [21]** 3/22 3/25 9/15 11/11 17/19 19/7 31/1 37/21 38/17 42/18 48/23 49/2 49/2 51/24 52/19 56/4 64/1 64/15 65/10 69/16 70/23

**think [29]** 4/17 5/9 5/16 6/20 6/24 7/2 8/3 9/23 12/12 13/9 13/13 15/18 17/25 28/6 40/23 48/13 52/13 53/17 55/2 55/21 56/14 56/16 57/3 64/1 65/14 67/8 69/3 69/17 71/5

**thinking [1]** 40/11

**third [4]** 4/6 33/21 35/20 36/10

**thirds [1]** 57/2

**this [117]**

**those [8]** 23/24 24/22 25/25 31/5 56/4 58/11 59/7 68/9

**though [1]** 39/9

**threaten [6]** 4/2 29/13 29/25 30/7 31/6 31/8

**threatened [1]** 64/17

**threats [1]** 34/16

**three [11]** 10/4 30/5 30/14 35/1 37/16 39/25 41/8 50/10 50/13 50/15

54/14

**through [11]** 3/23 7/4 23/21 24/19 25/23 46/15 47/21 51/9 57/3 57/6 58/23

**throughout [4]** 16/21 16/24 27/9 47/2

**tight [1]** 66/22

**time [25]** 5/1 5/24 6/20 8/12 8/13 8/23 12/5 18/14 20/23 30/11 30/12 30/14 35/12 38/9 40/6 51/9 52/24 53/10 53/12 54/12 63/8 64/8 68/25 70/7 70/8

**timed [1]** 7/4

**timeliness [1]** 51/12

**timely [1]** 63/5

**times [1]** 38/16

**tired [1]** 47/3

**today [1]** 6/12

**together [2]** 30/25 32/24

**told [7]** 7/10 7/25 17/12 27/9 50/5 51/21 57/12

**Tomwell [1]** 68/18

**tone [1]** 9/25

**too [2]** 67/5 71/3

**took [3]** 36/11 36/13 51/9

**total [1]** 68/15

**totally [1]** 5/4

**touch [1]** 56/6

**toward [1]** 20/19

**track [3]** 52/23 53/3 56/4

**transcript [2]** 1/10 2/18

**transcription [2]** 2/18 72/4

**transcripts [1]** 67/9

**treat [1]** 68/15

**treatment [1]** 11/16

**trial [30]** 1/10 4/25 6/3 10/16 10/16 11/6 12/12 14/4 14/18 16/4 16/9 16/12 16/18 16/21 16/24 19/9 21/14 23/16 24/13 25/16 26/14 26/20 28/13 32/16 32/22 40/21 49/6 64/9 65/1 65/16

**tried [3]** 5/22 28/15 32/24

**true [5]** 14/13 14/13 17/13 17/14 21/10

**truly [1]** 46/20

**truth [3]** 20/15 21/18 22/16

**truthful [1]** 20/13

**truthfully [2]** 20/6 22/7

**try [4]** 7/3 9/24 13/12 42/3

**trying [1]** 57/4

**tune [1]** 9/19

**turn [1]** 22/11

**two [38]** 9/13 9/17 18/4 24/21 28/7 30/6 30/10 33/5 34/19 34/20 34/24

36/17 36/25 37/6 37/11 37/13 37/13 37/16 37/17 37/18 37/20 37/25 39/14 39/19 39/21 39/21 40/1 40/7 44/12 45/13 45/17 45/19 45/23 46/1 46/5 57/2 67/17 67/21

**two-thirds [1]** 57/2

**types [2]** 18/4 22/22

**U**

**U.S.C [2]** 63/23 64/14

**ultimately [1]** 45/5

**unanimous [11]** 42/11 42/23 45/12 46/8 46/14 46/16 46/20 46/25 53/6 58/18 60/23

**uncalled [1]** 4/21

**under [7]** 16/15 20/24 22/16 22/18 39/8 42/8 59/7

**underlying [3]** 38/12 38/13 38/19

**understand [6]** 6/5 6/11 10/14 15/5 58/10 70/4

**understanding [7]** 15/8 30/7 30/11 30/13 30/15 31/5 31/15

**understands [1]** 31/22

**understood [1]** 16/17

**unintentional [3]** 12/25 13/11 13/14

**unintentionally [1]** 37/21

**UNITED [12]** 1/1 1/3 1/11 1/15 1/16 3/3 3/8 29/15 29/16 29/20 31/12 34/11

**unknowingly [2]** 32/12 37/21

**unlawful [8]** 24/8 24/10 25/9 25/12 26/10 26/12 31/23 31/25

**unlawfully [1]** 29/19

**unless [2]** 16/22 64/1

**Unlike [1]** 54/4

**unlikely [1]** 50/18

**unquote [8]** 29/23 31/9 35/6 35/8 35/16 35/18 35/21 36/23

**unreasonableness [1]** 21/8

**unreasonably [1]** 35/10

**unredacted [1]** 5/21

**until [9]** 16/22 42/10 50/22 53/9 54/22 54/22 55/5 57/5 57/10

**up [21]** 4/25 10/14 18/18 23/20 24/3 24/18 25/1 25/3 25/21 26/5 40/20 41/14 41/20 48/5 49/9 56/1 56/15 66/4 66/16 68/23 71/12

**upfront [1]** 9/12

**upon [5]** 12/7 12/9 35/6

43/8 63/25

**us [8]** 5/5 28/5 46/8 46/9 52/10 53/1 53/2 68/8

**use [15]** 4/8 15/24 21/24 23/8 23/10 23/17 33/23 34/16 44/22 48/24 50/25 53/12 64/17 64/17 67/9

**used [5]** 31/9 34/23 64/16 70/25 71/1

**useful [3]** 43/8 43/17 43/20

**using [2]** 64/20 64/22

**usually [1]** 48/24

**V**

**variance [1]** 68/25

**variety [2]** 19/14 31/10

**various [2]** 15/1 16/4

**venture [2]** 38/2 38/5

**verdict [66]** 11/15 12/7 12/9 12/15 13/15 19/3 27/25 28/1 28/4 28/21 28/23 29/6 29/6 41/16 42/11 42/20 42/21 42/22 42/22 43/3 43/11 44/4 44/20 44/21 44/24 45/5 45/5 45/7 45/12 45/24 46/3 46/8 46/9 46/14 46/16 46/16 46/20 46/22 50/23 51/3 53/6 53/7 53/9 55/25 58/6 58/10 58/12 58/19 60/25 61/2 61/6 61/10 61/18 61/24 62/3 62/8 62/12 62/16 62/20 62/25 63/5 64/24 70/21

**verdicts [4]** 28/18 29/4 44/1 68/6

**version [1]** 3/22

**versus [1]** 3/4

**very [7]** 3/21 17/19 51/8 51/17 63/5 63/5 66/13

**via [1]** 48/7

**videos [2]** 8/13 44/11

**view [1]** 12/7

**views [1]** 41/20

**violate [1]** 34/10

**violated [1]** 32/2

**violation [2]** 12/6 12/8

**violence [5]** 35/6 64/1 64/14 69/5 71/6

**Virginia [1]** 24/25

**voice [1]** 43/9

**voicemail [2]** 54/1 57/20

**voluntarily [3]** 30/10 31/14 31/23

**vote [2]** 42/15 43/18

**voting [2]** 42/10 42/19

**vs [1]** 1/5

**W**

**wait [2]** 9/7 71/17

**want [30]** 16/11 44/14 46/18 47/6 47/24 48/11 48/22 49/8 51/8 51/24 52/23 54/1 54/25 55/4 57/2 58/12 63/3 65/5 65/9 65/10 65/22 66/6 66/8 66/9 67/1 67/5 67/14 67/19 68/1 68/12 69/2

**wanted [5]** 16/10 63/14 66/19 67/25 70/24

**wants [1]** 67/5

**was [57]** 4/8 4/21 5/2 5/24 6/6 6/7 12/14 12/24 13/11 13/14 13/25 18/12 18/14 18/20 20/25 23/14 24/16 24/16 25/19 26/17 27/23 30/12 30/13 31/4 33/6 33/23 34/10 34/14 35/2 35/3 36/8 36/13 36/18 37/13 37/18 38/24 39/19 39/21 40/1 40/3 40/4 40/7 40/7 41/6 48/25 50/5 57/8 58/2 59/18 59/23 63/4 63/25 68/7 68/17 70/17 70/22 70/25

**Washington [16]** 1/17 1/21 2/6 2/11 4/10 30/1 30/8 30/17 31/7 31/16 33/25 34/6 34/14 35/1 35/3 36/7

**wasn't [2]** 6/15 13/13

**watch [3]** 15/2 47/11 47/12

**watched [1]** 44/10

**water [2]** 32/18 32/19

**way [13]** 27/18 32/12 40/11 43/2 43/20 44/7 48/8 48/9 57/3 57/16 57/17 69/6 69/6

**we [96]**

**We'd [1]** 66/22

**we'll [20]** 9/6 9/17 46/15 51/10 50/23 51/2 51/5 51/25 54/17 55/5 55/6 55/7 55/13 56/11 56/14 56/20 69/13 71/8 71/17 71/18

**we're [11]** 3/8 5/16 6/24 8/15 8/23 11/10 41/8 52/24 55/2 70/2 70/2

**we've [4]** 9/6 10/6 19/10 71/16

**weeks [2]** 67/17 67/21

**weight [8]** 11/6 14/24 18/24 19/1 21/20 22/3 23/2 23/12

**well [9]** 7/19 26/20 28/19 58/6 67/3 67/21 68/3 68/14 70/24

**went [3]** 9/13 18/17 59/7

**were [26]** 6/8 8/16 8/21 9/24 13/2 14/19 17/12 19/9 19/12 19/19 23/15 27/22 27/23 28/15 31/5

# W

were... [11] 31/19 34/12 37/21 41/2 44/1 44/2 48/17 50/1 58/8 60/12 70/20
what [48] 4/17 4/18 5/19 6/6 6/7 6/7 6/8 8/9 8/18 8/25 9/21 9/22 10/23 10/24 11/3 11/5 11/6 14/6 15/16 16/8 16/9 18/4 18/13 18/18 29/22 40/11 40/20 44/24 45/11 46/11 46/16 46/21 48/5 52/21 53/25 56/2 60/22 64/6 64/12 64/23 65/22 66/24 67/3 68/1 69/20 70/16 71/8 71/17
what's [2] 9/21 54/18
whatever [8] 3/25 5/12 19/22 47/10 47/18 48/5 55/4 67/5
when [28] 8/24 12/23 13/23 14/20 16/11 18/6 27/5 27/22 33/11 38/2 38/5 38/7 41/9 43/12 44/19 44/22 46/7 52/14 53/2 53/4 54/1 54/2 54/11 55/25 67/1 67/14 67/19 68/24
where [15] 9/3 11/14 17/12 29/18 36/2 42/18 51/20 52/18 53/18 53/20 54/2 55/8 55/14 55/17 68/14
Whereupon [5] 8/20 13/2 48/17 50/1 58/7
whether [48] 13/6 16/1 18/25 19/23 20/2 20/6 20/6 20/12 20/13 20/14 20/15 20/17 21/1 21/5 21/10 21/11 21/16 22/20 22/22 24/6 24/7 24/7 24/9 25/2 25/7 25/8 25/8 25/11 26/8 26/9 26/9 26/11 26/25 27/23 33/5 33/6 33/9 40/23 42/15 46/23 65/9 65/21 66/7 66/9 67/25 68/1 70/20 70/25
which [40] 3/24 7/13 10/6 11/13 17/3 17/14 18/4 18/9 19/10 19/19 20/3 20/8 20/17 20/24 22/6 28/2 28/13 28/17 29/6 29/8 30/23 32/4 33/13 33/17 36/5 36/20 38/3 40/15 45/2 45/18 45/23 49/3 49/9 51/6 64/20 64/23 65/2 66/4 67/16 69/9
whichever [2] 45/11 45/14
while [5] 11/4 18/20 30/12 33/10 44/15
who [22] 3/13 3/17 14/1 16/14 20/1 21/25 22/15 22/20 22/25 31/5

32/15 32/21 33/14 39/1 39/7 41/17 41/17 41/18 41/19 41/21 52/8 52/8
who's [2] 36/2 56/15
whole [4] 9/6 10/20 19/20 44/17
whose [1] 33/2
why [11] 6/7 8/6 19/14 26/22 36/11 36/13 51/6 64/20 66/16 70/22 71/1
will [51] 5/14 6/21 7/2 7/20 9/13 14/25 16/4 19/6 27/5 41/17 41/18 41/19 41/21 42/4 43/23 44/3 44/7 44/9 44/12 44/21 45/7 45/8 45/8 45/9 46/11 46/11 48/10 49/3 52/1 52/6 52/8 52/8 52/9 52/13 53/6 53/7 53/8 53/18 54/20 56/2 58/6 63/9 64/7 64/10 64/11 65/1 65/24 68/23 68/25 69/8 69/19
willfully [3] 36/15 36/20 37/2
wind [1] 66/4
window [2] 18/12 18/16
wisdom [1] 12/1
withdraw [4] 38/8 38/10 38/15 38/21
within [1] 64/23
without [6] 7/20 11/23 29/19 32/13 36/17 63/24
witness [42] 10/22 14/7 14/12 16/13 16/14 16/15 18/6 20/3 20/3 20/6 20/7 20/8 20/10 20/11 20/12 20/13 20/14 20/15 20/16 20/17 20/25 21/9 21/11 21/13 21/17 21/18 21/20 21/23 21/24 22/1 22/4 22/5 22/12 22/15 22/17 22/20 22/23 22/25 23/11 23/12 53/22 54/23
witness's [6] 18/7 20/5 20/12 20/21 21/2 21/3
witnesses [9] 4/20 4/21 11/8 14/19 16/7 19/23 20/1 20/2 22/22
woke [1] 18/18
won't [1] 53/20
words [5] 16/13 19/13 42/22 45/22 50/7
work [2] 67/10 67/18
worked [2] 8/13 30/24
working [5] 9/2 9/4 9/8 49/21 65/4
works [2] 66/7 67/13
world [1] 17/19
worried [1] 9/14
worth [1] 69/20
would [48] 3/5 5/12 5/13 5/18 5/20 6/2 6/4 6/7 6/17 6/19 6/19 6/20

12/6 12/8 14/6 15/21 18/13 18/19 27/13 27/24 36/21 46/5 47/16 52/21 53/25 54/8 54/13 54/21 55/21 58/11 58/14 60/20 63/18 64/2 64/6 64/13 65/3 66/10 67/10 67/18 67/21 68/4 68/9 68/24 70/10 71/2 71/5 71/14
wouldn't [2] 6/14 70/20
write [2] 9/15 50/16
writing [7] 5/3 5/14 5/15 5/23 5/25 42/6 42/12
written [1] 69/7

# Y

Yeah [1] 7/3
yes [19] 6/9 6/11 7/15 7/22 12/22 46/15 46/23 48/21 58/17 58/20 62/1 62/14 62/23 66/14 67/2 67/11 67/13 69/16 70/19
yesterday [1] 7/11
yet [2] 7/17 50/14
you [435]
you'd [3] 23/17 32/19 55/20
you'll [6] 29/5 44/10 46/8 46/9 46/10 63/9
you're [29] 8/9 9/16 12/1 18/25 26/23 29/16 29/20 36/3 42/8 42/14 43/20 44/4 50/14 50/23 51/3 51/4 51/19 51/22 52/5 53/2 53/5 53/8 54/2 58/15 61/23 66/24 67/16 68/2 70/5
you've [30] 8/24 10/25 16/5 21/23 22/4 23/4 26/21 42/11 44/10 44/22 46/8 46/13 46/22 47/14 48/6 51/13 57/5 60/24 61/5 61/9 61/13 61/17 62/3 62/7 62/11 62/15 62/20 62/24 63/5 63/6
you-all [1] 54/14
your [150]
yours [1] 43/1
yourself [1] 3/5

# Z

zip [1] 54/8
Zoom [3] 7/7 53/16 55/1